# EXHIBIT 14

# SEC EDGAR Filing Information

# Form SC 13D/A -- General statement of acquisition of beneficial ownership [amend]

Filing Date Changed: **2005-11-14**
Group Members: **EMANUEL R. PEARLMANLIBERATION INVESTMENTS, L.P.LIBERATION INVESTMENTS, LTD.**
Documents: **6**

SEC Accession No.
**0001193125-05-224189**
Filing date: **2005-11-14**
Accepted: **2005-11-14 07:03:01**

## Table of submitted documents:

| Seq | Type | Document | Size | Description |
|-----|------|----------|------|-------------|
| 1 | SC 13D/A | dsc13da.htm | 73852 | AMENDMENT NO. 13 TO SCHEDULE 13D |
| 2 | EX-17 | dex17.htm | 74694 | COMPLAINT PURSUANT TO 8 DEL.C. SECTION 220 |
| 3 | EX-18 | dex18.htm | 19173 | MOTION FOR EXPEDITED PROCEEDINGS |
| 4 | EX-19 | dex19.htm | 6056 | LETTER TO THE BOARD OF DIRECTORS OF BALLY |
| 5 | GRAPHIC | g19850img_1.jpg | 41170 | GRAPHIC |
| 6 | GRAPHIC | g19850img_2.jpg | 40847 | GRAPHIC |
| | | 0001193125-05-224189.txt | 289072 | **Complete submission text file** |

# Filer Information

**BALLY TOTAL FITNESS HOLDING CORP** (Subject) (**0000770944**)
IRS No.: **363228107** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **SC 13D/A** | Act: **34** | File No.: **005-47769** | Film No.: **051196112**
SIC: **7997** Services-Membership Sports & Recreation Clubs

**Business Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631
773-380-3000

**Mailing Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631

**LIBERATION INVESTMENT GROUP LLC** (Filed by) (**0001259272**)
IRS No.: **000000000** | State of Incorp.: | Fiscal Year End:
Type: **SC 13D/A** | Act: | Film No.:

**Business Address**

**Mailing Address**
11766 WILSHIRE BLVD.,
SUITE 870
LOS ANGELES CA 90025

SC 13D/A 1 dsc13da.htm AMENDMENT NO. 13 TO SCHEDULE 13D

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

# SCHEDULE 13D

### Information to be Included in Statements Filed Pursuant to Rule 13d-1(a) and Amendments Thereto Filed Pursuant to Rule 13d-2(a) Under the Securities Exchange Act of 1934 (Amendment No. 13)*

BALLY TOTAL FITNESS HOLDING CORPORATION

(Name of Issuer)

COMMON STOCK, NO PAR VALUE, $.01 PER SHARE

(Title of Class of Securities)

058 73K 10 8

(CUSIP Number)

KENNETH J. BARONSKY
MILBANK, TWEED, HADLEY & McCLOY LLP
601 S. FIGUEROA STREET, 30TH FLOOR
LOS ANGELES, CA 90017
TELEPHONE: 213-892-4333

(Name, address and telephone number of person authorized to receive notices and communications)

November 10, 2005

(Date of event which requires filing of this statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d-1(e), 13d-1(f) or 13d-1(g), check the following box ☐.

**NOTE:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits See Rule 13d-7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

Amendment No. 13 to Schedule 13D

CUSIP No. 058 73K 10 8

| | |
|---|---|
| (1) NAME OF REPORTING PERSON<br>S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON<br><br>Liberation Investments, L.P. | |
| (2) CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a) ☐<br>(b) ☒ | |
| (3) SEC USE ONLY | |
| (4) SOURCE OF FUNDS<br><br>WC | |
| (5) CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | ☐ |
| (6) CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>Delaware | |

| NUMBER OF SHARES BENEFICIALLY OWNED BY PERSON WITH | (7) SOLE VOTING POWER<br><br>0 |
|---|---|
| | (8) SHARED VOTING POWER<br><br>2,662,963 |
| | (9) SOLE DISPOSITIVE POWER<br><br>0 |
| | (10) SHARED DISPOSITIVE POWER<br><br>2,662,963 |

| | |
|---|---|
| (11) AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>2,662,963 | |
| (12) CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
| (13) PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>7.84% | |
| (14) TYPE OF REPORTING PERSON<br><br>PN | |

Page 2

CUSIP No. 058 73K 10 8

| (1) | NAME OF REPORTING PERSON<br>S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON<br><br>Liberation Investments, Ltd. | | | |
|---|---|---|---|---|
| (2) | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a) ☐<br>(b) ☒ | | | |
| (3) | SEC USE ONLY | | | |
| (4) | SOURCE OF FUNDS<br><br>WC | | | |
| (5) | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d)<br>OR 2(e) | | | ☐ |
| (6) | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>Cayman Islands | | | |

| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY<br>PERSON<br>WITH | (7) | SOLE VOTING POWER<br><br>0 |
| | (8) | SHARED VOTING POWER<br><br>1,436,487 |
| | (9) | SOLE DISPOSITIVE POWER<br><br>0 |
| | (10) | SHARED DISPOSITIVE POWER<br><br>1,436,487 |

| (11) | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>1,436,487 | |
|---|---|---|
| (12) | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
| (13) | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>4.23% | |
| (14) | TYPE OF REPORTING PERSON<br><br>CO | |

Page 3

Amendment No. 13 to Schedule 13D                                    Page 4 of 8

CUSIP No. 058 73K 10 8

| (1) | NAME OF REPORTING PERSON<br>S S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON<br><br>Liberation Investment Group LLC | |
|---|---|---|
| (2) | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a) ☐<br>(b) ☒ | |
| (3) | SEC USE ONLY | |
| (4) | SOURCE OF FUNDS<br><br>N/A | |
| (5) | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d)<br>OR 2(e) | ☐ |
| (6) | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>Delaware | |

| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY<br>PERSON<br>WITH | (7) | SOLE VOTING POWER<br><br>0 |
|---|---|---|
| | (8) | SHARED VOTING POWER<br><br>4,099,450 |
| | (9) | SOLE DISPOSITIVE POWER<br><br>0 |
| | (10) | SHARED DISPOSITIVE POWER<br><br>4,099,450 |

| (11) | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>4,099,450 | |
|---|---|---|
| (12) | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
| (13) | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>12.06% | |
| (14) | TYPE OF REPORTING PERSON<br><br>OO, IA | |

Page 4

Amendment No. 13 to Schedule 13D

CUSIP No. 058 73K 10 8

| | |
|---|---|
| (1) NAME OF REPORTING PERSON<br>S.S. OR I R.S. IDENTIFICATION NO. OF ABOVE PERSON<br><br>Emanuel R. Pearlman | |
| (2) CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a) ☐<br>(b) ☒ | |
| (3) SEC USE ONLY | |
| (4) SOURCE OF FUNDS<br><br>N/A | |
| (5) CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | ☐ |
| (6) CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>United States | |

| NUMBER OF SHARES BENEFICIALLY OWNED BY PERSON WITH | | |
|---|---|---|
| | (7) SOLE VOTING POWER<br><br>35,000 | |
| | (8) SHARED VOTING POWER<br><br>4,099,450 | |
| | (9) SOLE DISPOSITIVE POWER<br><br>35,000 | |
| | (10) SHARED DISPOSITIVE POWER<br><br>4,099,450 | |

| | |
|---|---|
| (11) AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>4,134,450 | |
| (12) CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
| (13) PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>12.16% | |
| (14) TYPE OF REPORTING PERSON<br><br>IN, HC | |

Page 5

Amendment No. 13 to Schedule 13D

## INTRODUCTORY STATEMENT

This Amendment No. 13 (this "Amendment") relates to the Schedule 13D filed on behalf of (i) Liberation Investments, L.P., a Delaware limited partnership ("LILP"); (ii) Liberation Investments Ltd. ("LILTD"), a private offshore investment corporation; (iii) Liberation Investment Group, LLC ("LIGLLC"), a Delaware limited liability company and general partner of LILP and discretionary investment advisor to LILTD; and (iv) Emanuel R. Pearlman, as General Manager, Chief Investment Officer and majority member of LIGLLC, with the Securities and Exchange Commission on June 8, 2004, as amended by Amendment No. 1 filed on July 13, 2004, Amendment No. 2 filed on August 27, 2004, Amendment No. 3 filed on September 1, 2004, Amendment No. 4 filed on September 10, 2004, Amendment No. 5 filed on December 13, 2004, Amendment No. 6 filed on April 26, 2005, Amendment No. 7 filed on May 6, 2005, Amendment No. 8 filed on July 19, 2005, Amendment No. 9 filed on July 22, 2005, Amendment No. 10 filed on September 19, 2005, Amendment No. 11 filed on October 11, 2005 and Amendment No. 12 filed on October 31, 2005 (the "Schedule 13D"), relating to shares of common stock, $.01 par value per share, of Bally Total Fitness Holding Corporation (the "Company").

