# EXHIBIT 21

# SEC EDGAR Filing Information

## Form DFAN14A -- Additional definitive proxy soliciting materials filed by non-management and Rule 14(a)(12) material

Filing Date Changed: **2005-11-29**
Effectiveness Date: **2005-11-29**
Documents: **2**

SEC Accession No.
**0001193125-05-233568**
Filing date: **2005-11-29**
Accepted: **2005-11-29 17:29:43**

### Table of submitted documents:

| Seq | Type | Document | Size | Description |
|---|---|---|---|---|
| 1 | DFAN14A | ddfan14a.htm | 18564 | SOLICITING MATERIAL PURSUANT TO SEC. 240. 14A-12 |
| 2 | EX-1 | dex1.htm | 25527 | NOTICE TO BALLY TOTAL FITNESS HOLDING CORPORATION |
|  |  | 0001193125-05-233568.txt | 45997 | **Complete submission text file** |

## Filer Information

**BALLY TOTAL FITNESS HOLDING CORP** (Subject) (**0000770944**)
IRS No.: **363228107** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **DFAN14A** | Act: **34** | File No.: **001-13997** | Film No.: **051232868**
SIC: **7997** Services-Membership Sports & Recreation Clubs

| Business Address | Mailing Address |
|---|---|
| 8700 WEST BRYN MAWR AVENUE | 8700 WEST BRYN MAWR AVENUE |
| SECOND FLOOR | SECOND FLOOR |
| CHICAGO IL 60631 | CHICAGO IL 60631 |
| 773-380-3000 | |

**LIBERATION INVESTMENT GROUP LLC** (Filed by) (**0001259272**)
IRS No.: **000000000** | State of Incorp.: | Fiscal Year End:
Type: **DFAN14A** | Act: | Film No.:

| Business Address | Mailing Address |
|---|---|
| | 11766 WILSHIRE BLVD., |
| | SUITE 870 |
| | LOS ANGELES CA 90025 |

DFAN14A 1 ddfan14a.htm SOLICITING MATERIAL PURSUANT TO SEC. 240. 14A-12

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# SCHEDULE 14A
### (RULE 14a-101)

### INFORMATION REQUIRED IN PROXY STATEMENT
### SCHEDULE 14A INFORMATION

### PROXY STATEMENT PURSUANT TO SECTION 14(A) OF THE
### SECURITIES EXCHANGE ACT OF 1934
### (AMENDMENT NO. 1 )

Filed by the Registrant ☐                    Filed by a Party other than the Registrant ☒

Check the appropriate Box:

☐   Preliminary Proxy Statement

☐   **Confidential, for Use of the Commission only (as permitted by rule 14a-6(e)(2))**

☐   Definitive Proxy Statement

☐   Definitive Additional Materials

☒   Soliciting Material Pursuant to sec. 240.14a-12

### BALLY TOTAL FITNESS HOLDING CORPORATION
#### (Name of Registrant as Specified in Its Charter)

### LIBERATION INVESTMENTS, L.P.
### LIBERATION INVESTMENTS LTD.
### LIBERATION INVESTMENTS GROUP, LLC
### EMANUEL R. PEARLMAN
#### (Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒   No fee required.

☐   Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

(1)   Title of each class of securities to which the transaction applies:

_____

(2)   Aggregate number of securities to which the transaction applies:

(3) Per unit price or other underlying value of the transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

_____

(4) Proposed maximum aggregate value of the transaction:

_____

(5) Total fee paid:

_____


☐ Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1) Amount Previously Paid:

_____

(2) Form, Schedule or Registration Statement No.:

_____

(3) Filing Party:

_____

(4) Date Filed:

_____

EXPLANATORY NOTE

This Rule 14a-12 soliciting material, which was previously filed with the Securities and Exchange Commission on November 22, 2005, is hereby amended and restated to read as follows:

On November 21, 2005, Liberation Investments, LP ("LILP") and Liberation Investments Ltd. ("LILTD") submitted a notice (a copy of which is attached to this filing as Exhibit 1, the "Notice") to Bally Total Fitness Holding Corporation (the "Company") advising it that LILP and LILTD intend to present a stockholder proposal (the "Proposal") at the annual meeting of the Company's stockholders slated for January 26, 2005 (the "Annual Meeting"). If adopted, the Proposal would (i) amend the Amended and Restated Bylaws of the Company (the "Bylaws") to afford stockholders the right to remove the Chief Executive Officer and President upon the affirmative vote of a majority of the Company's issued and outstanding stock then entitled to vote, (ii) prevent the Board of Directors of the Company from acting unilaterally to amend the Bylaws to eliminate the stockholder authority described in clause (i) of this paragraph and (iii) remove current Chief Executive Officer and President Paul A. Toback from office.

In accordance with Instruction 3 of Item 4 of Schedule 14A, LILP, LILTD, Liberation Investment Group, LLC ("LIGLLC") and Emanuel R. Pearlman will be deemed to be participants in the solicitation in connection with the Proposal. The number of shares of the Company's common stock beneficially owned by these persons as of November 21, 2005 is as follows: LILP (2,662,963), LILTD (1,436,487), LIGLLC (4,099,450), Mr. Pearlman (4,134,450).

SECURITY HOLDERS ARE STRONGLY URGED TO READ THE PROXY STATEMENT AND OTHER DOCUMENTS RELATING TO THE SOLICITATION OF PROXIES BY THE REPORTING PERSONS IN CONNECTION WITH THE PROPOSAL WHEN THEY BECOME AVAILABLE AS THEY WILL CONTAIN IMPORTANT INFORMATION. WHEN COMPLETED, A DEFINITIVE PROXY STATEMENT AND A FORM OF PROXY WILL BE MAILED TO STOCKHOLDERS OF THE ISSUER AND WILL BE AVAILABLE AT NO CHARGE ON THE WEBSITE OF THE SECURITIES AND EXCHANGE COMMISSION AT HTTP://WWW.SEC.GOV.

EX-1 2 dex1.htm NOTICE TO BALLY TOTAL FITNESS HOLDING CORPORATION

Exhibit 1

**LIBERATION INVESTMENTS, L.P.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

**LIBERATION INVESTMENTS, LTD.**
11766 Wilshire Blvd, Suite No. 870
Los Angeles, CA 90025

November 21, 2005

BY FEDERAL EXPRESS AND FACSIMILE
Bally Total Fitness Holding Corporation
8700 West Bryn Mawr
Chicago, IL 60631
Attention: Marc D. Bassewitz, Esq.,
　　　　Senior Vice President, Secretary and General Counsel

BY FEDERAL EXPRESS
Corporate Secretary
Bally Total Fitness Holding Corporation
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

  *Re: Notice of Intention to Present a Stockholder Proposal at the Upcoming Annual Meeting of Bally Total Fitness Holding Corporation*

Dear Secretary:

  This is a notice (the "Notice") of the decision of Liberation Investments, L.P. ("LILP") and Liberation Investments Ltd. ("LILTD", collectively with LILP, the "Liberation Funds", "we" or "our"), which, with Liberation Investment Group LLC ("LIGLLC"), general partner of LILP and discretionary investment adviser to LILTD, and Emanuel R. Pearlman, General Manager and majority member of LIGLLC, collectively beneficially own 4,134,450 shares (the "Shares") of common stock, par value $0.01, of Bally Total Fitness Holding Corporation, a Delaware corporation (the "Company"), to present a stockholder proposal at the upcoming Annual Meeting of stockholders of the Company presently scheduled for January 26, 2006, including any adjournments or postponements thereof or any special meeting that may be called in lieu thereof (the "Annual Meeting"). This Notice is being delivered in accordance with the requirements set forth in Article II, Section 2 (the "Proposal Requirements") of the Amended and Restated Bylaws of the Company (the "Bylaws").

  We have repeatedly urged the Company to bolster stockholder democracy by providing stockholders with a voice in determining the tenure of the Company's senior management team. In addition, we have shared our view that the capital markets have

lost confidence in the performance of current senior management and that it would thus be advantageous to the Company and its stockholders to remove Mr. Paul Toback as Chief Executive Officer and President. We have advocated replacing him with a more seasoned professional manager who engenders such confidence from the capital markets. However, the Company has rebuffed these suggestions at every turn. As a result, we intend to make the proposal described below in order to place these concepts directly before the Company's stockholders for their consideration.

We regret that the intransigence of the Company has prevented it to date from recognizing the value of the suggestions we have advanced and independently implementing them. We firmly believe that the Company is not well served by expending its limited resources to aggressively defend against a proposal that is in its best interests. Accordingly, although we remain firmly committed to our proposal and are prepared to continue with our proxy campaign if necessary, we are also receptive to the possibility of reaching a consensual accommodation which takes seriously our expressed concerns.

NOTICE OF INTENTION TO PRESENT A STOCKHOLDER PROPOSAL

Pursuant to the Proposal Requirements, this Notice sets forth (a) a brief description of the business desired to be brought before the Annual Meeting and the reasons for conducting such business at the Annual Meeting; (b) any material interest of the Liberation Funds in such business; (c) the name and record address of the Liberation Funds; and (d) the class, series and number of shares of capital stock of the Company which are beneficially owned by the Liberation Funds. In addition, in the interest of completeness, we have included a description of the beneficial interests of LIGLLC and Mr. Pearlman in the Shares (although each of them disclaims membership in a group with Liberation Investments) and disclosed the record address of each of them.

**Proposal:** The Liberation Funds hereby notify the Company that they intend to bring the below described business before the Annual Meeting in the form of a proposal (the 'Proposal") to the stockholders to adopt the following resolution:

"**RESOLVED**, that the stockholders of the Company do hereby amend Article IV, Section 1, Article IV, Section 2 and Article VIII, Section 5 of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such sections in their entirety and replacing them as follows (text to be added to the existing text of the Bylaws hereby is underscored herein):

*Article IV, Section 1, is amended and restated to read:*

"The officers of the Corporation shall be chosen by the Board of Directors, provided that the stockholders shall be empowered to remove the Corporation's Chief Executive Officer and President from office by the affirmative vote of the holders of a majority of the Corporation's issued and outstanding stock then entitled to vote. The Corporation's officers shall be a Chief Executive Officer, who shall also be the Corporation's President, a Secretary and a Treasurer. The Board of Directors, in its discretion, may also choose a Chairman of the Board of Directors (who must be a director) and one or more Vice Presidents, Assistant Secretaries, Assistant Treasurers and other officers. Any number of offices may be held by the same person, unless otherwise prohibited by law, the Certificate of Incorporation or these Bylaws. The officers of the Corporation need not be stockholders of the Corporation nor, except in the case of the Chairman of the Board of Directors, need such officers be directors of the Corporation."

