## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BALLY TOTAL FITNESS HOLDING CORPORATION, | ) ) | |
| | ) | No. 05- |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| LIBERATION INVESTMENTS, L.P., LIBERATION INVESTMENTS, LTD., LIBERATION INVESTMENT GROUP LLC and EMANUEL R. PEARLMAN, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A TEMPORARY RESTRAINING ORDER

OF COUNSEL:

Laurie B. Smilan
Latham & Watkins LLP
Two Freedom Square
11955 Freedom Drive, Suite 500
Reston, Virginia  20190-5651
(703) 456-1000

Gregory P. Williams (#2168)
Williams@rlf.com
Raymond J. DiCamillo (#3188)
Diamillo@rlf.com
Elizabeth C. Tucker (#4468)
Tucker@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
10th & King Streets
Wilmington, Delaware 19899
(302) 651-7700
    Attorneys for Plaintiff Bally Fitness
    Holding Corporation

Dated:  December 5, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................... 1

I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE .................... 2

    A.    Pearlman and Hillman's Early Involvement With Bally ....................... 2

    B.    Pearlman Forms Liberation with Backing From Hillman ...................... 3

    C.    Independent Counsel for the Company's Audit Committee Announces
        Its Finding that Hillman Created a Culture of "Aggressive
        Accounting" at Bally while Pearlman Served as a Hillman Advisor and
        Company Consultant ......................................................................... 4

    D.    Liberation Announces Its Stockholder Proposal on the Eve of the
        Company's Issuance of Its Restated Financials .................................. 4

    E.    Bally Files Complaints Against Liberation in State and Federal Court ........... 5

II.    ARGUMENT .......................................................................................... 6

    A.    Bally Is Likely to Prevail on the Merits of Its Section 14(a) Claim ............... 7

        1.    The Stockholder Proposal Makes False and Misleading
            Statements about Delaware Law and the Company's Certificate
            of Incorporation ......................................................................... 9

        2.    The Stockholder Proposal Does Not Inform Investors of Critical
            Material Facts About Hillman and Pearlman ................................ 11

    B.    Bally Will Suffer Irreparable Injury if the Court Does Not Issue the
        Temporary Restraining Order ............................................................. 13

    C.    The Balancing of Hardships Weighs in Bally's Favor ......................... 14

    D.    The Public Interest Favors Entry of the Temporary Restraining Order ........... 15

CONCLUSION ............................................................................................... 16

i

## TABLE OF AUTHORITIES

### CASES

*American Telegraph & Telegraph Co. v. Winback & Conserve Program, Inc.*,
42 F.3d 1421 (3d Cir. 1994)...........................................................................................15

*Constructors Association of Western Pa. v. Kreps*,
573 F.2d 811 (3d Cir. 1978)........................................................................................7, 15

*In re Digital Island Sec. Litigation*,
357 F.3d 322 (3d Cir. 2004).............................................................................................4

*Edelman v. Salomon*,
559 F. Supp. 1178 (D. Del. 1983)...................................................................................13

*Elliott v. Kiesewetter*,
98 F.3d 47 (3d Cir. 1996)...............................................................................................15

*Gould v. American-Hawaiian Steamship Co.*,
535 F.2d 761 (3d Cir. 1976)..............................................................................................9

*Herskowitz v. Nutri/System, Inc.*,
857 F.2d 179 (3d Cir. 1988), *cert. denied*, 489 U.S. 1054 (1989)....................................9

*Ieradi v. Mylan Laboratoriess, Inc.*,
230 F.3d 594 (3d Cir. 2000)...............................................................................................3

*International Controls Corp. v. Vesco*,
490 F.2d 1334 (2d Cir. 1974).........................................................................................15

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964).............................................................................................7, 13, 16

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004)...........................................................................................15

*Krauth v. Executive Telecard, Ltd.*,
890 F. Supp. 269 (S.D.N.Y. 1995)..................................................................................13

*Lichtenberg v. Besicorp Group Inc.*,
43 F. Supp. 2d 376 (S.D.N.Y. 1999)...............................................................................12

*Mendell v. Greenberg*,
927 F.2d 667 (2d Cir. 1991)..........................................................................8, 12, 13, 15

*Mills v. Electric Automobile-Lite Co.*,
396 U.S. 375 (1970)..........................................................................................8, 13, 16

