IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BALLY TOTAL FITNESS HOLDING CORPORATION, ) ) ) | |
| Plaintiff, ) ) ) | C.A. No. 05-841-JJF |
| v. ) ) | |
| LIBERATION INVESTMENTS, L.P., ) LIBERATION INVESTMENTS, LTD., ) LIBERATION INVESTMENT GROUP ) LLC and EMANUEL R. PEARLMAN, ) ) | |
| Defendants. ) | |

### THE DEFENDANTS' RESPONSE TO THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

The defendants (hereafter collectively "Liberation"), through their counsel, respectfully respond to the plaintiff's motion for a temporary restraining order as follows:

### I. Introduction.

1. Plaintiff, Bally Total Fitness Holding Corporation ("Bally" or the "Company"), filed this action at the end of the day on Monday, December 6, 2005. This action comes on the heels of two Chancery Court actions that forced Bally to hold an annual stockholders meeting and required Bally to produce books and records to Liberation (*See Liberation Investments, L.P. v. Bally Total Fitness Holding Corp.*, Del. Ch. C.A. No. 1636-N ((filed 9/16/05)) and *Liberation Investments, L.P. v. Bally's Total Fitness Holding Corp.*, Del. Ch. C.A. No. 1779-N ((filed 11/10/05)), and is brought

simultaneously with another Chancery Court action filed by Bally seeking almost identical relief discussed below.

2.   In any event, Bally's complaint purports to be brought under sections 14(a) and 13(d) of the Securities Exchange Act of 1934. The complaint (which in its recitation of facts ignores the prior Chancery actions) claims that Liberation, which owns approximately 12% of Bally's stock and is beginning a proxy solicitation campaign to remove Paul Toback as Bally's chief executive officer, has violated the law in doing so. According to Bally, Liberation has failed to confess in its not-yet filed proxy statement that (1) its proposal violates Delaware law; (2) it is secretly bringing the action for various bad purposes and (3) it or its principals have done various bad things to harm Bally.

3.   As noted above, Bally has also sued Liberation in a companion Chancery Court action that seeks an immediate declaration that Liberation's proposal to remove Mr. Toback as Bally's CEO actually does violate Delaware law. Chancellor Chandler is scheduled to hear Bally's application for expedition at 11:00 this morning. Time constraints prevent us from informing this Court about the outcome of that conference, but we will report it at the 2:30 hearing in this matter. We have attached as Exhibit 1 to this response a copy of the letter that Liberation submitted to Chancellor Chandler on the issue, which outlines why Bally's motion (and entire legal theory) is defective as a matter of Delaware law.

## II. **The Motion For a TRO Fails Every Legal Test.**

4.      Bally also seeks an immediate temporary restraining order in this case -- an order that greatly overlaps with the relief being sought by Bally in Chancery Court. That motion, however, is insufficient in every single aspect.

First, to the extent the motion is based on "factual" assertions -- assertions that are disputed by Liberation and which make extremely little sense as a logical matter -- it is not supported by either a verified complaint or an affidavit addressing the material issues. Thus, Bally is asking that this Court issue a TRO without any evidentiary support in the face of sharp disputes of facts.

Second, to the extent that the motion is based on the legal claim that Liberation's proposal is invalid under Delaware law, Bally's papers do not even attempt to explain its Delaware law argument. Instead, Bally apparently wants the Court to assume that Bally will win that argument in Chancery Court and to issue a pre-emptive federal TRO based upon that assumption. Moreover, to the extent that Bally wants Liberation to confess that its proxy campaign is based on an improper motive (which Liberation absolutely denies), the law is absolutely clear that proxy contestants do not have to engage in "self-flagellation."

Third, Bally has made no showing on the most important issue of all -- why it will suffer such severe irreparable harm that this matter cannot be addressed at a preliminary injunction hearing or at some time after the Chancery Court has had a chance to rule on

the legality of Liberation's proposal. It tells the Court that false and misleading information in a proxy statement can constitute irreparable harm, but it makes no attempt to address why such harm will occur today. Liberation has not yet begun soliciting proxies -- indeed it is only in the process of submitting its proxy materials to the SEC -- the Chancery Court has not yet ruled on Bally's theories about Liberation's proposals, and Liberation has not yet had the opportunity to show that many of the "facts" in the complaint are entirely invented. Why then must a TRO immediately issue? Bally does not even address the question.

