EXHIBIT 2

TO THE DEFENDANTS' RESPONSE TO

THE PLAINTIFF'S MOTION FOR

A TEMPORARY RESTRAINING ORDER

Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Maurice L. CLARK, Plaintiff,
v.
U.S. BANK NATIONAL ASSOCIATION and Ameriquest Mortgage Company, Defendants.
No. CIV.A. 03-5452.

June 18, 2004.

MEMORANDUM

ROBERT F. KELLY, Sr. J.
*1 Presently pending before this Court is the Emergency Motion for Preliminary Injunction of Plaintiff Maurice Clark ("Clark"). For the following reasons, Clark's Motion will be denied.

I. *BACKGROUND*

Clark filed a Complaint against U.S. National Bank Association ("U.S.Bank") and Ameriquest Mortgage Company ("Ameriquest") (collectively the "Defendants"). The four-Count Complaint set forth claims for violation of the Truth-In-Lending Act ("TILA")(Count I), fraud (Count II), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UDAP")(Count III) and breach of fiduciary duty (Count IV). The aforementioned claims revolve around an April 2002 mortgage transaction between Clark and Ameriquest, that Clark entered into in order to pay off delinquent debts.

Plaintiff is the owner of a house located at 235 North Hills Avenue in Glenside, Pennsylvania that he inherited from his parents. According to Clark, Ameriquest approached him in April 2002 about the possibility of a loan. The loan salesperson who contacted Clark on behalf of Ameriquest was George Thomas ("Thomas"). At the time of the initial contact between Clark and Thomas, Clark was approximately $5000 in arrears on his real estate taxes and was seeking a loan to pay off this debt. Thomas met with Clark on two occasions at Clark's residence in furtherance of a possible loan/mortgage transaction. Thomas emphasized to Clark that Ameriquest could only provide a loan if Clark refinanced all of his debts, including the previous mortgage on his residence.

On April 9, 2002, Ameriquest provided Clark with a residential home loan in the amount of $83,200 that refinanced all of Clark's debts. At the closing, Clark voluntarily executed approximately thirty documents evidencing the loan transaction, including an Adjustable Rate Note ("Note") and a Mortgage. The Note specified that Clark would need to make monthly payments in the amount of $791.71 in order to repay the loan. Morever, Clark was aware that Ameriquest and any successors had the right to foreclose upon and sell Clark's property if he did not make the required monthly payments. In accordance with the loan transaction, Ameriquest paid $73,992.49 to Clark's creditors, including Clark's prior mortgage company and the taxing authorities that Clark owed.

Subsequently, the Note and the Mortgage reflecting the loan were assigned to U.S. Bank. Further, approximately six months after the closing of the transaction, Clark defaulted on the loan when he stopped making mortgage payments. Specifically, Clark has not made a mortgage payment since December 2002. As a result of Clark's default, U.S. Bank instituted a mortgage foreclosure action against Clark in the Court of Common Pleas of Montgomery County. Clark elected not to contest the foreclosure proceeding and judgment was entered against him on June 4, 2003.

After U.S. Bank scheduled a sheriff's sale pursuant to the foreclosure judgment, Clark filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania. This action temporarily stayed the scheduled sheriff's sale. However, on March 31, 2004, the Bankruptcy Court Judge granted U.S. Bank's Motion for Relief from the bankruptcy stay and the Judge explicitly allowed for a sheriff sale to take place on Clark's residence pursuant to the Defendants' mortgage. Interestingly, Clark has taken no further action (i.e.appeal) in regards to this Bankruptcy Court Order or the foreclosure judgment in the state court.

Clark filed his Complaint against the Defendants in this Court on September 30, 2003. On November 10, 2003, Clark filed an Amended Complaint. On January 8, 2004, this Court denied Defendants'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00841-JJF   Document 9-3   Filed 12/07/2005   Page 3 of 9

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Motion to Dismiss. Further, on May 28, 2004, Clark filed the instant Motion for Preliminary Injunction Against Foreclosure of his Home in an attempt to enjoin a scheduled sheriff's sale of his residence on June 30, 2004. On June 7, 2004, Defendants filed their Response to Clark's Motion and opposed the Preliminary Injunction. The Court held a Hearing and heard Oral Argument concerning the instant Motion on June 10, 2004. FN1

> FN1. At the Hearing/Oral Argument, Clark was the only witness to testify.

