IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BALLY TOTAL FITNESS HOLDING CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) ) | C.A. No. 05-841-JJF |
| v. | ) ) | |
| LIBERATION INVESTMENTS, L.P., LIBERATION INVESTMENTS, LTD., LIBERATION INVESTMENT GROUP LLC and EMANUEL R. PEARLMAN, | ) ) ) ) ) | |
| Defendants. | ) | |

**THE DEFENDANTS' MOTION TO DISMISS THE
PRELIMINARY INJUNCTION PROCEEDING AS MOOT**

The defendants (hereafter collectively "Liberation"), through their counsel, respectfully move to dismiss the preliminary injunction proceeding as moot. The grounds for this motion are set forth below.

## I.   Introduction

1.     Last week at the hearing scheduling a preliminary injunction proceeding, the Court noted that Liberation could choose to moot the proceeding by disclosing Bally's allegations in a supplemental proxy filing. Liberation has now done so.

2.     On Saturday Bally provided Liberation with a letter listing each of its alleged disclosure violations (the "Contention Letter"), and yesterday Liberation filed a supplemental proxy statement with the SEC addressing each of Bally's contentions (the "Supplemental Statement"). *See* Exhibits A & B hereto. Thus, as a matter of law, there

is no basis for the injunctive relief being sought here by Bally and these proceedings should be immediately dismissed as moot.

3.     In addition, Bally itself has *also* mooted these proceedings by employing the very self-help remedy that Chancellor Chandler had noted was available to the Company:

> "[I]f Mr. Pearlman and Liberation are out there, as you say, conditioning the market, [Bally] isn't defenseless in that effort. You can communicate with the market as well."

*See* 12/7/05 Teleconference Tr. at p.14 (attached as Exhibit C). Bally did precisely that yesterday evening when it filed its own proxy statement -- a statement that reiterates Bally's allegations against Liberation and continues its personal attacks on Mr. Pearlman. *See* Exhibit D.

4.     Either of those filings would have been sufficient to moot this proceeding. Their combined effect leaves no doubt that the necessary "information mix" has now been provided to the Company's shareholders. Indeed, that point is underscored by Bally's prior representations about the relief it was seeking from this Court:

> "We're not asking [Mr. Pearlman] to admit to being a bad guy and to engage in self-flagellation to come up with some other adjective describing, you know, his intentions or motives or purposes. We don't have to do that.
>
> \*     \*     \*
>
> What we're saying is that Federal Securities Law require [disclosure] that Mr. Pearlman…worked [for Bally], that he was a consultant, that he was highly paid, and that by virtue of the activities that he's engaged in, he has triggered benefits by the divestiture of stock that are not available to shareholders as a whole."

12/7/2005 Hearing Transcript at p. 20.  Those disclosures have now been made to the Company's stockholders, rendering this proceeding moot.  *See* Exhibit B.

5.  And, of course, this Court -- which has heard a disclosure case or two -- pointedly noted as much when it agreed that Bally should have to promptly provide the Contention Letter so that Liberation could consider preparing a supplemental proxy filing that would moot the case:

> "[F]irst tee up plaintiff's contentions with regard to inadequate disclosure.  You'll get a chance to see those, and if you could show [that] they have all been addressed, *it's over*."

*See* 12/7/05 Hearing Transcript at pp. 26-27.  (emphasis added).

6.  Whether because Liberation has now addressed each of Bally's contentions (as the Court envisioned) or because Bally filed its own proxy statement on the matter, we respectfully submit that this proceeding has been mooted.  Bally cannot credibly claim otherwise at this point.

## II.    The Materiality Standards

7.  The Court has already expressed its familiarity with the disclosure laws, and we will not repeat them here.  But a brief review of the operative "materiality" standard is helpful in understanding why these proceedings are now moot.

