IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BALLY TOTAL FITNESS HOLDING CORPORATION,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**LIBERATION INVESTMENTS, L.P., LIBERATION INVESTMENTS, LTD., LIBERATION INVESTMENT GROUP LLC and EMANUEL R. PEARLMAN,**<br><br>                    **Defendants.** | **No. 05-841-JJF** |

## FIRST AMENDED COMPLAINT

Plaintiff Bally Total Fitness Holding Corporation ("Plaintiff" or "Bally" or the "Company"), by and through its undersigned attorneys, for its first amended complaint against Defendants Liberation Investments, L.P., Liberation Investments, Ltd., Liberation Investment Group LLC, and Emanuel R. Pearlman (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.    This action involves false and misleading statements made by Defendants in materials (the "Disclosure Documents") filed with the Securities and Exchange Commission pursuant to Section 14(a) and Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act"). While corrected in part in response to this suit, Defendants' Disclosure Documents continue to make materially false statements and fail to disclose material facts regarding Defendants' past and continuing associations, understandings and agreements with (1) Bally's former management, particularly Bally's now discredited former CEO, Lee Hillman, (2) Pardus European Special Opportunities Master Fund L.P., Pardus Capital Management L.P., and Pardus Capital Management LLC (collectively, "Pardus"), other stockholders who are

**EXHIBIT A**

soliciting votes for a candidate, Don R. Kornstein, now admitted to be closely aligned with and in fact sponsored by Defendants, and (3) that candidate, Don R. Kornstein, himself. Specifically, upon information and belief, Defendants have failed to disclose that they have agreements or understandings or undisclosed intentions to work in concert with other stockholders to seek to ensure that (1) Kornstein is elected, (2) Defendants' illegal and invalid Stockholder Proposal seeking to usurp the Board's authority to appoint and remove management is adopted, and (3) the Company's Rights Plan, meant to protect other stockholders from undisclosed joint efforts to obtain Board seats or wrest control of the Company, is invalidated.

      2.    Defendants' belated and forced admissions included in proxy materials, filed on December 14, 2005 after Bally brought this action to redress Defendants' misleading and incomplete disclosures, do not remedy the misleading nature of their Disclosure Documents. Indeed, because they purport to be fully curative, these latest disclosures serve only to further compound the misimpressions and confusion Defendants must intend to foster. For example:

- While Defendants now admit that Pearlman used to work for Bally, they continue to fail to disclose important facts concerning Pearlman's role and lucrative compensation, including investment advisory fees received for entering into transactions that were required to be restated and/or have saddled the Company with potentially enterprise-threatening debt if a restructuring or recapitalization or both cannot be achieved. Indeed, by disclosing only a small fraction of Pearlman's compensation from Bally, Defendants have attempted to affirmatively mislead investors and minimize Pearlman's financial dealings with Bally.
- While Defendants now disclose that Pearlman had and has a close personal and business relationship with Bally's former CEO, Lee Hillman, they fail to disclose

2

that Hillman was a founding member of Defendant Liberation Investment Group LLC, established soon after Hillman and Pearlman left Bally, and that Hillman and Pearlman, upon information and belief, planned to cause Liberation to "liberate" Bally from current management so as to be able to use the Company, once again, to advance their own personal agendas – *i.e.*, awarding themselves significant fees and perquisites and preventing Bally from taking action against them for the accounting improprieties Hillman encouraged and the ill-advised transactions that Hillman and Pearlman advocated.

- While Defendants now admit that they are responsible for suggesting the candidacy of Kornstein to Pardus for inclusion on its slate for election to the Company's Board, Defendants' Disclosure Documents continue to represent that they take no position concerning their candidate. However, Bally is informed and believes that Defendants intend to support Kornstein and that they have entered into an understanding and/or sought the support of others in seeking his election. Specifically, Defendants announced in October 2005 that they might run a proxy contest to elect directors at Bally's annual stockholder meeting on January 26, 2006. Upon information and belief, to avoid filing competing slates that might dilute their ability to defeat Bally's candidates and proposals, Pardus and Defendants agreed that Pardus would include Kornstein, one of Defendants' long-time loyalists, in its own slate. As soon as Pardus nominated Kornstein, Defendants quietly abandoned their plans to run a slate.

- While Defendants assert in their Disclosure Documents that they have no agreement or understanding with other stockholders with respect to their

3

Stockholder Proposal, a proposal that purports to permit stockholders to appoint and remove management and deprive the Board of any power to reappoint management once removed, Plaintiff is informed and believes that such representation is false and that Defendants do have or are actively seeking to obtain an agreement or understanding with respect to the Stockholder Proposal with other stockholders. Indeed, by making the Stockholder Proposal, Defendants are attempting to influence stockholders to vote for Pardus' slate by implying shortcomings in the incumbent directors.

- While Defendants have now disclosed that Bally has challenged their Stockholder Proposal as invalid and illegal under Delaware law and Bally's Certificate of Incorporation, they have not disclosed that the Delaware Chancery Court may invalidate that Proposal if it is adopted by the stockholders.

3.      Defendants' pursuit of their own interests in the guise of protecting the rights of all stockholders is nothing new. Defendants' Disclosure Documents fail to reveal that rather than seeking to advance the interest of all stockholders, they have historically acted (both with respect to Bally and other companies, including in efforts involving Hillman and Kornstein) to manipulate corporate machinery and proxy contests for their own financial advantage, reaping benefits that were not available to stockholders as a whole. Specifically, with regard to Bally, Defendants agitated for the redemption of Bally's Stockholder Rights Plan, arguing that such redemption would inure to the benefit of all stockholders and downplaying any present intention to purchase additional stock as a mere possibility. After the Company agreed to the redemption, Defendants then promptly engaged in a "creeping acquisition," more than doubling their holdings, triggering the vesting of more than one million shares of stock granted to Pearlman and

4

others under the Company's Long Term Incentive Plan.