Items 4 and 7 of the Schedule 13D are hereby amended and supplemented as follows:

ITEM 4. PURPOSE OF TRANSACTION

On October 31, 2005, LILP and LILTD submitted a letter (the "Demand Letter") to the Company pursuant to Section 220 of the Delaware General Corporation Law demanding the right to inspect the Company's stockholder list and certain of its books and records. LILP and LILTD believe that under Delaware law the Company was required to make the materials requested in the Demand Letter available to Liberation Funds for inspection within 5 business days of the submission of the Demand Letter. However, the Company has as yet refused to provide the information requested in the Demand Letter and the parties have been unable to reach agreement about the scope of information that the Company will voluntarily provide.

As a consequence, on November 10, 2005, LILP and LILTD filed a complaint (a copy of which is attached to this filing as Exhibit 17, the "Complaint") with the Court of Chancery of the State of Delaware in and for New Castle County (the "Court") pursuant to Section 220 of the Delaware General Corporation Law seeking to compel the Company to permit them to inspect the Company's stockholder list and certain books and records of the Company relating to, among other things, the (i) adoption by the Company's Board of Directors (the "Board") on October 18, 2005 of a Stockholder Rights Plan (the "Poison Pill"), (ii) independence of certain directors and the circumstances of their appointment to the Board and (iii) Company's retention of Russell Reynolds Associates ("RRA") to find independent directors and the relationship between RRA and existing directors of the Company.

In connection with the Complaint, LILP and LILTD also filed with the Court a Motion for Expedited Proceedings (a copy of which is attached to this filing as Exhibit 18) and certain customary materials.

LILP and LILTD filed the Complaint and related materials in order to further their investigation of the adoption of a management protection provision in the Poison Pill. In addition, LILP and LILTD seek to investigate whether all of the "independent" members of the Board are in fact independent of the influence of the Company's management and whether their connections with the Company's management were properly disclosed before they were appointed. LILP and LILTD intend to examine any documentary materials and other information made available to them by the Company pursuant to the Complaint and, if appropriate, use such materials in a legal action against the Company. In addition, LILP and LILTD are weighing the possibility of running a proxy contest to, among other possibilities, elect directors or change the Company's by-laws to permit the stockholders to vote to remove Mr. Paul Toback as Chief Executive Officer of the Company.

In addition, on November 11, 2005, LILP and LILTD delivered a letter to the Board (a copy of which is attached to this filing as Exhibit 19, the "Board Letter") addressing press reports that the Company has been engaged in discussions with third parties concerning the possible sale of the Company or a substantial minority stake in it.

As a result of the filing of the Complaint and related materials with the Court and the submission of the Board Letter to the Company, LILP and LILTD may engage in discussions with the Company's stockholders, management or Board concerning the matters described above.

ITEM 7  MATERIAL TO BE FILED AS EXHIBITS

The following exhibits are filed with this Amendment:

Exhibit 17.  Complaint Pursuant to 8 Del C. §220, dated November 10, 2005, filed by LILP and LILTD.

Exhibit 18.  Motion for Expedited Proceedings, dated November 10, 2005, filed by LILP and LILTD.

Exhibit 19.  Letter to the Board of Directors of Bally, dated as of November 11, 2005, submitted by LILP and LILTD.

SIGNATURE

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct

Dated: November 14, 2005

LIBERATION INVESTMENTS, L.P.
By: Liberation Investment Group LLC, general partner

By: /s/ Emanuel R. Pearlman
_____
    Emanuel R. Pearlman
    General Manager

LIBERATION INVESTMENTS LTD.

By: /s/ Emanuel R. Pearlman
_____
    Emanuel R. Pearlman
    Director

LIBERATION INVESTMENT GROUP LLC

By: /s/ Emanuel R. Pearlman
_____
    Emanuel R. Pearlman
    General Manager

EMANUEL R. PEARLMAN

/s/ Emanuel R. Pearlman
_____

EX-17 2 dex17.htm COMPLAINT PURSUANT TO 8 DEL.C. SECTION 220

Exhibit 17

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| LIBERATION INVESTMENTS, L.P. and | ) | |
| LIBERATION INVESTMENTS, LTD. | ) | |
|        Plaintiffs, | ) | |
| | ) | Civil Action No. _____ |
|    v. | ) | |
| | ) | |
| BALLY TOTAL FITNESS HOLDING | ) | |
| CORPORATION, a Delaware | ) | |
| corporation, | ) | |
|        Defendant. | ) | |

### COMPLAINT PURSUANT TO 8 *DEL.C.* §220

    Plaintiffs Liberation Investments, L.P., and Liberation Investments, Ltd. (collectively, "Liberation Investments" or the "plaintiffs"), by and through their attorneys, hereby bring this action pursuant to 8 *Del.C.* §220 for access to certain books and records of defendant Bally Total Fitness Holding Corporation ("Bally" or the "Company"), and in support thereof allege as follows on knowledge, information and belief:

I. Introduction.

    1. With this action, the plaintiffs seek certain of Bally's books and records as well as its stocklist materials. The plaintiffs seek expedited treatment for this action because it arises on the eve of Bally's annual stockholder meeting at which directors will be elected to its board and the materials sought through this action are expected to be essential to making an informed choice with respect to the election of directors and the conduct of a possible proxy contest by plaintiffs. In addition, the plaintiffs believe that a review of these books and records may yield information

calling into question the integrity of the process in which directors are proposed to be elected at the annual stockholder meeting. Accordingly, plaintiffs may be required to launch one or more additional corrective legal actions in the very near term in order to ensure the legality and fairness of the election of directors at the annual stockholder meeting.

2. In September 2005, the plaintiffs brought a §211 proceeding to force Bally to hold an annual stockholders' meeting. That action was resolved by stipulation and Bally agreed to hold a stockholders' meeting on January 26, 2005. At that time, Bally was aware that plaintiffs might seek to elect directors at the stockholders' meeting. The plaintiffs had also previously urged Bally's board to consider terminating Paul Toback from his position as Bally's Chief Executive Officer ("CEO").

3. On October 17, 2005, another Bally stockholder, Pardus Capital Management, L.P. ("Pardus"), which holds approximately 14% of Bally's issued and outstanding stock, announced that it intended to nominate directors for the class of directors to be voted upon at the annual meeting[1] and indicated that it would seek proxies in support of the election of its nominees. The following day, Bally adopted a Stockholder Rights Plan (the "Poison Pill"). In part, the Poison Pill is designed to prevent third party takeover attempts of the Company at unfair prices. Liberation Investments does not oppose that portion of the Poison Pill. However, the Poison Pill also prevents stockholders who would collectively hold more than 15% of the Company's stock from banding together and running a joint proxy slate (the "Management Protection Provision"). For example, under the Management Protection Provision, if (1) Pardus and Liberation Investments (which beneficially owns approximately 12% of the Company's issued and outstanding shares of common

---

[1] The Company's Bylaws contain an advance notification requirement in connection with the nomination of directors to the board.

stock) agreed to vote their shares in favor of a joint slate of directors or (2) Liberation Investments and another holder of in excess of 3% of Bally's stock agreed to present a slate of director candidates or oppose the Pardus nominees, the Poison Pill would be triggered and would result in massive dilution to the equity positions in the Company held by the relevant stockholder groups. This dilution would occasion enormous economic loss to the relevant stockholder groups.