*Article IV, Section 2, is amended and restated to read:*

"The Board of Directors at its first meeting held after each annual meeting of stockholders shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors or the stockholders, as the case may be. All officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal by the Board of Directors or the stockholders. Any officer elected by the Board of Directors may be removed at any time by the affirmative vote of a majority of the Board of Directors. The Corporation's Chief Executive Officer and President may also be removed by the stockholders as provided in Section 1 of this Article IV, and no person removed as Chief Executive Officer and President shall thereafter be appointed or reappointed by the Board of Directors to serve as an officer of the Corporation. Any vacancy occurring in any office of the Corporation shall be filled by the Board of Directors. The salaries of all officers who are directors of the Corporation shall be fixed by the Board of Directors."

*Article VIII, Section 5, is amended and restated to read:*

"Section 2 of Article III, Section 1 of Article IV, Section 2 of Article IV and this Section 5 of Article VIII of these Bylaws may only be altered, amended, changed or repealed by action of the stockholders of the Corporation."

**FURTHER RESOLVED,** that Paul A. Toback is hereby removed as the Chief Executive Officer and President of the Company, effective immediately."

The Proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides in relevant part that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides stockholders with the authority to amend bylaws.

The Proposal is meant to afford the Company with an improved opportunity to achieve a successful turnaround by removing its current Chief Executive Officer and President Paul A. Toback, in whom we believe the capital markets have lost confidence. In addition, the Proposal is also meant to ensure the vitality of stockholder democracy at the Company by providing the stockholders with the right to remove a future member of senior management if his or her performance falls well short of the mark. While it is expected that this right would only very rarely be exercised by stockholders, its very existence would serve as a powerful incentive to members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders. Finally, the Proposal would also prevent the Board of Directors of the Company from acting unilaterally to amend the Bylaws to eliminate the contemplated authority of stockholders to remove the Chief Executive Officer and President of the Company.

We may be deemed to have an interest in the Proposal insofar as adoption of the Proposal by the stockholders is likely to yield more effective leadership of the Company, which would in turn increase the value of the Shares held by the Liberation Funds.

LILP beneficially owns 2,662,963 Shares and LILTD beneficially owns 1,436,487 Shares. LIGLLC, as the sole general partner of LILP and the sole investment advisor to LILTD, beneficially owns 4,099,450 Shares. Mr. Pearlman owns 35,000 Shares of record and, as the majority member and General Manager of LIGLLC, beneficially owns 4,134,450 Shares. Although LILP, LILTD, LIGLLC and Mr. Pearlman may be regarded as a group, each of them disclaims beneficial ownership of the Shares owned by the others and disclaims membership in a group, and this Notice shall not constitute an acknowledgement that such parties constitute a group.

The business address of LILP, LIGLLC and Mr. Pearlman is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025. The business address of LILTD is P.O. Box 31106 SMB Corporate Centre, West Bay Road, Grand Cayman, Cayman Islands.

**************************************************************

The information included in this Notice represents our best knowledge as to the matters set forth herein as of the date hereof. We reserve the right, in the event such information shall be or become inaccurate, to provide corrective information to the Company as soon as reasonably practicable, although we do not commit to update any information which may change from and after the date hereof.

If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the Proposal, this Notice shall continue to be effective with respect to meeting the advance notice requirements set forth in Article II, Section 2 of the Bylaws.

We reserve the right to give further notice of business to be presented or conducted at the Annual Meeting (including, without limitation, the election of one or more directors to the Board of Directors of the Company) or any other meeting of the Company's stockholders.

Other than as set forth in this Notice, there are no voting arrangements or understandings between the Liberation Funds and any other person or persons in connection with the Proposal.

Please direct any questions regarding the information contained in this Notice to Kenneth J. Baronsky, Esq., Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa Street, 30th Floor, Los Angeles, California, 90017, (213) 892-4000 (Phone), (213) 892-4733 (Facsimile).

IN WITNESS WHEREOF, the undersigned have caused this Notice to be duly executed on the date first above written.

LIBERATION INVESTMENTS, L.P.

By: Liberation Investment Group LLC, general partner

By: _____ /s/ EMANUEL R. PEARLMAN _____
                    Emanuel R. Pearlman
                    General Manager

LIBERATION INVESTMENTS, LTD.

By: _____ /s/ EMANUEL R. PEARLMAN _____
                    Emanuel R. Pearlman
                    Director

LIBERATION INVESTMENT GROUP LLC

By: _____ /s/ EMANUEL R. PEARLMAN _____
                    Emanuel R. Pearlman
                    General Manager

EMANUEL R. PEARLMAN

_____ /s/ EMANUEL R. PEARLMAN _____

# EXHIBIT 22

# SEC EDGAR Filing Information

## Form 8-K -- Current report

Period of Report: **2005-02-08**
Filing Date Changed: **2005-02-09**
Documents: **4**

SEC Accession No.
**0000770944-05-000001**
Filing date: **2005-02-09**
Accepted: **2005-02-09 16:49:30**

**Item 5.02:** Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers
**Item 8.01:** Other Events
**Item 9.01:** Financial Statements and Exhibits

## Table of submitted documents:

| Seq | Type | Document | Size | Description |
|---|---|---|---|---|
| 1 | 8-K | form8k-020905.htm | 11978 | 02/09/2005 FORM 8-K |
| 2 | EX-99.1 | ex99_1-020905.htm | 13925 | EXHIBIT 99.1 - 02/09/2005 FORM 8-K |
| 3 | EX-99.2 | ex99_2-020905.htm | 6271 | EXHIBIT 99.2 - 02/09/2005 FORM 8-K |
| 4 | GRAPHIC | bally-logo_small.jpg | 5065 | BALLY LOGO - 2005 |
| | | 0000770944-05-000001.txt | 39550 | **Complete submission text file** |

## Filer Information

**BALLY TOTAL FITNESS HOLDING CORP** (Filer) (**0000770944**)
IRS No.: **363228107** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **8-K** | Act: **34** | File No.: **001-13997** | Film No.: **05589349**
SIC: **7997** Services-Membership Sports & Recreation Clubs

**Business Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631
773-380-3000

**Mailing Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631

8-K 1 form8k-020905.htm 02/09/2005 FORM 8-K

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 8-K

## CURRENT REPORT
### Pursuant to Section 13 OR 15(d) of
### The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported)     **February 8, 2005**

## BALLY TOTAL FITNESS HOLDING CORPORATION

(Exact name of registrant as specified in its charter)

| Delaware | 0-27478 | 36-3228107 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 8700 West Bryn Mawr Avenue, Chicago, Illinois | 60631 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code     **(773) 380-3000**

**N/A**

(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

BALLY TOTAL FITNESS HOLDING CORPORATION
FORM 8-K
Current Report

**Item 5.02   Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers**

On February 8, 2005, Ted Noncek was terminated as Vice President and Controller of Bally Total Fitness Holding Corporation (the "Company").

**Item 8.01   Other Events**

On February 8, 2005, the Company announced that the Audit Committee of its Board of Directors had completed its previously announced investigation into various accounting issues. The Company's press release with respect to such matters is attached hereto as Exhibit 99.1.

As described in the press release, as a result of the investigation and the Company's efforts to comply with Section 404 of the Sarbanes-Oxley Act of 2002, the Company has identified deficiencies in its internal controls over financial reporting. A number of these deficiencies, either individually or in the aggregate, constitute material weaknesses in its internal controls over financial reporting.

These material weaknesses include deficiencies in the Company's finance and accounting internal control environment, specifically a lack of acceptable and clearly communicated policies reflecting management's attitudes towards financial reporting and the financial reporting function, the lack of a permanent Chief Financial Officer, ineffective delegation of authority and responsibility, insufficient instruction to employees responsible for significant estimates emphasizing the need to report using accurate and reasonable assumptions and judgments, and insufficiently experienced and trained staff. In addition, these material weaknesses include deficiencies in the controls surrounding the selection and application of accounting principles, specifically ineffective policies requiring contemporaneous documentation of factual support for key judgments applied within its financial reporting process and the retention of that documentation in accordance with a formal document retention policy.

Management, with the oversight of the Audit Committee, has been addressing all of these issues and is committed to effectively remediating known material weaknesses as expeditiously as possible. Due to the nature of and the time necessary to effectively remediate each of the material weaknesses identified to date, the Company expects to conclude that some of these material weaknesses will not have been effectively remediated by December 31, 2004. As a result, the Company believes that its independent auditor, KPMG LLP, will not be able to issue an unqualified opinion on the effectiveness of the Company's internal controls in the Company's 2004 Annual Report on Form 10-K.

In a separate press release, the Company announced that David S. Reynolds has replaced Mr. Noncek as its Controller, effective immediately. The press release is attached hereto as Exhibit 99.2.

**Item 9.01    Financial Statements and Exhibits.**

    c    Exhibits

        99.1    Press release dated February 8, 2005 announcing the completion of the Audit Committee investigation into various accounting issues.

        99.2    Press release dated February 8, 2005 announcing the appointment of David S. Reynolds as Controller.

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned hereunto duly authorized.

BALLY TOTAL FITNESS HOLDING CORPORATION

Registrant

Dated: February 9, 2005

/s/ Marc D. Bassewitz

Marc D. Bassewitz
Senior Vice President, Secretary and General Counsel

EX-99.1 2 ex99_1-020905.htm EXHIBIT 99.1 - 02/09/2005 FORM 8-K

**EXHIBIT 99.1**



**BALLY TOTAL FITNESS**
8700 West Bryn Mawr Avenue
Chicago, IL 60631
www.BallyFitness.com
Jon Harris - Tel. (773) 864-6850

**MWW GROUP**
Carreen Winters
Tel. (201) 507-9500
cwinters@mww.com

**FOR IMMEDIATE RELEASE**

### Bally Total Fitness Announces the Conclusion of Previously Disclosed Audit Committee Investigation

### Company Moves Quickly to Address Report Findings

- **As previously disclosed, investigation finds multiple accounting errors.**
- **Report finds two former and two current finance executives engaged in improper conduct.**
- **Company terminates its Controller and its Treasurer for improper conduct.**
- **Bally ceases severance payments to Lee Hillman, former CEO and current President of Liberation Investment Advisory Group, LLC, and former CFO John Dwyer. Investigation finds both responsible for multiple accounting errors and for creating a culture of aggressive accounting.**
- **Company discloses material weaknesses in internal controls over financial reporting.**

**CHICAGO, IL – February 8, 2005** – Bally Total Fitness (NYSE: BFT) announced that the Audit Committee of its Board of Directors has completed its previously announced investigation into various accounting issues. The extensive, five-month investigation was led by former Securities and Exchange Commission attorney Herbert F. Janick III of Bingham McCutchen LLP, with forensic audit work conducted by PricewaterhouseCoopers LLP. In addition to the accounting matters previously disclosed from the November 2004 interim report, this report includes the final conclusions on two other accounting issues, as well as an assessment of responsibility. The Company has reported the investigation results to the SEC and continues to fully cooperate in the ongoing SEC investigation.