*Pabst Brewing Co. v. Jacobs*,
549 F. Supp. 1068 (D. Del. 1982) .................................................................................10

*Pennsylvania v. Brown*,
373 F.2d 771 (3d Cir. 1967) ...........................................................................................6

*In re Reliance Sec. Litigation*,
91 F. Supp. 2d 706 (D. Del. 2000) ..................................................................................9

*SEC v. Parklane Hosiery Co., Inc.*,
558 F.2d 1083 (2d Cir. 1977) ........................................................................................12

*TSC Industrial, Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .................................................................................................9, 12

*Temple University v. White*,
941 F.2d 201 (3d Cir. 1991) ..........................................................................................15

*Tootsie Roll Industrial, Inc. v. Sathers, Inc.*,
666 F. Supp. 655 (D. Del. 1987) ...............................................................................6, 7

## STATUTES

8 Del. Code Ann. § 141(a) .............................................................................................11

15 U.S.C. § 78n(a) ...........................................................................................................8

17 C.F.R. § 240.14a-9 ......................................................................................................8

Fed. R. Civ. P. 65(c) ........................................................................................................8

RLF1-2953117-1

## INTRODUCTION

An independent investigation conducted by the Audit Committee of plaintiff Bally Total Fitness Holding Corporation ("Bally" or the "Company") has laid responsibility for the Company's multiple accounting errors squarely at the feet of former Chief Executive Officer Lee Hillman and his Chief Financial Officer, John Dwyer. More specifically, Hillman and Dwyer "creat[ed] a culture within the accounting and finance groups that encouraged aggressive accounting," which has culminated in a protracted reaudit and restatement of financial statements that Bally issued during their tenure.

During Hillman's term as CEO, defendant Emanuel Pearlman served as Hillman's trusted advisor and as a financial and business consultant to the Company. In return, Hillman rewarded Pearlman with millions of dollars in consultant and deal fees, as well as valuable restricted stock. According to Pearlman, he and Hillman are "good friends." And, when Pearlman's consulting role was terminated shortly after Hillman's departure from Bally, Pearlman started Liberation Investment Group LLC, with backing from an investor group that included Hillman.

Now, Pearlman seeks to hijack Bally's proxy solicitation process to protect his "good friend" Hillman.[1] On the eve of the issuance of Bally's restated financial statements and at a time when Bally is poised to take action against Hillman and others, Defendants submitted a stockholder proposal ("Stockholder Proposal"), seeking to empower stockholders to remove Paul

---

[1] Rather than seeking to advance the interest of all stockholders, Defendants have historically acted to manipulate Bally's corporate machinery for their own financial gain. Under the guise of shareholder activism, Pearlman caused Liberation to pressure Bally to redeem its Stockholder Rights Plan, which precluded any stockholder from acquiring more than ten percent of Bally's outstanding stock. *See* Compl. ¶¶ 20-23. Although Liberation had expressly represented in SEC filings that it had no present intent to acquire more shares, it promptly acquired sufficient shares to trigger the vesting of 35,000 shares of restricted stock for Pearlman's personal benefit. *See id.* ¶¶ 21, 24.

1

Toback as Bally's CEO "effective immediately." In violation of bedrock Delaware law, the Stockholder Proposal illegally seeks to usurp the Board's power to appoint and remove the CEO.

At the same time, the Stockholder Proposal contains material misstatements and omissions. It is silent as to Hillman's ties to Liberation and his responsibility for the Company's accounting errors and does not disclose Pearlman's past and present relationship with Hillman. This is a flagrant attempt to trick investors into (i) believing that new management is responsible for Bally's historic accounting errors, and (ii) appointing new corporate leaders who will not seek relief from Hillman for his aggressive accounting practices.

Congress enacted Section 14(a) of the Securities Exchange Act of 1934 to preclude the making of material misstatements and omissions in proxy solicitations. Defendants have begun to seek shareholder support for the Stockholder Proposal in connection with Bally's upcoming annual meeting of stockholders, presently scheduled for January 26, 2006. The Stockholder Proposal, however, is illegal and contains materially misleading information that prevents the shareholders from properly evaluating it. Accordingly, on December 5, 2005, Bally filed a complaint in the Delaware Court of Chancery, alleging that the Stockholder Proposal is invalid and illegal. In addition, Bally is contemporaneously filing a complaint in this Court, alleging that Defendants have violated and are continuing to violate, *inter alia*, Section 14(a).