### A. The Standards for a Temporary Restraining Order.

5.   The standards for a TRO are not in dispute. In order to be granted a TRO, Bally must show that: (1) there is a reasonable likelihood that it will succeed on the merits; (2) it will suffer immediate irreparable harm if the relief is not granted; (3) Liberation will not be substantially harmed by the entry of a temporary restraining order; and (4) the entry of a TRO will serve the public interest. *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 658 (D.Del. 1987). And the burden remains on Bally at all times: "Because temporary restraining orders and preliminary injunctions are extraordinary remedies, they are sparingly granted and only after a strong showing of necessity." *Id.* Not only has Bally failed to meet those requirements, it has failed to meet any of the individual elements required for its requested relief.

### B. *Bally Has Failed to Introduce Any Evidence on the Material Points at Issue.*

6. At a most basic level, Bally's motion fails because it has not introduced any actual evidence on any of the material points in dispute. Yes, Bally's unverified complaint has made many allegations. And yes, Bally has filed a "declaration" of Mr. Toback, its CEO. But that is the only sworn document submitted by Bally and it does not speak -- indeed, it does not purport to speak -- to any of the material issues at hand. It merely gives Mr. Toback's employment background, briefly talks about Bally, provides some non-controversial facts (albeit in a somewhat contentious way) about Liberation's Mr. Pearlman, and recites how many shares of stock Liberation owns.

7. It is utterly silent, however, on the material facts of the complaint. Bally claims, among other things, that Liberation is waging its proxy fight to remove Mr. Toback so that Bally will not institute proceedings against Lee Hillman, Bally's prior CEO, and it says that Liberation's as yet-unfiled proxy material is/will be defective, because it does not disclose that "fact." Yet that is a "fact" which Bally simply invents -- it supplies no evidentiary support for it. Moreover, the claim is based on the preposterous assumption that removal of one officer will change the Board's views about whether to pursue a Company claim! Why would the other directors of the Company change their minds on this course of action (if indeed they have taken a position at all on the issue) simply because Mr. Toback has been renewed as CEO ?

8. Similarly, Bally asserts that Liberation's future proxy material is/will be defective because it will fail to admit that Liberation acquired its stock to cause certain restricted stock held by Mr. Pearlman to vest. Again, this is pure speculation and name-calling without evidentiary support. And again, Toback is silent on it.

9. Courts do not act without evidence -- unsworn allegations simply will not support a restraining order. *See Clark v. U.S. Bank Nat'l Assoc.*, 2004 WL 1380166, *7 (E.D. Pa. June 18, 2004) (holding that conclusory allegations "are simply not enough at [the] preliminary injunction stage"); *Donovan v. Maisel*, 559 F.Supp. 171, 174 (D.Del. 1982) (holding that conclusory allegations do not satisfy the requirements necessary for equitable relief). On this basis alone the TRO should be denied. *Accord Hribor Trucking, Inc. v. Teamsters, Chaffeurs & Helpers*, 379 F. Supp. 993, 996 (E.D. Wisc. 1974) ("A temporary restraining order should not be issued in doubtful cases where substantial issues of fact persist").

10. In addition, all of these allegations are based upon the assumption that Liberation should be required to confess alleged wrongdoing in its proxy materials. But the law holds precisely to the contrary. As then-District Judge Stapleton said in *Edelman v. Salomon*: "I do not suggest that management needs to engage in self-flagellation or must accept its adversary's characterization of its conduct. Clearly that is not what the law requires." 559 F.Supp. 1178, 1187 (D.Del. 1983). Thus, Bally's entire theory on these issues is wrong. The securities laws simply do not require proxy contestants to draft their materials to the other side's liking.

### *C. The TRO is Based Upon the Assumption that It Will Prevail in Chancery.*

11.     Bally's application is also apparently based upon the assumption that it will prevail on its Chancery Court claim that Liberation's proposal to amend the by-laws and remove Mr. Toback is illegal under Delaware law. Or at least that seems to be what Bally wants this Court to assume, since it does not set forth its argument for illegality in its papers here (despite having provided the Chancery Court with a lengthy brief on the subject).

12.     Clearly, no injunction can issue on the assumption that the moving party will prevail on the merits of an argument being made in another court. Moreover, we believe that Bally has no real chance of prevailing in Chancery Court at all. As the attached letter to Chancellor Chandler shows, § 142 of the Delaware General Corporation Law specifically allows officers to be appointed and removed in accordance with the provisions of Bally's by-laws, and the legislative history on the subject is clear: "Nothing in the statute requires officers to be elected by the directors (although this is normal practice) or prohibits stockholders from choosing the officers . . . ." Folk Ward & Welch, The Delaware General Corporation Law, § 142.4 (4th ed. 2005).