II. *STANDARD FOR PRELIMINARY INJUNCTION*

*2 The standard for a district court's consideration of a preliminary injunction motion is well established in this Circuit. In order to grant preliminary injunctive relief, the district court must be convinced that the following four factors favor granting the request for a preliminary injunction: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Shire U.S. Inc. v. Birr Labs., Inc.,* 329 F.3d 348, 352 (3d Cir.2003). "Whether or not a court should grant a preliminary injunction under the four factor test is committed to the sound discretion of the trial court." *Med. Soc'y of N.J. v. Mottola,* No. 04-2126, 2004 WL 1246015, at *12 (D.N.J. June 8, 2004)(citing *Shire,* 329 F.3d at 352). The moving party has the burden to prove that all elements needed for a preliminary injunction are satisfied. *N.J. Hosp. Ass'n v. Waldman,* 73 F.3d 509, 512 (3d Cir.1995). Finally, "a court must always be mindful that an injunction is 'an extraordinary remedy which should be granted only in limited circumstances.' " *Med. Soc'y of N.J.,* 2004 WL 1246015, at *12 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989)).

III. *DISCUSSION*

In this Preliminary Injunction Motion, Clark argues that this Court should grant his preliminary relief because the four factors in the aforementioned test weigh in favor of a preliminary injunction. In the Response to this Motion, Defendants claim that Clark's Motion must be denied for the following reasons: (1) this Court is barred from issuing an injunction pursuant to the Anti-Injunction Statute, 28 U.S.C. § 2283 ("Anti-Injunction Act"); (2) the Bankruptcy Court has permitted Defendants to proceed with the sheriff's sale; and (3) Clark's claim for injunctive relief fails on the merits based on the four-factor preliminary injunction standard. This Court disagrees with Defendants' argument that the Bankruptcy Court's Order, permitting a sheriff's sale of Clark's residence to take place, has any bearing on this Court's resolution of the instant Motion. Nevertheless, this Court agrees with the Defendants that the Anti-Injunction Act and Clark's failure to meet his burden under the four-factor preliminary injunction standard necessitate that Clark's request for a preliminary injunction of the scheduled sheriff's sale be denied. The Court will now address these two issues in turn.

A. Anti-Injunction Act

*3 The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. It is clear that the three exceptions stated in the Anti-Injunction Act are to be construed narrowly. *In re Diet Drugs,* 282 F.3d 220, 231 (3d Cir.2002). The Anti-Injunction Act " 'is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.' " *In re Prudential Ins. Co. of Am. Sales,* 314 F.3d 99, 103 (3d Cir.2002)(citing *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 F.3d 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)).

In this case, Clark seeks to enjoin the sheriff's sale of his residence that is scheduled to take place in accordance with the mortgage foreclosure judgment that was entered against him by the state court. The sale qualifies as a judicial proceeding under the Anti-Injunction Act since the "sheriff is part of the Commonwealth of Pennsylvania's unified judicial system." *Clark v. Court of Common Pleas of the County of Chester,* No. 91-6246, 1991 WL 209781, at *2 (E.D.Pa. Oct.11, 1991). "The sheriff will be selling the property pursuant to a judgment of the court of common pleas.... The sale of plaintiff's property, to satisfy the judgment against him, represents the final chapter of the [Defendants'] judicial proceedings against plaintiff...." *Id.*

The Anti-Injunction Act simply does not allow federal courts to enjoin state court proceedings,

Not Reported in F.Supp.2d                                                                                              Page 3
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

including mortgage foreclosure actions, absent the application of an exception under the statute. *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 131-132 (5th Cir.1990); *Ungar v. Mandell,* 471 F.2d 1163, 1165 (2d Cir.1972); *Clark,* 1991 WL 209781, at *2; *Nixon v. Individual Head of St. Joseph Mortgage Co., Inc.,* 612 F.Supp. 253, 255 (N.D.Ind.1985). In this case, Clark has not directed this Court to any exceptions to the Anti-Injunction Act that are applicable. Moreover, this Court finds that none of the narrowly construed exceptions are applicable to the instant case. Thus, pursuant to the Anti-Injunction Act, this Court is barred from issuing a preliminary injunction against the June 30, 2004 sheriff's sale of Clark's property.