8.  The goal of the proxy disclosure laws is to provide shareholders with the material facts sufficient to make an informed decision.  *See, e.g., Avnet, Inc. v. Scope Indus.*, 499 F.Supp. 1121, 1125 (S.D.N.Y. 1980) (quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968)).  Once that goal has been satisfied, there is nothing more for the courts to do until after the shareholders have voted.  *See Treadway*

*Cos. v. Care Corp.*, 638 F2d 357, 380 (2d Cir. 1980); *Vestcom Int'l, Inc. v. Chopra*, 114 F.Supp.2d 292, 299 (D.N.J. 2000).

9. The materiality threshold is high, and a claim of non-disclosure in only cognizable if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *accord Lewis v. Chrysler Corp.*, 949 F.2d 644, 649 (3d Cir. 1991); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 n.11 (3d Cir. 1992).

10. Moreover, the Supreme Court has made clear that the materiality threshold cannot be met when an alleged omission relates to subjective motives rather than objective facts. Violations concerning the soliciting party's motive are "insufficient to satisfy the element of fact that must be established under § 14(a)." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1096 (1991).

11. The rationale behind this bright-line rule is straightforward: To hold otherwise would permit disclosure litigation "confined solely to what one skeptical court spoke of as the "impurities" of an "unclean heart." *See id*. (citing *Stedman v. Storer*, 308 F.Supp. 881, 887 (S.D.N.Y. 1969)). But Rule 14(a) "does not raise a duty of self-accusation; it enforces a duty to refrain from misleading." *Id*. at 1098 n.7. Thus, a disclose case is only cognizable if the defendant has made affirmative misrepresentations or omissions of material fact. *See id. at 1096*; *Tracinda Corp.,* 197 F.Supp.2d at 62-63.

12. This is a distinction of considerable importance here, but it is one that Bally has overlooked in seeking relief from this Court.

### III. This Action Has Been Mooted

**A. Bally's Contentions**

13. As can be seen from even a cursory review of the Contention Letter, most of Bally's complaints stem from its highly subjective view regarding the alleged non-disclosure of Liberation's "motives," "desires," and "true intentions" in bringing the present proxy contest. *See* Exhibit A. None of those contentions is actionable under the securities laws, as Bally's counsel recognized in their prior remarks before this Court. "[I]ntentions or motives or purposes" were, the Court was told, off-the-table here.

14. That oral admission was correct, but Bally's subsequent letter addressed to precisely such matters got the securities laws wrong. They simply do not deem such matters "material." Thus, even before Liberation included each and every one of Bally's contentions in the Supplemental Statement, this action was already moot as to all of those motive-based allegations.

15. That left the handful of objective factual issues raised by Bally, which relate primarily to alleged non-disclosure of Mr. Pearlman's historical relationship with the Company and his association with the Company's former CEO, Lee Hillman. *See* Contention Letter at p. 1. Bally has provided no explanation for how those facts are material to the proxy solicitation at hand -- it seeks to remove Mr. Toback, the current CEO, not bring back Mr. Hillman -- but Bally has acknowledged that its shareholder pool is dominated by institutional investors and hedge funds rather than "the unwashed masses." *See* Exhibit C at pp. 16-17.

16. Regardless, in order to moot these expensive proceedings and to stop the distraction of expedited discovery.

### B. The Supplemental Statement

17. The Supplemental Statement first summarizes this proceeding and informs any interested stockholders that they can download Bally's complaint and Contention Letter -- both of which have been publicly filed with the SEC -- should they want to see those documents for themselves. *See* Exhibit B. Then, following an easy-to-read columnar format, the Supplemental Statement individually quotes *every* allegation raised in the Contention Letter and, where applicable, provides objective facts about Liberation and/or Mr. Pearlman. *Compare* Exhibit A *with* Exhibit B.