      4.    Defendants' most recent Disclosure Documents reveal their latest effort to advance their own agenda in the guise of general stockholders' interest – *i.e.*, their attempt to invalidate Bally's current Rights Plan (the "Rights Plan") in a suit filed on December 11, 2005 in the Delaware Court of Chancery (the "Rights Plan Action"). *See* Form DFAN14A and Form SC 13D/A filed December 14, 2005 (Exs. 27 and 17 hereto) (the "Rights Plan Disclosure Documents") (attaching the Complaint in the Rights Plan Action). In the Rights Plan Disclosure Documents, and in the Rights Plan Action, Defendants misleadingly and falsely claim – purportedly on the basis of, but in fact in direct contravention of the facts set forth in, documents provided to Defendants in a related lawsuit by Defendants in Delaware Chancery Court under Section 220 of the Delaware Code (the "220 Action") – that the Rights Plan was adopted for improper purposes, *i.e.*, in response to and in order to thwart a proxy contest. Instead, as the Company's public filings and the documents produced in the 220 Action clearly show, the Rights Plan was "designed to preserve the rights of all stockholders and to ensure investors realize the long-term value of their investment in the Company." *See* Ex. 30 (8-K filed Oct. 18, 2005 at 4). Specifically, Bally adopted the Rights Plan in October 2005 "in light of the significant accumulations of the Company's common shares in recent months," and designed the Rights Plan "to prevent an outside party from attempting to acquire the Company or its equity at prices that do not reflect the Company's true long-term value." *Id.* Defendants' disclosures with respect to the Rights Plan are also materially misleading because they fail to disclose that, upon information and belief, Defendants have or intend to enter into undisclosed agreements, arrangements or understandings with other stockholders of the Company that may have triggered or may trigger the Rights Plan. Finally, Defendants' disclosures with respect to the Rights Plan

are also materially misleading as they fail to disclose that upon its implementation, Defendants and their representatives publicly and privately applauded the Rights Plan as a means of allowing the Company to assure that value to stockholders was maximized in any future transaction.

5.    In sum, Defendants' "curative" disclosures contain only half-truths which in fact perpetuate and compound the false and misleading information Defendants have disseminated in violation of the federal securities laws, including applicable proxy rules. Moreover, their most recent Disclosure Documents blatantly misrepresent the purposes for which the current Rights Plan was adopted – *i e* , to prevent other stockholders, believed to be acting in concert with Defendants, from acquiring significant additional stakes without paying a control premium and engaging in self-enriching and ultimately self-protective transactions to the detriment of other stockholders. The Disclosure Documents also misrepresent the reasons why Defendants seek to invalidate the Rights Plan: they either intend to enter or have already entered into agreements, understandings or arrangements with respect to the voting of their securities for the election of Kornstein and/or the adoption of the Stockholder Proposal which would potentially trigger the Rights Plan.

6.    It should be noted that, for purposes of the Rights Agreement dated October 17, 2005 between the Company and LaSalle Bank National Association (the "Rights Plan"), this First Amended Complaint (and any brief, memorandum or other filing by the Company in connection herewith unless specifically so stated in such filing) is not and does not constitute (and is not intended to constitute) a public announcement by the Company that (i) the Defendants (or any other person or persons), alone or collectively, constitute an "Acquiring Person" or that a "Shares Acquisition Date" has occurred (as such terms are defined in the Rights Plan), or (ii) discloses or is intended to disclose information which reveals or is intended to

6

reveal the existence of an Acquiring Person, and nothing in this Complaint (or in any brief, memorandum or filing by the Company in connection herewith unless specifically so stated there to the contrary) should be construed and is not authorized by the Company to be construed to the contrary.

## PARTIES AND RELATED ENTITIES

7.    Bally is a Delaware corporation with its principal place of business in Chicago, Illinois. The Company is engaged in the business of owning and operating fitness centers nationwide.

8.    Upon information and belief, Defendants Liberation Investments, L.P., Liberation Investments, Ltd., and Liberation Investment Group LLC (collectively, "Liberation") and Defendant Emanuel R. Pearlman are owners of record of approximately 200 shares of stock of the Company and beneficial owners of approximately 4.1 million shares.

9.    Defendant Pearlman is, upon information and belief, the Managing Member of Defendant Liberation Investment Group, LLC, which is the general partner of Defendant Liberation Investments, L.P., an investment advisor to Defendant Liberation Investments, Ltd. From 1990 to 1996, Pearlman worked for Bally Manufacturing, later known as Bally Entertainment. The Company was a wholly owned subsidiary of Bally Entertainment prior to 1995, at which point the Company was spun off and had its own public offering. Pearlman also served as a financial advisor to the Company at various times from 1993 through June 2003. As part of his compensation as an employee consultant to the Company, Pearlman was granted 35,000 shares of restricted stock under the Company's Long Term Incentive Plan which vested upon Defendants' acquisition of more than ten percent of the Company's outstanding shares. *See* Ex. 1 (Form 13D filed Jun. 8, 2004 (attaching Restricted Stock Plan Agreement as Ex. 1)).