4. In other words, the Management Protection Provision operates to prevent large stockholder groups from joining together to elect stockholder-friendly directors or oust directors they believe are unduly beholden to management. Thus, the Management Protection Provision directly abnegates the right of the owners of Bally to play a meaningful role in directing its affairs. The Management Protection Provision was adopted under circumstances that lead plaintiffs to believe that its adoption was meant principally to entrench Bally's existing board. Bally, however, claims that such inferences are not true and contends that the Poison Pill was adopted (1) by fully independent directors and (2) at the conclusion of lengthy and thorough deliberation by the board that predated any worry about a proxy contest. The primary purpose of the books and records portion of this action is to enable Liberation Investments to examine the relevant records of the Company to ascertain whether its contentions in this connection can withstand serious scrutiny. As explained briefly hereafter, there is significant reason to believe that they cannot.

## II. The Parties.

5. Liberation Investments is the record owner of 200 shares and the beneficial holder of approximately 4.1 million shares of the common stock of Bally, which amounts to approximately 12% of Bally's issued and outstanding stock.

3

6. Bally is a Delaware corporation whose registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. Its CEO is Paul Toback.

### III. The Demand Letter.

7. On October 31, 2005, plaintiffs caused to be delivered to Bally, at both its headquarters in Chicago, Illinois by Federal Express and its registered agent in Delaware by hand delivery, a written demand letter executed under oath (the "Demand Letter"). The Demand Letter demanded the right, pursuant to 8 *Del.C.* §220, to inspect during the usual hours of business of the Company and make copies or extracts therefrom:

(1) All written or electronic documents or other records pertaining to the Company's adoption of the Poison Pill announced on October 18, 2005, or any other anti-takeover measures being contemplated by the board, including, without limitation, copies of all minutes of board or board committee meetings discussing or considering whether a poison pill should be adopted.

(2) All written or electronic documents or other records relating to the information provided to the board of directors – or its individual members – about the Poison Pill or other anti-takeover measures, including, without limitation, with respect to the effect that the Poison Pill would have on a proxy contest for the election of directors.

(3) All written or electronic documents or other records relating to or evidencing communication between the Company and its agents or advisors and JPMorgan Chase Bank or its agents in connection with the Company's efforts to obtain the consent of JPMorgan Chase Bank and the lender group under the Company's Credit Agreement to the adoption of the Poison Pill, including, without limitation, any and all email communications sent or received in connection therewith.

(4) All written and electronic documents from or to any professionals, including investment bankers and proxy solicitors, who assisted or advised the Company in the adoption of the Poison Pill.

(5) All written or electronic documents or other records pertaining to Bally's hiring of Russell Reynolds Associates ("RRA"), and all information concerning the relationship between RRA and/or any of its officers and employees, on one hand, and the Company and and/or any of its officers and employees, on the other hand.

4

(6) All written or electronic documents or other records provided to or generated by the board or any committee thereof concerning the following persons before they were invited to become directors: Mr. Wilhelm, Dr. Seymann, Mr. Rogers, Mr. Deutsch, and Mr. Langshur.

(7) Any written or electronic documents or other records in the Company's possession relating to the personal or business relationships between or among Mr. Toback and Messrs. Wilhelm, Rogers, Deutsch and Langshur and Dr. Seymann.

(8) All written or electronic documents or other records concerning any person that Mr. Toback has proposed or recommended be added to the board of directors, and all documents relating to the resignations of Mr. Wilhelm, Dr. Seymann and Mr. Swid.

(9) The most recent complete record or list of the stockholders of record of the Company, certified by its transfer agent, showing the name and address of each stockholder and the number of shares of stock registered in the name of each stockholder.

(10) All information in the Company's possession or control, or which can reasonably be obtained from nominees of any central certificate depository system, or from banks, brokers or dealers, concerning the number and identity of the actual beneficial owners of the Company's stock including, but not limited to, all "CEDE breakdowns" omnibus proxies from such entities.

(11) All information in, or which comes into, the possession or control of the Company, or which can reasonably be obtained from brokers, dealers, banks, clearing agencies, voting trustees or other nominees concerning the names, addresses and number of shares of the non-objecting beneficial owners and consenting beneficial owners of the stock of the Company.

A true and correct copy of the Demand Letter is attached hereto as Exhibit A.

## IV. The Plaintiffs' Purpose.

8. As stated in the Demand Letter, plaintiffs have asserted a proper purpose that is reasonably related to their status as stockholders of Bally for the inspection of the items identified in the Demand Letter. With respect to the stocklist materials, Liberation Investments wishes to be able to communicate with the stockholders for the purpose of electing directors or potentially for the purpose of changing the bylaws to enable stockholders to remove Mr. Toback as the CEO of Bally. These are proper purposes under Delaware law.

5

A. *Independence of Directors.*

9. As described in the Demand Letter, the plaintiffs seek the review of the Company's books and records for a number of interrelated purposes. One key purpose is to determine whether or not the directors Bally holds out as independent are, in fact, so. Bally asserts that one of the reasons that the adoption of the Management Protection Provision contained in its Poison Pill is lawful is because it was enacted by independent directors. Yet there are reasons to be deeply skeptical about the claimed independence of these directors, a fact that would be relevant in an action to challenge the Management Protection Provision or in a proxy contest.

10. During the past year, Bally's board appointed three new directors, Eric Langshur, David Wilhelm and Dr. Marilyn Seymann. Mr. Wilhelm, however, resigned after a few days in office. Dr. Seymann lasted less than three months before she too suddenly resigned. In August, Stephen Swid, an independent director who had been nominated by dissident stockholders in the past, abruptly resigned as well. That left Bally with only six directors and profound, and as yet unanswered, questions about what was happening on the board.

11. Mr. Toback is one of the remaining six directors, and, as the CEO, is not independent. Another remaining director is Kenneth Looloian, Bally's longest-serving director. Mr. Looloian is independent, but, upon information and belief, he did not participate in the adoption of the Poison Pill. The other four directors are all purportedly independent, but there is reason to believe that at least two are not, in fact, so. One of these two directors was appointed to the board by Mr. Toback to counterbalance Mr. Swid's independence from Mr. Toback, and upon information and belief, he has a close personal relationship with Mr. Toback and confided in certain of his associates that he was appointed to the board for the purpose of ensuring that Mr. Toback's bidding is done. While he appears to be independent on paper, there is thus reason to believe that he does not function independently in practice.

6

12. Another supposedly independent director is Barry Deutsch. The Company holds Mr. Deutsch out as completely independent of Mr. Toback and maintains that the two have no financial ties that might present a conflict of interest. This may be so, but under Delaware law financial conflicts are not the only conflicts of interest considered to have legal import. A director can be deemed to be conflicted for any number of reasons, including having a close personal friendship with the CEO that makes it difficult for the director to apply independent judgment in connection with matters affecting the CEO personally. That appears to be the situation in which Mr. Deutsch finds himself. Messrs. Toback and Deutsch have a relationship that goes back for years, extending it appears, into childhood. Mr. Deutsch attended the same high school as Mr. Toback, Niles North High School in Skokie, Illinois, where they were members of the same graduating class and were both members of the Key Club, Homecoming Committee and National Honor Society. The senior class pictures for Messrs. Toback and Deutsch are attached hereto as Exhibit B.

13. Attending the same high school class as the CEO, of course, does not, in itself, prove that a director lacks independence. Nor, without more, would evidence that the two grew up in the same neighborhood for most of their childhood (which Liberation Investments understands to be the case as well). But it would be striking indeed if these two facts were not occasioned by a personal relationship between these two men that predates Mr. Deutsch's appointment to Bally's board. These circumstances should permit Liberation Investments to make a more searching inquiry of the Company's records to determine what they reveal on this subject. This issue is important not only because it goes to the actual independence of Mr. Deutsch and Bally's board, but also because it

7

calls into question the compelling subject of *what the other directors were told* when Mr. Deutsch, a childhood friend of Mr. Toback, was proposed for appointment to the board as an independent director.