## Accounting Findings

Bally Total Fitness previously announced in November 2004 its decision to restate financial statements from January 1, 2000 through the first quarter of 2004, primarily as a result of errors in its revenue recognition methods as identified in the interim report of the Audit Committee investigation. At that time, Bally also announced that the Company's financial statements and other communications related to the same periods should not be relied upon.

The recently completed investigation also found errors in the Company's rationale for and implementation of its deferral of membership acquisition costs under Bally's prior accounting method. The investigation also concluded that the Company took aggressively optimistic positions on several matters related to the analysis of the adequacy of the allowance for doubtful accounts, which were without a reasonable empirical basis. Given the manner in which the Company intends to restate its consolidated financial statements, correction of these errors will not affect the planned presentation of the restated financial statements.

Currently, the Company is focused on completing the restatement of its financial statements for the years ended December 31, 2002 and 2003, completing its 2004 financial statements, and fully supporting its current auditor, KPMG LLP, in the audit of those statements. The Company anticipates filing these financial statements by July 31, 2005. These financial statements may require additional adjustments to the Company's previously issued financial statements.

## Responsibility for Accounting Errors

The Audit Committee's review found multiple accounting errors in the Company's financial statements and concluded that the Company's former Chairman and Chief Executive Officer Lee Hillman (held position from 1996 to 2002) and former Chief Financial Officer John Dwyer (held position from 1996 to 2004) were responsible for multiple accounting errors and creating a culture within the accounting and finance groups that encouraged aggressive accounting.

The investigation found, among other things, that certain accounting policies and positions were suggested and implemented without a reasonable empirical basis and concluded that Mr. Dwyer made a false and misleading statement to the SEC. As a result of the findings, the Company has decided to make no further payments to Messrs. Hillman and Dwyer under their severance arrangements and will evaluate its legal options with respect to these former executives.

Both Messrs. Hillman and Dwyer are certified public accountants, previously employed by the Company's longtime and now former auditors, Ernst & Young LLP, and were partners on the engagement teams that audited Bally's former parent company for several years prior to joining the Company. Mr. Hillman presently serves as President of Liberation Investment Advisory Group, LLC, as well as a member of the Board of Directors for RCN Corporation, Lawson Products Inc., Wyndham Hotels and Resorts, and HealthSouth Corporation where he serves as chairman of the Company's audit committee.

The investigation also found improper conduct on the part of the Company's Vice President and Controller Ted Noncek (from 2001 to 2005) and Vice President and Treasurer Geoff Scheitlin (former Controller from 1997 to 2001). As a result, both have been terminated. Mr. Noncek has been offered the opportunity to consult with the Company on a short-term basis in order to facilitate timely completion of the ongoing audits.

**Former Auditors**

Although the scope of the investigation did not specifically examine former auditors Ernst & Young, Bally believes that the firm made several errors in the course of their work. The Company is currently evaluating its legal options with respect to Ernst & Young.

**Internal Control Over Financial Reporting**

Separately, as a result of the investigation and Bally's efforts to comply with Section 404 of the Sarbanes-Oxley Act of 2002, the Company has identified deficiencies in its internal controls over financial reporting. A number of these deficiencies, either individually or in the aggregate, constitute material weaknesses in its internal controls over financial reporting.

These material weaknesses include deficiencies in the Company's finance and accounting internal control environment, specifically a lack of acceptable and clearly communicated policies reflecting management's attitudes towards financial reporting and the financial reporting function, the lack of a permanent Chief Financial Officer, ineffective delegation of authority and responsibility, insufficient instruction to employees responsible for significant estimates emphasizing the need to report using accurate and reasonable assumptions and judgments, and insufficiently experienced and trained staff. In addition, these material weaknesses include deficiencies in the controls surrounding the selection and application of accounting principles, specifically ineffective policies requiring contemporaneous documentation of factual support for key judgments applied within its financial reporting process and the retention of that documentation in accordance with a formal document retention policy.

Management, with the oversight of the Audit Committee, has been addressing all of these issues and is committed to effectively remediating known material weaknesses as expeditiously as possible. Due to the nature of and the time necessary to effectively remediate each of the material weaknesses identified to date, the Company expects to conclude that some of these material weaknesses will not have been effectively remediated by December 31, 2004. As a result, the Company believes that KPMG will not be able to issue an unqualified opinion on the effectiveness of the Company's internal controls in the Company's 2004 Annual Report on Form 10-K.

The Bally Board of Directors commended the members of the Audit Committee and their legal and forensic accounting experts, thanking them for tirelessly dedicating their time and efforts to a fair and honest review of these matters.

Bally Chairman and CEO Paul Toback commented, "The completion of the Audit Committee investigation is another important step toward putting our past accounting and financial issues behind us. We are sending a clear message that the culture that allowed this type of aggressive accounting will not be tolerated. While we recognize that we still have much work ahead in order to restore investor confidence, our team is committed to earning that trust through the timely and accurate reporting of our financial results, improvements in financial and operational performance and a commitment to strong corporate governance."

## About Bally Total Fitness

Bally Total Fitness is the largest and only nationwide commercial operator of fitness centers, with approximately four million members and 440 facilities located in 29 states, Mexico, Canada, Korea, China and the Caribbean under the Bally Total Fitness(R), Crunch Fitness(SM), Gorilla Sports(SM), Pinnacle Fitness(R), Bally Sports Clubs(R) and Sports Clubs of Canada (R) brands. With an estimated 150 million annual visits to its clubs, Bally is dedicated to improving the lives of active, fitness-conscious consumers and being the leader in providing health and fitness services and products.

*Forward-looking statements in this release including, without limitation, statements relating to the Company's plans, strategies, objectives, expectations, intentions, and adequacy of resources, are made pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. These forward-looking statements involve known and unknown risks, uncertainties, and other factors that may cause the actual results, performance or achievements of the Company to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements. These factors include, among others, the following: the outcome of the SEC investigation and any further or future internal investigation, conducted by the Company; actions taken in response to the Audit Committee report; the review and restatement of its previously announced or filed financial results; the audit of the restated financial statements, the identification of one or more additional issues that require restatement of one or more prior period financial statements; the impact of the existence of material weaknesses in internal controls over financial reporting, the general economic and business conditions, competition; success of operating initiatives, advertising and promotional efforts, existence of adverse publicity or the impact of existing or future litigation or governmental proceedings; acceptance of new product and service offerings; changes in business strategy or plans, quality of management, availability, terms, and development of capital; business abilities and judgment of personnel, changes in, or the failure to comply with, government regulations, regional weather conditions and other factors described in prior filings of the Company with the Securities and Exchange Commission.*

EX-99.2 3 ex99_2-020905.htm EXHIBIT 99.2 - 02/09/2005 FORM 8-K

**EXHIBIT 99.2**



**BALLY TOTAL FITNESS**
8700 West Bryn Mawr Avenue
Chicago, IL 60631
www.BallyFitness.com
Jon Harris - Tel. (773) 864-6850

**MWW GROUP**
Carreen Winters
Tel. (201) 507-9500
cwinters@mww.com

**FOR IMMEDIATE RELEASE**

## BALLY TOTAL FITNESS APPOINTS FINANCE VETERAN
## DAVID S. REYNOLDS AS CONTROLLER

**CHICAGO, February 8, 2005** – Bally Total Fitness (NYSE: BFT) announced today that it has named David Reynolds its new Controller.  Over a career that has spanned two decades, Mr. Reynolds has served in a variety of senior positions in the areas of accounting and finance systems, as well as treasury and investor relations. Most recently, he was the Senior Vice President and Controller of Comdisco, Inc.

At Bally, Mr. Reynolds will oversee the processing and reporting of all financial transactions for the Company.  He will also be responsible for maintaining effective internal controls over financial reporting and the efficient and effective operation of Bally's accounts payable, payroll and revenue accounting, as well as implementation of Sarbanes-Oxley Section 404.

"A key component to Bally's turnaround plan is attracting top talent with targeted areas of expertise at all levels of the organization. Bringing on David Reynolds is an important step in this initiative," said Paul Toback, Chairman and CEO, Bally Total Fitness. "His proven track record in financial controls, continual process improvements and broad-based accounting expertise will be an important asset as we work to complete our financial statements while ensuring consistent application of new quality controls and policies."

"I'm excited to be joining the senior team at such a significant time, and look forward to further strengthening the financial foundation for the future of the Company," said Reynolds.

Reynolds holds a M.B.A. from Lehigh University in Accounting and Finance and holds accreditations as a Certified Public Accountant and Certified Cash Manager.

Mr. Reynolds is the most recent executive to join Bally Total Fitness as part of the Company's "Best In Class" initiative, a program launched in 2003 designed to recruit and retain top talent to the organization. Mr. Reynolds joins recent executive additions Senior Vice President and General Counsel Marc Bassewitz, Vice President of Diet and Nutrition Barbara Barry and Vice President of Franchising Ben Amante.

**About Bally Total Fitness**

Bally Total Fitness is the largest and only nationwide commercial operator of fitness centers, with approximately four million members and nearly 440 facilities located in 29 states, Mexico, Canada, Korea, China and the Caribbean under the Bally Total Fitness(R), Crunch Fitness(SM), Gorilla Sports(SM), Pinnacle Fitness(R), Bally Sports Clubs(R) and Sports Clubs of Canada(R) brands. With an estimated 150 million annual visits to its clubs, Bally is dedicated to improving the lives of active, fitness-conscious consumers and being the leader in providing health and fitness services and products.

*Forward-looking statements in this release including, without limitation, statements relating to the Company's plans, strategies, objectives, expectations, intentions, and adequacy of resources, are made pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. These forward-looking statements involve known and unknown risks, uncertainties, and other factors that may cause the actual results, performance or achievements of the Company to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements. These factors include, among others, the following: the outcome of the SEC investigation and any further or future internal investigation, conducted by the Company, actions taken in response to the Audit Committee report, the review and restatement of its previously announced or filed financial results, the audit of the restated financial statements, the identification of one or more additional issues that require restatement of one or more prior period financial statements, the impact of the existence of material weaknesses in internal controls over financial reporting, the general economic and business conditions, competition, success of operating initiatives, advertising and promotional efforts, existence of adverse publicity or the impact of existing or future litigation or governmental proceedings; acceptance of new product and service offerings, changes in business strategy or plans, quality of management, availability, terms, and development of capital; business abilities and judgment of personnel; changes in, or the failure to comply with, government regulations, regional weather conditions and other factors described in prior filings of the Company with the Securities and Exchange Commission.*

# EXHIBIT 23

*State of Delaware*                              PAGE 1

*Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE RESTATED CERTIFICATE OF "BALLY'S HEALTH & TENNIS
CORPORATION", CHANGING ITS NAME FROM "BALLY'S HEALTH & TENNIS
CORPORATION" TO "BALLY TOTAL FITNESS HOLDING CORPORATION", FILED
IN THIS OFFICE ON THE NINETEENTH DAY OF DECEMBER, A.D. 1995, AT
12:30 O'CLOCK P.M.