Thus, Bally seeks a temporary restraining order to preclude Defendants from soliciting proxies and stockholder support for the Stockholder Proposal until its complaints are resolved.

## I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A.    Pearlman and Hillman's Early Involvement With Bally.

Bally is a Chicago-based, Delaware corporation that owns and operates fitness centers nationwide. *See* Declaration of Paul A. Toback ("Toback Decl.") ¶ 3. From October

2

1996 to December 2002, Hillman served as Bally's President and CEO. *See id.* ¶ 4. All the while, Hillman retained Pearlman as a highly compensated financial and business employee consultant to the Company. Pearlman received millions of dollars in employee consultant and deal fees as well as valuable restricted stock. *See id.* According to Pearlman, he and Hillman are "good friends." *See* Ex. A hereto (J. Mullman, "Bad blood runs deep in Bally power struggle," Crain's Chicago Business, Aug. 25, 2005).[2]

Hillman left Bally in December 2002, and Toback took over as President and CEO. *See* Toback Decl. ¶¶ 1, 4. Pearlman's employee consultant relationship with Bally ended shortly thereafter. *See id.* ¶ 5.

**B.    Pearlman Forms Liberation with Backing From Hillman.**

With backing from an investor group that included Hillman, Pearlman then founded, and became managing member of, Liberation Investment Group LLC. *See* Ex. A hereto (J. Mullman, "Bad blood runs deep in Bally power struggle," Crain's Chicago Business, Aug. 25, 2005). Liberation Investment Group LLC is the general partner of Liberation Investments, L.P. (a Delaware partnership) and the investment advisor for Liberation Investments, Ltd. (a registered corporation in the Cayman Islands). (Liberation Investment Group LLC, Liberation Investments, L.P., and Liberation Investments, Ltd. are, collectively, "Liberation.") *See* Compl. ¶ 8. Liberation and Pearlman are owners of record of approximately 200 shares of Bally stock and beneficial owners of approximately 4.1 million shares. *See* Toback Decl. ¶ 6.

---

[2]    This Court may take judicial notice of newspaper articles. *See Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000).

3

C.    **Independent Counsel for the Company's Audit Committee Announces Its Finding that Hillman Created a Culture of "Aggressive Accounting" at Bally while Pearlman Served as a Hillman Advisor and Company Consultant.**

Earlier this year, an independent investigation concluded that Hillman and former Chief Financial Officer John Dwyer "were responsible for multiple accounting errors and creating a culture within the accounting and finance groups that encouraged aggressive accounting." *See* Form 8-K issued Feb. 9, 2005 (Compl. Ex. 22).[3]  As a result of the findings, the Company "decided to make no further payments to Hillman or Dwyer under their respective severance agreements" and stated that it would "evaluate its legal options with respect to" them. *See id.*

The Company completed its multi-year audit and filed its restated financial statements on November 30, 2005. *See* Form 8-K issued Dec. 1, 2005 (Compl. Ex. 24).

D.    **Liberation Announces Its Stockholder Proposal on the Eve of the Company's Issuance of Its Restated Financials.**

Each of Section 141(a) of the Delaware General Corporation Law ("DGCL") and Article SIXTH of Bally's Restated Certificate of Incorporation (the "Certificate of Incorporation") state that "[t]he business and affairs of the Corporation shall be managed by or under the direction of the ***Board of Directors*** . . . ." *See* 8 Del. C. § 141(a); *see also* Certificate of Incorporation (Compl. Ex. 23).  In addition, Article FIFTH of the Certificate of Incorporation provides that "the ***Board of Directors*** shall have the power to make, adopt, alter, amend, change or repeal the Bylaws of the Corporation by resolution adopted by the affirmative vote of a majority of the entire Board of Directors." *See* Certificate of Incorporation (Compl. Ex. 23) at Article FIFTH.

---

[3]    This Court may take judicial notice of documents required by law to be filed with the SEC. *See In re Digital Island Sec. Litig.*, 357 F.3d 322, 325 (3d Cir. 2004).