13.     In short, there is no reason at all to assume that Bally will be successful in its argument in Chancery Court. Bally's stockholders are allowed to amend the by-laws to remove Mr. Toback, and it does not violate the proxy laws to say so.

7

### *D. Bally Will Not Suffer Immediate Irreparable Harm, but Liberation Will.*

14. Nor will Bally suffer immediate irreparable harm if it has to wait for a preliminary injunction hearing or a post-meeting remedy. Bally's claim to irreparable harm in that regard is transparently thin. It cites *Edelman v. Salomon* for the proposition that a Court will not necessarily wait until after a stockholders meeting to require false proxy disclosures be fixed. And that is true enough. But the only reason for the holding there was that the Court found the proxy violations to be clear on their face, and thus there was no reason to wait until after the meeting to address them. 559 F. Supp. at 1189.

15. It is undisputed, though, that a Court <u>may</u> decide to wait until after an annual meeting to address proxy issues since, if the whole issue has not already been mooted, it can always order a new meeting. As Judge Weinfeld of the Southern District of New York said in *Plant v. Bregman*:

> "[T]o allow an election to proceed in the face of allegations of improper solicitations and misleading proxy materials does not in and of itself work an irreparable injury on the party challenging the materials. The Court possesses the power, if necessary, to void the election, order resolicitation, and otherwise 'unscramble this kind of transaction'."

490 F.Supp. 265, 271 (S.D.N.Y. 1980).

*Edelman*, by contrast, dealt with the situation of a clear violation of the proxy laws. That decision has no application here, where there is not even a proxy statement yet, the Chancery Court has not yet ruled on the Delaware law issue underlying Bally's argument, there is no evidentiary record at all, and the parties sharply dispute the facts.

8

16. Moreover, this is an application for a TRO -- not a preliminary injunction -- and the law is clear that no TRO should issue if there is time to hold a preliminary injunction hearing. *See Loral Corp. v. Sanders Assocs., Inc.*, 639 F. Supp. 639, 642 n.7 (D. Del. 1986). Bally has shown no reason to believe that it will suffer irreparable harm in the time before a preliminary injunction can be held. Even if such a determination had to be made before the meeting is held – and there is no argument other than unsupported contentions of harm that it must – there is time to bring on a preliminary injunction motion before the meeting. By contrast, however, Liberation and all Bally shareholders who want Mr. Toback removed as the CEO will unquestioningly be hurt by an injunction since Liberation will not be able to initiate its proxy campaign.

### E. There is No Reason for This Court to Get Involved at This Time.

17. Finally, there is no reason for this Court to get involved at this time. What Bally really wants is a declaration that Liberation's proposal is illegal under Delaware law and a corresponding injunction forbidding it from soliciting proxies. But that makes no sense. If the Chancery Court decides to hear the issue now and rules the proposal proper -- the overwhelming likelihood given the clear statutory language -- then there will be no injunction at all. And if the Chancery Court declares the proposal to be illegal, Liberation will have no reason to solicit proxies so this action will be moot.

18. Of course, the Chancery Court might decide that there is no reason to rule on this issue until after the election, effectively finding that there is no irreparable harm in waiting for such a ruling. If it does that <u>and</u> the proposal wins <u>and</u> Chancery Court

concludes that the proposal violated Delaware law, there will still be no need for this Court to get involved.

19. Thus, in the end, it is very difficult to understand why Bally even filed this proceeding. Liberation respectfully submits that the first question that Bally needs to answer at the hearing is, "Why exactly are we here?" It is a question that is not easily answered.

20. For the foregoing reasons, Liberation respectfully requests that Bally's request for a TRO be denied.

ASHBY & GEDDES

/s/ Stephen E. Jenkins (I.D. #2152)
_____
Stephen E. Jenkins (I.D. #2152)
Steven T. Margolin (I.D. #3110)
Lauren E. Maguire (I.D. #4261)
Andrew D. Cordo (I.D. #4534)
222 Delaware Avenue -- 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
*Attorneys for Defendants*

OF COUNSEL:
Michael H. Diamond
Kenneth J. Baronsky
Adam R. Moses
MILBANK, TWEED, HADLEY & MCCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000

Dated: December 7, 2005
164317

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2005, **THE DEFENDANTS' RESPONSE TO THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** was served upon the below-named counsel of record by hand delivery and electronic filing:

Raymond J. DiCamillo
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

                              */s/ Steven T. Margolin (#3110)*
                              _____
                              Steven T. Margolin (#3110)

164308