B. Analysis of Clark's Claim Under the Preliminary Injunction Standard

Outside of the Anti-Injunction Act, this Court also finds that denial of Clark's Motion is appropriate based on the four-factor preliminary injunction standard. As previously discussed, the moving party must convince the district court that all of the following four factors weigh in favor of the extraordinary remedy of a preliminary injunction: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Shire,* 329 F.3d at 352. This Court finds that Clark has failed to meet his burden pursuant to this well established standard. Most importantly, at this stage in the litigation, Clark has failed to prove that he has a reasonable probability of prevailing on the merits of his claims. This Court will now address each of the four factors that comprise the preliminary injunction standard.

1. Likelihood of Clark's Success on the Merits

*4 The contours of this factor have been explored in cases in this Circuit. The Court of Appeals for the Third Circuit ("Third Circuit") has emphasized that "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking [injunctive] relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Oburn v. Shapp,* 521 F.2d 142, 148 (3d Cir.1975). " 'Reasonable probability' is used in the opinions interchangeably with 'substantial' likelihood of success." *Air Prods. and Chem., Inc. v. Inter-Chem. Ltd.,* No. 03-6140, 2003 WL 22917491, at *8 (E.D.Pa. Dec.2, 2003) (citations omitted). Specifically, " '[p]robability of success' implies that the moving party, usually the plaintiff, must have a very clear and strong case." *Id.* (citations omitted). In the current Motion, Clark argues that he has a reasonable probability of success on his TILA, UDAP and fraud claims. This Court will now address each of these substantive claims and explain why Clark has not met his burden of proving that he has a reasonable probability of succeeding on the merits of these claims.

a. Clark's TILA Claim

The TILA mandates that lenders provide specific disclosures to prospective borrowers concerning the cost of credit. 15 U.S.C. § 1601, *et seq.* Significantly, for purposes of this case, the TILA specifies that certain costs must be included as part of the finance charge that is disclosed to any prospective borrower. *Id.* § 1605. The borrower may have a mortgage rescinded and possibly voided by a court when these costs are not properly included or any other necessary disclosures are not made pursuant to the TILA. *Id.* § 1635(b); *Apaydin v. Citibank Fed. Savs. Bank,* 201 B.R. 716, 724 (Bankr.E.D.Pa.1996). In this case, the heart of Clark's TILA claim is that the cost of property insurance was improperly excluded from the finance charge that was disclosed to him as part of the loan process. As will be discussed, in arguing the instant Motion, Clark has not shown that he has a reasonable probability of succeeding on the merits of this claim.

TILA and its accompanying regulations state that premiums for property insurance may be *excluded* from the calculation of the finance charge if "a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained." 15 U.S.C. § 1605(c); 12 C.F.R. § 226.4(d)(2). In this case, Clark argues the property insurance cost was improperly excluded from the finance charge because (a) the $585 cost for insurance was not disclosed as mandated by the TILA and (b) Clark was not given a choice of insurers as required by the TILA. Thus, Clark argues that he is entitled to rescind the mortgage and possibly have it voided by this Court because of Ameriquest's technical violations of the

Case 1:05-cv-00841-JJF   Document 9-3   Filed 12/07/2005   Page 5 of 9

Not Reported in F.Supp.2d                                                                           Page 4
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

TILA.