18. That disclosure exceeds what is required by law, and is more than sufficient to moot Bally's request for injunctive relief. As this Court has stated: "Once there has been compliance with [the federal securities laws] through a corrective filing, the purpose of the law has been fully served and there is no threat of continuing harm . . . which would justify injunctive relief." *Energy Ventures, Inc. v. The Appalachian Co.*, 587 F.Supp. 734, 743 (D.Del. 1984) (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59-60 (1975)) (denying a preliminary injunction); *accord City Capital Assocs. Ltd. P'Ship v. Interco, Inc.*, 696 F.Supp. 1551, 1557, 59 (D.Del.), aff'd 860 F.2d 60 (3d Cir. 1988) (denying a preliminary injunction where the defendants made supplemental disclosures revealing the existence of the plaintiff's action and summarizing the disclosure allegations); *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1210-11 (D.C. Cir. 1989) (holding that the annexation of the complaint to a supplemental filing offset

"most if not all possible adverse consequences" of disclosure violation); *Condec Corp. v. Farley*, 573 F.Supp. 1382, 1386-87 (S.D.N.Y. 1983) (denying a preliminary injunction where the defendant had made a "full recitation" of the plaintiff's allegations); *Avnet*, 499 F.Supp. at 1125-27 (denying a preliminary injunction on disclosure violation claims where the disputed facts were disclosed).

19.    Indeed, in cases with facts similar to those present here, the courts have denied injunctive relief and dismissed the entire disclosure action in which such relief was sought. *See Vestcom*, 114 F.Supp.2d at 300, 03 (dismissing disclosure action where the defendant subsequently disclosed the existence of the lawsuit and the plaintiff's allegations); *Weeden v. Continental Health Affiliates, Inc.*, 713 F.Supp. 396, 400 (N.D.Ga. 1989) (granting judgment on the pleadings in defendants' favor after they amended their disclosures to reveal the parties' dispute); *Howell v. Mgmt. Assistance, Inc.*, 519 F.Supp. 83 (S.D.N.Y. 1981), *aff'd* 685 F.2d 424 (2d Cir.), *cert. denied*, 549 U.S. 862 (1982) (dismissing case in which a preliminary injunction had already been denied because the disputed conduct had been disclosed); *Avnet*, 499 F.Supp. at 1126 (dismissing disclosure violation claims because the amended disclosures cured any violation).

20.    Nor can Bally avoid this result by arguing that they see things differently than Liberation has disclosed them. Even when there is a genuine basis for a plaintiff to dispute the facts -- and Bally has no basis here -- a supplemental disclosure which relays the substance of the dispute is all that is required to cure the alleged deficiencies. *See City Capital,* 696 F.Supp. at 1556. There is no need to endorse a plaintiff's view of the

dispute or to admit wrongdoing; the disclosure laws only require a fair presentation of the plaintiff's allegations. *Vestcom*, 114 F. Supp. 2d at 300; City Capital, 696 F.Supp. at 1556; *Avnet*, 449 F.Supp at 1125.

21. It is equally clear that Bally cannot attempt to have its contentions "bootstrapped into a live controversy" on the merits of the disclosures themselves. *Vestcom*, 114 F.Supp.2d at 300; *see also Avnet*, 499 F.Supp. at 1125 "It should be noted that the…cases [do] not require the offering to actually resolve [their] opposing arguments…"). The purpose of the securities laws is to ensure disclosure of all material facts to the shareholders -- not to determine the merits of collateral questions or to provide an indirect mechanism for litigating a defendant's putative "sins." *See TSC Indus.*, 426 U.S. at 448; *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 795 (2d Cir. 1969); *Id*.

22. Thus, the operative -- and only -- inquiry at this point is whether the Supplemental Statement discloses Bally's allegations as set forth in the Contention Letter. There can be no question that it does. And the preliminary injunction proceedings, if not this entire action, should therefore be immediately dismissed as moot.

**C.     Bally's Own Proxy Statement**

23. Moreover, as noted above, Bally mooted its own claims yesterday evening when it filed a proxy statement disclosing the same factual omissions about which it has complained here -- a disclosure that is directly at odds with Bally's prior insistence that only preliminary injunctive relief and expedited discovery could get this information to its shareholders.