7

10.     Pearlman is an acknowledged corporate raider, involved in numerous corporate takeover attempts since the late 1980s. He has been sued in the past for not stating his true intentions in disclosures required by the SEC and has used proxy contests to force a company to either accede to his demands or face replacement of their management and boards. As described below, Pearlman has repeatedly employed such tactics with respect to Bally, both with respect to a threatened proxy contest he waged last year to compel redemption of Bally's prior Stockholder Rights Plan so as to advance his own personal financial interests and the proxy contest he has recently started seeking to remove current management just as that same management has completed the restatement of erroneous financial statements filed by the Company under the leadership of Pearlman's "good friend" Hillman.

### JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 13(d) and 14(a) of the Exchange Act. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

12.     Venue is proper in this district pursuant to 15 U.S.C. §§ 78aa because the false and misleading information for which Plaintiff seeks relief was transmitted into this district and was intended to be read and relied upon by securities holders within this district.

### FACTS COMMON TO ALL COUNTS

#### Defendants' Contentious History with Bally

13.     Over the course of the last eighteen months, Defendants have engaged in a sustained operation to badger the Company and its Board of Directors, employing a letter-writing and public relations campaign to disparage the Company's management, structure, intentions, and business plans. Defendants have amended their Schedule 13D filings no less than sixteen times during that period to update their ever-evolving positions regarding the Company (*see* Exs. 1-17) and have employed proxy campaigns (both real and threatened), demand letters, and

8

lawsuits to attempt to get their way. Of late, the pace of this campaign has increased. Now, in December 2005, just as the Company has completed the restatement of its financial statements to remediate the accounting errors made by Bally's prior management, of which Pearlman's "good friend" Hillman was a part, *see* Ex. 31 (Form 8-K issued Dec. 1, 2005), Defendants have sought illegally to remove Bally's current CEO and, upon information and belief, in concert with other stockholders, including Hillman, have sought to wrest control of the Company, presumably to thwart any effort by the current management and the Board to hold prior management, with whom Pearlman is closely associated, accountable. Despite their prolific pretextual filings, and their purported corrective disclosures, however, Defendants have been scrupulous to omit the facts about what Bally is informed and believes are understandings, agreements or arrangements with other stockholders to support (i) the election of Kornstein to Bally's board of directors, (ii) the Stockholder Proposal and (iii) the effort to invalidate the current Rights Plan. In so doing, Defendants have misstated their intentions as being designed to advance stockholder interests when they are in fact aimed at advancing only the interests of a single group of stockholders – Pearlman and his associates. In seeking to "liberate" Bally from current management, by means of these initiatives, Defendants seek ultimately to restore the perquisites and fees that Hillman awarded to himself and to Pearlman for overseeing and/or engineering misguided policies and transactions that forced Bally's recent restatement and jeopardized its capital structure by causing the Company to incur significant debt.

9

**Defendants Fail to Disclose Important Details Concerning Pearlman's History as a
Corporate Raider and His Close Affiliation with Bally's Former CEO Lee Hillman, as well
as Pearlman's and Hillman's Involvement In and Significant Remuneration For
Transactions Now Being Restated as Overvalued and Impaired**

14.     As noted above in Paragraph 10, Pearlman is an acknowledged corporate

raider with a history as a defendant in lawsuits alleging violations of the securities laws as they

pertain to the required disclosures.

15.     From October 1996 to December 2002, Pearlman served as a trusted

advisor to Hillman, Bally's now discredited President and CEO. At Hillman's direction,

Pearlman was retained as a highly compensated financial and business consultant to the

Company during the periods that have now been restated due to significant accounting errors and

a culture of aggressive accounting. Hillman rewarded Pearlman by directing Bally to pay him

millions of dollars in employee consultant fees as well as valuable restricted stock grants. In

addition, Pearlman advised Bally to engage in significant acquisitions, and to incur substantial

debt to finance such transactions, receiving over $1 million in deal fees as a result.

16.     Hillman left Bally in December 2002, and Paul Toback became Bally's

President and CEO. In January 2003, Pearlman demanded that Bally increase his employee

consultant fees from more than $15,000 a month to $50,000 a month or he would "tell everything

he knew." In response, Toback reminded Pearlman that if he knew something material about

Bally, a publicly traded company, he had an obligation to disclose it to Toback. Pearlman never

disclosed any such material information and backed down from his demand for an increase in his

employee consultant fees. Pearlman's employee consultant relationship with Bally ended shortly

thereafter.

17.     Pearlman's relationship with Hillman continued, however. The two

remain business partners and "good friends." After Hillman left Bally, he started his own

company called Liberation Investment Advisory Group LLC. Likewise, shortly after Pearlman

departed from Bally, he started Liberation Investment Group LLC, with backing from director

nominee Kornstein and Hillman. The Lee S. Hillman Revocable Trust was an initial investor

and remains a limited partner in Liberation Investments, L.P. Hillman has served as an

investment advisory consultant to the Liberation entities. Moreover, immediately after Pearlman

ceased acting as an employee consultant to Bally, Pearlman nominated Hillman, together with

Kornstein, as a member of an insurgent slate of directors proposed for the board of directors of

InterTan, Inc., another company in which Pearlman was a major stockholder.

18.    Earlier this year, an independent investigation concluded that Hillman and

former Chief Financial Officer John Dwyer "were responsible for multiple accounting errors and

creating a culture within the accounting and finance groups that encouraged aggressive

accounting" at the Company. Ex. 29 (Form 8-K issued Feb. 9, 2005). As a result of the

findings, the Company "decided to make no further payments to Hillman or Dwyer under their

respective severance agreements" and stated that it would "evaluate its legal options with respect

to" them. *Id.* Defendants' proposals to oust the current CEO and influence the appointment of

his successor would possibly prevent Bally from taking action against Pearlman's "good friend"

Hillman for his past misconduct, as well as any effort to recover fees paid to Pearlman for the

failed and improperly accounted-for acquisitions he engineered.