14. In this connection, the charter of Bally's nominating committee provides relevant guidance. That charter requires the committee (and not the CEO) to "lead the search for individuals qualified to become members of the board." It further provides that "[c]andidates for nomination as director are considered on the basis of their broad business, financial and public service experience, and should not represent any particular constituency, but rather the stockholders generally. . . . In addition, the activities or associations of the nominees should not constitute conflicts of interest or legal impediments that might preclude service as a director." Perhaps a childhood friend will meet each of these exacting tests. But the realities of human experience counsel the court to consider the possibility that such a friend may have been appointed to the board to represent a constituency of one—the CEO. At a minimum, the other directors ought to have been apprised of the association between Mr. Toback and Mr. Deutsch prior to the latter's appointment to the board as a purportedly independent director. Liberation Investments desires to review any available records or other materials concerning the relationship between Mr. Toback and Mr. Deutsch prior to the latter's appointment to the board as a purportedly independent director. Liberation Investments desires to review any available records or other materials concerning the relationship between Mr. Toback and Mr. Deutsch and the circumstances of Mr. Deutsch's appointment to the board in order to more fully understand whether Mr. Deutsch is, in fact, independent and whether his selection as an independent director was carried out in good faith. In addition and for the same purposes, Liberation Investments desires to review any available records or other materials concerning the relationship between Mr. Toback and other recently appointed directors and the circumstances of the appointment of such other directors to the board.

8

B. *Timing and Information.*

15. Bally claims that the fact that it adopted the Poison Pill the day after Pardus announced that it would be presenting a slate of prospective directors was wholly coincidental, and that the board, in taking such action, did not intend to prevent stockholder groups from presenting a joint proxy slate to Bally's stockholders. It is extremely difficult for Liberation Investments to credit either of these claims,[2] but a court decision as to their veracity must await another proceeding. For this §220 action it is enough to say that there exist sufficient bases for skepticism to justify allowing Liberation Investments to investigate Bally's assertions and to review what the Company's records disclose on these issues.

16. Several related reasons to permit the demanded inspection are briefly set forth in the Demand Letter (which is incorporated by reference herein in its entirety), but most go to one essential point: Bally has adopted a Management Protection Provision that undeniably will have the effect of protecting the positions of incumbent directors and management in the upcoming proxy contest. The Company has asserted that the Management Protection Provision and its adoption are lawful, but there are facts that cast grave doubt on these assertions. It is in the best interests of the Company and all of its stockholders for the *bona fides* of those claims by the Company to be investigated by Liberation Investments as rapidly as possible. Depending on what the investigation reveals, Liberation Investments may file an action in this Court challenging the Management Protection Provision. It is also possible, however, that further legal action may not prove necessary, and that a grant by this Court of authority to Liberation Investments to conduct a review of the

---

2    Prior to adopting the Management Protection Provision, a consequential, strategic protective device, the directors must have reviewed and understood how it would operate in practice. The suggestion that a strategic measure whose practical effect is to retard the ability of stockholders to effectively run a proxy contest was coincidentally adopted the day following Pardus' announcement that it had launched a proxy contest strains credulity.

9

Company's books and records will induce the Company to rethink its strategy and, either refrain from interfering with the proxy contest, or do what is ultimately in its best interest: work cooperatively with the stockholders to jointly nominate highly qualified, truly independent directors.

## V. Justiciability.

17. More than five business days have now elapsed since the date on which the Demand Letter was delivered to the Company, the Company has refused to provide the requested information, and the parties have been unable to reach agreement about the scope of information that the Company will voluntarily provide.

18. Plaintiffs have complied with the requirements of 8 *Del.C.* §220 and are therefore entitled to an immediate inspection of all the books and records identified in the Demand Letter, to the extent that such documents exist, in whatever form such books and records are presently available to Bally.

WHEREFORE, Liberation Investments, L.P. and Liberation Investments, Ltd. respectfully request that, in accordance with 8 *Del.C.* §220, this Court enter an order (i) directing Bally to permit inspection and copying of the materials set forth in the Demand Letter and (ii) awarding plaintiffs their reasonable attorneys' fees and costs incurred in connection with this lawsuit, together with such other and further relief as this Court may deem just and proper.

10

ASHBY & GEDDES

/s/ Lauren E. Maguire (I.D. #4261)

Stephen E. Jenkins (I.D. #2152)
Steven T. Margolin (I.D. #3110)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Liberation Investments, L.P. and
Liberation Investments, Ltd*

OF COUNSEL:

Kenneth J. Baronsky
Adam R. Moses
MILBANK, TWEED, HADLEY & MCCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000

Dated: November 10, 2005

11

**EXHIBIT A**

**LIBERATION INVESTMENTS, L.P.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

**LIBERATION INVESTMENTS, LTD.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

October 28, 2005

*By Hand*

The Board of Directors

Bally Total Fitness Holding Corporation

c/o CT Corporation

1209 Orange Street

Wilmington, DE 19801

*By Federal Express*

The Board of Directors

Bally Total Fitness Holding Corporation

8700 West Bryn Mawr Avenue

Chicago, IL 60631

C/o: Marc D. Bassewitz, Esq.

*Re: Demand For Inspection Of Books And Records Of Bally Total*
*Fitness Holding Corporation Pursuant to 8 Del.C. §220*

Gentlemen:

As you are aware Liberation Investments, L.P. and Liberation Investments, Ltd. (collectively, "Liberation") are record and beneficial holders of shares of Bally Total Fitness Holding Corporation, a Delaware corporation ("Bally" or the "Company").

Pursuant to Section 220 of the Delaware General Corporation Law, Liberation hereby demands the right (by its attorneys, consultants, or other agents), during the usual hours of business, to inspect the following books and records of the Company and to make copies or extracts therefrom.

Corporate Books and Records

1. All written or electronic documents or other records pertaining to the Company's adoption of the "Stockholder Rights Plan" (the "Poison Pill") announced on October 18, 2005, or any other anti-takeover measures being contemplated by the board, including, without limitation, copies of all minutes of board or board committee meetings discussing or considering whether a poison pill should be adopted.

Bally Total Fitness Holdings Corporation
October 28, 2005
Page 2

2. All written or electronic documents or other records relating to the information provided to the board of directors – or its individual members – about the Poison Pill or other anti-takeover measures, including, without limitation, with respect to the effect that the Poison Pill would have on a proxy contest for the election of directors.

3. All written or electronic documents or other records relating to or evidencing communication between the Company and its agents or advisors and JPMorgan Chase Bank or its agents in connection with the Company's efforts to obtain the consent of JPMorgan Chase Bank and the lender group under the Company's Credit Agreement to the adoption of the Poison Pill, including, without limitation, any and all email communications sent or received in connection therewith.

4. All written and electronic documents from or to any professionals, including investment bankers and proxy solicitors, who assisted or advised the Company in the adoption of the Poison Pill.

5. All written or electronic documents or other records pertaining to Bally's hiring of Russell Reynolds Associates ("RRA"), and all information concerning the relationship between RRA and/or any of its officers and employees, on one hand, and the Company and and/or any of its officers and employees, on the other hand.

6. All written or electronic documents or other records provided to or generated by the board or any committee thereof concerning the following persons before they were invited to become directors: Mr. Wilhelm, Dr. Seymann, Mr. Rogers, Mr. Deutsch, and Mr. Langshur.

7. Any written or electronic documents or other records in the Company's possession relating to the personal or business relationships between or among Mr. Toback and Messrs. Wilhelm, Rogers, Deutsch and Langshur and Dr. Seymann.

8. All written or electronic documents or other records concerning any person that Mr. Toback has proposed or recommended be added to the board of directors, and all documents relating to the resignations of Mr. Wilhelm, Dr. Seyman and Mr. Swid.

Stocklist Materials

9. The most recent complete record or list of the stockholders of record of the Company, certified by its transfer agent, showing the name and address of each stockholder and the number of shares of stock registered in the name of each stockholder.

Bally Total Fitness Holdings Corporation
October 28, 2005
Page 3

10. All information in the Company's possession or control, or which can reasonably be obtained from nominees of any central certificate depository system, or from banks, brokers or dealers, concerning the number and identity of the actual beneficial owners of the Company's stock including, but not limited to, all "CEDE breakdowns" omnibus proxies from such entities.

11. All information in, or which comes into, the possession or control of the Company, or which can reasonably be obtained from brokers, dealers, banks, clearing agencies, voting trustees or other nominees concerning the names, addresses and number of shares of the non-objecting beneficial owners and consenting beneficial owners of the stock of the Company ("NOBOs").