A CERTIFIED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO
THE NEW CASTLE COUNTY RECORDER OF DEEDS FOR RECORDING.



*Edward J. Freel, Secretary of State*

2005720  8100

950299799

AUTHENTICATION:      7758500

DATE:

12-19-95

BFT 000273

## RESTATED CERTIFICATE OF INCORPORATION

## OF

## BALLY'S HEALTH & TENNIS CORPORATION

Bally's Health & Tennis Corporation, a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

1.    The name of the Corporation is Bally's Health & Tennis Corporation.

2.    The date of filing its original Certificate of Incorporation with the Secretary of State was March 29, 1983 under the name Bally Health & Tennis Corporation.

3.    This Restated Certificate of Incorporation amends and restates the Corporation's Certificate of Incorporation, as amended to date, in its entirety and is intended to supersede the Corporation's prior Certificate of Incorporation, as amended, in all respects.

4.    This Restated Certificate of Incorporation was duly adopted in accordance with the applicable provisions of Sections 242 and 245 of the General Corporation Law of the State of Delaware.

5.    The text of the Corporation's Restated Certificate of Incorporation, as previously amended, is hereby amended and restated to read as set forth on Exhibit A attached hereto and made a part hereof.

6.    That in lieu of a meeting and vote of the sole stockholder, the stockholder has given written consent to said amendment in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

7.    That the aforesaid amendment was duly adopted in accordance with applicable provisions of Sections 228 and 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, said Bally's Health & Tennis Corporation has caused this Certificate to be signed by Cary A. Gaan, its Senior Vice President, this 18th day of December, 1995.

BALLY'S HEALTH & TENNIS CORPORATION

By: _____

Cary A. Gaan, Senior Vice President

December 18, 1995 - 3:29pm - DEW
CLE1 - 191937.1A - 02519\487

BFT 000274

EXHIBIT A

RESTATED
CERTIFICATE OF INCORPORATION
OF
BALLY TOTAL FITNESS HOLDING CORPORATION

FIRST:  The name of the Corporation is BALLY TOTAL FITNESS HOLDING CORPORATION.

SECOND:  The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle.  The name of its registered agent at that address is The Corporation Trust Company.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware (the "GCL").

FOURTH:  A.  The total number of shares of stock which the Corporation shall have authority to issue is 70,200,000 (the "Capital Stock") consisting of 60,200,000 shares of Common Stock, par value $.01 per share (the "Common Stock"), and 10,000,000 shares of Preferred Stock, par value of $.10 per share (the "Preferred Stock").

B.    Shares of Preferred Stock may be issued from time to time in one or more series, as provided for herein or as provided for by the Board of Directors as permitted hereby.  All shares of Preferred Stock shall be of equal rank and shall be identical, except in respect of the terms fixed herein for the series provided for herein or fixed by the Board of Directors for series provided for by the Board of Directors as permitted hereby.  All shares of any one series shall be identical in all respects with all the other shares of such series, except the shares of any one series issued at different times may differ as to the dates from which dividends thereon may be cumulative.

The Board of Directors is hereby authorized, by resolution or resolutions, to establish, out of the unissued shares of Preferred Stock not then allocated to any series of Preferred Stock, additional series of Preferred Stock.  Before any shares of any such additional series are issued, the Board of Directors shall fix and determine, and is hereby expressly empowered to fix and determine, by resolution or resolutions, the distinguishing characteristics and the relative rights, preferences, privileges and immunities of the shares thereof, so far as not inconsistent with the provisions of this Article FOURTH.  Without limiting the generality of the foregoing, the Board of Directors may fix and determine:

1.    The designation of such series, the number of shares which shall constitute such series and the par value, if any, of such shares;

2.    The rate of dividend, if any, payable on shares of such series;

1

BFT 000275

3. Whether the shares of such series shall be cumulative, non-cumulative or partially cumulative as to dividends, and the dates from which any cumulative dividends are to accumulate;

4. Whether the shares of such series may be redeemed, and, if so, the price or prices at which and the terms and conditions on which shares of such series may be redeemed;

5. The amount payable upon shares of such series in the event of the voluntary or involuntary dissolution, liquidation or winding up of the affairs of the Corporation;

6. The sinking fund provisions, if any, for the redemption of shares of such series;

7. The voting rights, if any, of the shares of such series;

8. The terms and conditions, if any, on which shares of such series may be converted into shares of capital stock of the Corporation of any other class or series;

9. Whether the shares of such series are to be preferred over shares of capital stock of the Corporation of any other class or series as to dividends, or upon the voluntary or involuntary dissolution, liquidation, or winding up of the affairs of the Corporation, or otherwise; and

10. Any other characteristics, preferences, limitations, rights, privileges, immunities or terms not inconsistent with the provisions of this Article FOURTH.

C. Except as otherwise provided in this Certificate of Incorporation, each holder of Common Stock shall be entitled to one vote for each share of Common Stock held by him on all matters submitted to stockholders for a vote and each holder of Preferred Stock of any series that is Voting Stock (as hereinafter defined) shall be entitled to such number of votes for each share held by him as may be specified in the resolutions providing for the issuance of such series.

Except as otherwise provided by law, the presence, in person or by proxy, of the holders of record of shares of Capital Stock entitling the holders thereof to cast a majority of the votes entitled to be cast by the holders of shares of Capital Stock entitled to vote shall constitute a quorum at all meetings of the stockholders.

FIFTH: A. The Board of Directors shall have the power to make, adopt, alter, amend, change or repeal the Bylaws of the Corporation by resolution adopted by the affirmative vote of a majority of the entire Board of Directors.

2

BFT 000276

B.    Stockholders may not make, adopt, alter, amend, change or repeal the Bylaws of the Corporation except upon the affirmative vote of at least 75% of the votes entitled to be cast by the holders of all outstanding shares then entitled to vote generally in the election of directors (hereinafter referred to as the "Voting Stock"), voting together as a single class.

SIXTH:  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which shall consist of not less than three or more than seventeen directors, the exact number of directors to be determined from time to time by resolution adopted by affirmative vote of a majority of the entire Board of Directors. The Board of Directors shall be divided into three classes, designated Class I, Class II and Class III. Each class shall consist, as nearly as may be possible, of one-third of the total number of directors constituting the entire Board of Directors, initially with Class I directors being elected for a one-year term, Class II directors for a two-year term and Class III directors for a three-year term.  At each succeeding annual meeting of stockholders, beginning in 1997, successors to the class of directors whose term expires at that annual meeting shall be elected for a three-year term.  If the number of directors is changed, any increase or decrease shall be apportioned among the classes so as to maintain the number of directors in each class as nearly equal as possible, and any additional director of any class elected to fill a vacancy resulting from an increase in such class shall hold office for a term that shall coincide with the remaining term of that class, but in no case will a decrease in the number of directors shorten the term of any incumbent director.  A director shall hold office until the annual meeting for the year in which his term expires and until his successor shall be elected and shall qualify, subject, however, to prior death, resignation, retirement, disqualification or removal from office.  Any vacancy on the Board of Directors that results from an increase in the number of directors may be filled by a majority of the Board of Directors then in office, provided that a quorum is present, and any other vacancy occurring in the Board of Directors may be filled by a majority of the directors then in office, even if less than a quorum, or by a sole remaining director.  Any director elected to fill a vacancy not resulting from an increase in the number of directors shall have the same remaining term as that of his predecessor.  Subject to the rights of the holders of any class or series of the Voting Stock then outstanding, any director, or the entire Board of Directors, may be removed from office at any time, but only for cause and only by the affirmative vote of the holders of at least 75% of the voting power of all of the then-outstanding shares of the Voting Stock, voting together as a single class.

Notwithstanding the foregoing, whenever the holders of any one or more classes or series of Preferred Stock issued by the Corporation shall have the right, voting separately by class or series, to elect directors at an annual or special meeting of stockholders, the election, term of office, filling of vacancies and other features of such directorships shall be governed by the terms of this Certificate of Incorporation applicable thereto (including the resolutions of the Board of Directors pursuant to Article FOURTH), and such Directors so elected shall not be divided into classes pursuant to this Article SIXTH unless expressly provided by such terms.

SEVENTH:  Special meetings of the stockholders of the Corporation, for any purpose or purposes, may only be called at any time by a majority of the entire Board of Directors or by either the Chairman or the President of the Corporation.

BFT 000277

EIGHTH: No stockholder action may be taken except at an annual or special meeting of stockholders of the Corporation and stockholders may not take any action by written consent in lieu of a meeting.

NINTH: A. In addition to any affirmative vote required by law or this Certificate of Incorporation (including any resolutions of the Board of Directors pursuant to Article FOURTH hereof) or the Bylaws of the Corporation, and except as otherwise expressly provided in Section B of this Article NINTH, a Business Combination (as hereinafter defined) with, or proposed by or on behalf of, any Interested Stockholder (as hereinafter defined) or any Affiliate or Associate (as hereinafter defined) of any Interested Stockholder or any person who thereafter would be an Affiliate or Associate of such Interested Stockholder shall require the affirmative vote of (i) not less than 75% of the votes entitled to be cast by the holders of all the then outstanding shares of Voting Stock, voting together as a single class and (ii) not less than a majority of the votes entitled to be cast by holders of all the then outstanding Voting Stock, voting together as a single class, excluding Voting Stock beneficially owned by such Interested Stockholder. Such affirmative vote shall be required notwithstanding the fact that no vote may be required, or that a lesser percentage or separate class vote may be specified, by law or in any agreement with any national securities exchange or otherwise.

B.    The provisions of Section A of this Article NINTH shall not be applicable to any particular Business Combination, and such Business Combination shall require only such affirmative vote, if any, as is required by law or by any other provision of this Certificate of Incorporation (including any resolutions of the Board of Directors pursuant to Article FOURTH hereof) or the Bylaws of the Corporation, or any agreement with any national securities exchange, if all the conditions specified in either of the following Paragraphs 1 or 2 are met or, in the case of Business Combination not involving the payment of consideration to the holders of the Corporation's outstanding Capital Stock (as hereinafter defined), if the condition specified in the following Paragraph 1 is met:

1.    The Business Combinations shall have been approved, either specifically or as a transaction which is in an approved category of transactions, by a majority (whether such approval is made prior to or subsequent to the acquisition of, or announcement or public disclosure of the intention to acquire, beneficial ownership of the Voting Stock that caused the Interested Stockholder to become an Interested Stockholder) of the Continuing Directors (as hereinafter defined).