In late November 2005 - - just days before the Company's completion of its multi-year reaudit and filing of its restated financial statements - - Defendants notified Bally of their intent to introduce the Stockholder Proposal at the upcoming annual meeting of the Company's stockholders scheduled for January 26, 2006 (the "Annual Meeting"). *See* Compl. ¶ 28; Form DFAN14A filed Nov. 22, 2005 (Compl. Ex. 20). "If adopted, the [Stockholder] Proposal would (i) amend the . . . Bylaws . . . to afford ***stockholders*** the right to remove the Chief Executive Officer and President upon the affirmative vote of a majority of the Company's stock[holders]; (ii) prevent the Board of Directors of the Company from acting unilaterally to amend the Bylaws to eliminate the stockholder authority described in clause (i); and (iii) remove [Bally's] current Chief Executive Officer and President Paul A. Toback from office, effective immediately." *See* Compl. ¶ 29; Form DFAN14A filed Nov. 22, 2005, at 3 (Compl. Ex. 20).

Defendants also represented that their purpose in advancing the Shareholder Proposal was "to ensure the vitality of stockholder democracy." *See id.*; *see also* Schedule 14A filed Nov. 22, 2005, at Ex. 1 (Notice Letter), at 3 (Compl. Ex. 20). The only interest affirmatively identified is that they "may be deemed to have an interest in the Proposal insofar as the adoption of the Proposal by the stockholders is likely to yield more effective leadership of the Company, which would in turn increase the value of the Shares held by the [Defendants]." *See id.* at 4.

E.    **Bally Files Complaints Against Liberation in State and Federal Court.**

On December 5, 2005, Bally filed a complaint in the Delaware Court of Chancery seeking a declaratory judgment that the Stockholder Proposal is invalid and illegal under the

DGCL and the Company's Certificate of Incorporation.[4]  Bally is requesting that the Court of

Chancery expedite those proceedings. Bally also filed a complaint in this Court, alleging, *inter*

*alia*, that Defendants have violated Section 14(a) by misrepresenting Delaware law as well as the

terms of the Certificate of Incorporation; failing to disclose critical material facts about Hillman

and Pearlman; and misrepresenting Defendants' true motive for the Stockholder Proposal (*i e.*, to

prevent current management from taking action against Hillman and others for the accounting

errors leading to the Company's restatements of financial reports).[5]

## II.    ARGUMENT

A temporary restraining order is an emergency remedy issued "to preserve the

status quo until there is an opportunity to hold a hearing on the application for a preliminary

injunction." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987).  In

granting a temporary restraining order, the court "must attempt to minimize the probable harm to

---

[4]  This Court may take judicial notice of pleadings filed in state court. *See Pennsylvania v Brown*, 373 F.2d 771, 778 (3d Cir. 1967)

[5]  Bally has also alleged on information and belief that Defendants have failed to reveal their support for the insurgent slate of director candidates proposed by Pardus European Special Opportunities Master Fund L.P., Pardus Capital Management L.P., and Pardus Capital Management LLC ("Pardus"). On November 17, 2005, Pardus filed a filed a Form 14A disclosing its intent to nominate Donald Kornstein and two others as an insurgent slate of directors to be considered for election to the Bally Board at the Annual Meeting. These directors, if elected, would replace the chairperson of the Company's Audit Committee, Eric Langshur, who was appointed to the Board after Hillman's and Pearlman's departure. *See* Compl. ¶ 36. Pardus and Kornstein appear to have no prior relationship, but Pearlman and Kornstein clearly do. From 1994 until 2000, Kornstein served as the Chief Executive Officer, President, and director of Jackpot Enterprises, Inc., a company with which Pearlman was also involved as a financial and strategic development advisor. Pearlman himself has nominated Kornstein for director positions in the past. In 2003, Pearlman threatened a proxy fight and announced his intention to nominate an insurgent slate of director candidates for the Board of InterTan, Inc. Pearlman's nominees included not only Hillman, but also Kornstein. *See id.* ¶ 37.

Pearlman claims he is not working in concert with Pardus, and none of the Defendants has expressed any formal position concerning the election of Pardus' slate of director candidates. However, Pearlman and Pardus admit that Pearlman suggested that Kornstein should be nominated to the board. Upon information and belief, Pearlman fully supports the election of his long-time loyalist Kornstein to a director position, but has chosen to dispense with the inconveniences and requirements of the securities laws regarding the solicitation of proxies or the disclosure of that plan. *See id.* ¶ 38.

legally protected interests between the time that the motion for a preliminary injunction is filed and the time of the final hearing." *Constructors Ass'n of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978).