At this stage of the litigation, the record belies Clark's arguments that Ameriquest committed TILA violations by failing to make appropriate disclosures when excluding the insurance cost from the finance charge on Clark's loan documentation. First, concerning the disclosure of the cost of insurance, Clark did receive "a clear and specific statement in writing" disclosing the cost of insurance. Specifically, the cost of insurance was clearly shown on the HUD-1 Settlement Statement (in box 1506) that Clark signed during the loan process. (Prelim. Inj. Hr'g Ex. P-8). Moreover, at the Hearing, Clark noted that he took specific notice of the $585 insurance cost on this form. (Prelim. Inj. Hr'g Tr. at 20).

*5 Second, in relation to the disclosure of Clark's ability to choose his insurer, Clark did receive "a clear and specific statement in writing" disclosing that he had a choice of insurers. Notably, the TILA Disclosure Statement, which Clark concedes he received stated that "you may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company." (Prelim. Inj. Hr'g Ex. P-7). Clark acknowledges this statement was on the TILA Disclosure Statement, but claims that he was not given a bona fide choice of insurers because Ameriquest's salesperson, Thomas, had come to the loan closing with loan documentation filled out evidencing insurance coverage through a specific insurer (Sidney Rosenfeld). Moreover, Clark claims that he had no choice because Thomas told him at the closing that this is the insurer that he had to obtain coverage through because this was who Ameriquest always used. This Court finds that Ameriquest appropriately disclosed to Clark that he had a choice of insurers on the TILA Disclosure Statement and it was, therefore, in compliance with the TILA. 15 U.S.C. § 1605(c). The fact the loan documentation was filled out prior to the closing and included Ameriquest's usual insurer does not indicate that Ameriquest committed a TILA violation. In fact, this became important because Clark stated at the Hearing he had not lined up any insurance coverage on his own prior to the closing. (Prelim. Inj. Hr'g Tr. at 41). Further, any oral representations made by Thomas concerning Clark's choice of insurers are negated by the fact that Clark signed a document at the loan closing that directed him not "to rely on any representations that are not in writing." (Prelim. Inj. Hr'g Ex. P-15). Additionally, at the loan closing, Clark also signed a document entitled "Important Notice to Borrower(s)" that stated "[t]o protect you (Borrower(s)) and us (Lender) from misunderstandings or disappointments, any agreements we have reached covering this loan transaction are contained in the loan documents you have signed today. Your loan documents are the complete statement of the loan agreement reached between us." (*Id.* P-24).

In sum, this Court finds that Ameriquest complied with the TILA in excluding the insurance cost from the finance charge. Specifically, pursuant to the TILA, Ameriquest gave Clark "a clear and specific statement in writing" disclosing both his insurance cost and the fact that he had a choice of insurers. 15 U.S.C. § 1605(c). Therefore, at this stage in the litigation, Clark has not shown that he has a reasonable probability of succeeding on the merits of his TILA claim.

b. Clark's UDAP Claim

*6 The UDAP is Pennsylvania's basic consumer protection law. In general, the statute protects consumers of goods and services from "unfair or deceptive acts and practices." 73 PA. CONS.STAT. ANN. § 201-1, *et seq.; In re Patterson,* 263 B.R. 82, 91 (Bankr.E.D.Pa.2001). Clark's central contention pursuant to the UDAP is that Ameriquest violated this Pennsylvania statute because it was allegedly deceptive in making a mortgage loan to Clark when it was obvious that he could not repay the loan. Specifically, Clark alleges that Ameriquest perpetuated a predatory lending scheme to take his property from him because the company allegedly knew a foreclosure would be the end result of the loan. As will be discussed, in arguing the instant Motion, Clark has not shown that he has a reasonable probability of succeeding on the merits of this claim.