24. We respectfully refer the Court to Bally's December 12, 2005 proxy statement, which includes a letter to the Company's shareholders from CEO Paul Toback. *See* Exhibit D (the "Toback Letter"). That letter parrots the "omitted facts" section of the Bally's Contention Letter almost verbatim:

| **Alleged Factual Omissions Listed In Contention Letter (Exhibit A)** | **"Factual" Disclosures In Toback Letter to Shareholders (Exhibit D)** |
|---|---|
| "Pearlman's close personal and professional association with Bally's former management team, including Lee Hillman;" | "Mr. Pearlman has a long and continuing association with the Company's former CEO Lee Hillman…" |
| "Hillman's and the Lee S. Hillman Revocable Trust's investment in and advisory role with respect to the Liberation entities;" | "Mr. Hillman, CEO of Liberation Investment Advisory Group and an investor in Mr. Pearlman's Liberation fund…" |
| "Pearlman's status as an employee consultant to Bally and part of the management team led by Hillman…" | "[Mr. Pearlman's association included] serving as a highly paid consultant to Bally during Mr. Hillman's tenure." |
| "The fact that Bally's Audit Committee concluded that the financial statements issued by Bally during Hillman's tenure were required to be restated and that the errors therein were a direct result of the 'culture … that encouraged aggressive accounting' that existed under Hillman's leadership;" | "Mr. Hillman … was found by an independent investigation to have created a 'culture that encouraged aggressive accounting,' which ultimately led to the need for us to restate our financial statements…" |
| "Defendants, Hillman and Pardus are working in concert in order to elect Pardus' slate of proposed directors, including Kornstein;" | "Pardus Capital Management, our largest shareholder, has filed preliminary proxy materials to nominate three directors … These nominees include … Donald Kornstein … Mr. Kornstein … is closely affiliated with Mr. Pearlman …Mr. Pearlman has a long and continuing association with …Hillman…" |

9

Thus, even if Liberation's Supplemental Statement had not covered these points (and others) in detail, the Toback Letter is itself sufficient to moot Bally's case.

25.  "Under the federal securities laws, investors are charged with knowledge of information of which they reasonably should be aware." *Warner Comms., Inc. v. Murdoch*, 581 F.Supp. 1482, 1492 (D.Del. 1984). And the courts have therefore held that when it is clear that investors were otherwise notified of information allegedly omitted from the soliciting party's proxy, there can been no actionable disclosure violation in that regard. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (no disclosure violation where allegedly omitted information was available to shareholders in the public domain).

26.  Thus, Mr. Toback has also mooted this action. Having provided Bally's shareholders with knowledge of the very facts whose alleged omission provided the only cognizable grounds for this case, there is no good faith basis on which Bally can proceed in this Court. *See Capital Realty Invs. Tax Exempt Fund Ltd. P'Ship v. Dominium Tax Exempt Fund LLP*, 944 F.Supp 250, 260 (S.D.N.Y. 1996) (denying a preliminary injunction because the parties would put the material information into the hands of the shareholders).

## III.     Conclusion

27.     One might hazard a guess about why Bally pressed this litigation the way it has, or why Mr. Toback did not simply send his letter to Bally's shareholders in the first place and obviate the need for these proceedings.  But "motives, desires and true intentions" (to borrow a phrase) are just as irrelevant here as are in Bally's underlying claims.  Only material facts matter.  And the only one that matters here is the fact that these proceedings have now been mooted.

28.     For the foregoing reasons, the defendants respectfully request the Court to enter and order of dismissal in the form attached hereto.

ASHBY & GEDDES

*/s/ Steven T. Margolin (I.D. #3110)*
_____
Stephen E. Jenkins (I.D. #2152)
Steven T. Margolin (I.D. #3110)
Lauren E. Maguire (I.D. #4261)
Andrew D. Cordo (I.D. #4534)
222 Delaware Avenue -- 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
*Attorneys for Defendants*

OF COUNSEL:
Michael H. Diamond
Kenneth J. Baronsky
Adam R. Moses
MILBANK, TWEED, HADLEY & MCCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000

Dated:  December 14, 2005