19.    Defendants' Disclosure Documents are materially misleading and in

violation of the federal securities laws for failure to disclose (a) the full extent of the

remuneration that Pearlman received from Bally, particularly with respect to the deal fees earned

on Bally's failed and improperly recorded acquisitions during the entire course of his

11

employment (only 2003 amounts are disclosed) and (b) the extent of Hillman's founding and advisory role with respect to the Liberation entities at all times relevant to this Complaint.

### Defendants Fail to Reveal Their Historical Use of Stockholder Proxies and Corporate Maneuvering to Advance Their Personal Interest

20.    As noted, Bally has been the repeated, indeed virtually constant target of Defendants' abuses of the stockholder proxy process to advance Pearlman's personal financial interests at the expense of the remaining stockholders whose interests Defendants pretend to want to protect.

21.    First, in June of 2004, Defendants notified the Company that Defendants intended to present certain proposals for stockholder consideration at the Company's 2004 Annual Meeting, including a proposal that the Company redeem its prior Stockholder Rights Plan (the "Rights Plan Redemption Proposal"). *See* Ex. 1 (Form 13D filed Jun. 8, 2004 (attaching "Notice of Stockholder Proposals" as Ex. 2)); Ex. 18 (Form DFAN14A filed Jun. 8, 2004). The Rights Plan Redemption Proposal would permit a stockholder or group of stockholders to accumulate stock aggregating in excess of ten percent of the Company's outstanding shares without prior approval of the Company's Board of Directors.

22.    During his tenure at the Company, Hillman rewarded Pearlman with restricted stock under Bally's Long Term Incentive Plan. When vested, these grants entitled Pearlman to receive an additional 35,000 unrestricted shares of Bally stock. Pursuant to Bally's Long Term Incentive Plan, the restricted stock of Pearlman (and of all others holding such stock) would vest upon a "change in control" of the Company. The Long Term Incentive Plan defined such "change in control" to include the acquisition by any person or group of more than ten percent of Bally's issued and outstanding stock. Defendants provided Pearlman's restricted stock agreement as an exhibit to their initial 13D filing filed on June 8, 2004. *See* Ex. 1 (Form

12

13D filed Jun. 8, 2004 (attaching Restricted Stock Plan Agreement as Ex. 1)). However, in connection with their subsequent filings in support of the Rights Plan Redemption Proposal, Defendants omitted to mention that Pearlman would be personally benefited by the redemption of the Stockholder Rights Plan, as a change in control would cause his restricted stock granted under the Long Term Incentive Plan to immediately vest. *See* Ex. 1 (Form 13D filed Jun. 8, 2004); Ex. 2 (Form 13D/A filed Jul. 13, 2004); Ex. 18 (Form DFAN14A filed Jun. 8, 2004); Ex. 19 (Form PREC14A filed Jun. 21, 2004); Ex. 20 (Form PRRN14A filed Jul. 2, 2004); Ex. 21 (Form DEFC14A filed Jul. 7, 2004). Rather than disclosing this self-interest, Defendants explicitly stated that they "[did] not have any current intention, plan, or proposal with respect to . . . the acquisition by any person of additional securities of the Company," and merely reserved the right to do so in general terms. *See, e.g.*, Ex. 1 (Form 13D filed Jun. 8, 2004, at 9-10).

23.     On July 9, 2004, per an agreement with Defendants, the Company announced that it would redeem its Stockholder Rights Plan, subject to an agreed Stockholder Rights Policy which gave the Board of Directors the ability to implement another Rights Plan if it deemed it to be in the Company's and its stockholders' best interests. The same day, Defendants announced that they would withdraw the Rights Plan Redemption Proposal and would cease their solicitation of proxies for use at the Company's 2004 Annual Meeting. *See* Ex. 2 (Form 13D/A filed Jul. 13, 2004 (attaching July 9, 2005 Letter as Ex. 5)).

24.     After the Stockholder Rights Plan was redeemed, Defendants began to engage in a "creeping acquisition" of Bally stock through open market purchases. *See* Ex. 3 (Form 13D/A filed Aug. 27, 2004, at 8-9 (July and August 2004 purchases)); Ex. 4 (Form 13D/A filed Sep. 1, 2004, at 8 (August 2004 purchases)); Ex. 5 (Form 13D/A filed Sep. 13, 2004, at 8 (September 2004 purchases)); Ex. 6 (Form 13D/A filed Dec. 13, 2004, at 9 (October, December

13

2004 purchases)). By May 6, 2005, Defendants' "creeping acquisition" had resulted in them more than doubling their holdings, accumulating an amount in excess of 12% of Bally's total outstanding shares. *See* Ex. 8 (Form 13D/A filed May 6, 2005, at 8 (noting purchase of 750,000 shares in May 2005)). These acquisitions occurred despite Defendants' representation at the time of the redemption of the Stockholder Rights Plan, and repeated throughout their continuous acquisition of Bally stock, that they had no present intention or plan to acquire additional shares. *See* Ex. 1 (Form 13D filed June 8, 2004, at 9-10); Ex. 2 (Form 13D/A filed Jul. 13, 2004, at 7); Ex. 6 (Form 13D/A filed Dec. 13, 2004, at 7); Ex. 7 (Form 13D/A filed Apr. 26, 2005, at 6-7); Ex. 8 (Form 13D/A filed May 6, 2005, at 7).

25.    Immediately upon the Defendants' acquisition of additional shares in excess of ten percent of Bally's total outstanding shares, Pearlman's 35,000 shares of restricted stock vested under the Long Term Incentive Plan.