Purpose. As you are aware, Liberation has long been concerned about the quality of corporate governance at Bally. It is our view that Mr. Toback has not performed adequately as CEO and has spent far too much energy manipulating the corporate machinery to his own advantage, including attempts to entrench his position in office, rather than focusing his efforts on maximizing value for shareholders. The Company's recent adoption of the Poison Pill has greatly increased these concerns. As you are aware, we privately informed the Company that while we supported the use of a poison pill to prevent the takeover of the Company for an unfair price, we believe that the provisions of this Poison Pill that purport to prevent the formation of proxy groups are illegal and inequitable under Delaware law. Specifically, the Poison Pill prevents shareholders holding in excess of 15% of the Company's stock from jointly nominating a slate of directors or from seeking to change the by-laws (the "Management Protection Provision").

The Poison Pill – including the Management Protection Provision – was enacted only after we obtained a court order requiring the Company to hold a shareholder meeting, and only after another stockholder group filed a preliminary proxy statement. Thus, the Management Protection Provision was adopted only after the Company was confronted with the prospect of a proxy fight. As far as we know the Poison Pill was not adopted in the face of a hostile bid. We asked the Company to revise or dispense with the Management Protection Provision, and – as you know – we advised the Company that we would allow it to announce such a change on its own and that we would seek no public credit for it. The Company, however, refused to make such a change, which leads us to believe that the Company's primary purpose in adopting the Management Protection Provision was to prevent its many disgruntled stockholders from joining together in a proxy fight. What other purpose might the board have for adopting such a provision behind closed doors and without shareholder consent on the eve of a court-mandated shareholder meeting?

We are considering bringing an action in the Delaware Chancery Court to enjoin the application of the Management Protection Provision in time to allow all stockholders a full and

Bally Total Fitness Holdings Corporation
October 28, 2005
Page 4

fair opportunity to vote on director candidates and other shareholder proposals. At present though, we seek to inspect certain of the Company's books and records relating to its adoption of the Poison Pill, including materials that relate to the Management Protection Provision. In its press release, the Company claims that it had been discussing the Poison Pill "with its advisors for some time" prior to enacting it. We would like to see all the board materials supporting that claim as well as evidence of the timing and substance of the Company's and its advisors' communications with JPMorgan Chase Bank to obtain the consent to the adoption of the Poison Pill required under the Credit Agreement.

We also seek documents concerning how certain directors came to hold seats on the board and whether they are in fact "independent," as the Company claims. Bally currently has six directors: Paul Toback and five additional members. We understand that one of those directors, Mr. Deutsch, is a childhood friend of Mr. Toback. We have been informed that another director has told friends that he joined the board to "protect" Mr. Toback. Clearly, if this information is true, it would show that at least half the board is not independent. We have also been told that Mr. Toback has been very influential in causing the selection of directors with whom he had had a prior relationship. In this connection, we note that the Charter of the Nominating Committee mandates a markedly different approach to the selection of directors, requiring that Committee (and not the CEO) to "lead the search for individuals qualified to become members of the board." It goes on to provide that "[c]andidates for nomination as director are considered on the basis of their broad business, financial and public service experience, and should not represent any particular constituency, but rather the stockholders generally. . . . In addition, the activities or associations of the nominees should not constitute conflicts of interest or legal impediments that might preclude service as a director."

We also intend to investigate the Company's curious decision to hire RRA. The Company has publicly trumpeted the fact that it has hired RRA to help find suitable independent directors. It is our understanding, however, that RRA is not, as advertised, a wholly independent actor in this episode, but that a senior official in its Chicago office is a very close friend of a director who is, in turn, close to Mr. Toback. In other words, we understand that there is every reason to believe that Mr. Toback will have the ability to unduly influence this search in order to make sure that the "independent" candidates will not be independent enough to oppose his views. We wish to review whatever documentary materials or other information the Company has on this subject.

We intend to examine all the information we receive and then, if appropriate, use it in either the potential Chancery Court action described above, or in some other appropriate proceeding. Finally, we are seeking the Company's stocklist materials because we are weighing running a proxy contest to, among other possibilities, elect directors or change the Company's by-laws to permit the stockholders to vote to remove Mr. Toback as CEO.

Bally Total Fitness Holdings Corporation
October 28, 2005
Page 5

We will agree to a reasonable confidentiality agreement in order to review the information requested in this letter.

Please have your counsel advise our counsel, Kenneth Baronsky or Stephen E. Jenkins where and when the aforementioned books, records and other documents will be available for inspection and copying. Mr. Baronsky can be reached at Milbank, Tweed, Hadley & McCloy, LLP, 602 South Figueroa Street, Suite 3000, Los Angeles, CA 90017 (telephone 213-892-4333; facsimile 213-892-4733; e-mail kbaronsky@milbank.com.). Mr. Jenkins can be reached at Ashby & Geddes, P.O. Box 1150, 222 Delaware Avenue, Wilmington, DE 19899 (telephone: 302-654-1888; facsimile: 302-654-2067; email: sjenkins@ashby-geddes.com).

Very truly yours,

/s/ Emanuel R. Pearlman

Emanuel R. Pearlman General Manager/Director

## Verification and Power of Attorney

State of California
County of Los Angeles

BE IT REMEMBERED that, the undersigned, Emanuel R. Pearlman personally appeared before me, who being duly sworn, deposes and says:

1.  That the foregoing is the undersigned's letter of demand for the inspection of designated stocklist materials and books and records of Bally Total Fitness Holding Company and that the statements made in such letter are true and correct.

2.  That the letter designates Milbank, Tweed, Hadley & McCloy, LLP and Kenneth Baronsky, and Ashby & Geddes and Stephen E. Jenkins and their respective partners, associates, employees, and other persons to be designated by them, acting together, singly, or in combination, as the undersigned's attorney or agent to conduct such inspection, and that the foregoing and this verification are the undersigned's power of attorney authorizing the foregoing persons to act on behalf of the undersigned.

/s/ Emanuel R. Pearlman

_____

Emanuel R. Pearlman

SWORN TO AND SUBSCRIBED BEFORE ME

this 28th day of October, 2005.

/s/ Jennifer A. Robles
_____
Notary Public

EXHIBIT B

### EXHIBIT B



**Deutsch, Barry**
Key Club
Homecoming Committee
National Honor Society



**Toback, Paul**
Key Club
Homecoming Committee
National Honor Society

EX-18 3 dex18.htm MOTION FOR EXPEDITED PROCEEDINGS

Exhibit 18

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| LIBERATION INVESTMENTS, L.P. and LIBERATION INVESTMENTS, LTD. | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. _____ |
| v. | ) ) | |
| BALLY TOTAL FITNESS HOLDING CORPORATION, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

### MOTION FOR EXPEDITED PROCEEDINGS

Plaintiffs Liberation Investments, L.P., and Liberation Investments, Ltd. (collectively "Liberation Investments" or "plaintiffs"), by and through their attorneys, hereby respectfully move the Court for an order in the form attached hereto shortening the time for defendant Bally Total Fitness Holding Corporation ("Bally" or the "Company") to answer, move or otherwise respond to the Complaint herein, expediting discovery and setting the earliest practicable date for trial. The reasons for this motion are as follows:

1. Liberation Investments is, and at all relevant times has been, a stockholder of the Company.

2. Bally is a Delaware corporation.

3. As is set forth in the complaint, there is an ongoing proxy contest at Bally. The stockholders meeting (which was scheduled by stipulation after Liberation Investments filed a § 211 action in this Court) is set for January 26, 2006. Under the Company's by-laws all nominations and other proposals to be voted on at the stockholder meeting must be made sixty days before then.

4. On October 18, 2005 – the day after another stockholder group indicated its intention to run a proxy contest – Bally's board of directors enacted a poison pill. Liberation Investments does not oppose those provisions of the poison pill that prevent an unfair takeover, but it does oppose a provision (the "Management Protection Provision") that would trigger the poison pill if one or more stockholders collectively holding more than 15% of the Company's stock act together to offer a joint proxy slate or support any other proposal to be voted on at the stockholder meeting. The Management Protection Provision appears to be a naked entrenchment device, but Bally insists that it was enacted by truly independent directors and it is not intended to function in such a manner.

5. To test these assertions, on October 31, 2005, Liberation Investments sent a written demand to the Company requesting the opportunity to inspect specific books and records (the "Demand Letter"). The Demand Letter complied with all relevant statutory requirements under 8 *Del.C.* §220. More than five business days have now elapsed since the date on which the Demand Letter was delivered to the Company, the Company has refused to provide the requested information, and the parties have been unable to reach agreement about the scope of information that the Company will voluntarily provide. The plaintiffs are therefore filing a complaint pursuant to 8 *Del.C.* § 220 today.