2.    All of the following conditions shall have been met:

a.    The aggregate amount of cash and the Fair Market Value (as hereinafter defined), as of the date of the consummation of the Business Combination, of consideration other than cash to be received per share by holders of Common Stock in such Business Combination shall be at least equal to the highest amount determined under clauses (i) and (ii) below:

4

BFT 000278

    (i)  (if applicable) the highest per share price (including any brokerage commissions, transfer taxes and soliciting dealers' fees) paid by or on behalf of the Interested Stockholder for any share of Common Stock in connection with the acquisition by the Interested Stockholder of beneficial ownership of shares of Common Stock (x) within the two-year period immediately prior to the first public announcement of the proposed Business Combination (the "Announcement Date") or (y) in the transaction in which it became an Interested Stockholder, whichever is higher, in either case as adjusted for any subsequent stock split, stock dividend, subdivision or reclassification with respect to Common Stock; and

    (ii)  the Fair Market Value per share of Common Stock on the Announcement Date or on the date on which the Interested Stockholder became an Interested Stockholder (the "Determination Date"), whichever is higher, as adjusted for any subsequent stock split, stock dividend, subdivision or reclassification with respect to Common Stock.

   b.  The aggregate amount of cash and the Fair Market Value, as of the date of the consummation of the Business Combination, of consideration other than cash to be received per share by holders of shares of each class or series of outstanding Capital Stock, other than Common Stock, shall be at least equal to the highest amount determined under clauses (i), (ii) and (iii) below:

    (i)  (if applicable) the highest per share price (including any brokerage commissions, transfer taxes and soliciting dealers' fees) paid by or on behalf of the Interested Stockholder for any share of such class or series of Capital Stock in connection with the acquisition by the Interested Stockholder of beneficial ownership of shares of such class or series of Capital Stock (x) within the two-year period immediately prior to the Announcement Date or (y) in the transaction in which it became an Interested Stockholder, whichever is higher, in either case as adjusted for any subsequent stock split, stock dividend, subdivision or reclassification with respect to such class or series of Capital Stock;

    (ii)  the Fair Market Value per share of such class or series of Capital Stock on the Announcement Date or on the Determination Date, whichever is higher, as adjusted for any subsequent stock split, stock dividend, subdivision or reclassification with respect to such class or series of Capital Stock; and

    (iii)  (if applicable) the highest preferential amount per share to which the holders of shares of such class or series of Capital Stock would be entitled in the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation regardless of

5

BFT 000279

whether the Business Combination to be consummated constitutes such an event.

The provisions of this Paragraph 2(b) shall be required to be met with respect to every class or series of outstanding Capital Stock, whether or not the Interested Stockholder has previously acquired beneficial ownership of any shares of a particular class or series of Capital Stock.

c.    The consideration to be received by holders of a particular class or series of outstanding Capital Stock shall be in cash or in the same form as previously has been paid by or on behalf of the Interested Stockholder in connection with its direct or indirect acquisition of beneficial ownership of shares of such class or series of Capital Stock. If the consideration so paid for shares of any class or series of Capital Stock varied as to form, the form of consideration for such class or series of Capital Stock shall be either cash or the form used to acquire beneficial ownership of the largest number of shares of such class or series of Capital Stock previously acquired by the Interested Stockholder.

d.    After the Determination Date and prior to the consummation of such Business Combination:  (i) except as approved by a majority of the Continuing Directors, there shall have been no failure to declare and pay at the regular date therefor any full periodic dividends (whether or not cumulative) payable in accordance with the terms of any outstanding Capital Stock; (ii) there shall have been no reduction in the annual rate of dividends paid on the Common Stock (except as necessary to reflect any stock split, stock dividend or subdivision of the Common Stock), except as approved by a majority of the Continuing Directors; (iii) there shall have been an increase in the annual rate of dividends paid on the Common Stock as necessary to reflect any reclassification (including any reverse stock split), recapitalization, reorganization or any similar transaction that has the effect of reducing the number of outstanding shares of Common Stock, unless the failure so to increase such annual rate is approved by a majority of the Continuing Directors; and (iv) such Interested Stockholders shall not have become the beneficial owner of any additional shares of Capital Stock except as part of the transaction that results in such Interested Stockholder becoming an Interested Stockholder and except in a transaction that, after giving effect thereto, would not result in any increase in the Interested Stockholder's percentage beneficial ownership of any class or series of Capital Stock.

e.    A proxy or information statement describing the proposed Business Combination and complying with the requirements of the Securities Exchange Act of 1934 and the rules and regulations thereunder (the "Act") (or any subsequent provisions replacing such Act, rules or regulations) shall be mailed to all stockholders of the Corporation at least 30 days prior to the consummation of such Business Combination (whether or not such proxy or information statement is required to be mailed pursuant to such Act or subsequent provisions).  The

6

proxy or information statement shall contain on the first page thereof, in a prominent place, any statement as to the advisability (or inadvisability) of the Business Combination that the Continuing Directors, or any of them, may choose to make and, if deemed advisable by a majority of the Continuing Directors, the opinion of an investment banking firm selected by a majority of the Continuing Directors as to the fairness (or not) of the terms of the Business Combination from a financial point of view to the holders of the outstanding shares of Capital Stock other than the Interested Stockholder and its Affiliates or Associates, such investment banking firm to be paid a reasonable fee for its services by the Corporation.

   f. Such Interested Stockholder shall not have made any major change in the Corporation's business or equity capital structure without the approval of a majority of the Continuing Directors.

C. The following definitions shall apply with respect to this Article NINTH:

   1. The term "Business Combination" shall mean:

   a. any merger or consolidation of the Corporation or any Subsidiary (as hereinafter defined) with (i) any Interested Stockholder or (ii) any other company (whether or not itself an Interested Stockholder) which is, or after such merger or consolidation would be, an Affiliate or Associate of an Interested Stockholder; or

   b. any sale, lease, exchange, mortgage, pledge, transfer or other disposition or security arrangement, investment, loan, advance, guarantee, agreement to purchase or sell, agreement to pay, extension of credit, joint venture participation or other arrangement (in one transaction or a series of transactions) with or for the benefit of any Interested Stockholder or any Affiliate or Associate of any Interested Stockholder involving any assets, securities or commitments of the Corporation, any Subsidiary or any Interested Stockholder or any Affiliate or Associate of any Interested Stockholder which (except for any arrangement, whether as employee or consultant or otherwise, other than as director, pursuant to which any Interested Stockholder or any Affiliate or Associate thereof shall, directly or indirectly, have any control over or responsibility for the management of any aspect of the business or affairs of the Corporation, with respect to which arrangement the value test set forth below shall not apply), together with all other such arrangements (including all contemplated future events), has an aggregate Fair Market Value and/or involves aggregate commitments of [$100,000,000] or more or constitutes more than 5 percent of the book value of the total assets (in the case of transactions involving assets or commitments other than capital stock) or 5 percent of the stockholders' equity (in the case of transactions in capital stock) of the entity in question (the "Substantial Part"), as reflected in the most recent fiscal year-end consolidated balance sheet of such entity existing at the time

BFT 000281

the stockholders of the Corporation would be required to approve or authorize the Business Combination involving the assets, securities and/or commitments constituting any Substantial Part; provided, that if stockholders' equity is negative, the fair market value of the outstanding Capital Stock at the date of such balance sheet shall be used in lieu thereof in determining if a transaction involves a Substantial Part; or

        c.    the adoption of any plan or proposal for the liquidation or dissolution of the Corporation or for any amendment to the Corporation's Bylaws; or

        d.    any reclassification of securities (including any reverse stock split), or recapitalization of the Corporation, or any merger or consolidation of the Corporation with any of its Subsidiaries or any other transaction (whether or not with or otherwise involving an Interested Stockholder) that has the effect, directly or indirectly, of increasing the proportionate share of any class or series of Capital Stock, or any securities convertible into Capital Stock or into equity securities of any Subsidiary, that is beneficially owned by any Interested Stockholder or any affiliate or Associate of any Interested Stockholder; or

        e.    any agreement, contract or other arrangement providing for any one or more of the actions specified in the foregoing clauses (a) to (d).

    2.    The term "person" shall mean any individual, firm, company or other entity and shall include any group comprised of any person and any other person with whom such person or any Affiliate or Associate of such person has any agreement, arrangement or understanding, directly or indirectly, for the purpose of acquiring, holding, voting or disposing of Capital Stock.

    3.    The term "Interested Stockholder" shall mean any person (other than the Corporation or any Subsidiary and other than any profit-sharing, employee stock ownership or other employee benefit plan of the Corporation or any Subsidiary or any trustee of or fiduciary with respect to any such plan when acting in such capacity) who (a) is, or has announced or publicly disclosed a plan or intention to become, the beneficial owner of Voting Stock representing ten percent or more of the votes entitled to be cast by the holders of all the then outstanding shares of Voting Stock; or (b) is an Affiliate or Associate of the Corporation and at any time within the two-year period immediately prior to the date in question was the beneficial owner of Voting Stock representing ten percent or more of the votes entitled to be cast by the holders of all the then outstanding shares of Voting Stock.

    4.    A person shall be a "beneficial owner" of any Capital Stock (a) which such person or any of its Affiliates or Associates beneficially owns, directly or indirectly; (b) which such person or any of its Affiliates or Associates has, directly or indirectly, (i) the right to acquire (whether such right is exercisable immediately or subject only to the

8

passage of time), pursuant to any agreement, arrangement or understanding or upon the exercise of conversion rights, exchange rights, warrants or options, or otherwise, or (ii) the right to vote pursuant to any agreement, arrangement or understanding; or (c) which is beneficially owned, directly or indirectly, by any other person with which such person or any of its Affiliates or Associates has any agreement, arrangement or understanding for the purpose of acquiring, holding, voting or disposing of any shares of Capital Stock; provided that: (x) no director or officer of the Corporation (nor any Affiliate or Associate of any such director or officer) shall, solely by reason of any or all of such directors or officers acting in their capacities as such, be deemed the "beneficial owner" of any shares of Capital stock that are beneficially owned by any other such director or officer; (y) in the case of any employee stock ownership or similar plan of the Corporation or of any Subsidiary in which the beneficiaries thereof possess the right to vote the shares of Voting Stock held by such plan, no such plan nor any trustee with respect thereto (nor any Affiliate or Associate of such trustee), solely by reason of such capacity of such trustee, shall be deemed the "beneficial owner" of the shares of Voting Stock held under such plan; and (z) no person shall be deemed the "beneficial owner" of any shares of Voting Stock held in any voting trust, employee stock ownership plan or any similar plan or trust if such person does not possess the right to vote such shares.  For the purposes of determining whether a person is an Interested Stockholder pursuant to Paragraph 3 of this Section C, the number of shares of Capital Stock deemed to be outstanding shall include shares deemed beneficially owned by such person through application of this Paragraph 4 of Section C, but shall not include any other shares of Capital Stock that may be issuable pursuant to any agreement, arrangement or understanding, or upon exercise of conversion rights, warrants or options, or otherwise.