In this Circuit, "[g]enerally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll*, 666 F. Supp. at 658. In determining whether the entry of a temporary restraining order is warranted the court must consider whether: "(1) the movant has shown that there is a reasonable likelihood that it will succeed on the merits; (2) the movant has demonstrated that it will suffer irreparable harm absent the relief sought; (3) other parties will be substantially injured by the relief; and (4) where the public interest lies." *Id.* No one factor will determine whether the court will enter a temporary restraining order and rather, all of these elements must be balanced. *Constructors Ass'n*, 573 F.2d at 815. Under this sliding scale, the greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor. *See id.*

As set forth below, Bally has established that it is entitled to a temporary restraining order, restraining Defendants from soliciting proxies and shareholder support for the Stockholder Proposal. *See infra* at 16 (listing in detail the relief requested).

A.      **Bally Is Likely to Prevail on the Merits of Its Section 14(a) Claim.**

Section 14(a) "stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange."[6] *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964). The "provision was intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with

---

[6]    All emphasis is added and all internal quotations are omitted throughout this Memorandum unless otherwise noted.

'explanation to the stockholder of the real nature of the questions for which authority to cast his

vote is sought.'" *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 381 (1970); *see also Mendell v.*

*Greenberg*, 927 F.2d 667, 670 (2d Cir. 1991) ("A proxy statement should honestly, openly and

candidly state all the material facts, making no concealment of the purposes for the proposals it

advocates. Unlike poker where a player must conceal his unexposed cards, the object of a proxy

statement is to put all one's cards on the table face-up.").

      To address these broad remedial purposes, Section 14(a) and Rule 14a-9 prohibit

making misstatements or omissions of material facts in proxy solicitations. Section 14(a) states:

> It shall be unlawful for any person, by the use of the mails or by
> any means or instrumentality of interstate commerce or of any
> facility of a national securities exchange or otherwise, in
> contravention of such rules and regulations as the Commission
> may prescribe as necessary or appropriate in the public interest or
> for the protection of investors, to solicit or to permit the use of his
> name to solicit any proxy or consent or authorization in respect of
> any security (other than an exempted security) registered pursuant
> to Section 12 [§ 78*l*] of this title.

15 U.S.C. § 78n(a). Rule 14a-9 generally prohibits fraud in the solicitation of proxies, and

provides as follows:

> No solicitation subject to this regulation shall be made by means of
> any proxy statement, form of proxy, notice of meeting or other
> communication, written or oral, containing any statement which, at
> the time and in the light of the circumstances under which it is
> made, is false or misleading with respect to any material fact, or
> which omits to state any material fact necessary in order to make
> the statements therein not false or misleading or necessary to
> correct any statement in any earlier communication with respect to
> the solicitation of a proxy for the same meeting or subject matter
> which has become false or misleading.

17 C.F.R. § 240.14a-9.

Negligence is the standard of culpability under Section 14(a).[7]  *Herskowitz v.*

*Nutri/System, Inc.*, 857 F.2d 179, 189-90 (3d Cir. 1988), *cert. denied*, 489 U.S. 1054 (1989);

*Gould v. American-Hawaiian Steamship Co.*, 535 F.2d 761, 777-78 (3d Cir. 1976); *In re*

*Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 729 (D. Del. 2000).

An omission or misleading statement of fact is material "if there is a substantial

likelihood that a reasonable shareholder would consider it important in deciding how to vote."

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  A plaintiff need not prove "a

substantial likelihood that disclosure of the omitted fact would have caused the reasonable

investor to change his vote."  *Id.*  Rather, plaintiff must show "a substantial likelihood that, under

all the circumstances, the omitted fact would have assumed actual significance in the

deliberations of the reasonable shareholder."  *Id.*  In other words, "there must be a substantial

likelihood that the disclosure of the omitted fact would have been viewed by the reasonable

investor as having significantly altered the 'total mix' of information made available."  *Id.*

In this case, the Stockholder Proposal is materially false and misleading because

the solicitations misrepresent Delaware law and the terms of the Certificate of Incorporation, fail

to disclose critical material facts about Hillman and Pearlman, and misrepresent Defendants' true

motive for the Stockholder Proposal.