The UDAP allows a private action to be brought by any person who purchases goods or services and suffers any ascertainable loss of money or property, as the result of any act or practice declared *unlawful* pursuant to the statute. FN2 73 PA. CONS.STAT. ANN. § 201-9.2 (emphasis added). Section 201-3 of the UDAP interprets "unlawful" as "unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined by Section 201-2(4) of the UDAP. *Id.* § 201-3. In turn, Section 201-2(4)(i-xxi) contains a list of specific types of practices deemed "unlawful" pursuant to the statute. In this case, Clark's primary argument under the UDAP is that Ameriquest committed an unlawful act under the catch-all provision of Section 201-2(4) of the UDAP.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

The catch-all provision makes unlawful "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi). Clark claims that the following alleged conduct of Ameriquest during the mortgage transaction at issue was deceptive under the UDAP's catch-all provision: (1) providing a mortgage loan to Clark when he couldn't afford repayment; (2) use of excessive and superfluous documentation for the loan transaction; (3) presenting the loan documents to Clark for the first time at closing; and (4) knowingly having Clark sign a loan application containing false income information.

> FN2. Notably, the Third Circuit has made it clear that mortgage transactions fall within the scope of the UDAP. *In re Apgar,* 291 B.R. 665, 683 (Bankr.E.D.Pa.2003).

At this stage in the litigation, Clark has not convinced this Court that it has a reasonable probability of success in proving a UDAP violation based on the aforementioned conduct. First, the current record does not suggest that either Thomas or Ameriquest knew that Clark could not afford this loan. In fact, at the Hearing, Clark testified that he had been paying approximately $600 per month to pay off his previous mortgage on his residence. The new payment on the Ameriquest mortgage loan (a loan which paid off the prior mortgage loan of approximately $65,000) was $791.71. This increase in payment from approximately $600 to $791.71 does not convince this Court that Clark has a strong claim that Ameriquest knew Clark could not afford this loan and that it, therefore, was deceptive under the UDAP catch-all provision. Second, Clark cites no authority for the proposition that the use of numerous loan documents qualifies as deceptive under the UDAP. Moreover, as Defendants indicate in their response to the Instant Motion, Defendants are obligated to make certain disclosures involving transactions of this type. (Defs' Mem. Opp. Prelim. Inj. at 16). Third, Clark cites no authority for the proposition that the presentation by lenders of loan documents to borrowers, for the first time at a loan closing, qualifies as deceptive pursuant to the UDAP. Moreover, at the Hearing, Clark admitted that at no point during the closing did he tell Thomas he wanted additional time to read through the loan documents either because of the number of documents or because of their substance. (Prelim. Inj. Hr'g Tr. at 39). Clark has not convinced this Court that he was forced into the loan transaction or presented the documents in a deceptive manner pursuant to the UDAP. Finally, at this stage in the litigation, there is insufficient evidence to support Clark's claim that Thomas or Ameriquest knowingly had Clark sign a loan application with false income information. The crux of this claim is that Ameriquest knowingly had Clark sign loan documents that represented income from a nonexistent home business known as "Maurice's Woodworking." As an initial matter, Clark cites no authority for the proposition that this type of alleged conduct would fall under the realm of the UDAP. Moreover, the fact that Clark acknowledged this business on numerous loan documents indicates he was well aware of the representation he was making concerning his income. (Prelim. Inj. Hr'g Exs. P-29, P-30, P-35). FN3 Thus, at this stage in the litigation, there is insufficient evidence to support Clark's claim that Ameriquest was deceptive under the UDAP based on this representation of income from a home business.

> FN3. Notably, Clark signed a "Stated Income" loan document at closing that *only* contained the following statement on the document: "I, Maurice L. Clark, make $2500.00 per month as a woodworker." (Prelim. Inj. Hr'g Ex. P-35). This simplistic document displays that Clark was well aware of the exact representation he was making as to his monthly income from a home business.

At this preliminary injunction stage, Clark has not presented sufficient evidence to demonstrate that Ameriquest was deceptive under the UDAP in relation to the mortgage transaction at issue. Clark has not shown that he has a reasonable probability of success in proving that Ameriquest engaged in any unlawful fraudulent or deceptive conduct as defined by the statute. 73 PA. CONS.STAT. ANN. § 201-2(4)(i-xxi). Thus, this Court finds that Clark has not met his burden of proving that a preliminary injunction is appropriate relating to the UDAP claim.

c. Clark's Fraud Claim

*7 According to Pennsylvania law, the elements of fraud are as follows: (1) a representation; (2) which is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or recklessness as to whether it was true or false; (4) made with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00841-JJF    Document 9-3    Filed 12/07/2005    Page 7 of 9