26.    Upon information and belief, Pearlman directed the Liberation Defendants to purchase additional shares after the Stockholder Rights Plan was redeemed at least in part in order to trigger the "change of control" provisions that resulted in the vesting of his personal restricted shares.

27.    Defendants' Disclosure Documents with respect to the Rights Plan Redemption Proposal are therefore materially false and misleading for the further reasons that they omitted to disclose (a) Defendants' plan and intention to purchase additional shares, (b) the personal benefit that Pearlman would and did thereby derive by virtue of his efforts to redeem the Stockholder Rights Plan, (c) and that Pearlman's true purpose was not, as avowed, to advance the good of the corporation and the stockholders as a whole but only the interests of Pearlman alone.

**Defendants Fail to Reveal That They Sponsored One
of the Insurgent Director Candidates Proposed by Pardus
and Support Pardus' Slate of Director Candidates**

28.    Defendants agitated for more than ten months to have a representative on

Bally's Board.  In late 2004, Defendants began urging Bally to add a shareholder representative

to the Board and advocated that Pearlman be that representative.  *See* Ex. 6 (Form 13D/A filed

Dec. 13, 2004 at 6); Ex. 9 (Form 13D/A filed Jul. 19, 2005 at 7); Ex. 10 (Form 13D/A filed Jul.

22, 2005 at 7).  In late October 2005, after Bally had announced that it was scheduling an annual

stockholders' meeting for January 26, 2006 (the "Annual Meeting") at which time the

stockholders would elect three directors, Defendants stated that they might run a proxy contest to

elect directors.  *See* Ex. 13 (Form 13D/A filed Oct. 31, 2005 at 6).

29.    Meanwhile, in late September 2005, Pardus began lobbying Bally to

appoint three persons (not including Kornstein) designated by Pardus and affiliated with it or its

investments to the Board.  Upon information and belief, rather than dilute their ability to defeat

Bally's candidates and proposals by filing competing slates, Pardus and Defendants joined forces

and agreed that Pardus would include Kornstein as one of the nominees on its slate.  In late

October 2005, Pardus told Bally for the first time that it intended to nominate Kornstein to the

Board.  On November 17, 2005, Pardus filed a Form 14A formally disclosing its intent to

nominate Kornstein and two others as an insurgent slate of directors to be considered for election

to the Bally Board at the Annual Meeting.

30.    As soon as Pardus proposed Kornstein as a candidate, Defendants quietly

abandoned their plans to announce their own slate.

31.    Pardus and Kornstein appear to have no prior relationship, but Pearlman

and Kornstein clearly do.  In their amended proxy materials, Defendants now belatedly admit

that:

15

- Pearlman has known Kornstein for 17 years;

- In 1988, while Kornstein was a senior managing director at Bear Stearns, the firm was retained by Pearlman in connection with a bid for Arkansas Best;

- From 1994 until 2000, Kornstein served as the Chief Executive Officer, President, and director of Jackpot Enterprises, Inc., and in that capacity retained Pearlman to act as an investment advisor to Jackpot;

- In October 2003, Kornstein – and Hillman – were nominated by Pearlman to an insurgent slate of director candidates for the Board of InterTan, Inc., another company in which Pearlman held a significant stake.

- That Kornstein made an investment (the dollar amount is not disclosed) in Liberation Investments, L.P.

*See* Ex. 28 (Form PRRN14A filed Dec. 14, 2005 at 29-32).

32.    Despite these belated admissions of the fact that Defendants suggested to Pardus that Kornstein be nominated and that Kornstein has a 17 year history with Pearlman, Defendants' Disclosure Documents still disclaim any arrangement or understanding with any other Bally stockholder with respect to the election of Kornstein, although the securities laws require that any such relationship be disclosed.

33.    Moreover, upon information and belief, Pearlman fully supports the election of Kornstein to a director position, and has entered into an arrangement, understanding or agreement to vote for him but has chosen to dispense with the inconveniences and requirements of the securities laws regarding the solicitation of proxies or the disclosure of that plan.

34.    Upon information and belief, Defendants' failure to disclose any agreement, understanding or arrangement to support and to assist in soliciting support for Pardus' nominee, Kornstein, who is in reality also Defendants' candidate of choice, constitutes a violation by Defendants of the Exchange Act.

### The Stockholder Proposal

35.    Defendants have made the Stockholder Proposal, which purports to permit stockholders to appoint and remove management and deprive the Board of any power to reappoint management once removed, to influence stockholders to vote for Pardus' slate by implying shortcomings in the incumbent directors.

36.    On November 21, 2005, Defendants sent Bally notice of their intent to introduce the Stockholder Proposal at the Annual Meeting. Defendants filed the notice letter outlining the Stockholder Proposal as an exhibit to various 13D and 14A filings. *See* Ex. 15 (Form 13D/A filed Nov. 22, 2005 (attaching Notice Letter thereto as Ex. 20)); Ex. 22 (Form DFAN14A filed Nov. 22, 2005 (attaching Notice Letter as Ex. 1)); Ex. 23 (Form DFAN14A filed Nov. 29, 2005 (attaching Notice Letter as Ex. 1)) (collectively, the "Stockholder Proposal Disclosure Documents"). Pursuant to the Stockholder Proposal Disclosure Documents filed under Section 14(a), Defendants are seeking stockholder support for the Stockholder Proposal and seek to have the Stockholder Proposal presented at Bally's upcoming Annual Meeting.