6. As stated in the Demand Letter, plaintiffs' purposes for requesting the specified books and records are (i) to review the circumstances of the adoption of the poison pill; (ii) to evaluate the purported independent status of certain Bally directors; and (iii) to obtain a complete record or list of the stockholders of the Company because plaintiffs are considering

2

running a proxy contest to, among other possibilities, elect directors or change the Company's by-laws to permit the stockholders to vote to remove the Company's CEO. The Supreme Court has repeatedly urged stockholders to bring such demands before filing litigation. *General Time Corp. v. Talley Indus., Inc.*, 240 A.2d 755, 756 (Del. 1968).

7. Expedited treatment is needed here. As noted, the annual meeting is on January 26th. Under the Company's bylaws, any nominations or proposals to be voted on at the annual meeting must be submitted to the Company at least sixty days previous to such meeting. Accordingly, Liberation Investments needs to be able to conduct its § 220 investigation and, if appropriate, seek relief from the Management Protection Provision long before January 26th if its rights are to have meaning.

8. In recognition of the need for expedited treatment in books and records actions, Section 220(c) specifically states that the Court may "summarily order the corporation to permit the stockholder to inspect the corporation's stock ledger, an existing list of stockholders, and its other books and records, and to make copies or extracts therefrom." 8 *Del. C.* § 220(c).

9. This Court has indicated that a "Section 220 proceeding is summary in nature" and "contemplates expedited discovery and a prompt hearing." *Cutlip v. CBA International, Inc. I*, 1995 WL 694422, at * 1 (Del.Ch.). (Ex. A). *See also Weinstein Enterprises, Inc. v. Orloff*, 870 A.2d 499, 505(Del. 2005); *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1290 (Del. Ch. 2004); *Coit v. American Century Corp.*, 1987 WL 8458, *1 (Del. Ch.) (Ex. B).

10. Moreover, this Court has broad authority to expedite proceedings in any case. *See* Court of Chancery Rule 12(a) (permitting the Court to shorten or enlarge time periods specified for an answer); Court of Chancery Rule 30(a) (authorizing expedited depositions with leave of Court); Court of Chancery Rule 33(b)(3) (Court may shorten time for responses to

3

interrogatories); Court of Chancery Rule 34(b) (Court may set expedited time for production of documents); Court of Chancery Rule 57 ("The Court may order a speedy hearing of an action for a declaratory judgment.").

11. Therefore, plaintiffs respectfully request that the Court set this matter for trial as soon as possible, permit limited, expedited discovery, and shorten the time for the Company to answer the Complaint.

ASHBY & GEDDES

*/s/ Lauren E. Maguire (I.D. #4261)*

Stephen E. Jenkins (I.D. #2152)
Steven T. Margolin (I.D. #3110)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Liberation Investments, L.P. and Liberation Investments, Ltd.*

OF COUNSEL:

Kenneth J. Baronsky
Adam R. Moses
MILBANK, TWEED, HADLEY & MCCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000

Dated: November 10, 2005

4

EX-19 4 dex19.htm LETTER TO THE BOARD OF DIRECTORS OF BALLY

Exhibit 19

**LIBERATION INVESTMENTS, L.P.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

**LIBERATION INVESTMENTS, LTD.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

November 11, 2005

The Board of Directors
Bally Total Fitness Holding Corporation
8700 West Bryn Mawr Avenue
Chicago, IL 60631
C/o: Marc D. Bassewitz, Esq.

Gentlemen:

As you know, Liberation Investments, L.P., Liberation Investments, Ltd. and their affiliates (collectively, the "Liberation Funds") own approximately 12% of the outstanding common stock of Bally Total Fitness Holding Corporation ("Bally" or the "Company"), making the Liberation Funds Bally's second largest shareholder.

We have read in recent press articles that the directors and management of Bally have been engaged in discussions with third parties concerning the possible sale of either the Company or a substantial minority stake in it. If the Board continues to pursue a transaction, it must do so only through a *transparent auction process* designed to *maximize* the consideration to be paid to the Company or its shareholders and ensure a level playing field to encourage the participation of all bidders, including those that might not be supportive of present management.

We urge you to take your fiduciary duties seriously and maximize value for Bally's shareholders. We are convinced that the Company has a large pool of potential investors to draw upon and a failure to canvass this pool will almost certainly result in a failure to obtain the best price for the Company and its stockholders. We should alert you that we are prepared to take whatever action is necessary to safeguard the interests of shareholders, and, if necessary, will seek to hold directors personally liable for any losses that befall the Company or its shareholders as a result of the Board's failure to use a transparent auction process to sell the Company or a minority stake in it.

We would much prefer, however, to engage in a constructive dialogue with the Board for the benefit of the Company and all of its shareholders. We anticipate your prompt response and look forward to opening such a dialogue with the Board on this matter.

Sincerely,

/s/ Emanuel R. Pearlman

Emanuel R. Pearlman
Chairman and Chief Executive Officer

# EXHIBIT 15

# SEC EDGAR Filing Information

# Form SC 13D/A -- General statement of acquisition of beneficial ownership [amend]

Filing Date Changed: **2005-11-22**
Group Members: **EMANUEL R. PEARLMANLIBERATION INVESTMENTS, L.P.LIBERATION INVESTMENTS, LTD.**
Documents: **2**

SEC Accession No.
**0001193125-05-230639**
Filing date: **2005-11-22**
Accepted: **2005-11-22 08:32:46**

## Table of submitted documents:

| Seq | Type | Document | Size | Description |
|-----|------|----------|------|-------------|
| 1 | SC 13D/A | dsc13da.htm | 69697 | SCHEDULE 13D AMENDMENT NO. 14 |
| 2 | EX-20 | dex20.htm | 25168 | NOTICE LETTER TO THE COMPANY, DATED NOVEMBER 21, 2005 |
| | | 0001193125-05-230639.txt | 96870 | **Complete submission text file** |

## Filer Information

**BALLY TOTAL FITNESS HOLDING CORP** (Subject) **(0000770944)**
IRS No.: **363228107** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **SC 13D/A** | Act: **34** | File No.: **005-47769** | Film No.: **051219824**
SIC: **7997** Services-Membership Sports & Recreation Clubs

**Business Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631
773-380-3000

**Mailing Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631

**LIBERATION INVESTMENT GROUP LLC** (Filed by) **(0001259272)**
IRS No.: **000000000** | State of Incorp.: | Fiscal Year End:
Type: **SC 13D/A** | Act: | Film No.:

**Business Address**

**Mailing Address**
11766 WILSHIRE BLVD.,
SUITE 870
LOS ANGELES CA 90025

SC 13D/A 1 dsc13da.htm SCHEDULE 13D AMENDMENT NO. 14

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

---

# SCHEDULE 13D

### Information to be Included in Statements Filed Pursuant to Rule 13d-1(a) and Amendments Thereto Filed Pursuant to Rule 13d-2(a) Under the Securities Exchange Act of 1934 (Amendment No. 14)*

## BALLY TOTAL FITNESS HOLDING CORPORATION
(Name of Issuer)

**COMMON STOCK, NO PAR VALUE, $.01 PER SHARE**
(Title of Class of Securities)

**058 73K 10 8**
(CUSIP Number)

**KENNETH J. BARONSKY**
**MILBANK, TWEED, HADLEY & McCLOY LLP**
**601 S. FIGUEROA STREET, 30TH FLOOR**
**LOS ANGELES, CA 90017**
**TELEPHONE: 213-892-4333**
(Name, address and telephone number of person authorized to receive notices and communications)

**November 21, 2005**
(Date of event which requires filing of this statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d-1(e), 13d-1(f) or 13d-1(g), check the following box  ☐.

**NOTE:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See Rule 13d-7 for other parties to whom copies are to be sent.