5.    The terms "Affiliate" and "Associate" shall have the respective meanings ascribed to such terms in Rule 12b-2 under the Act as in effect on the date that Article NINTH is approved by the Board (the term "registrant" in said Rule 12b-2 meaning in this case the Corporation).

6.    The term "Subsidiary" means any company of which a majority of any class of equity security is beneficially owned by the Corporation; provided, however, that for the purposes of the definition of Interested Stockholder set forth in Paragraph 3 of this Section C, the term "Subsidiary" shall mean only a company of which a majority of each class of equity security is beneficially owned by the Corporation.

7.    The term "Continuing Director" means any member of the Board of Directors of the Corporation (the "Board of Directors"), while such person is a member of the Board of Directors, who is not an Affiliate or Associate or representative of the Interested Stockholder and was a member of the Board of Directors prior to the time that the Interested Stockholder became an Interested Stockholder, and any successor of a Continuing Director while such successor is a member of the Board of Directors, who is not an Affiliate or Associate or representative of the Interested Stockholder and is recommended or elected to succeed the Continuing Director by a majority of the Continuing Directors.

9

BFT 000283

8.    The term "Fair Market Value" means (a) in the case of cash, the amount of such cash; (b) in the case of stock, the highest closing sales price during the 30-day period immediately preceding the date in question of a share of such stock on the Composite Tape for New York Stock Exchange--Listed Stocks, or, if such stock is not quoted on the Composite Tape, on the New York Stock Exchange, or, if such stock is not listed on such Exchange, on the principal United States securities exchange registered under the Act on which such stock is listed, or, if such stock is not listed on any such exchange, the highest closing sales price or bid quotation with respect to a share of such stock during the 30-day period preceding the date in question on the National Association of Securities Dealers, Inc. Automated Quotations System or any similar system then in use, or if no such quotations are available, the fair market value on the date in question of a share of such stock as determined in good faith by a majority of the Continuing Directors; and (c) in the case of property other than cash or stock, the fair market value of such property on the date in question as determined in good faith by a majority of the Continuing Directors.

9.    In the event of any Business Combination in which the Corporation survives, the phrase "consideration other than cash to be received" as used in Paragraphs 2.a and 2.b of Section B of this Article NINTH shall include the shares of Common Stock and/or the shares of any other class or series of Capital Stock retained by the holders of such shares.

D.    A majority of the Continuing Directors shall have the power and duty to determine for the purposes of this Article NINTH, on the basis of information known to them after reasonable inquiry, all questions arising under this Article NINTH including, without limitation, (a) whether a person is an Interested Stockholder, (b) the number of shares of Capital Stock or other securities beneficially owned by any person, (c) whether a person is an Affiliate or Associate of another, (d) whether a Proposed Action (as hereinafter defined) is with, or proposed by, or on behalf of, an Interested Stockholder or an Affiliate or Associate of an Interested Stockholder, (e) whether the assets that are the subject of any Business Combination have, or the consideration to be received for the issuance or transfer of securities by the Corporation or any Subsidiary in any Business Combination has, an aggregate Fair Market Value of [$100,000,000] or more, and (f) whether the assets or securities that are the subject of any Business Combination constitute a Substantial Part. Any such determination made in good faith shall be binding and conclusive on all parties.

E.    Nothing contained in this Article NINTH shall be construed to relieve any Interested Stockholder from any fiduciary obligation imposed by law.

F.    The fact that any Business Combination complies with the provisions of Section B of this Article NINTH shall not be construed to impose any fiduciary duty, obligation or responsibility on the Board of Directors, or any member thereof, to approve such Business Combination or recommend its adoption or approval to the stockholders of the Corporation, nor shall such compliance limit, prohibit or otherwise restrict in any manner the Board of Directors,

10

BFT 000284

or any member thereof, with respect to evaluations of or actions and responses taken with respect to such Business Combination.

G.    For the purpose of this Article NINTH, a Business Combination or any proposal to amend, repeal or adopt any provision of this Certificate of Incorporation inconsistent with this Article NINTH (collectively, "Proposed Action") is presumed to have been proposed by, or on behalf of, an Interested Stockholder or a person who thereafter would become such if (1) after the Interested Stockholder became such, the Proposed Action is proposed following the election of any director of the Corporation who with respect to such Interested Stockholder, would not qualify to serve as a Continuing Director or (2) such Interested Stockholder, Affiliate, Associate or person votes for or consents to the adoption of any such Proposed Action, unless as to such Interested Stockholder, Affiliate, Associate or person, a majority of the Continuing Directors makes a good faith determination that such Proposed Action is not proposed by or on behalf of such Interested Stockholder, Affiliate, Associate or person, based on information known to them after reasonable inquiry.

H.    Notwithstanding any other provisions of this Certificate of Incorporation or the Bylaws of the Corporation (and notwithstanding the fact that a lesser percentage or separate class vote may be specified or permitted by law, this Certificate of Incorporation or the Bylaws of the Corporation), any proposal to amend or repeal, or to adopt any provision of this Certificate of Incorporation inconsistent with, this Article NINTH which is proposed by or on behalf of an Interested Stockholder or an Affiliate or Associate of an Interested Stockholder shall require the affirmative vote of (i) the holders of not less than 75% of the votes entitled to be cast by the holders of all the then outstanding shares of Voting Stock, voting together as a single class, and (ii) the holders of not less than a majority of the votes entitled to be cast by the holders of all the then outstanding shares of Voting Stock, voting together as a single class, excluding Voting Stock beneficially owned by such Interested Stockholder, provided, however, that this Section H shall not apply to, and such vote shall not be required for, any amendment, repeal or adoption unanimously recommended by the Board of Directors if all of such directors are persons who would be eligible to serve as Continuing Directors within the meaning of Section C, Paragraph 7 of this Article NINTH.

TENTH:    A.    Subject to Section C of this Article TENTH, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he (i) is or was a director or officer of the Corporation, or (ii) is or was a director or officer of the Corporation and is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo

11

contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the Corporation, or, with respect to any criminal action or proceeding, had reasonable cause to believe his conduct was unlawful.

B.    Subject to Section C of this Article TENTH, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he (i) is or was a director or officer of the Corporation, or (ii) is or was a director or officer of the Corporation and is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Corporation; except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

C.    Any indemnification of a director, officer, former director or former officer of the Corporation under this Article TENTH (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of said director or officer is proper in the circumstances because he has met the applicable standard of conduct set forth in Section A or Section B of this Article TENTH, as the case may be. Such determination shall be made (i) by a majority vote of the directors who are not parties to such action, suit or proceeding, even though less than a quorum, or (ii) if there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion, or (iii) by the stockholders. To the extent, however, that a director or officer of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding described in Section A or Section B of this Article TENTH, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith, without the necessity of authorization in the specific case.

D.    For purposes of any determination under Section C of this Article TENTH, a person shall be deemed to have acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Corporation, and, with respect to any criminal action or proceeding, to have had no reasonable cause to believe his conduct was unlawful, if his action is based on the records or books of account of the Corporation or another enterprise, or on information supplied to him by the officers of the Corporation or another enterprise in the course of their duties, or on the advice of legal counsel for the Corporation or another enterprise or on information or records given or reports made to the Corporation or another enterprise by

12

BFT 000286

an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the Corporation or another enterprise. The term "another enterprise" as used in this Section D of Article TENTH shall mean any other corporation or any partnership, joint venture, trust or other enterprise of which such person is or was serving at the request of the Corporation as a director, officer, employee or agent. The provisions of this Section D shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth in Sections A or B of this Article TENTH as the case may be.

E.    Notwithstanding any contrary determination in the specific case under Section C of this Article TENTH, and notwithstanding the absence of any determination thereunder, any director or officer may apply to any court of competent jurisdiction in the State of Delaware for indemnification to the extent otherwise permissible under Sections A and B of this Article TENTH. The basis of such indemnification by a court shall be a determination by such court that indemnification of the director or officer is proper in the circumstances because he has met the applicable standards of conduct set forth in Sections A or B of this Article TENTH, as the case may be. Notice of any application for indemnification pursuant to this Section E of Article TENTH shall be given to the Corporation promptly upon the filing of such application.

F.    Expenses incurred in defending or investigating a threatened or pending action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article TENTH.

G.    Subject to Section I of this Article TENTH, the Corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was an employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the Corporation, or, with respect to any criminal action or proceeding, had reasonable cause to believe his conduct was unlawful.

H.    Subject to Section I of this Article TENTH, the Corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor

13

BFT 000287

by reason of the fact that he is or was an employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Corporation; except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

I.    Any indemnification of any employee, agent, former employee or former agent of the Corporation under this Article TENTH (unless ordered by a court) shall be made by the Corporation only as authorized in the sole discretion of the Corporation. Such authorization shall be made (i) by a majority vote of the directors who are not parties to such action, suit or proceeding, even though less than a quorum, or (ii) if there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion, or (iii) by the stockholders. To the extent, however, that an employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding described in Section G or Section H of this Article TENTH, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith, without the necessity of authorization in the specific case.

J.    Expenses incurred in defending or investigating a threatened or pending action, suit or proceeding may be paid by the Corporation, in its sole discretion, in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the employee or agent to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article TENTH.

K.    The indemnification and advancement of expenses provided by this Article TENTH shall not be deemed exclusive of any other rights to which any person seeking indemnification or advancement of expenses may be entitled under any Bylaw, agreement, contract, vote of stockholders or disinterested directors or pursuant to the direction (howsoever embodied) of any court of competent jurisdiction or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, it being the policy of the Corporation that indemnification of, and advancement of expenses to, the persons specified in Sections A and B of this Article TENTH shall be made to the fullest extent permitted by law. The provisions of this Article TENTH shall not be deemed to preclude the indemnification of, and advancement of expenses to, any person who is not specified in Sections A or B of this Article TENTH but whom the Corporation has the power or obligation to indemnify under the provisions of the GCL, or otherwise. The indemnification provided by this Article TENTH shall

14

BFT 000288

continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

L.    The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation would have the power or the obligation to indemnify him against such liability under the provisions of this Article TENTH.