    **1.**    **The Stockholder Proposal Makes False and Misleading Statements
about Delaware Law and the Company's Certificate of Incorporation.**

The Stockholder Proposal flies in the face of Delaware law and the Certificate of

Incorporation of the Company and is thus false and misleading.  Section 141(a) of the Delaware

General Corporation Law and Article SIXTH of the Certificate of Incorporation are clear that

---

[7]   The heightened pleading standards imposed by the PSLRA do not apply to Rule 14a-9 claims.  *See In
re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 729 (D. Del. 2000).

"[t]he business and affairs of [the Corporation] shall be managed by or under the direction of [the] *Board of Directors* . . . ." *See* 8 Del. Code Ann. § 141(a); *see also* Certificate of Incorporation (Compl. Ex. 23) at Art. SIXTH. In addition, Article FIFTH of the Certificate of Incorporation provides that "the *Board of Directors* shall have the power to make, adopt, alter, amend, change or repeal the Bylaws of the Corporation by resolution adopted by the affirmative vote of a majority of the entire Board of Directors." *See* Certificate of Incorporation (Compl. Ex. 23) at Art. FIFTH.

Nonetheless, Defendants implicitly suggest to the shareholders that they have the power to amend the Bylaws to give themselves rights, to the exclusion of the Board. The Stockholder Proposal seeks to (i) amend the Bylaws to *afford stockholders the right* to remove the Chief Executive Officer and President upon the affirmative vote of a majority of the Company's stockholders; (ii) *prevent the Board of Directors* of the Company from acting unilaterally to amend the Bylaws to eliminate the stockholder authority described in clause (i); and (iii) *remove Toback* from office, effective immediately. *See* Form DFAN14A filed Nov. 22, 2005, at 3 (Compl. Ex. 20). But, as demonstrated in *Pabst Brewing Co. v. Jacobs*, 549 F. Supp. 1068 (D. Del. 1982), because none of the Stockholder Proposal's courses of action are permissible, Defendants have violated Section 14(a).

In *Pabst*, a committee of shareholders mailed to Pabst's shareholders a consent statement that solicited the shareholders' consent to the removal of Pabst's incumbent directors and the election of the committee's slate of nominees. *Id.* at 1070. In the consent statement, the committee told shareholders that the consents would remain in full force and effect for 7 ½ months. *Id.* at 1071. Under Section 213 of Delaware Corporation Law, however, such consents could remain in effect for a maximum period of 60 days. *Id.* Pabst sued the committee, alleging

10

that the statements were materially false and misleading in violation of Section 14(a) because the committee misstated the consent procedures set forth in Delaware law. *Id.*

This Court held that the committee materially misstated Delaware law, and therefore violated Section 14(a):

> Applying these standards, the Court concludes that the Consent Statement is materially misleading with respect to the time in which the consents will be effective. A reasonable shareholder may have given his written consent on the basis of the Committee's statement because he believed that if the consent process were to continue for a 7½ month period, the uncertainties which this procedure would foster would have a detrimental effect upon any potential transaction which the incumbent directors may be contemplating or negotiating. Thus, the Court concludes that the Revitalization Committee has violated Rule 14a-9.

*Id.* at 1073. In the instant case, the Shareholder Proposal is similarly materially misleading, with respect to the manner in which the Bylaws may be amended (and by whom) and the CEO ousted (and by whom). Any reasonable shareholder who consents to the Shareholder Proposal would do so under the mistaken belief that the Shareholder Proposal contained legitimate corporate governance options. This constitutes a violation of Section 14(a). *See id.*

## 2. The Stockholder Proposal Does Not Inform Investors of Critical Material Facts About Hillman and Pearlman.

Defendants are soliciting proxies for their Stockholder Proposal to oust Bally's current CEO without disclosing the material facts that: (i) Hillman fostered the culture of aggressive accounting at Bally that led to the protracted reaudit and restatement of financial statements that Bally issued during his tenure; (ii) Bally determined that Hillman was responsible for these accounting errors and may decide to take action against him; and (iii) Hillman is an investor in Liberation, and a "good friend" of Pearlman (*i.e.*, the sponsors of the Stockholder Proposal).