Not Reported in F.Supp.2d                                                                                                        Page 6
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

reliance. *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994). In this case, Clark makes claims of fraud against Ameriquest due to the following alleged representations of its salesperson, Thomas: (1) that taking a loan out with Ameriquest would be beneficial to Clark, (2) that Clark qualified for a mortgage from Ameriquest and (3) that Thomas would have the payment lowered on the loan after a short period of time. As will be discussed, in seeking the present preliminary injunction, Clark has not shown that he has a reasonable probability of succeeding on the merits of this claim.

Clark has not met his burden at this preliminary injunction stage for a variety of reasons. As an initial matter, even if Clark could prove that Thomas made the representations concerning the beneficial nature of the loan and his qualifications for the loan, he has not produced sufficient evidence to show that these statements were made by Thomas with knowledge of their falsity or recklessness towards their truth or falsity. For example, even Clark admits he was enthusiastic about the loan at the time of the closing because it meant he could pay off his delinquent taxes. (Prelim. Inj. Hr'g Tr. at 32). This suggests there was at least some beneficial impact of the loan despite the fact that monthly payment on the loan would be $791.17 per month. FN4

> FN4. At the Hearing, Clark conceded that the loan documents were clear that his monthly payment would be $791.71.

Additionally, Clark has not produced sufficient evidence to show that Thomas must have been aware or reckless towards the fact that Clark did not qualify for the Ameriquest mortgage loan. It is highly possibly that Thomas did believe Clark qualified for the loan based on Clark's social security income and the income from the home business that Clark acknowledged on several loan documents. Clark's conclusory allegations as to Thomas' knowledge of the truth or falsity of these representations are simply not enough at this preliminary injunction stage.

Finally, in relation to all the representations at issue in this fraud claim, Clark has not shown that he "justifiably" relied on any of the alleged representations. As previously mentioned, Clark signed multiple loan documents at the closing that guided him not to rely on any oral representations and that stated that the only loan terms between the parties were those contained within the documents. (Prelim. Inj. Hr'g Exs. P-15, P-24). These acknowledgments on the loan documents defeat Clark's claim that he justifiably relied on any representation from Thomas. According to Pennsylvania law, absent "justifiable reliance" on any alleged misrepresentation, Clark cannot support a fraud claim.

In sum, this Court concludes that Clark has not shown that he has a reasonable probability of success on the merits in relation to his fraud claim. Clark has produced insufficient evidence relating to Thomas' knowledge or recklessness concerning the truth or falsity of the alleged misrepresentations. Moreover, Clark has not shown the necessary "justifiable reliance" that is needed to support a fraud claim under Pennsylvania law. Thus, this Court concludes that Clark has not met his burden of proving that a preliminary injunction is appropriate relating to the fraud claim.

### 2. Clark's Irreparable Harm

*8 The second factor for this Court to consider in determining whether to grant a preliminary injunction is the extent to which the moving party will suffer irreparable harm without preliminary injunctive relief. Irreparable harm equates to injury that cannot be remedied by damages. *Air Prods. and Chem., Inc.*, 2003 WL 22917491, at *13 (citations omitted). In this case, Clark argues that he will suffer irreparable harm if an injunction of the foreclosure sale is not issued because he will lose his residence. FN5 For the purposes of this Motion, the court finds that Plaintiff would suffer irreparable harm without the injunctive relief based on the unique nature of real estate and the fact that Clark will lose his residence if the scheduled foreclosure sale takes place. *KP First Ave., L.P. v. Prentiss Props. Acquisition*, No.01-1396, 2001 WL 438416, at *4-5 (E.D.Pa. Apr.26, 2001). Thus, the Court finds that Clark has met his burden on this factor.