37.    According to the Defendants' Disclosure Documents, "If adopted, the [Stockholder] Proposal would (i) amend the . . . Bylaws . . . to afford stockholders the right to remove the Chief Executive Officer and President upon the affirmative vote of a majority of the Company's stock[holders]; (ii) prevent the Board of Directors of the Company from acting unilaterally to amend the Bylaws to eliminate the stockholder authority described in clause (i); and (iii) remove [Bally's] current Chief Executive Officer and President Paul A. Toback from

17

office, effective immediately." *See* Ex. 15 (Form 13D/A filed Nov. 22, 2005); Ex. 22 (Form

DFAN14A filed Nov. 22, 2005, at 3); Ex. 23 (Form DFAN14A filed Nov. 29, 2005, at 3); Ex. 26

(Form PREN14A filed Dec. 8, 2005, at 7-10); Ex. 28 (Form PRRN14A filed Dec. 14, 2005).

      38.    In their Disclosure Documents, Defendants indicated that their purpose in

advancing the Stockholder Proposal was "to ensure the vitality of stockholder democracy." *See*,

*e.g.*, Ex. 22 (Form DFAN14A filed Nov. 22, 2005, at Ex. 1 (Notice Letter), at 3); Ex. 26 (Form

PREN14A filed Dec. 8, 2005, at 2, 5); Ex. 28 (Form PRRN14A filed Dec. 14, 2005).

Defendants set forth as their only interest in the Stockholder Proposal the purported fact that they

"may be deemed to have an interest in the Proposal insofar as the adoption of the Proposal by the

stockholders is likely to yield more effective leadership of the Company, which would in turn

increase the value of the Shares held by the [Defendants]." Ex. 22 (Form DFAN14A filed Nov.

22, 2005, at Ex. 1 (Notice Letter), at 3).

      39.    Controlling Delaware law and the Company's Certificate of Incorporation

state that "[t]he business affairs of the Corporation shall be managed by or under the direction of

the ***Board of Directors***" and that "the ***Board of Directors*** shall have the power to make, adopt,

amend, change or repeal the Bylaws of the Corporation by resolution adopted by the affirmative

vote of a majority of the entire Board of Directors." *See* 8 Del. C. § 141(a); Ex. 32 (Bally's

Certificate of Incorporation, at Arts. FIFTH and SIXTH).

      40.    The Stockholder Proposal is materially misleading because, contrary to

Delaware law and the Company's Certificate of Incorporation, it purports to usurp the power of

the Board of Directors to:

      a.    determine the powers and duties of and to remove the chief

executive officer and president of the Company;

b.    amend the Company's Bylaws; and

c.    provide that no person who is removed as chief executive officer and president of the Company shall be appointed or reappointed by the Board as an officer of the Company.

41.    Defendants' Disclosure Documents filed pursuant to Section 14(a) with respect to the Stockholder Proposal are materially misleading inasmuch as such filings:

a.    improperly suggest that the Stockholder Proposal provides a valid means for the stockholders to arrogate the power vested exclusively in the Company's Board to remove the Company's CEO and define the CEO's power and functions;

b.    improperly suggest that the Stockholder Proposal provides a valid means for the stockholders to divest the Company's Board of its power to amend the Company's Bylaws;

c.    fail to disclose that if adopted Defendants' intend, upon information and belief, to oust the current CEO and influence the appointment of successors in order to prevent Bally from taking action against Hillman and Pearlman to recover remuneration paid to them for now-restated transactions;

d.    fail to disclose that Defendants have, upon information and belief, solicited the support for and entered into arrangements, understandings or agreements with other stockholders to support the adoption of the Stockholder Proposal; and

e.    are among Defendants' actions in the guise of

stockholder activism, the aim and end of which is in fact to benefit personally

Pearlman and his close friends, to the detriment of stockholders at large.

42.    Defendants' Stockholder Proposal is materially false and misleading in

affirmatively misrepresenting that it is intended to advance stockholder rights and omitting to

disclose that they are using the Stockholder Proposal to solicit support for Pardus' slate.

43.    On December 5, 2005, Bally filed a complaint in the Delaware Court of

Chancery seeking a declaration that the Stockholder Proposal is invalid and illegal under

Delaware law and the Company's Certificate of Incorporation. While Defendants have disclosed

the existence of this litigation and Bally's contentions, they continue to fail to disclose to

stockholders that the Chancery Court has indicated that if the Stockholder Proposal is adopted,

that Court may determine that it is invalid as a matter of law.

**Defendants Misrepresent the Company's Purposes in Adopting the Current Rights
Plan and Also Misrepresent and Fail to Disclose Their Purposes, Arrangements,
Understandings And Agreements With Respect to Their Efforts to Invalidate It**

44.    Defendants' most recent Disclosure Documents reveal their latest effort to

advance their own agenda in the guise of general stockholders' interest, *i.e.*, their attempt to

invalidate the current Rights Plan in the Rights Plan Action. *See* Exs. 27 and 17 (Form

DFAN14A and Form SC13D/A filed Dec. 14, 2005). In the Rights Plan Disclosure Documents,

and in the Rights Plan Action, Defendants misleadingly and falsely claim, purportedly on the

basis of, but in fact in direct contravention of the facts set forth in, documents provided to

Defendants in a related 220 Action, that the current Rights Plan was adopted for improper

purposes, *i.e.*, in response to and in order to thwart a proxy contest. As the documents produced

in the 220 Action clearly show, Bally's Board started discussing the possibility of implementing

the Rights Plan in August 2005. Subject to securing consent from Bally's banks and setting an exercise price, the Board's Rights Plan Committee decided to implement that plan on October 5, 2005 – well before Pardus initiated its proxy contest on October 17. *See* Ex. 33 (Slides from Aug. 7, 2005 Board Meeting); Ex. 34 (Slides from Sept. 29, 2005 Board Meeting); Ex. 35 (Minutes from Oct. 5, 2005 Meeting of Rights Plan Committee). The Rights Plan was "designed to preserve the rights of all stockholders and to ensure investors realize the long-term value of their investment in the Company" by "prevent[ing] an outside party from attempting to acquire the Company or its equity at prices that do not reflect the Company's true long-term value." *See* Ex. 30 (8-K filed Oct. 18, 2005 at 4).