---

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

CUSIP No. 058 73K 10 8

| (1) NAME OF REPORTING PERSON S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON |
|---|

Liberation Investments, L.P.

| (2) CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP |
|---|

(a) ☐
(b) ☒

(3) SEC USE ONLY

(4) SOURCE OF FUNDS

WC

| (5) CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | ☐ |
|---|---|

(6) CITIZENSHIP OR PLACE OF ORGANIZATION

Delaware

|  | (7) | SOLE VOTING POWER |
|---|---|---|
| NUMBER OF SHARES BENEFICIALLY OWNED BY PERSON WITH |  | 0 |
|  | (8) | SHARED VOTING POWER |
|  |  | 2,662,963 |
|  | (9) | SOLE DISPOSITIVE POWER |
|  |  | 0 |
|  | (10) | SHARED DISPOSITIVE POWER |
|  |  | 2,662,963 |

(11) AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

2,662,963

| (12) CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
|---|---|

(13) PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

7.84%

(14) TYPE OF REPORTING PERSON

PN

Page 2

CUSIP No. 058 73K 10 8

| (1) NAME OF REPORTING PERSON S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON | |
|---|---|
| Liberation Investments, Ltd. | |

| (2) CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | |
|---|---|
| (a) ☐ | |
| (b) ☒ | |

(3) SEC USE ONLY

(4) SOURCE OF FUNDS

WC

| (5) CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | ☐ |
|---|---|

(6) CITIZENSHIP OR PLACE OF ORGANIZATION

Cayman Islands

| | (7) SOLE VOTING POWER |
|---|---|
| | 0 |
| NUMBER OF SHARES BENEFICIALLY OWNED BY PERSON WITH | (8) SHARED VOTING POWER |
| | 1,436,487 |
| | (9) SOLE DISPOSITIVE POWER |
| | 0 |
| | (10) SHARED DISPOSITIVE POWER |
| | 1,436,487 |

(11) AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

1,436,487

| (12) CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
|---|---|

(13) PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

4.23%

(14) TYPE OF REPORTING PERSON

CO

Page 3

CUSIP No. 058 73K 10 8

(1) NAME OF REPORTING PERSON S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON

Liberation Investment Group LLC

(2) CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
   (a) ☐
   (b) ☒

(3) SEC USE ONLY

(4) SOURCE OF FUNDS

N/A

(5) CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) ☐
   OR 2(e)

(6) CITIZENSHIP OR PLACE OF ORGANIZATION

Delaware

| | | |
|---|---|---|
| | (7) | SOLE VOTING POWER |
| | | 0 |
| NUMBER OF SHARES | (8) | SHARED VOTING POWER |
| BENEFICIALLY | | 4,099,450 |
| OWNED BY PERSON | (9) | SOLE DISPOSITIVE POWER |
| WITH | | 0 |
| | (10) | SHARED DISPOSITIVE POWER |
| | | 4,099,450 |

(11) AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

4,099,450

(12) CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES ☐

(13) PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

12.06%

(14) TYPE OF REPORTING PERSON

OO, IA

Page 4

CUSIP No. 058 73K 10 8

| | |
|---|---|
| (1) NAME OF REPORTING PERSON S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON | |

Emanuel R. Pearlman

| | |
|---|---|
| (2) CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | |
| (a) ☐ | |
| (b) ☒ | |
| (3) SEC USE ONLY | |

| | |
|---|---|
| (4) SOURCE OF FUNDS | |

N/A

| | |
|---|---|
| (5) CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | ☐ |

| | |
|---|---|
| (6) CITIZENSHIP OR PLACE OF ORGANIZATION | |

United States

| | | |
|---|---|---|
| | (7) | SOLE VOTING POWER |
| | | 35,000 |
| NUMBER OF SHARES | (8) | SHARED VOTING POWER |
| BENEFICIALLY | | 4,099,450 |
| OWNED BY | (9) | SOLE DISPOSITIVE POWER |
| PERSON WITH | | 35,000 |
| | (10) | SHARED DISPOSITIVE POWER |
| | | 4,099,450 |

| | |
|---|---|
| (11) AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON | |

4,134,450

| | |
|---|---|
| (12) CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |

| | |
|---|---|
| (13) PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) | |

12.16%

| | |
|---|---|
| (14) TYPE OF REPORTING PERSON | |

IN, HC

INTRODUCTORY STATEMENT

This Amendment No. 14 (this "Amendment") relates to the Schedule 13D filed on behalf of (i) Liberation Investments, L.P., a Delaware limited partnership ("LILP"); (ii) Liberation Investments Ltd. ("LILTD"), a private offshore investment corporation; (iii) Liberation Investment Group, LLC ("LIGLLC"), a Delaware limited liability company and general partner of LILP and discretionary investment advisor to LILTD; and (iv) Emanuel R. Pearlman, as General Manager and majority member of LIGLLC, with the Securities and Exchange Commission on June 8, 2004, as amended by Amendment No. 1 filed on July 13, 2004, Amendment No. 2 filed on August 27, 2004, Amendment No. 3 filed on September 1, 2004, Amendment No. 4 filed on September 10, 2004, Amendment No. 5 filed on December 13, 2004, Amendment No. 6 filed on April 26, 2005, Amendment No. 7 filed on May 6, 2005, Amendment No. 8 filed on July 19, 2005, Amendment No. 9 filed on July 22, 2005, Amendment No. 10 filed on September 19, 2005, Amendment No. 11 filed on October 11, 2005, Amendment No. 12 filed on October 31, 2005 and Amendment No. 13 filed on November 14, 2005 (the "Schedule 13D"), relating to shares of common stock, $.01 par value per share, of Bally Total Fitness Holding Corporation (the "Company")

Items 4 and 7 of the Schedule 13D are hereby amended and supplemented as follows:

**ITEM 4.  PURPOSE OF TRANSACTION**

On November 21, 2005, LILP and LILTD submitted a notice (a copy of which is attached to this filing as Exhibit 20, the "Notice") to the Company advising it that LILP and LILTD intend to present a stockholder proposal (the "Proposal") at the annual meeting of the Company's stockholders slated for January 26, 2005. If adopted, the Proposal would (i) amend the Amended and Restated Bylaws of the Company (the "Bylaws") to afford stockholders the right to remove the Chief Executive Officer and President upon the affirmative vote of a majority of the Company's issued and outstanding stock then entitled to vote, (ii) prevent the Board of Directors of the Company from acting unilaterally to amend the Bylaws to eliminate the stockholder authority described in clause (i) of this paragraph and (iii) remove current Chief Executive Officer and President Paul A. Toback from office

As a result of the delivery of the Notice to the Company, LILP and LILTD may engage in discussions with the Company's stockholders, management or Board concerning the matters described above.

**ITEM 7.  MATERIAL TO BE FILED AS EXHIBITS**

The following exhibit is filed with this Amendment:

Exhibit 20.    Notice Letter to the Company, dated November 21, 2005, submitted by LILP and LILTD.

## SIGNATURE

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Dated: November 22, 2005

LIBERATION INVESTMENTS, L.P.

By: Liberation Investment Group LLC, general partner

By: _____ /s/ EMANUEL R. PEARLMAN _____
                Emanuel R. Pearlman
                General Manager

LIBERATION INVESTMENTS LTD.

By: _____ /s/ EMANUEL R. PEARLMAN _____
                Emanuel R. Pearlman
                Director

LIBERATION INVESTMENT GROUP LLC

By: _____ /s/ EMANUEL R. PEARLMAN _____
                Emanuel R. Pearlman
                General Manager

EMANUEL R. PEARLMAN

_____ /s/ EMANUEL R. PEARLMAN _____

EX-20 2 dex20.htm NOTICE LETTER TO THE COMPANY, DATED NOVEMBER 21, 2005

Exhibit 20

**LIBERATION INVESTMENTS, L.P.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

**LIBERATION INVESTMENTS, LTD.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

November 21, 2005

BY FEDERAL EXPRESS AND FACSIMILE
Bally Total Fitness Holding Corporation
8700 West Bryn Mawr
Chicago, IL 60631
Attention: Marc D. Bassewitz, Esq.,
    Senior Vice President, Secretary and General Counsel

BY FEDERAL EXPRESS
Corporate Secretary
Bally Total Fitness Holding Corporation
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

> Re  *Notice of Intention to Present a Stockholder Proposal at the Upcoming Annual Meeting of Bally Total Fitness Holding Corporation*

Dear Secretary:

    This is a notice (the "Notice") of the decision of Liberation Investments, L.P. ("LILP") and Liberation Investments Ltd. ("LILTD", collectively with LILP, the "Liberation Funds", "we" or "our"), which, with Liberation Investment Group LLC ("LIGLLC"), general partner of LILP and discretionary investment adviser to LILTD, and Emanuel R. Pearlman, General Manager and majority member of LIGLLC, collectively beneficially own 4,134,450 shares (the "Shares") of common stock, par value $0.01, of Bally Total Fitness Holding Corporation, a Delaware corporation (the "Company"), to present a stockholder proposal at the upcoming Annual Meeting of stockholders of the Company presently scheduled for January 26, 2006, including any adjournments or postponements thereof or any special meeting that may be called in lieu thereof (the "Annual Meeting"). This Notice is being delivered in accordance with the requirements set forth in Article II, Section 2 (the "Proposal Requirements") of the Amended and Restated Bylaws of the Company (the "Bylaws").