M.    For purposes of this Article TENTH, reference to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under the provisions of this Article TENTH with respect to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

ELEVENTH:   Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this Corporation under the provisions of Section 291 of the GCL or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under the provisions of Section 279 of the GCL, order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, to be summoned in such manner as the said court directs.  If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this Corporation as a consequence of such compromise or arrangement, said compromise or arrangement and said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

TWELFTH: The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or thereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.  Notwithstanding any other provisions of this Certificate of Incorporation or the Bylaws of the Corporation (and notwithstanding the fact that a lesser percentage or separate class

15

BFT 000289

vote may be specified or permitted by law, this Certificate of Incorporation or the Bylaws of the Corporation), any proposal to amend or repeal, or to adopt any provision of this Certificate of Incorporation inconsistent with, Articles FIFTH, SIXTH, SEVENTH, EIGHTH or TWELFTH shall require the affirmative vote of the holders of not less than 75% of the votes entitled to be cast by the holders of all the then outstanding shares of Voting Stock, voting together as a single class.

THIRTEENTH:   No director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law, (iii) under Section 174 of the GCL, or (iv) for any transaction from which the director derived an improper personal benefit.  If the GCL is hereafter amended to authorize corporate action further limiting or eliminating the personal liability of directors, then the liability of each director of the Corporation shall be limited or eliminated to the fullest extent permitted by the GCL as so amended from time to time.

BFT 000290

# EXHIBIT 24



# FORM 8–K

## BALLY TOTAL FITNESS HOLDING CORP – BFT

**Filed: December 01, 2005 (period: November 30, 2005)**

Report of unscheduled material events or corporate changes.

# Table of Contents

**Item 2.02** Results of Operations and Financial Condition

**Item 9.01** Financial Statements and Exhibits

EX–99.1 (Exhibits not specifically designated by another number and by investment companies)

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C.
# FORM 8–K
### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d) OF
### THE SECURITIES EXCHANGE ACT OF 1934
Date of Report (Date of Earliest Event Reported): November 30, 2005

# BALLY TOTAL FITNESS HOLDING CORPORATION

(Exact name of registrant as specified in its charter)
Commission file number: 001–13997

| Delaware | 36–3228107 |
|---|---|
| (State or other jurisdiction of incorporation) | (I.R.S. Employer Identification No.) |
| 8700 West Bryn Mawr Avenue, Chicago, Illinois | 60631 |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: (773) 380–3000

N/A

(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8–K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a–12 under the Exchange Act (17 CFR 240.14a–12)

☐   Pre–commencement communications pursuant to Rule 14d–2(b) under the Exchange Act (17 CFR 240.14d–2(b))

☐   Pre–commencement communications pursuant to Rule 13e–4(c) under the Exchange Act (17 CFR 240.13e–4(c))

**Table of Contents**

## TABLE OF CONTENTS

Item 2.02 Results of Operations and Financial Condition.
Item 9.01 Financial Statements and Exhibits
 Press Release

Table of Contents

BALLY TOTAL FITNESS HOLDING CORPORATION
FORM 8–K
Current Report

**Item 2.02    Results of Operations and Financial Condition**

On November 30, 2005, Bally Total Fitness Holding Corporation (the "Company") issued a press release announcing results for the nine months ended September 30, 2005 and fiscal 2004 and completed restatement of results for fiscal years 2000 to 2003. The press release is attached hereto as Exhibit 99.1.

**Item 9.01    Financial Statements and Exhibits**

(c)    Exhibits

99.1    Press release dated November 30, 2005 announcing results for the nine months ended September 30, 2005 and fiscal 2004 and completed restatement of results for fiscal years 2000 to 2003

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned hereunto duly authorized.

BALLY TOTAL FITNESS HOLDING
CORPORATION
Registrant

Dated: November 30, 2005

/s/ Marc D. Bassewitz
Marc D. Bassewitz
Senior Vice President, Secretary and General
Counsel

Exhibit 99.1

( BW)(IL—BALLY—TOTAL—FITNESS)(BFT) Bally Total Fitness Announces Financial Results for First Nine Months 2005, Year—End 2004; Completes Restatement of 2000 Through 2003 Results

Business Editors

CHICAGO—(BUSINESS WIRE)—Nov. 30, 2005—Bally Total Fitness Corporation (NYSE:BFT):

Strategic Transformation Initiatives, Cost Containment Programs Drive Growth in Revenue, Operating Income
— Company Posts Nine—Month $1.8 Million Net Profit Vs. 2004 and 2003 Losses

— Nine Month 2005 Operating Income Before Impairment Charges Up $25.3 Million, 70 Percent, From 2004

— 2004 Operating Income Before Impairment Charges Up $18.2 Million, 52 Percent, From Restated 2003

— 2004 Net Loss of $30.3 million Vs. 2003 Restated Net Loss of $106.0 million

— 2005 New Member Joins Up 4.4 Percent; Total Members Down 1 Percent

— 2004 Record New Member Joins Up 21 Percent Over Prior Year

Bally Total Fitness Corporation (NYSE:BFT) the leading operator and provider of health and fitness clubs, products and services, today announced financial results for the nine months ended September 30, 2005 and the year—ended December 31, 2004. The Company also completed restatements for years 2000 through 2003. With today's filings, Bally is current with its federal securities filing and bond indenture requirements.

Paul Toback, Chairman and Chief Executive officer, said, "Our financial results for the past 21 months reflect our monumental undertaking in literally transforming our entire company, including putting a new management team in place, revamping our financial organization, changing our accounting, implementing strategic initiatives and creating and introducing a new business model that we believe should continue to improve the financial performance and returns of Bally Total Fitness.

"We're also gratified to have completed the arduous and demanding task of restating our financial results. I specifically want to thank our employees, whose focus, energy and time were taxed with this burden, yet they never took their focus off our primary goal of ensuring the continued improvement of operations in order to enhance shareholder value."

Mr. Toback added, "We're pleased that results for the first nine months of 2005 and the year—end 2004 show revenue and operating income improvement. These results reflect the initial impact of our growth initiatives — including new membership sales strategies such as our Build Your Own Membership Plan and our Family—add—on program, further emphasis on add—on services such as personal training, and a renewed focus on customer service to improve member retention — as well as stricter expense management."

Nine—Month 2005 Financial Results

For the first nine months of 2005, net revenues were up 2.3 percent to $807.5 million, compared with $789.3 million for the same period in 2004. The increase was driven by a 2 percent increase in average monthly revenue recognized per member to $19.70 in the 2005 period. A 4 percent increase in personal training revenue also contributed to the improvement in revenues.

For the 2005 nine—month period, operating income grew 70 percent to $61.7 million compared with the 2004 period operating income of $36.4 million, reflecting the Company's continued focus on revenue growth and expense management. For same period, operating expenses as a percentage of revenues were down 3 percent, primarily at the club level, compared with 2004. The operating income growth occurred despite an increase in general and administrative expenses of $9.9 million that included a $6 million charge related to the accelerated vesting of 1.6 million shares of restricted stock resulting from a change of control under the Company's 1996 Long—Term Incentive and Inducement Plans. Because the Company has been in a quiet period resulting from not filing financial statements since May 2004, it is now possible that some members of management may decide to sell certain holdings of Company stock in connection with personal tax planning or diversification determinations.

The Company reported net income of $1.8 million, or $0.05 per share, for the nine months ended September 30, 2005 versus net losses of $13.3 million and $19.6 million, or a loss of $0.40 and $0.60 per share, for 2004 and 2003, respectively.

For the nine months ended September 30, 2005, new joining members were up 4.4 percent compared to the prior year period. The total number of members at September 30, 2005 was 3.676 million, down less than 1 percent from the prior year, reflecting a growing percentage of new members joining on a pay—as—you—go basis and the lower retention rate of those members. This member count and comparison to the prior year reflects the Company's current definition of membership, which includes members whose balances are past due by up to 90 days. The Company's previous definition included past due accounts of up to 180 days. The current definition reflects the results of management's analysis to better understand collection trends by member classification. These results indicated that members with accounts more than 90 days past due were not likely to become current and are therefore excluded from our member statistics.

Third—Quarter 2005 Financial Results

For the third quarter ended September 30, 2005, net revenues were $261.8 million, down slightly from $264.8 million a year ago, primarily as a result of a 2 percent decline in membership revenue based on a 1 percent decrease in the average number of members in the 2005 quarter, as well as a 1 percent decrease in average revenue per member. This was offset, in part, by continued growth in personal training revenue, up 6 percent in the quarter, versus the same period a year ago.

Operating income for the third quarter was $18.8 million versus $23.0 million in 2004, primarily reflecting write—downs of retail inventory increased, information technology expenses, and an increase

of $3.0 million in costs incurred in connection with the restatements and related investigations and litigation. Membership services expense continued on a positive trend, down 1.5 percent from 2004. The company reported a net loss for the quarter of $1.6 million, or a loss of $0.05 per share, compared with net income of $6.8 million, or $0.21 per share in 2004.

Commenting on the quarter, Mr. Toback said, "Our stringent focus on cost management in the third quarter was, unfortunately, more than offset by a number of costs associated with investing in information technology upgrades and all of the costs associated with restating our financials and complying with the Sarbanes–Oxley Act. Flat revenue for the period reflects the transitional effects on our business model of our new initiatives. However, we believe as our new marketing campaign kicks off and improved service takes hold throughout the clubs, customer satisfaction and retention will improve, as will customer referrals from existing members, driving future revenue growth and, ultimately, greater profitability."

Mr. Toback continued, "While total membership is up only slightly from the beginning of the year, we're encouraged by early indications of our new initiatives, which we believe are beginning to gain traction. Our consumer–friendly Build Your Own Membership program was introduced in smaller markets during the first half of the year, with rollout in larger markets, such as Chicago, Los Angeles, and New York, from August through October. As a result, the expected impact of this new initiative in our largest markets is not yet reflected in these numbers. Improving our membership retention is a top priority and we remain squarely focused on initiatives to achieve this goal."

Cash and Liquidity

As of November 30, 2005, Bally had $40 million of borrowings and $13.9 million in letters of credit outstanding under its $100 million revolving credit facility. As of September 30, 2005, Bally had $20 million of borrowings and $13.9 million in letters of credit issued under its $100 million revolving credit facility.

Beginning in August 2005, the Company drew more heavily on its revolving credit facility. This utilization is primarily related to the $14.9 million payment arising out of an arbitration dispute with Household Credit, $8.0 million paid for consents to bondholders and banks relating to extending financial reporting deadlines, $3.5 million paid to professional advisors in connection with the restatements, and the October 17, 2005 interest payment on the 9 7/8% Senior Subordinated Notes.