But a "reasonable shareholder would consider [this information] important in deciding how to vote." *TSC Industries*, 426 U.S. at 449. A reasonable shareholder made aware of these facts could deduce that Defendants desire to replace the CEO and to appoint new managers and Board members who will not seek to take action against Hillman - - not because the proposal is actually in the best interests of the Company. *See Mendell*, 927 F.2d at 674 (proxy solicitation seeking approval of merger violated Section 14(a) because it failed to disclose that the family, which owned a controlling block of shares, needed to raise cash to pay an estate tax liability; a "reasonable shareholder made aware of this liability could deduce that the . . . family desired a 'quick sale' for estate tax purposes, not because this, or any other sale would be in the best interests of the company or the shareholders"); *SEC v. Parklane Hosiery Co., Inc.*, 558 F.2d 1083, 1087-89 (2d Cir. 1977) (proxy statement seeking consent to a going private transaction contained material omissions because it did not disclose that the majority shareholder had large personal debts, and a reasonable shareholder could conclude that the overriding purpose of the scheme was to enable the shareholder to repay his debts); *Lichtenberg v. Besicorp Group Inc.*, 43 F. Supp. 2d 376, 388 (S.D.N.Y. 1999) (proxy statement seeking approval of a merger violated Section 14(a) because it did not fully disclose the financial windfall to the proponents of the merger).

In addition, a reasonable shareholder would evaluate Pearlman's history with Bally - - and his friendship with Hillman - - in deciding how to vote. Not only was Pearlman a close and highly paid advisor of Hillman during the period in which Hillman created the aggressive culture responsible for the Company's current accounting crisis, but the two remain close friends and business partners today. A reasonable shareholder made aware of these facts could choose to vote against the Stockholder Proposal based on a conclusion that Pearlman is

12

personally motivated to protect his friend (and perhaps himself) from the current Board and management. *See Mendell*, 927 F.2d at 674.

### B. Bally Will Suffer Irreparable Injury if the Court Does Not Issue the Temporary Restraining Order.

Bally will suffer irreparable injury if its shareholders are deprived of the opportunity to make a fully informed decision regarding the Stockholder Proposal. "Irreparable injury results from the use of false and misleading proxies when the free exercise of shareholders' voting rights will be frustrated." *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995); *see also Lichtenberg*, 43 F. Supp. 2d at 390 (S.D.N.Y. 1999). As this Court held in *Edelman v. Salomon*, 559 F. Supp. 1178, 1189 (D. Del. 1983):

> In *Mills v. Electric Auto-Lite*, 396 U.S. 375, 383, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970), the Supreme Court recognized that use of a solicitation which is materially misleading poses the kind of irreparable injury to stockholders which can justify injunctive relief prior to a shareholders' meeting. Where the violations of Section 14(a) are as clear as they are in this case, I believe that it is in the best interest of the stockholders and the public to allow a time for clearing the air and disseminating the information necessary to eradicate false impressions. While I do not rest my decision upon it, I also believe it is preferable for the stockholders to make a decision on how to cast their votes in the election of directors at a time when the confusion regarding cumulative voting has been cleared up.

Because Bally has shown that the deficiencies in Defendants' proxy solicitations are material, it has established the threat of irreparable harm. *See Krauth*, 890 F. Supp. at 287.

Moreover, the irreparable injury caused by Defendants' misleading proxy solicitations cannot by rectified by an action at law. Congress believed in enacting Section 14(a) that "[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *Borak*, 377 U.S. at 431. Bally's shareholders have no adequate remedy at law because they "would have been deprived of their statutory right to be free from

deceptive proxy solicitations and their corresponding right to an informed vote" in the absence of

injunctive relief. *Lichtenberg*, 43 F. Supp. 2d at 391. Money damages cannot adequately

compensate them for the loss of this fundamental right. *Id.* at 392 (money damages for violation

of Section 14(a) "would be less accurate, prompt, complete and efficient [than an injunction] –

and thus inadequate").

### C.    The Balancing of Hardships Weighs in Bally's Favor.

Because Bally has shown that it is likely to succeed on the merits, it need not

show that the balance of hardships tips decidedly in its favor. *See Constructors Ass'n*, 573 F.2d

at 815. However, an examination of the facts shows that the balance of hardships clearly weighs

in favor of Bally in any event.

With the Annual Meeting less than sixty days away, Bally anticipates that

Defendants may begin soliciting proxies at any time.[8] If the temporary restraining order is not

granted, Defendants will represent - - as they have already begun to do - - that the Stockholder

Proposal is a valid subject for stockholder action, and the stockholders' vote will be tainted with

misrepresentations and misleading information.

Additionally, the Defendants are attempting to usurp the powers of the Board of

Directors and oust the current CEO "effective immediately." These are drastic changes to

Bally's corporate structure that cannot be taken lightly. Without a temporary restraining order in

place, Bally will not be afforded the necessary protection to guard against these serious threats to

its stability.