> FN5. The Court notes, however, it is not completely clear whether Clark would be able to keep his residence if he was only partially successful on his claims. For example, if Clark was only successful on his TILA claim, the Court would have the ability to condition any rescission of the loan or voiding of the mortgage upon Clark's ability to return funds that he borrowed. *Schumacher v. Contimortgage Corp.*, No. 99-160, 2000 WL 34030847, at *4

Not Reported in F.Supp.2d                                                                                                  Page 7
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

(N.D.Iowa June 21, 2000). At this point, it is unclear whether Clark would have the financial capability to pay back these funds if required. Thus, there is a possibility that Clark could lose his home even if he was successful in this action, making the harm inevitable. Nevertheless, based on the information available at this time, this Court finds that Clark has proven the requisite irreparable harm.

3. Defendants' Irreparable Harm

The third factor for this Court to consider in determining whether to grant a preliminary injunction is the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued. In this case, Clark argues that Defendants will suffer no irreparable harm if the preliminary injunction is granted because Defendants are protected since they already have a state foreclosure judgment that can be enforced by a future sheriff's sale. Thus, Clark claims that Defendants will suffer no irreparable harm if any sheriff's sale takes place after Clark's claims are disposed of on the merits by this Court. In contrast, Defendants argue they will have to incur substantial costs if they are forced to cancel the scheduled foreclosure sale and schedule a new one in the future. This Court concludes that any damage in scheduling a new foreclosure sale is minimal when compared with Clark's loss of his residence. Thus, this Court finds this factor weighs in favor of Clark in granting the preliminary relief.

4. Public Interest

The fourth factor for this Court to consider in determining whether to grant a preliminary injunction is the extent to which the public interest favors granting or denying the request for relief. In this case, this Court concludes that the public interest does not substantially weigh in either favor. At this stage of the litigation, despite Clark's arguments, this Court is not persuaded that the public interest weighs in favor of issuing a preliminary injunction based on an alleged predatory lending scheme that the Defendants were involved in concerning Clark's mortgage loan. As previously discussed, Clark has not met his burden of proving that there is a reasonable probability that he will be successful on his claims related to this alleged predatory lending scheme (i.e. UDAP claim). Thus, this Court does not believe this proposed public interest factor is relevant. In fact, this Court finds that any public interest in this case would weigh towards denying the request for injunctive relief. Specifically, there is an interest in respecting the finality of the state court foreclosure judgment and avoiding interference with that judgment. *C.f. Dunkin Donuts, Inc. v. Liu*, No. 99-3344, 2002 WL 32348280, at *5 (E.D.Pa. Apr.17, 2002); *In re Managed Care Litigation*, 236 F.Supp.2d 1336, 1345 (S.D.Fla.2002). Therefore, Clark has not shown that the public interest weighs in favor of granting a preliminary injunction in relation to the scheduled sheriff's sale.

IV. *CONCLUSION*

*9 In summary, pursuant to the Anti-Injunction Act, this Court concludes that this Court is barred from issuing a preliminary injunction against the June 30, 2004 sheriff's sale of Clark's residence. Clark has not directed this Court to any applicable exceptions to the Anti-Injunction Act. Moreover, this Court finds that none of the narrowly construed exceptions to the Anti-Injunction Act are applicable to the instant case. Alternatively, this Court also finds that denial of Clark's Motion is appropriate based on the four-factor preliminary injunction standard. Most importantly, Clark did not meet his burden of proving that he has a reasonable probability of succeeding on the merits of his claims. Thus, Clark is not entitled to the extraordinary remedy of a preliminary injunction. For the reasons set forth above, this Court finds that denial of Clark's Emergency Motion for Preliminary Injunction is appropriate in this matter.

An appropriate Order follows.

ORDER

AND NOW, this 18th day of June, 2004, upon consideration of Plaintiff's Emergency Motion for Preliminary Injunction (Doc. No. 18), the Response thereto, and the Hearing/Oral Argument held on June 10, 2004, it is hereby ORDERED that Plaintiff's Motion is DENIED.

E.D.Pa.,2004.
Clark v. U.S. Bank Nat. Ass'n
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:03cv05452 (Docket) (Sep. 30, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 8
Not Reported in F.Supp.2d, 2004 WL 1380166 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.