45.    Defendants' disclosures with respect to the current Rights Plan are also materially misleading as they fail to disclose that, upon information and belief, Defendants have or intend to enter into undisclosed agreements, arrangements or understandings with other stockholders of the Company that may have triggered or may trigger the current Rights Plan.

46.    Defendants' disclosures with respect to the Rights Plan are also materially misleading as they fail to disclose that upon its implementation, Defendants and their representatives publicly and privately applauded the Rights Plan as a means of allowing the Company to assure that value to stockholders was maximized in any future transaction.

## COUNT I

### VIOLATION OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9

47.    Bally repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48.    Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder prohibit the misrepresentation or omission of material facts in proxy solicitations.

49.     Defendants' Rights Plan Redemption Proposal and Stockholder Proposal and statements with respect thereto constitute solicitations within the meaning of Section 14(a) of the Exchange Act and Rule 14a-9.

50.     Defendants disseminated Defendants' Disclosure Documents filed pursuant to Section 14(a), including but not limited to those describing the Rights Plan Redemption Proposal and the Stockholder Proposal, throughout the United States by use of the mails and/or means of instrumentalities of interstate commerce, including, but not limited to filings with the Securities and Exchange Commission.

51.     Defendants' Disclosure Documents, filed pursuant to Section 14(a), are materially misleading and in violation of the federal securities laws for failure to disclose (a) full details concerning Defendants' past and current relationships with Hillman, including Hillman's investment in and advisory role with respect to the Liberation entities, (b) full details concerning Pearlman's prior employment by and lucrative compensation from Bally, including deal fees obtained for transactions that ultimately were required to be restated.

52.     Defendants' Disclosure Documents filed pursuant to Section 14(a) with respect to the Rights Plan Redemption Proposal are materially false and misleading because they misrepresent and omit to disclose facts, including but not limited to: (a) Defendants' plan and intention to purchase additional shares, (b) that Defendants' true purpose was not to advance stockholder interests as represented but to enable them to acquire additional shares so as to trigger the change of control provisions that would result in the vesting of Pearlman's restricted stock, and (c) the personal benefit that Pearlman would and did derive by virtue of his efforts to redeem the Rights Plan purportedly to advance the good of the corporation and the stockholders as a whole.

53.     Defendants' Disclosure Documents filed pursuant to Section 14(a) with respect to the Stockholder Proposal are materially misleading inasmuch as such filings:

a.     improperly suggest that the Stockholder Proposal provides a valid means for the stockholders to arrogate the power vested exclusively in the Company's Board to remove the Company's CEO and define the CEO's power and functions;

b.     improperly suggest that the Stockholder Proposal provides a valid means for the stockholders to divest the Company's Board of its power to amend the Company's Bylaws;

c.     fail to disclose that if adopted Defendants' intend, upon information and belief, to oust the current CEO and influence the appointment of successors in order to prevent Bally from taking action against Hillman and Pearlman to recover remuneration paid to them for now-restated transactions;

d.     fail to disclose that Defendants have, upon information and belief, solicited the support for and entered into arrangements, understandings or agreements with other stockholders to support the adoption of the Stockholder Proposal and the election of Pardus' slate; and

e.     misrepresent that Defendants' proposal is meant to benefit all stockholders without disclosing that it will personally benefit Pearlman and his close friends, to the detriment of stockholders at large.

54.     Defendants' Rights Plan Disclosure Documents are materially false and misleadingly in asserting that the Rights Plan was adopted in response to and in order to thwart a proxy contest knowing, or being negligent or reckless in not knowing or alleging without

23

knowing, that the Rights Plan was put in place to prevent a significant stockholder from moving forward with professed plans to acquire significant additional shares of the Company without payment of a control premium. Moreover, the Rights Plan Disclosure Documents are materially false and misleading for failure to disclose any agreement, understanding or arrangement by Defendants, existing or planned, that might trigger the Rights Plan.

55.    At the time that Defendants filed the Disclosure Documents pursuant to Section 14(a), including but not limited to those referring to the Rights Plan Redemption Proposal, the Stockholder Proposal and the Rights Plan, Defendants knew that those Disclosure Documents were false or misleading or recklessly disregarded or were negligent in failing to investigate and discover that the statements were false and misleading.

56.    Defendants' Disclosure Documents filed pursuant to Section 14(a), including but not limited to those relating to the Rights Plan Redemption Proposal and the Stockholder Proposal, violate Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57.    Defendants' violations of Section 14(a) are continuing, and without the equitable intervention of this Court will cause Bally's stockholders, as well as Bally itself, irreparable injury.

## COUNT II

### VIOLATION OF SECTION 13(d) OF THE EXCHANGE ACT

58.    Bally repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.    Once Defendants acquired in excess of five percent of the outstanding stock of the Company, they were required under Section 13(d) of the Exchange Act to file a

24

Schedule 13D disclosing information concerning their intentions with respect to their investment, their source of funding, their background, and their allegiance with other persons as part of any "group." Moreover, upon a material change in the information reported, Defendants are required to amend promptly their Schedule 13D.