    We have repeatedly urged the Company to bolster stockholder democracy by providing stockholders with a voice in determining the tenure of the Company's senior management team. In addition, we have shared our view that the capital markets have

lost confidence in the performance of current senior management and that it would thus be advantageous to the Company and its stockholders to remove Mr. Paul Toback as Chief Executive Officer and President. We have advocated replacing him with a more seasoned professional manager who engenders such confidence from the capital markets. However, the Company has rebuffed these suggestions at every turn. As a result, we intend to make the proposal described below in order to place these concepts directly before the Company's stockholders for their consideration.

We regret that the intransigence of the Company has prevented it to date from recognizing the value of the suggestions we have advanced and independently implementing them. We firmly believe that the Company is not well served by expending its limited resources to aggressively defend against a proposal that is in its best interests. Accordingly, although we remain firmly committed to our proposal and are prepared to continue with our proxy campaign if necessary, we are also receptive to the possibility of reaching a consensual accommodation which takes seriously our expressed concerns.

NOTICE OF INTENTION TO PRESENT A STOCKHOLDER PROPOSAL.

Pursuant to the Proposal Requirements, this Notice sets forth (a) a brief description of the business desired to be brought before the Annual Meeting and the reasons for conducting such business at the Annual Meeting; (b) any material interest of the Liberation Funds in such business; (c) the name and record address of the Liberation Funds; and (d) the class, series and number of shares of capital stock of the Company which are beneficially owned by the Liberation Funds. In addition, in the interest of completeness, we have included a description of the beneficial interests of LIGLLC and Mr. Pearlman in the Shares (although each of them disclaims membership in a group with Liberation Investments) and disclosed the record address of each of them.

**Proposal:** The Liberation Funds hereby notify the Company that they intend to bring the below described business before the Annual Meeting in the form of a proposal (the "Proposal") to the stockholders to adopt the following resolution:

"**RESOLVED**, that the stockholders of the Company do hereby amend Article IV, Section 1, Article IV, Section 2 and Article VIII, Section 5 of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such sections in their entirety and replacing them as follows (text to be added to the existing text of the Bylaws hereby is underscored herein):

*Article IV, Section 1, is amended and restated to read:*

"The officers of the Corporation shall be chosen by the Board of Directors, provided that the stockholders shall be empowered to remove the Corporation's Chief Executive Officer and President from office by the affirmative vote of the holders of a majority of the Corporation's issued and outstanding stock then entitled to vote. The Corporation's officers shall be a Chief Executive Officer, who shall also be the Corporation's President, a Secretary and a Treasurer. The Board of Directors, in its discretion, may also choose a Chairman of the Board of Directors (who must be a director) and one or more Vice Presidents, Assistant Secretaries, Assistant Treasurers and other officers. Any number of offices may be held by the same person, unless otherwise prohibited by law, the Certificate of Incorporation or these Bylaws. The officers of the Corporation need not be stockholders of the Corporation nor, except in the case of the Chairman of the Board of Directors, need such officers be directors of the Corporation."

*Article IV, Section 2, is amended and restated to read*

"The Board of Directors at its first meeting held after each annual meeting of stockholders shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors <u>or the stockholders, as the case may be</u>. All officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal <u>by the Board of Directors or the stockholders</u>. Any officer elected by the Board of Directors may be removed at any time by the affirmative vote of a majority of the Board of Directors. <u>The Corporation's Chief Executive Officer and President may also be removed by the stockholders as provided in Section 1 of this Article IV, and no person removed as Chief Executive Officer and President shall thereafter be appointed or reappointed by the Board of Directors to serve as an officer of the Corporation.</u> Any vacancy occurring in any office of the Corporation shall be filled by the Board of Directors. The salaries of all officers who are directors of the Corporation shall be fixed by the Board of Directors."

*Article VIII, Section 5, is amended and restated to read:*

"Section 2 of Article III, <u>Section 1 of Article IV, Section 2 of Article IV</u> and this Section 5 of Article VIII of these Bylaws may only be altered, amended, changed or repealed by action of the stockholders of the Corporation."

**FURTHER RESOLVED,** that Paul A. Toback is hereby removed as the Chief Executive Officer and President of the Company, effective immediately."

The Proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides in relevant part that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides stockholders with the authority to amend bylaws.

The Proposal is meant to afford the Company with an improved opportunity to achieve a successful turnaround by removing its current Chief Executive Officer and President Paul A. Toback, in whom we believe the capital markets have lost confidence. In addition, the Proposal is also meant to ensure the vitality of stockholder democracy at the Company by providing the stockholders with the right to remove a future member of senior management if his or her performance falls well short of the mark. While it is expected that this right would only very rarely be exercised by stockholders, its very existence would serve as a powerful incentive to members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders. Finally, the Proposal would also prevent the Board of Directors of the Company from acting unilaterally to amend the Bylaws to eliminate the contemplated authority of stockholders to remove the Chief Executive Officer and President of the Company.

We may be deemed to have an interest in the Proposal insofar as adoption of the Proposal by the stockholders is likely to yield more effective leadership of the Company, which would in turn increase the value of the Shares held by the Liberation Funds.

LILP beneficially owns 2,662,963 Shares and LILTD beneficially owns 1,436,487 Shares. LIGLLC, as the sole general partner of LILP and the sole investment advisor to LILTD, beneficially owns 4,099,450 Shares. Mr. Pearlman owns 35,000 Shares of record and, as the majority member and General Manager of LIGLLC, beneficially owns 4,134,450 Shares. Although LILP, LILTD, LIGLLC and Mr. Pearlman may be regarded as a group, each of them disclaims beneficial ownership of the Shares owned by the others and disclaims membership in a group, and this Notice shall not constitute an acknowledgement that such parties constitute a group.

The business address of LILP, LIGLLC and Mr. Pearlman is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025. The business address of LILTD is P.O. Box 31106 SMB Corporate Centre, West Bay Road, Grand Cayman, Cayman Islands.

**************************************************************

The information included in this Notice represents our best knowledge as to the matters set forth herein as of the date hereof. We reserve the right, in the event such information shall be or become inaccurate, to provide corrective information to the Company as soon as reasonably practicable, although we do not commit to update any information which may change from and after the date hereof.

If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the Proposal, this Notice shall continue to be effective with respect to meeting the advance notice requirements set forth in Article II, Section 2 of the Bylaws.

We reserve the right to give further notice of business to be presented or conducted at the Annual Meeting (including, without limitation, the election of one or more directors to the Board of Directors of the Company) or any other meeting of the Company's stockholders.

Other than as set forth in this Notice, there are no voting arrangements or understandings between the Liberation Funds and any other person or persons in connection with the Proposal.

Please direct any questions regarding the information contained in this Notice to Kenneth J. Baronsky, Esq., Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa Street, 30th Floor, Los Angeles, California, 90017, (213) 892-4000 (Phone), (213) 892-4733 (Facsimile)

IN WITNESS WHEREOF, the undersigned have caused this Notice to be duly executed on the date first above written.

LIBERATION INVESTMENTS, L.P.

By: Liberation Investment Group LLC, general partner

By: _____ /s/ EMANUEL R. PEARLMAN _____
                        Emanuel R. Pearlman
                        General Manager

LIBERATION INVESTMENTS LTD.

By: _____ /s/ EMANUEL R. PEARLMAN _____
                        Emanuel R. Pearlman
                        Director

LIBERATION INVESTMENT GROUP LLC

By: _____ /s/ EMANUEL R. PEARLMAN _____
                        Emanuel R. Pearlman
                        General Manager

EMANUEL R. PEARLMAN

    _____ /s/ EMANUEL R. PEARLMAN _____