2004 Vs. Restated 2003 Financial Results

For the year ended December 31, 2004, net revenues, bolstered by record memberships sold and record personal training revenue, were $1,048.0 million, up 4.5 percent, compared with restated net revenues of $1,002.9 million in 2003, which included a one–time revenue increase of $11 million from the sales of written–off accounts. During 2004, average monthly membership revenue recognized per member was relatively stable at $19.17 versus $19.11 in the prior–year period. The average number of monthly members grew 2 percent to 3.697 million, compared with 3.622 million average monthly members in 2003. The Company also saw a significant increase in personal training revenue, up 26 percent.

Operating income in 2004 was $38.2 million, up $77.1 million from a 2003 restated operating loss of $38.9 million. The operating income improvement is the result of the aforementioned $45.1 million increase in revenue as well as a $58.9 million decrease in impairment charges against long–lived assets and goodwill.

Also, in 2004 operating income before non–cash impairment charges of $15.2 million was $53.4 million, up 52 percent compared with the prior year. Impairment charges of $74.1 million in 2003 were primarily related to the Company's Crunch Fitness division acquired in December 2001. The Company believes this non–GAAP financial metric more accurately reflects results of operations in 2004 compared to the prior year because of the significant non–cash impairment charges that occurred in 2003. The Company reported a lower net loss of $30.3 million, or $0.92 per share, for the year–end 2004 compared with a restated 2003 net loss of $106.0 million, or $3.24 per share.

In 2004, the Company had record numbers of new joining members, up 21 percent compared with 2003. New memberships sold in 2004 were also significantly higher, up 6.3 percent versus 2003. The total number of members at year–end 2004 was 3.645 million versus 3.616 million in 2003, with both member counts now reflecting the stricter delinquency period for inclusion, as explained earlier.

Strategic Initiative

The Company also announced today its Board of Directors has retained J.P. Morgan Securities Inc., to explore a range of strategic alternatives to enhance shareholder value. Such alternatives may include, but are not limited to, a recapitalization, the sale of securities or assets of the Company or the sale or merger of Bally Total Fitness with another entity or strategic partner. J.P. Morgan Securities Inc., will work in collaboration with The Blackstone Group, which has been advising Bally for the past 10 months, in providing strategic advisory services to the Company. Bally Total Fitness said there can be no assurances that any transaction will occur.

Restated 2003 and 2002 Results

The Company also completed its restatement of historical results for years 2000 through 2003, which reflects the correction of numerous errors in our previous financial accounting and reporting. The more than two dozen restatement items included corrections related to the recognition of revenue, valuation adjustments of long–lived assets and goodwill and other intangible assets, lease accounting and income taxes.

These restatement adjustments resulted in an increase in previously reported net loss of approximately $96.4 million for the year ended December 31, 2002 and a decrease of $540 million in net loss for the year ended December 31, 2003. The decrease in 2003 reported net loss includes the reversal of the cumulative effect of a change in accounting previously reported in 2003 of $581 million. The Company also increased the January 1, 2002 opening accumulated stockholders' deficit by $1.7 billion to recognize the effects of corrections in financial statements prior to 2002.

For a comparison of restated and previously reported results, see the Company's Annual Report on Form 10–K, which has been filed with the SEC. It can also be viewed on Bally's website at www.ballytotalfitness.com.

About Bally Total Fitness

Bally Total Fitness is the largest and only nationwide commercial operator of fitness centers in the U.S., with nearly 440 facilities located in 29 states, Mexico, Canada, Korea, China and the Caribbean under the Bally Total Fitness(R), Crunch Fitness(SM), Gorilla Sports(SM), Pinnacle Fitness(R), Bally Sports Clubs(R) and Sports Clubs of Canada(R) brands. Bally offers a unique platform for distribution of a wide range of products and services targeted to active, fitness-conscious adult consumers.

Safe Harbor Statement

Forward-looking statements in this release including, without limitation, statements relating to the Company's plans, strategies, objectives, expectations, intentions, and adequacy of resources, are made pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. These forward-looking statements involve known and unknown risks, uncertainties, and other factors that may cause the actual results, performance or achievements of the Company to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements. These factors include, among others, the following: the outcome of the SEC and Department of Justice investigations; the communication by Bally's management and independent auditors of the existence of material weaknesses in internal controls over financial reporting; general economic and business conditions; competition; success of operating initiatives, advertising and promotional efforts; existence of adverse publicity or litigation (including various shareholder litigations) and the outcome thereof and the costs and expenses associated therewith; acceptance of new product and service offerings; changes in business strategy or plans; availability, terms and development of capital; business abilities and judgment of personnel; changes in, or the failure to comply with, government regulations; ability to remain in compliance with, or obtain waivers under, the Company's loan agreements and indentures; the ability to maintain existing or obtain new sources of financing, on acceptable terms or at all, to satisfy the Company's cash needs and obligations; and other factors described in filings of the Company with the Securities and Exchange Commission.

Bally Total Fitness Holding Corporation
Financial Highlights

Note: The following is a summary of financial data provided in the Company's Annual Report on Form 10–K for the year ended
December 31, 2004 and Form 10–Q for the period ended September 30, 2005. Please refer to these filed documents for a complete
explanation of the Company's current results and restatements for 2000 through 2003.

| | Nine months ended September 30, | | Year ended December 31, | |
| | 2005 | 2004 | 2004 | 2003 |
|---|---|---|---|---|
| | (in thousands, except per share, per member and number of fitness centers data) | | | |
| **Net revenues** | | | | |
| Membership | $657,540 | $638,974 | $ 850,541 | $ 830,511 |
| Personal training | 97,034 | 93,559 | 125,441 | 99,355 |
| Membership services revenue | 754,574 | 732,533 | 975,982 | 929,866 |
| Retail products | 40,251 | 42,048 | 53,340 | 55,266 |
| Miscellaneous | 12,664 | 14,720 | 18,666 | 17,739 |
| Net revenues | 807,489 | 789,301 | 1,047,988 | 1,002,871 |
| **Operating costs and expenses** | | | | |
| Membership services | 546,195 | 561,057 | 732,741 | 726,231 |
| Retail products | 40,561 | 40,399 | 54,496 | 57,493 |
| Advertising | 45,795 | 49,352 | 61,602 | 53,503 |
| Information technology | 17,373 | 14,256 | 18,288 | 12,507 |
| Other general and administrative | 45,471 | 35,601 | 57,689 | 41,139 |
| Depreciation and amortization | 50,397 | 52,232 | 69,779 | 76,767 |
| | 745,792 | 752,897 | 994,595 | 967,640 |
| Operating income before impairment charges | 61,697 | 36,404 | 53,393 | 35,231 |
| Impairment of goodwill and other intangibles | | | 405 | 54,505 |
| Asset impairment charges | | | 14,772 | 19,605 |
| Operating income (loss) | 61,697 | 36,404 | 38,216 | (38,879) |
| **Other income (expense)** | | | | |
| Interest expense, net | (60,588) | (49,266) | (67,201) | (62,585) |
| Foreign exchange gain (loss) | 1,187 | 473 | 1,578 | 2,371 |
| Other, net | 272 | (232) | (1,998) | (2,479) |
| | (59,129) | (49,025) | (67,621) | (62,693) |
| Income (loss) from continuing operations before income taxes | 2,568 | (12,621) | (29,405) | (101,572) |
| Income tax provision | 776 | 638 | 851 | 1,102 |
| Income (loss) from continuing operations | 1,792 | (13,259) | (30,256) | (102,674) |
| **Discontinued operations** | | | | |
| Loss from discontinued operations | | | | (981) |
| Loss on disposal | | | | (1,699) |
| Loss from discontinued operations | | | | (2,680) |
| Income (loss) before cumulative effect of change in accounting principles | 1,792 | (13,259) | (30,256) | (105,354) |
| Cumulative effect of change in accounting principle | | | | (626) |
| Net income (loss) | $ 1,792 | $ (13,259) | $ (30,256) | $ (105,980) |
| Net income (loss) per common share | $ 0.05 | $ (0.40) | $ (0.92) | $ (3.24) |
| **Summary cash flow data** | | | | |
| Cash provided by operating activities | $ 22,448 | $ 39,017 | $ 36,124 | $ 89,877 |
| Cash used in investing activities | $ (23,193) | $ (38,678) | $ (50,241) | $ (48,211) |
| Cash provided by (used in) financing activities | $ (6,030) | $ 10,582 | $ 19,223 | $ (38,142) |

| Operating data Average monthly membership revenue recognized per member | $ 19.70 | $ 19.17 | $ 19.17 | $ 19.11 |
|---|---|---|---|---|
| Average number of members during the period | 3,708 | 3,704 | 3,697 | 3,622 |
| Number of members at end of period | 3,676 | 3,708 | 3,645 | 3,616 |
| Number of members joined during the period | 951 | 911 | 1,165 | 965 |
| Fitness centers operating at end of period | 412 | 414 | 416 | 417 |

## BALLY TOTAL FITNESS HOLDING CORPORATION
### Condensed Consolidated Balance Sheets
(In thousands)

| | September 30 2005 (Unaudited) | December 31 2004 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash | $ 12,763 | $ 19,177 |
| Deferred income taxes 471 Other current assets | 33,975 | 30,239 |
| Total current assets | $ 46,738 | $ 49,887 |
| Property and equipment, less accumulated depreciation and amortization of $754,599 and $713,222 | 335,217 | 361,863 |
| Goodwill, net | 41,732 | 41,698 |
| Intangible assets, less accumulated amortization of $22,759 and $21,565 | 9,537 | 9,933 |
| Other assets | 6,706 | 7,909 |
| | 46,165 | 28,279 |
| | $ 486,095 | $ 499,569 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT)** | | |
| Current liabilities | | |
| Accounts payable | $ 47,425 | $ 51,373 |
| Income taxes payable | 1,702 | 1,399 |
| Deferred income taxes | 681 | — |
| Accrued liabilities | 97,351 | 111,226 |
| Current maturities of long–term debt | 15,707 | 22,127 |
| Deferred revenues | 325,403 | 323,271 |
| Total current liabilities | 488,269 | 509,396 |
| Long–term debt, less current maturities | 743,816 | 737,432 |
| Deferred rent liability | 102,874 | 101,911 |
| Deferred income taxes | 800 | 1,637 |
| Other liabilities | 29,940 | 21,580 |
| Deferred revenues | 583,786 | 601,889 |
| Total liabilities | 1,949,485 | 1,973,845 |
| Stockholders' equity (deficit) | (1,463,390) | (1,474,276) |
| | $ 486,095 | $ 499,569 |

—30—

CONTACT:    Bally Total Fitness Corporation
Janine Warell (Investors), 773–864–6897
or
Matt Messinger (Media), 773–864–6850
www.ballyfitness.com

Created by 10KWizard Technology     www.10KWizard.com