Other the other hand, the Defendants will face little to no hardship from this

Court's entry of a temporary restraining order. As an initial matter, the Defendants are engaging

---

[8]    Indeed, the Stockholder Proposal states that Defendants are "prepared to continue [their] proxy
campaign." *See* Form DFAN14A filed Nov. 22, 2005 (Compl. Ex. 20).

in illegal and misleading activities to pursue their own interests. But even so, there is no harm to Defendants in maintaining the status quo while Bally's complaints are resolved. Defendants will not face any monetary loss or hardship from a postponement in pursuing the Stockholder Proposal. At worst, they will be delayed. This minimal hardship does not rise to the level of hardship Bally will face if it is not given time to protect its shareholders from the Defendants' misrepresentations and protect itself from intense internal disruption.[9]

### D.    The Public Interest Favors Entry of the Temporary Restraining Order.

"As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *American Tel & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004).

Here, the public interest favors entry of the temporary restraining order, because Bally's goal and the public interest are one in the same: to fully apprise the shareholders and "honestly, openly and candidly state all the material facts." *Mendell*, 927 F.2d at 670; *see also*

---

[9] Although a security bond may be required as a condition to a court entering a temporary restraining order, there are instances when a court has the discretion to waive the bond requirement. *See* Fed. R. Civ. P. 65(c) ("in such amounts as the court deems proper"). Courts in other circuits have found that a court may "dispense with security where there has been no proof of likelihood of harm to the party enjoined." *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974). As we have shown, the Defendants face little harm, and no monetary harm, from this Court's issuing a temporary restraining order. Defendants will not be harmed by the Court's delaying their pursuit of the illegal Stockholder Proposal, and requiring a bond from Bally will only result in additional hardship to Bally due to Defendants' actions.

This Circuit has found that when a court considers whether to require a bond, it should balance the "equities of the potential hardships that each party would suffer as a result of a preliminary injunction." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996). Particularly, the court should consider "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991). Due to the absence of any harm - - much less monetary harm - - to the Defendants, and the further hardships which the Court would impose on Bally if it required a bond, this Court should use its discretion to waive security for this temporary restraining order.

*Borak*, 377 U.S. at 431 (Section 14(a) "stemmed from the congressional belief that 'fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange'"); *Mills*, 396 U.S. at 381 ("[Section 14(a)] was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'").

## CONCLUSION

For the foregoing reasons, Bally respectfully requests that the Court enter a temporary restraining order, restraining Defendants from (i) representing to Bally's shareholders that the Stockholder Proposal is valid; (ii) soliciting proxies and shareholder support for the Stockholder Proposal; and (iii) distributing false and misleading information to Bally's shareholders through the Stockholder Proposal as well as requiring Defendants to issue corrective disclosures.

OF COUNSEL:

Laurie B. Smilan
Latham & Watkins LLP
Two Freedom Square
11955 Freedom Drive, Suite 500
Reston, Virginia  20190-5651
(703) 456-1000

Gregory P. Williams (#2168)
Williams@rlf.com
Raymond J. DiCamillo (#3188)
Dicamillo@rlf.com
Elizabeth C. Tucker (#4468)
Tucker@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
10th & King Streets
Wilmington, Delaware 19899
(302) 651-7700
   Attorneys for Plaintiff Bally Fitness
   Holding Corporation

Dated:  December 5, 2005

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December 2005, a true and correct copy of

the attached document was caused to be served on the following parties in the manner indicated:

### VIA HAND DELIVERY

LIBERATION INVESTMENTS GROUP LLC
c/o The Corporation Trust Company (its registered agent)
Corporate Trust Center
1209 Orange Street
Wilmington, DE   19801

LIBERATION INVESTMENTS. L.P.
c/o The Corporation Trust Company (its registered agent)
Corporate Trust Center
1209 Orange Street
Wilmington, DE   19801

STEPHEN E. JENKINS, ESQ.
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE   19899

### VIA FEDERAL EXPRESS

LIBERATION INVESTMENTS, LTD.
11766 Wilshire Blvd., Suite 870
Los Angeles, CA  90025

EMANUEL R. PEARLMAN
677 Alma Real Derive
Pacific Palisades, CA   90272

Raymond J. DiCamillo (#3188)