60.     Item 4 of Schedule 13D requires the filer to disclose "the purpose or purposes of the acquisition of securities of the issuer" and any "plans or proposals" relating, *inter alia*, to "[t]he acquisition by any person of additional securities of the issuer" or "[a]ny change in the present board of directors or management of the issuer, including any plans or proposals to . . . fill any existing vacancies on the board."

61.     Any changes in the purpose or purposes of acquisition of Bally's securities, or any change in plans relating to the acquisition of additional securities or any change in the filers' plans or proposals with respect to changes to Bally's Board or management, constitute "material changes" requiring an amendment.

62.     Defendants' Disclosure Documents filed pursuant to Section 13(d) are materially misleading and in violation of the federal securities laws for failure to disclose facts, including but not limited to: (a) Defendants' past and current relationships with Hillman, including Hillman's investment in and advisory role with respect to the Liberation entities, (b) Pearlman's prior employment by, and lucrative compensation from, Bally, and (c) Pearlman's history as a corporate raider, including the fact that he has engaged in other proxy contests where he nominated Hillman to his proposed insurgent slate.

63.     Defendants' Disclosure Documents filed pursuant to Section 13(d) with respect to the Rights Plan Redemption Proposal are materially false and misleading because they misrepresent and omit to disclose facts, including but not limited to: (a) Defendants' plan and

25

intention to purchase additional shares, (b) that Defendants' true purpose was not to advance stockholder interests but to enable them to acquire additional shares so as to trigger the change of control provisions that would result in the vesting of Pearlman's restricted stock and (c) the personal benefit that Pearlman would and did derive by virtue of his efforts to redeem the Rights Plan purportedly to advance the good of the corporation and the stockholders as a whole.

64.    Defendants' Disclosure Documents filed pursuant to Section 13(d) with respect to the Stockholder Proposal are materially misleading inasmuch as such filings:

a.    improperly suggest that the Stockholder Proposal provides a valid means for the stockholders to arrogate the power vested exclusively in the Company's Board to remove the Company's CEO and define the CEO's power and functions;

b.    improperly suggest that the Stockholder Proposal provides a valid means for the stockholders to divest the Company's Board of its power to amend the Company's Bylaws;

c.    fail to disclose that if adopted Defendants intend, upon information and belief, to oust the current CEO and influence the appointment of successors in order to prevent Bally from taking action against Hillman and Pearlman to recover remuneration paid to them for now-restated transactions;

d.    fail to disclose that Defendants have, upon information and belief, solicited the support for and entered into arrangements, understandings or agreements with other stockholders to support the adoption of the Stockholder Proposal; and

e.    misrepresent that Defendants' proposal is meant to benefit all stockholders without disclosing that it will personally benefit Pearlman and his close friends, to the detriment of stockholders at large.

65.    Defendants' Rights Plan Disclosure Documents are materially false and misleadingly in asserting that the Rights Plan was adopted in response to and in order to thwart a proxy contest knowing, or being negligent or reckless in not knowing or alleging without knowing, that the Rights Plan was put in place to prevent a significant stockholder from moving forward with professed plans to acquire significant additional shares of the Company without payment of a control premium. Moreover, the Rights Plan Disclosure Documents are materially false and misleading for failure to disclose any agreement, understanding or arrangement by Defendants, existing or planned, that might trigger the Rights Plan.

66.    At the time that Defendants filed the Disclosure Documents pursuant to Section 13(d), Defendants knew that those Disclosure Documents were false or misleading or recklessly disregarded or were negligent in failing to investigate and discover that the statements were false and misleading.

67.    Defendants' Disclosure Documents, filed pursuant to Section 13(d), violate Section 13(d) of the Exchange Act and the rules promulgated thereunder.

68.    Defendants' violations of section 13(d) are continuing, and without the equitable intervention of this Court will cause Bally's stockholders, as well as Bally itself, irreparable injury.

## COUNT III

### DECLARATORY JUDGMENT

69.    Bally repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

27

70.     Upon information and belief, Defendants are acting as a "group" with Pardus and other stockholders for purposes, including but not limited to, electing Kornstein to the Bally Board and adopting the Stockholder Proposal.

71.     Defendants dispute that they are acting as a group.

72.     There is an actual controversy between Bally and Defendants under 28 U.S.C. § 2201 as to whether Defendants are acting as a group with other stockholders.

WHEREFORE Bally respectfully requests that this Court enter judgment in Bally's favor and against Defendants, and grant Bally the following relief:

(a)     An injunction temporarily, preliminarily and permanently enjoining Defendants from further violations of the Exchange Act;

(b)     An order requiring Defendants to disclose the fact of their violations and to issue corrective disclosures rectifying their material violations of the Exchange Act;

(c)     An order enjoining the purchase of further shares by Defendants and enjoining the voting of Defendants' shares acquired after the redemption of the Rights Plan;

(d)     An order declaring whether Defendants are acting as a group with Pardus;

(e)     Attorneys' fees and costs; and

(f)     Such other and further relief as the Court deems just.

28

Dated: December 16, 2005

Respectfully submitted,

Gregory P. Williams (#2168)
Williams@rlf.com
Raymond J. DiCamillo (#3188)
DiCamillo@rlf.com
Michael R. Robinson (#4452)
Robinson@rlf.com
Elizabeth C. Tucker (#4468)
Tucker@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
10th and King Streets
Wilmington, Delaware 19899
Tel: (302) 651-7700
Fax: (302) 651-7701

-and-

Laurie B. Smilan
LATHAM & WATKINS LLP
11955 Freedom Drive, Suite 500
Reston, Virginia 20190
Tel: (703) 456-1000
Fax: (703) 456-1001

*Attorneys for Plaintiff Bally Total Fitness
Holding Corporation*

29