# EXHIBIT 26

# BALLY TOTAL FITNESS HOLDING CORP

## FORM PREN14A
(Proxy Statements not involving Contested Solicitations (preliminary))

## Filed 12/8/2005 For Period Ending 1/26/2006

| | |
|---|---|
| Address | 8700 WEST BRYN MAWR AVENUE SECOND FLOOR |
| | CHICAGO, Illinois 60631 |
| Telephone | 773-380-3000 |
| CIK | 0000770944 |
| Industry | Recreational Activities |
| Sector | Services |
| Fiscal Year | 12/31 |

Powered By 

http://www.edgar-online.com
© Copyright 2005, All Rights Reserved
Distribution and use of this document restricted under EDGAR Online's Terms of Use

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934

Filed by the Registrant ☐     Filed by a Party other than the Registrant ☒

Check the appropriate box:

☒   Preliminary Proxy Statement

☐   **Confidential, for Use of the Commission only (as permitted by rule 14a-6(e)(2))**
☐   Definitive Proxy Statement
☐   Definitive Additional Materials
☐   Soliciting Material Pursuant to ss. 240.14 a-11(c) or ss 240.14a-12

---

## BALLY TOTAL FITNESS HOLDING CORPORATION

(Name of Registrant as Specified in Its Charter)

**Liberation Investments, L.P.**
**Liberation Investments Ltd.**
**Liberation Investment Group, LLC**
**Mr. Emanuel R. Pearlman**
**Mr. Gregg E. Frankel**

---

(Name of Person(s) Filing Proxy Statement if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒   No fee required

☐   Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

    1)   Title of each class of securities to which transaction applies:

    _____

    2)   Aggregate number of securities to which transaction applies:

    _____

    3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

    _____

    4)   Proposed maximum aggregate value of the transaction:

    _____

    5)   Total fee paid:

    _____

☐   Fee paid previously with preliminary material

☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing

1)    Amount Previously Paid:

2)    Form, Schedule or Registration Statement No :

3)    Filing Party:

4)    Date Filed:

**LIBERATION INVESTMENTS L.P.**
11766 Wilshire Blvd, Suite #870
Los Angeles, CA 90025

**LIBERATION INVESTMENTS LTD.**
11766 Wilshire Blvd, Suite #870
Los Angeles, CA 90025

December [ ___ ], 2005

Dear Fellow Stockholder:

On behalf of Liberation Investments L.P., Liberation Investments Ltd. and their affiliates (collectively, " Liberation "), we are pleased to enclose our Proxy Statement and [GOLD] Proxy Card, which will enable you to support our stockholder proposals to improve the quality of corporate governance at Bally Total Fitness Holding Corporation (the " Company " or " Bally ")  We expect that our proposals will be voted on at the 2006 Annual Meeting of Stockholders of the Company currently slated to occur at 8:30 A.M. (CST) on January 26, 2006, at the Renaissance Chicago O'Hare Hotel, 8500 West Bryn Mawr Avenue, Chicago, Illinois, including any adjournments or postponements thereof or any special meeting that may be called in lieu thereof (the " Annual Meeting ")  Liberation is the beneficial owner of 4,134,450 shares or approximately [10 90]% of the Common Stock of the Company, making it one of the Company's largest stockholders

As you may be aware, Liberation has long been concerned about the quality of corporate governance at Bally  We believe that stockholder democracy at the Company would be bolstered by providing stockholders with a continuing voice in determining the tenure of Bally's senior management team, including its Chief Executive Officer and President  We expect that the existence of such a stockholder right would strengthen corporate governance by serving as a powerful incentive for members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders

The Company is presently at a critical strategic crossroads  We are asking you to join us in increasing management accountability to stockholders by supporting our call for improved corporate governance  It is time for us to make these much needed changes

The enclosed Proxy Statement contains important information concerning the Company's Annual Meeting  Please read it carefully.

WE URGE YOU TO SIGN, DATE AND RETURN THE ENCLOSED [GOLD] PROXY CARD TODAY

Thank you for your support.

Sincerely,

**LIBERATION INVESTMENTS,
L.P. LIBERATION INVESTMENTS LTD.**

By:    /s/ Emanuel R. Pearlman
_____
Emanuel R. Pearlman

2

PRELIMINARY PROXY STATEMENT DATED DECEMBER 7, 2005; SUBJECT TO COMPLETION

**2006 ANNUAL MEETING OF STOCKHOLDERS**

of

Bally Total Fitness Holding Corporation

**PROXY STATEMENT**

of

Liberation Investments, L.P. and

Liberation Investments Ltd.

This Proxy Statement and the enclosed [GOLD] Proxy Card are being furnished by Liberation Investments, L.P. and Liberation Investments Ltd. (collectively " Liberation ") and our affiliates, Liberation Investment Group, LLC, Emanuel R. Pearlman, the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group LLC, and Gregg E. Frankel, President of Liberation Investment Group, LLC, to holders of common stock, par value $.01 per share (the " Common Stock "), of Bally Total Fitness Holding Corporation, a Delaware corporation (" Bally " or the " Company "), in connection with the solicitation of proxies for use at the annual meeting of the Company's stockholders and at any and all adjournments or postponements thereof (the " Annual Meeting ") The Annual Meeting is scheduled to be held January 26, 2006 at the time and place to be announced in the Notice of Annual Meeting of Stockholders that will be sent to stockholders by the Company. As of December [ ___], 2005, Liberation was the beneficial owner of 4,134,450 shares of Common Stock in the aggregate, representing approximately [10.90]% of the outstanding shares. According to the Company's Proxy Statement filed on December [ ___], 2005, there were 38,094,479 shares of Common Stock outstanding.

THIS SOLICITATION IS BEING MADE BY LIBERATION AND NOT ON BEHALF OF THE BOARD OF DIRECTORS OF THE COMPANY

This Proxy Statement and the [GOLD] Proxy Card are first being mailed or furnished to stockholders of the Company on or about December [ ___], 2006

YOUR VOTE IS IMPORTANT. PLEASE SIGN AND DATE THE ENCLOSED [GOLD] PROXY CARD AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY. PROPERLY VOTING THE ENCLOSED [GOLD] PROXY CARD AUTOMATICALLY REVOKES ALL PRIOR PROXY CARDS PREVIOUSLY SIGNED BY YOU

DO NOT MAIL ANY PROXY CARD OTHER THAN THE ENCLOSED [GOLD] CARD IF YOU WISH TO VOTE FOR THE PROPOSALS LIBERATION SUPPORTS

EVEN IF YOU PREVIOUSLY HAVE VOTED A PROXY CARD FURNISHED TO YOU BY THE COMPANY'S BOARD OF DIRECTORS OR ANY OTHER PARTY, YOU HAVE THE LEGAL RIGHT TO CHANGE YOUR VOTE BY SIGNING, DATING AND RETURNING THE ENCLOSED [GOLD] PROXY CARD. ONLY YOUR LATEST DATED PROXY WILL COUNT AT THE ANNUAL MEETING

3

HOLDERS OF RECORD OF SHARES OF COMMON STOCK AS OF DECEMBER 20, 2005, THE RECORD DATE FOR VOTING AT THE ANNUAL MEETING, ARE URGED TO SUBMIT A [GOLD] PROXY CARD EVEN IF YOUR SHARES ARE SOLD AFTER THE RECORD DATE

IF YOU PURCHASED SHARES OF COMMON STOCK AFTER THE RECORD DATE AND WISH TO VOTE SUCH SHARES AT THE ANNUAL MEETING, YOU SHOULD OBTAIN A [GOLD] PROXY CARD FROM THE SELLER OF SUCH SHARES

IF YOUR SHARES ARE REGISTERED IN YOUR OWN NAME, PLEASE SIGN, DATE AND MAIL THE ENCLOSED [GOLD] PROXY CARD TO US IN CARE OF INNISFREE M&A INCORPORATED, THE FIRM ASSISTING US IN THE SOLICITATION OF PROXIES, IN THE POSTAGE-PAID ENVELOPE PROVIDED IF YOUR SHARES ARE HELD IN THE NAME OF A BROKERAGE FIRM, BANK NOMINEE OR OTHER INSTITUTION, ONLY IT CAN SIGN A [GOLD] PROXY CARD WITH RESPECT TO YOUR SHARES AND ONLY UPON RECEIPT OF SPECIFIC INSTRUCTIONS FROM YOU. ACCORDINGLY, YOU SHOULD CONTACT THE PERSON RESPONSIBLE FOR YOUR ACCOUNT AND GIVE INSTRUCTIONS FOR A [GOLD] PROXY CARD TO BE SIGNED REPRESENTING YOUR SHARES. WE URGE YOU TO CONFIRM IN WRITING YOUR INSTRUCTIONS TO THE PERSON RESPONSIBLE FOR YOUR ACCOUNT AND TO PROVIDE A COPY OF SUCH INSTRUCTIONS TO US IN CARE OF INNISFREE M&A INCORPORATED AT THE ADDRESS INDICATED BELOW SO THAT WE WILL BE AWARE OF ALL INSTRUCTIONS GIVEN AND CAN ATTEMPT TO ENSURE THAT SUCH INSTRUCTIONS ARE FOLLOWED

If you have any questions about executing your proxy or require assistance, please call:

**Innisfree M&A Incorporated**
**501 Madison Avenue, 20th Floor**
**New York, NY 10022**
*Stockholders Call Toll-Free:*
**888-750-5834**
*Banks and Brokers Call Collect:*
**212-750-5833**

4

## LIBERATION INVESTMENTS, L.P. AND
## LIBERATION INVESTMENTS LTD.

The proxies solicited hereby are being sought by Liberation and our affiliates, Liberation Investment Group, LLC, Emanuel R. Pearlman, the General Manager, Chairman and Chief Executive Officer of Liberation Group, LLC, Gregg E. Frankel, President of Liberation Investment Group, LLC. Liberation Investments, L.P. is a Delaware limited partnership, and Liberation Investments Ltd. is a private offshore investment corporation. The principal business of Liberation Investments, L.P. is that of a private investment partnership engaging in the purchase and sale of securities for investment for its own account, and the principal business of Liberation Investments Ltd. is that of a private offshore investment corporation engaging in the purchase and sale of securities for investment for its own account. The shares of Common Stock beneficially owned by Liberation and its affiliates are set forth in Appendix I hereto.

For additional information regarding Liberation and its affiliates and the participants in this proxy solicitation, please see Appendix I annexed to this Proxy Statement.

### REASONS FOR THE SOLICITATION

Liberation has long been concerned about the quality of corporate governance at Bally. We believe that stockholder democracy at the Company would be bolstered by providing stockholders with a continuing voice in determining the tenure of Bally's senior management team, including its Chief Executive Officer and President. We expect that the existence of such a stockholder right would strengthen corporate governance by serving as a powerful incentive for members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders.

The Company is presently at a critical strategic crossroads. It is therefore essential that we act now to establish greater management accountability. Our proposals offer you the opportunity to pave the way for the appointment of a new Chief Executive Officer and President who is committed to building stockholder value and making the strategic decisions that will best serve *all* stockholders. We urge you to support our efforts.

Although Liberation strongly believes that adoption of the proposals contained herein will serve to maximize stockholder value, Liberation gives no assurances that the adoption of any or all of such proposals will produce the anticipated increase in stockholder value.

We urge stockholders to support our call for improved corporate governance by voting in the following manner:

1.    To NOT CAST any vote for Eric Langshur, one of the Board of Directors' nominees for election to the Board of Directors; LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION with respect the nominees of Pardus European Special Opportunities Master Fund L.P. and certain of its affiliates (collectively, " Pardus ") for election to the Board of Directors;

5

2    FOR our proposal to amend the Company's Amended and Restated Bylaws (the " <u>Bylaws</u> ") to give stockholders the authority to remove the Chief Executive Officer and President of the Company;

3    FOR our proposal to amend the Company's Bylaws to increase stockholder authority with respect to determining the tenure of officers of the Company;

4    FOR our proposal to amend the Company's Bylaws to protect stockholder authority to remove officers of the Company;

5    FOR our proposal to remove Paul A. Toback as Chief Executive Officer and President of the Company; and

6    LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION with respect to Pardus' proposal to amend the Company's Bylaws to repeal any amendments to the Bylaws made by the board of Directors from May 26, 2005 through the date on which the proposal is approved.

7    AGAINST the approval of the Board of Directors' 2006 Omnibus Equity Compensation Plan

8    LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION with respect to the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005.

The effectiveness of each of Proposals 2, 3, 4 and 5 above (collectively, the " <u>Liberation Proposals</u> ") is conditioned upon the receipt of approval of all of the Liberation Proposals. Consequently, if any of the Liberation Proposals is not approved, none of the Liberation Proposals will be enacted even though sufficient votes may have been received to approve a particular Liberation Proposal.

Although Proposals 3 and 4 above are closely related to each other conceptually, they propose to amend different provisions of the Bylaws and are accordingly presented as independent proposals in accordance with the requirements of Rule 14a-4(a)(3) of the Securities Exchange Act of 1934, as amended

## Proposal 1. Nominees of the Board of Directors and Pardus for Election to the Board of Directors.

At the Annual Meeting, assuming a quorum is present, three Class III Directors are to be re-elected to serve for three-year terms expiring in 2008, or until their successors have been duly elected or qualified. We expect that the Board of Directors will nominate Eric Langshur, Charles Burdick and Barry R. Elson for re-election as directors in the class of directors whose term expires on the date of the Annual Meeting. We expect that Pardus will nominate Charles J. Burdick, Barry R. Elson and Don R. Kornstein to serve as directors in the class of directors whose term expires on the date of the Annual Meeting. We encourage you to review the Proxy Statements of the Board of Directors and Pardus for additional information concerning their respective nominees.

6

Liberation is soliciting proxies to not cast any vote with respect to Eric Langshur, one of the Company's three nominees to the Board of Directors  By not casting your vote with respect to the election of Eric Langshur, stockholders can send management a strong message that they support our proposals for improved stockholder rights and increased management and Board of Directors accountability, as well as our goal of maximizing stockholder value

According to the Proxy Statements of the Board of Directors and Pardus, the affirmative vote of the holders of a majority of the shares represented in person or by proxy at the meeting and entitled to vote in the election of directors is required to elect each director nominee  Accordingly, votes not cast with respect to the election of one or more directors will have the effect of a negative vote with respect to the election of directors, although such votes will be counted for purposes of determining whether there is a quorum

LIBERATION RECOMMENDS THAT YOU NOT CAST ANY VOTE WITH RESPECT TO ERIC LANGSHUR, ONE OF THE COMPANY'S NOMINEES FOR ELECTION TO THE BOARD OF DIRECTORS  LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION WITH RESPECT TO HOW OR WHETHER YOU SHOULD VOTE FOR PARDUS' NOMINEES FOR ELECTION TO THE BOARD OF DIRECTORS

## Proposal 2. Stockholder Authority to Remove Chief Executive Officer and President of the Company.

This proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides, in relevant part, that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides the stockholders of a company with the authority to amend its bylaws

We propose that stockholders approve and adopt the following resolution:

" **RESOLVED** , that the stockholders of the Company do hereby amend Article IV, Section 1, of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such section in its entirety and replacing it as follows: [1]

"The officers of the Corporation shall be chosen by the Board of Directors , provided that the stockholders shall be empowered to remove the Corporation's Chief Executive Officer and President from office by the affirmative vote of the holders of a majority of the Corporation's issued and outstanding stock then entitled to vote. The Corporation's officers shall be a Chief Executive Officer, who shall also be the Corporation's President, a Secretary and a Treasurer  The Board of Directors, in its discretion, may also choose a Chairman of the Board of Directors (who must be a director) and one or more Vice Presidents, Assistant Secretaries, Assistant Treasurers and other officers  Any number of offices may be held by the same person, unless otherwise prohibited by law, the Certificate of Incorporation or these Bylaws  The officers of the Corporation need not be stockholders of the Corporation nor, except in the case of the Chairman of the Board of Directors, need such officers be directors of the Corporation "

---

[1]     For ease of reference, text to be added to the existing text of the Bylaws by this resolution is underscored below

7

Reasons for the Proposal  Currently, the Company's Bylaws do not provide stockholders with the authority to remove the Chief Executive Officer and President of the Company  If you believe, as we do, that stockholder democracy would be strengthened by providing the stockholders with the authority to determine the tenure of the Chief Executive Officer and President of the Company, then we urge you to support this proposal  We believe that this proposal would increase management accountability to stockholders and, in turn, improve the quality of the Company's corporate governance

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO GIVE STOCKHOLDERS THE AUTHORITY TO REMOVE THE CHIEF EXECUTIVE OFFICER AND PRESIDENT OF THE COMPANY

### Proposal 3. Increase Stockholder Authority with Respect to Determining the Tenure of Officers of the Company.

This proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides, in relevant part, that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides the stockholders of a company with the authority to amend its bylaws

We propose that stockholders approve and adopt the following resolution:

" **RESOLVED** , that the stockholders of the Company do hereby amend Article IV, Section 2, of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such section in its entirety and replacing it as follows: [2]

"The Board of Directors at its first meeting held after each annual meeting of stockholders shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors or the stockholders, as the case may be  All officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal by the Board of Directors or the stockholders  Any officer elected by the Board of Directors may be removed at any time by the affirmative vote of a majority of the Board of Directors  The Corporation's Chief Executive Officer and President may also be removed by the stockholders as provided in Section 1 of this Article IV, and no person removed as Chief Executive Officer and President shall thereafter be appointed or reappointed by the Board of Directors to serve as an officer of the Corporation  Any vacancy occurring in any office of the Corporation shall be filled by the Board of Directors  The salaries of all officers who are directors of the Corporation shall be fixed by the Board of Directors "

Reasons for the Proposal  This proposal is meant to ensure the vitality of stockholder democracy at the Company by providing the stockholders with the right to remove a member of senior management if his or her performance falls well short of the mark  While it is

---

[2]    For ease of reference, text to be added to the existing text of the Bylaws by this resolution is underscored below.

8

expected that this right would only very rarely be exercised by stockholders, we believe that its very existence would serve as a powerful incentive for members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders. In addition, in order to ensure that the Board of Directors cannot frustrate the expressed will of stockholders holding a majority of the Common Stock to remove the Chief Executive Officer and President of the Company, this proposal provides a mechanism to prevent the Board of Directors from reappointing a Chief Executive Officer and President who may be removed by the stockholders following the adoption of Proposal 3 described herein.

Currently, the Company's Bylaws do not provide stockholders with the authority to remove officers of the Company. If you believe, as we do, that stockholder democracy would be strengthened by providing the stockholders with a meaningful voice in determining the tenure of the Company's senior management team, then we urge you to support this proposal. We believe that this proposal would increase management accountability to stockholders and, in turn, improve the quality of the Company's corporate governance.

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO INCREASE STOCKHOLDER AUTHORITY WITH RESPECT TO DETERMINING THE TENURE OF OFFICERS OF THE COMPANY

### Proposal 4. Protection of Stockholder Authority to Remove Officers of the Company.

This proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides, in relevant part, that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides the stockholders of a company with the authority to amend its bylaws.

We propose that stockholders approve and adopt the following resolution:

"**RESOLVED**, that the stockholders of the Company do hereby amend Article VIII, Section 5, of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such section in its entirety and replacing it as follows: [3]

"Section 2 of Article III, Section 1 of Article IV, Section 2 of Article IV and this Section 5 of Article VIII of these Bylaws may only be altered, amended, changed or repealed by action of the stockholders of the Corporation."

Reasons for the Proposal. Currently, the Company's Bylaws would not prevent the Board of Directors from amending the Bylaws following the Annual Meeting to eviscerate the authority of stockholders to remove officers of the Company contemplated by Proposals 3 and 4 described herein. This proposal would prevent the Board of Directors of the Company from amending the Bylaws against the expressed will of stockholders holding a majority of the Common Stock to eliminate the contemplated authority of stockholders to remove the Chief Executive Officer and President of the Company

---

[3]    For ease of reference, text to be added to the existing text of the Bylaws by this resolution is underscored below

9

If you believe, as we do, that stockholder democracy would be strengthened by providing the stockholders with a meaningful voice in determining the tenure of the Company's senior management team, then we urge you to support this proposal.

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO PROTECT STOCKHOLDER AUTHORITY TO REMOVE OFFICERS OF THE COMPANY

## Proposal 5. Removal of Paul A. Toback as Chief Executive Officer and President of the Company.

We propose that stockholders approve and adopt the following resolution:

" **FURTHER RESOLVED**, that Paul A Toback is hereby removed as the Chief Executive Officer and President of the Company, effective immediately "

Reasons for the Proposal   Currently, the Company's Bylaws do not provide stockholders with the authority to remove officers of the Company  If you believe, as we do, that stockholder democracy would be bolstered by providing the stockholders with a voice in determining the tenure of the Company's senior management team, then we urge you to support this proposal. This proposal offers you the opportunity to pave the way for the appointment of a new Chief Executive Officer and President who is committed to building stockholder value and making the strategic decisions that will best serve *all* stockholders

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO REMOVE PAUL A TOBACK AS CHIEF EXECUTIVE OFFICER AND PRESIDENT OF THE COMPANY

## Proposal 6. Pardus Bylaw Proposal.

This proposal (the " Pardus Proposal ") is being brought before the Annual Meeting by Pardus pursuant to Section 109 of the Delaware General Corporation law  According to Pardus' Proxy Statement, the Pardus Proposal is intended to deter the current members of the Board of Directors from amending the Company's Bylaws in a manner that would create obstacles to the election of Pardus' nominees. We encourage you to review Pardus' Proxy Statement for additional information concerning the Pardus Proposal.

Pardus proposes that stockholders approve and adopt the following binding resolution:

" **RESOLVED** , that each provision or amendment of the Bylaws of Bally Total Fitness Holding Corporation (the " Company ") adopted by the Board of Directors of the Company without the approval of the Company's stockholders subsequent to May 25, 2005 (purportedly the last date of reported changes) and prior to the approval of this resolution be, and they hereby are, repealed, effective as of the time this resolution is approved by the Company's stockholders."

10

LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION WITH RESPECT TO HOW OR WHETHER YOU SHOULD VOTE FOR THE PARDUS PROPOSAL.

## Proposal 7. Board of Directors' 2006 Omnibus Equity Compensation Plan.

According to the Proxy Statement of the Board of Directors, the Board of Directors has approved the Bally Total Fitness Holding Corporation 2006 Omnibus Equity Compensation Plan (the " Plan ") and will be submitting the Plan for stockholder approval at the Annual Meeting. Under the Plan, which is more fully described in the Proxy of the Board of Directors and appended thereto, the Company will be able to grant stock options, stock units, stock awards, dividend equivalents and other stock-based awards to certain employees and non-employee directors of Bally and employees of Bally's subsidiaries.

According to the Proxy Statement of the Board of Directors, the Board of Directors' adoption of the Plan is conditioned on stockholder approval. The affirmative vote of the holders of a majority of the shares represented in person or by proxy at the meeting and entitled to vote will be required to approve the Plan. According to the Proxy Statement of the Board of Directors, the rules of the New York Stock Exchange further require that at least a majority of the votes of shares of common stock entitled to vote must be cast with respect to the approval of the Plan.

Liberation is soliciting proxies to vote against approval of the Plan. Based on Bally public filings, generous equity compensation packages have already been granted twice in 2005 to all members of the Company's senior management. These grants were comprised of approximately $[ _____ ] in restricted stock and options to purchase an additional [ _____ ] shares. We believe that previous equity compensation programs administered by the Board of Directors or its designees have been excessively dilutive and we therefore believe that stockholders are best served by rejecting the Plan. Moreover, we are concerned that the Plan does not, by its proposed terms, link awards with clearly identified individual or Company performance benchmarks, relying instead exclusively on the "full power and express discretionary authority" of a committee appointed by the Board of Directors for the determination of grants. Finally, the Plan would enable a committee appointed by the Board of Directors to accelerate vesting and lapsing of restrictions on any and all outstanding equity compensation grants issued under the Plan upon the occurrence of certain change in control events. Since Bally has recently announced its intention to explore "strategic alternatives," including arrangements that would constitute a change in control under the proposed terms of the Plan, additional needless dilution of stockholders' stakes in the Company may occur if you approve the Plan.

By voting against approval of the Plan, stockholders can send management a strong message that they support our proposals for improved stockholder rights and oppose further dilution of stockholders' stakes in the Company.

11

LIBERATION RECOMMENDS THAT YOU VOTE "AGAINST" THE APPROVAL OF THE PLAN

**Proposal 8. Ratification of the Appointment of KPMG LLP as Independent Auditor for the Company for the Fiscal Year Ending December 31, 2005.**

According to the Proxy Statement of the Board of Directors, the Audit Committee has appointed KPMG LLP as the Company's independent auditor for the fiscal year ending December 31, 2005. The Board of Directors reports in its Proxy Statement that although stockholder ratification of the Audit Committee's selection of KPMG is not required by the Company's Bylaws, it believes that it is of sufficient importance to seek ratification.

According to the Proxy Statement of the Board of Directors, representatives of KPMG are expected to be present at the Annual Meeting to "respond to stockholders' questions and to have the opportunity to make any statements they consider appropriate."

LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION WITH RESPECT TO HOW OR WHETHER YOU SHOULD VOTE FOR THE RATIFICATION OF KPMG LLP AS INDEPENDENT AUDITOR FOR THE COMPANY FOR THE FISCAL YEAR ENDING DECEMBER 31, 2005.

YOUR VOTE IS IMPORTANT. SIGN, DATE AND MAIL PROMPTLY THE ENCLOSED [GOLD] PROXY CARD IN THE ENCLOSED ENVELOPE.

**Other Matters to be Considered at the Annual Meeting**

The Company will send to you the Board of Directors' Proxy Statement discussing, among other things, its slate of director nominees, Pardus' slate of director nominees, the Pardus Proposal, its proposal to approve the Plan, its proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 and any other matter that may properly come before the Annual Meeting. It is expected that Pardus will also send you its Proxy Statement discussing, among other things, its slate of director nominees, the Board of Directors' slate of director nominees and the Pardus Proposal. With the exception of the Board of Directors' slate of director nominees, Pardus' slate of director nominees, the Pardus Proposal, the Board of Directors' proposal to approve the Plan, the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 and the proposals contained herein, Liberation is not aware at the present time of any other matters which are scheduled to be voted upon by stockholders at the Annual Meeting.

As stated under Proposal 1, above, we are soliciting your proxy to NOT CAST any vote with respect to Eric Langshur, one of the Company's nominees for election to the Board of Directors. We encourage you to review the Board of Directors' Proxy Statement for information concerning its nominees. In addition, we EXPRESS NO OPINION AND MAKE NO RECOMMENDATION with respect to how or whether you should vote for the Pardus

Proposal. We encourage you to review Pardus' Proxy Statement for additional information concerning its nominees. We are soliciting your proxy to vote FOR the Liberation Proposals. As stated under Proposal 7, above, we are soliciting your proxy AGAINST the approval of the Board of Directors' 2006 Omnibus Equity Compensation Plan. As stated under Proposal 8, above, we EXPRESS NO OPINION AND MAKE NO RECOMMENDATION with respect to the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005.

You may mark the enclosed [GOLD] Proxy Card for one or more of the director nominees of the Board of Directors or Pardus, or you may WITHHOLD AUTHORITY to vote for such nominees, and we will vote your proxy accordingly. If a nominee declines to serve or becomes unavailable for any reason, or if a vacancy occurs before the election, the proxies will be voted as an abstention vote.

Liberation has omitted from this Proxy Statement certain disclosure that will be included in the Proxy Statements of the Board of Directors or Pardus. This disclosure will include, among other things, biographical information concerning Bally's and Pardus' nominees, current directors and executive officers of the Company, information concerning executive compensation, an analysis of cumulative total returns on an investment in Bally shares during the past five years, information on audit services and fees of the Company's auditors, procedures for nominating directors for election to the Company's Board of Directors and submitting proposals for inclusion in Company's Proxy Statement at the next annual meeting. Accordingly, reference is made to the Board of Directors' and Pardus' Proxy Statements for such information and stockholders should refer to the Board of Directors' and Pardus' Proxy Statements in order to review this disclosure.

An annual report to stockholders covering Bally's fiscal year ended December 31, 2004, including financial statements, is required to be furnished to stockholders by the Company. Such annual report does not form any part of the material for the solicitation of proxies by Liberation.

Liberation does not make any representation as to the accuracy or completeness of the information contained in the annual report, the Board of Directors' Proxy Statement, or Pardus' Proxy Statement.

## VOTING AND PROXY PROCEDURE

### Proxy Information

The enclosed [GOLD] Proxy Card may be executed only by holders of record at the close of business on December [ ___], 2005 (the "Record Date.")

The shares of Common Stock represented by each [GOLD] Proxy Card that is properly executed and returned to Liberation will be voted at the Annual Meeting in accordance with the instructions marked thereon, but if no instructions are marked thereon, the Proxy Card will be voted to WITHHOLD your vote on the election of Eric Langshur; to NOT CAST any vote with respect to the other Board of Directors' and Pardus' nominees; FOR each of the Liberation Proposals; to ABSTAIN with respect to the Pardus Proposal; AGAINST the approval

13

of the Board of Directors' 2006 Omnibus Equity Compensation Plan; to ABSTAIN with respect to the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005; and, where Liberation has discretionary authority, as described below, in the discretion of the proxies, on whatever other matters as may properly come before the Annual Meeting or any adjournments or postponements thereof

If any other matter properly comes before the Annual Meeting that we do not become aware of a reasonable time before the Annual Meeting, the persons named as proxies on the enclosed [GOLD] Proxy Card will have discretionary authority to vote all shares covered by such proxies in accordance with their discretion with respect to such matter. However, if Liberation becomes aware a reasonable time in advance of the Annual Meeting that a matter will be presented for a stockholder vote at the Annual Meeting that is not included on the enclosed [GOLD] Proxy Card, Liberation will not have discretionary authority to vote on such matters and intends either to refrain from voting on any such matter or to revise the [GOLD] Proxy Card in order to include any such additional matter thereon and furnish the same to the stockholders. If a stockholder specifies the manner in which his or her shares are to be voted on any such additional matters on a revised [GOLD] Proxy Card, Liberation will vote such stockholder's shares as specified. Bally also will furnish stockholders with additional proxy materials describing any such additional matter. Submission of any properly executed Proxy Card will revoke all prior Proxy Cards

If you hold your shares in one or more brokerage firms, banks or nominees, only they can vote your shares and only upon receipt of your specific instructions. Accordingly, you should contact the person responsible for your account and give instructions to vote the [GOLD] Proxy Card

### Proxy Revocation

Whether or not you plan to attend the Annual Meeting, Liberation urges you to vote in accordance with their recommendations contained herein by signing, dating and returning the [GOLD] Proxy Card in the enclosed envelope. You can do this even if you have already sent a different Proxy Card solicited by the Bally's Board of Directors or Pardus. The Proxy Card that you submit bearing the latest date will be effective to cast your vote, and as such will revoke all Proxy Cards previously executed and submitted by you

Execution of a [GOLD] Proxy Card does not affect your right to attend the Annual Meeting and to vote in person. Any stockholder that has submitted a Proxy Card (including a Proxy Card given to the Company) may revoke it at any time before it is voted by (a) submitting a new, duly executed Proxy Card bearing a later date, (b) attending and voting at the Annual Meeting in person, or (c) at any time before a previously executed Proxy Card is voted, giving written notice of revocation to either Liberation, c/o Innisfree M&A Incorporated, or the Company. Merely attending the Annual Meeting will not revoke any previous Proxy Card which has been duly executed by you. If you hold your shares in the name of a bank or broker or other nominee, and want to vote your shares in person at the Annual Meeting, you must obtain a legal proxy from the record holder of the shares. The [GOLD] Proxy Card furnished to you by Liberation, if properly executed and delivered, will revoke all prior proxies you may have executed and submitted.

14

IF YOU PREVIOUSLY EXECUTED AND RETURNED A PROXY CARD TO THE COMPANY, LIBERATION URGES YOU TO REVOKE IT BY SIGNING, DATING AND MAILING THE [GOLD] PROXY CARD IN THE ENCLOSED ENVELOPE NO POSTAGE IS REQUIRED FOR MAILING WITHIN THE UNITED STATES

## Dissenters' Right Of Appraisal

Stockholders do not have appraisal or similar rights of dissenters under Delaware law with respect to the matters described in this Proxy Statement

## Quorum and Voting

The Board of Directors' Proxy Statement is required to provide information about the number of shares of Bally Total Fitness Holding Corporation stock outstanding and entitled to vote, the number of record holders thereof and the record date for the Annual Meeting, and reference is made thereto for such information  Only stockholders of record at the close of business on the Record Date are entitled to notice of and to vote on matters that come before the Annual Meeting

The presence in person or by proxy of the holders of a majority of the issued and outstanding shares of Common Stock entitled to vote at the Annual Meeting is necessary to constitute a quorum at the Annual Meeting. Assuming a quorum is present, according to the Proxy Statements of the Board of Directors, Pardus and Liberation, as the case may be, a majority of the shares of Common Stock represented at the meeting and entitled to vote is required to elect the director nominees of the Board of Directors or Pardus, approve the Board of Directors' 2006 Omnibus Equity Compensation Plan, ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 and to approve our proposal to remove Paul A  Toback as Chief Executive Officer and President of the Company (although the approval of such proposal is contingent on the approval of each of the other Liberation Proposals, each of which requires the support of 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock in order to be approved).

The affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote is required to approve our proposal to amend the Company's Bylaws to give stockholders the authority to remove the Chief Executive Officer and President of the Company, our proposal to amend the Company's Bylaws to increase stockholder authority with respect to determining the tenure of officers of the Company, our proposal to amend the Company's Bylaws to protect stockholder authority to remove officers of the Company and the Pardus Proposal.

Pursuant to the Bylaws of the Company and Delaware law, each stockholder voting for the proposals is entitled to one vote for each share owned by such stockholder as of the record date  According to the Board of Directors' Proxy Statement, any abstentions or broker non-votes will be included in the calculation of the number of shares considered to be present at the meeting

15

## CERTAIN STOCKHOLDERS OF THE COMPANY

The following table sets forth, as of December [ ___ ], 2005, the number and percent of outstanding shares of Common Stock beneficially owned by Liberation:

| Name and Address of Beneficial Owner | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned(1) |
|---|---|---|
| Liberation Investments L P. 11766 Wilshire Blvd Suite #870 Los Angeles, CA 90025 | 2,662,963 | [7 02]% |
| Liberation Investments Ltd. 11766 Wilshire Blvd Suite #870 Los Angeles, CA 90025 | 1,436,487 | [3 79]% |
| Liberation Investments Group LLC 11766 Wilshire Blvd Suite #870 Los Angeles, CA 90025 | 4,099,450 | [10 80]% |
| Emanuel R Pearlman 11766 Wilshire Blvd Suite #870 Los Angeles, CA 90025 | 4,134,450 | [10 90]% |
| Above parties collectively | 4,134,450 | [10 90]% |

(1)  Based on 38,094,479 shares of Common Stock outstanding as of December [ ___ ], 2005, as reported in the Board of Directors' Proxy Statement filed on December [ ___ ], 2005 with the Securities and Exchange Commission on December [ ___ ], 2005

Liberation Investments Group LLC, a general partner of and discretionary investment adviser to Liberation Investments L P and Liberation Investments Ltd , may be deemed to indirectly beneficially own 4,099,450 shares [(10 80%)] of the Common Stock of the Company

Mr Pearlman is the General Manager, Chairman and Chief Executive Officer of Liberation Investments Group LLC and as such may be deemed to indirectly beneficially own 4,099,450 shares of the Common Stock of the Company In addition, Mr Pearlman is the direct beneficial owner of 35,000 shares of Common Stock issued pursuant to a Restricted Stock Agreement, dated September 20, 2001, as amended In total, Mr Pearlman may be deemed to own 4,134,450 [(10 90%)] of the Common Stock of the Company

16

The Board of Directors' Proxy Statement is expected to set forth information concerning the number and percentage of outstanding shares beneficially owned by (i) each person known by Bally to own more than 50 shares of the outstanding Common Stock, (ii) each director of Bally, (iii) the Chief Executive Officer and the four most highly compensated executive officers of Bally, and (iv) all executive officers and directors of Bally as a group, and reference is made thereto for such information

## PROXY SOLICITATION; EXPENSES

Liberation will bear the entire expense of preparing, assembling, printing and mailing this Proxy Statement and the [GOLD] Proxy Card and the cost of soliciting proxies

The total cost of this proxy solicitation (including fees of attorneys, accountants, public relations or financial advisors, solicitors and advertising and printing expenses, litigation expenses and other incidental costs) is estimated to be approximately $[ _____ ] Through December [ ___ ], 2005, Liberation has incurred approximately $[ _____ ] of expenses in connection with this proxy solicitation To the extent legally permissible, Liberation will seek reimbursement from the Company for the costs of this solicitation Liberation does not currently intend to submit approval of such reimbursement to a vote of stockholders of the Company at a subsequent meeting unless it is required to do so by law

In addition to this initial solicitation by mail, proxy solicitations may be made by (i) Liberation, (ii) Mr Pearlman, the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group LLC, (iii) Mr Gregg E Frankel, President of Liberation Investment Group LLC, and (iv) Ms Nicole A Jacoby, Director of Research of Liberation Investment Group LLC, without additional compensation, except for reimbursement of reasonable out-of-pocket expenses Solicitations may be made by telephone, facsimile, hand delivery, messenger service, courier service, personal solicitors and other similar means Liberation will pay to banks, brokers and other fiduciaries their reasonable charges and expenses incurred in forwarding proxy materials to their principals and in obtaining authorization for the execution of proxies

Liberation has retained Innisfree M&A Incorporated to assist in the solicitation of proxies Liberation will pay Innisfree M&A Incorporated a fee of not more than $[ _____ ] Liberation has also agreed to reimburse Innisfree M&A Incorporated for its reasonable out-of-pocket expenses, which are currently estimated to be approximately $[ _____ ] Innisfree M&A Incorporated will solicit proxies from individuals, brokers, banks, nominees and other institutional holders Approximately 25 persons will be utilized by Innisfree M&A Incorporated in its solicitation efforts, which may be made by telephone, telegram or in person

## ADDITIONAL INFORMATION

Liberation has filed with the SEC a Statement on Schedule 13D and various amendments thereto, which contain information in addition to that furnished herein This Schedule 13D and any amendments thereto may be accessed free of charge at the website maintained by the SEC at www.sec.gov and from the Public Reference Section of the Securities and Exchange Commission located at 100 F Street N E , Washington, D C 20549

17

LIBERATION INVESTMENTS, L.P.
LIBERATION INVESTMENTS LTD.

December [ ___ ], 2005

IF YOU HAVE ANY QUESTIONS OR REQUIRE ASSISTANCE, PLEASE CALL:

**Innisfree M&A Incorporated**
**501 Madison Avenue, 20th Floor**
**New York, NY 10022**
*Stockholders Call Toll-Free:*
**888-750-5834**
*Banks and Brokers Call Collect:*
**212-750-5833**

18

APPENDIX I

## CERTAIN INFORMATION REGARDING THE PARTICIPANTS

Identity and Background of the Participants

Liberation Investments, L P , is a Delaware limited partnership Liberation Investments Ltd is a private offshore investment corporation Liberation Investment Group LLC is a Delaware limited liability company and the general partner of Liberation Investments, L P and discretionary investment adviser to Liberation Investments Ltd Emanuel R Pearlman is the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group LLC. Mr Gregg E Frankel is the President of Liberation Investment Group LLC The entities and persons identified in this paragraph are participants in the solicitation.

The business address of Liberation Investments, L P is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025.

The business address of Liberation Investments Ltd. is P O Box 31106 SMB Corporate Centre, West Bay Road, Grand Cayman, Cayman Islands

The business address of Liberation Investment Group LLC is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025.

The business address of Emanuel R. Pearlman is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025

The business address of Gregg E. Frankel is 770 Broadway, 2nd Floor, New York, NY 10003

Liberation Investments, L P. is the record owner of 100 shares of the Company's Common Stock Liberation Investments Ltd. is the record owner of 100 shares of the Company's Common Stock Emanuel Pearlman is the record owner of 35,000 shares of the Company's Common Stock. None of the other participants is the record owner of any shares of the Company's Common Stock

Shares of Common Stock of Bally bought or sold by Liberation Investments L P in the last two years:

| Date | Amount Bought (Sold) | Price Per Share |
|------|---------------------|-----------------|
| 4/29/04 | 57,950 | 4.1988 |
| 4/30/04 | 44,505 | 4.2249 |
| 4/30/04 | 24,150 | 4.2180 |
| 4/30/04 | 69,000 | 4.1900 |
| 5/03/04 | 34,500 | 4.2500 |
| 5/03/04 | 16,284 | 4.2625 |
| 5/04/04 | 25,600 | 4.1783 |
| 5/05/04 | 26,000 | 4.1700 |

19

| Date | Shares | Price |
|---|---|---|
| 5/05/04 | 16,380 | 4.1249 |
| 5/06/04 | 32,500 | 4.0951 |
| 5/06/04 | 2,860 | 4.1200 |
| 5/07/04 | 10,595 | 4.0456 |
| 5/07/04 | 142,220 | 4.0529 |
| 5/10/04 | 22,750 | 3.7403 |
| 5/10/04 | 8,450 | 3.7726 |
| 5/10/04 | 25,480 | 3.7634 |
| 5/13/04 | 20,150 | 3.8734 |
| 5/13/04 | 45,500 | 3.9045 |
| 5/14/04 | 32,500 | 3.9091 |
| 5/17/04 | 61,750 | 3.8628 |
| 5/18/04 | 65,000 | 3.7931 |
| 5/19/04 | 35,100 | 3.8895 |
| 5/19/04 | 32,500 | 3.8790 |
| 5/19/04 | 5,330 | 3.8500 |
| 5/20/04 | 99,450 | 3.7504 |
| 5/21/04 | 84,500 | 3.7227 |
| 6/01/04 | 39,000 | 4.3200 |
| 6/04/04 | 100,750 | 4.3729 |
| 6/07/04 | 91,000 | 4.6128 |
| 7/20/04 | 1,105 | 5.1900 |
| 8/4/04 | 19,520 | 5.0265 |
| 8/11/04 | 3,102 | 4.2900 |
| 8/12/04 | 16,500 | 4.2400 |
| 8/13/04 | 16,500 | 4.2085 |
| 8/20/04 | 9,636 | 4.0737 |
| 8/23/04 | 23,100 | 4.0400 |
| 8/24/04 | 13,200 | 4.0155 |
| 8/26/04 | 73,326 | 3.9284 |
| 8/27/04 | 6,600 | 3.9900 |
| 8/27/04 | 23,760 | 3.9894 |
| 8/30/04 | 10,428 | 3.9600 |
| 8/31/04 | 19,272 | 3.9649 |
| 8/31/04 | 33,000 | 3.9670 |
| 9/1/04 | 33,000 | 3.9700 |
| 9/7/04 | 13,200 | 3.6650 |
| 9/9/04 | 13,200 | 3.5017 |
| 9/9/04 | 39,600 | 3.5347 |
| 9/10/04 | 6,600 | 3.4550 |
| 9/17/04 | 10,560 | 3.3850 |
| 9/20/04 | 33,000 | 3.3368 |
| 10/8/04 | 33,000 | 3.8520 |
| 10/11/04 | 46,200 | 3.8057 |
| 10/19/04 | 23,166 | 3.8504 |

20

| Date | Amount | Price |
|---|---|---|
| 10/21/04 | 13,266 | 3.8299 |
| 10/26/04 | 49,500 | 3.9331 |
| 10/28/04 | 13,200 | 4.0400 |
| 12/8/04 | 32,500 | 3.6851 |
| 12/8/04 | 42,250 | 3.7231 |
| 12/9/04 | 16,250 | 3.7110 |
| 12/9/04 | 26,000 | 3.8045 |
| 12/10/04 | 23,270 | 3.8208 |
| 12/13/04 | 10,238 | 3.7391 |
| 12/14/04 | 23,335 | 3.7851 |
| 12/16/04 | 6,500 | 3.6398 |
| 12/20/04 | 13,000 | 3.5421 |
| 12/21/04 | 12,100 | 3.5299 |
| 12/23/04 | 13,000 | 3.6383 |
| 12/28/04 | 16,250 | 3.7900 |
| 12/29/04 | 6,500 | 3.9183 |
| 1/5/05 | 26,000 | 4.0088 |
| 1/7/05 | (27,950) | 4.6469 |
| 2/9/05 | 46,475 | 4.1732 |
| 2/10/05 | 21,450 | 3.8800 |
| 5/4/05 | 487,500 | 3.0400 |

Shares of Common Stock of Bally bought or sold by Liberation Investments Ltd in the last two years:

| Date | Amount Bought (Sold) | Price Per Share |
|---|---|---|
| 4/29/04 | 37,050 | 4.1988 |
| 4/30/04 | 19,995 | 4.2249 |
| 4/30/04 | 10,850 | 4.2180 |
| 4/30/04 | 31,000 | 4.1900 |
| 5/03/04 | 15,500 | 4.2500 |
| 5/03/04 | 7,316 | 4.2625 |
| 5/04/04 | 14,400 | 4.1783 |
| 5/05/04 | 14,000 | 4.1700 |
| 5/05/04 | 8,820 | 4.1249 |
| 5/06/04 | 17,500 | 4.0951 |
| 5/06/04 | 1,540 | 4.1200 |
| 5/07/04 | 5,705 | 4.0456 |
| 5/07/04 | 76,580 | 4.0529 |
| 5/10/04 | 12,250 | 3.7403 |
| 5/10/04 | 4,550 | 3.7726 |
| 5/10/04 | 13,720 | 3.7634 |
| 5/13/04 | 10,850 | 3.8734 |

21

| Date | Shares | Price |
|---|---|---|
| 5/13/04 | 24,500 | 3.9045 |
| 5/14/04 | 17,500 | 3.9091 |
| 5/17/04 | 33,250 | 3.8628 |
| 5/18/04 | 35,000 | 3.7931 |
| 5/19/04 | 18,900 | 3.8895 |
| 5/19/04 | 17,500 | 3.8790 |
| 5/19/04 | 2,870 | 3.8500 |
| 5/20/04 | 53,550 | 3.7504 |
| 5/21/04 | 45,500 | 3.7227 |
| 6/01/04 | 21,000 | 4.3200 |
| 6/04/04 | 54,250 | 4.3729 |
| 6/07/04 | 49,000 | 4.6128 |
| 7/20/04 | 595 | 5.1900 |
| 7/28/04 | 5,900 | 5.0900 |
| 8/3/04 | 10,000 | 5.0300 |
| 8/4/04 | 20,980 | 5.0265 |
| 8/11/04 | 1,598 | 4.2900 |
| 8/12/04 | 8,500 | 4.2400 |
| 8/13/04 | 8,500 | 4.2085 |
| 8/20/04 | 4,964 | 4.0737 |
| 8/23/04 | 11,900 | 4.0400 |
| 8/24/04 | 6,800 | 4.0155 |
| 8/26/04 | 37,774 | 3.9284 |
| 8/27/04 | 3,400 | 3.9900 |
| 8/27/04 | 12,240 | 3.9894 |
| 8/30/04 | 5,372 | 3.9600 |
| 8/31/04 | 9,928 | 3.9649 |
| 8/31/04 | 17,000 | 3.9670 |
| 9/1/04 | 17,000 | 3.9700 |
| 9/7/04 | 6,800 | 3.6650 |
| 9/9/04 | 6,800 | 3.5017 |
| 9/9/04 | 20,400 | 3.5347 |
| 9/10/04 | 3,400 | 3.4550 |
| 9/17/04 | 5,440 | 3.3850 |
| 9/20/04 | 17,000 | 3.3368 |
| 10/8/04 | 17,000 | 3.8520 |
| 10/11/04 | 23,800 | 3.8057 |
| 10/19/04 | 11,934 | 3.8504 |
| 10/21/04 | 6,834 | 3.8299 |
| 10/26/04 | 25,500 | 3.9331 |
| 10/28/04 | 6,800 | 4.0400 |
| 12/8/04 | 17,500 | 3.6851 |
| 12/8/04 | 22,750 | 3.7231 |
| 12/9/04 | 8,750 | 3.7110 |
| 12/9/04 | 14,000 | 3.8045 |

22

| Date | Amount | Price |
|---|---|---|
| 12/10/04 | 12,530 | 3.8208 |
| 12/13/04 | 5,512 | 3.7391 |
| 12/14/04 | 12,565 | 3.7851 |
| 12/16/04 | 3,500 | 3.6398 |
| 12/20/04 | 7,000 | 3.5421 |
| 12/21/04 | 6,500 | 3.5299 |
| 12/23/04 | 7,000 | 3.6383 |
| 12/28/04 | 8,750 | 3.7900 |
| 12/29/04 | 3,500 | 3.9183 |
| 1/5/05 | 14,000 | 4.0088 |
| 1/7/05 | (15,050) | 4.6469 |
| 2/9/05 | 25,025 | 4.1732 |
| 2/10/05 | 11,550 | 3.8800 |
| 5/4/05 | 262,500 | 3.0400 |

Debt securities of Bally bought or sold by Liberation Investments L P in the last two years:

| Debt | Date | Amount Bought (Sold) | Price Per Unit |
|---|---|---|---|
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 1,300,000 | 80.750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 650,000 | 81.000 |
| 9 7/8% Senior Subordinated Notes due 2007 | 1/5/05 | (1,950,000) | 87.750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 4/28/05 | 480,000 | 82.250 |
| 9 7/8% Senior Subordinated Notes due 2007 | 9/8/05 | (480,000) | 89.500 |

Debt securities of Bally bought or sold by Liberation Investments Ltd in the last two years:

| Debt | Date | Amount Bought (Sold) | Price Per Unit |
|---|---|---|---|
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 700,000 | 80.750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 350,000 | 81.000 |
| 9 7/8% Senior Subordinated Notes due 2007 | 1/5/05 | (1,050,000) | 87.750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 4/28/05 | 259,000 | 82.250 |
| 9 7/8% Senior Subordinated Notes due 2007 | 9/8/05 | (259,000) | 89.500 |

* * *

23

Except as set forth in this Proxy Statement (including the Schedules and Appendices hereto), none of Liberation Investments, L P , Liberation Investments Ltd , Liberation Investment Group LLC, Mr Pearlman, Mr Frankel nor any of their respective affiliates or associates, directly or indirectly:

- beneficially owns any shares of Common Stock of the Company or any securities of any parent or subsidiary of the Company;

- has had any relationship with the Company in any capacity other than as a stockholder;

- has been a party to any transaction, or series of similar transactions, since January 1, 2003, nor is any currently proposed transaction known to any of them, or series of similar transactions, to which the Company or any of its subsidiaries was or is to be a party, in which the amount involved exceeds $60,000 and in which any of them or their respective affiliates or associates had, or will have, a direct or indirect material interest;

- has entered into any agreement or understanding with any person with respect to any future employment by the Company or its affiliates or any future transactions to which the Company or any of its affiliates will or may be a party;

- has a contract, arrangement or understanding within the past year with any person with respect to the Company's securities;

- has any agreement, arrangement or understanding with any person with respect to any future employment with the Company or any of its affiliates or with respect to any future transactions to which Company or any of its affiliates may be a party; or

- is a party adverse to the Company or any of its subsidiaries or has a material interest adverse to the Company or any of its subsidiaries in any material legal proceeding.

In the past, Mr Pearlman has acted as an advisor to Bally with respect to various financing and acquisition activities and has received customary fees and compensation for such services. During 2003, the Company paid Gemini Partners II L P , an company affiliated with Mr Pearlman, $206,056 19 in consulting and advisory fees Mr Pearlman is not presently providing any consulting or advisory services to the Company

On June 19, 2003, Mr Pearlman and the Company entered into an agreement pursuant to which Mr Pearlman was retained to provide advisory services to the Company with respect to various financing activities In consideration of such services, Mr Pearlman was paid $70,000 in cash (which is included in the $206,056 19 amount described above) and was entitled

24

to retain certain restricted stock previously issued to him without the risk of forfeiture due to the termination of his services. Mr. Pearlman and the Company executed an Amendment to Restricted Stock Award Agreement, effective July 30, 2003. The purpose of the amendment was to amend the terms of a restricted stock award pursuant to which Mr. Pearlman was granted 35,000 shares of restricted stock to provide that the restricted stock would not be forfeited upon termination of Mr. Pearlman's employment.

Pending Litigation

In *Bally Total Fitness Holding Corp. v. Liberation Investments, LP, et al.*, Del. Ch. C.A. No. 1820-N, filed December 5, 2005 in the Delaware Court of Chancery, the Company is seeking a declaratory judgment based upon the allegation that Liberation's stockholder proposal is invalid because it seeks to amend the Company's Bylaws in a manner that violates the Company's charter and the Delaware General Corporation Law (" DGCL "). Liberation maintains that its shareholder proposal is consistent with both the Company's charter and the DGCL, which expressly provide for such amendments and allow shareholders to elect or remove corporate officers. This proceeding is currently pending, and, while Liberation is unable to make a prediction as to its outcome, we believe that the Company's claim is without merit and that we will ultimately prevail in this case.

In *Bally Total Fitness Holding Corp. v. Liberation Investments, L.P., et al.*, C.A. No. 05-841-JJF, filed on December 5, 2005 in the United States District Court for the District of Delaware, the Company seeks temporary injunctive relief against Liberation based upon alleged violations of the Securities Exchange Act of 1934 arising out of the proxy solicitation materials provided in connection with Liberation's stockholder proposals. Liberation maintains that there is no basis for relief because the proxy solicitation materials complied with all applicable securities laws and regulations. This proceeding is currently pending, and, while Liberation is unable to make a prediction as to its outcome, we believe that the Company's claim is without merit and that we will ultimately prevail in this case.

25

[FORM OF PROXY CARD]

PROXY CARD

THIS PROXY IS SOLICITED BY LIBERATION INVESTMENTS, L P
AND LIBERATION INVESTMENTS LTD (TOGETHER
"LIBERATION") IN OPPOSITION TO THE BOARD OF DIRECTORS
OF BALLY TOTAL FITNESS HOLDING CORPORATION

The undersigned hereby appoints Emanuel R. Pearlman, Gregg E Frankel and Nicole A Jacoby, and each of them, the proxy or proxies of the undersigned, with full power of substitution, and hereby authorizes them to vote, as provided below, all shares of Common Stock, par value $ 01 per share, of Bally Total Fitness Holding Corporation (the "Company") which the undersigned would be entitled to vote if personally present at the Annual Meeting of the Stockholders of the Company to be held on January 26, 2005, and at any and all adjournments or postponements thereof (the "Annual Meeting") The undersigned hereby revokes any previous proxies with respect to any and all matters to be voted upon at the Annual Meeting.

1.    Election of Directors Nominated by Pardus and Directors Nominated by the Company *You should only mark boxes for 3 (three) individual nominees .* If you mark boxes for more than three individual nominees, your vote with respect to Proposal 1 may not be valid.

| FOR | WITHHOLD | Pardus Nominees | FOR | WITHHOLD | Company Nominees |
|-----|----------|-----------------|-----|----------|------------------|
| ☐ | ☐ | Charles J. Burdick | ☐ | ☐ | Eric Langshur |
| ☐ | ☐ | Barry R. Elson | ☐ | ☐ | Barry R. Elson |
| ☐ | ☐ | Don R. Kornstein | ☐ | ☐ | Charles J. Burdick |

|  |  | FOR | AGAINST | ABSTAIN |
|---|---|-----|---------|---------|
| 2. | Liberation's Proposal to Give Stockholders the Authority to Remove the Chief Executive Officer and President of the Company | ☐ | ☐ | ☐ |
| 3. | Liberation's Proposal to Increase Stockholder Authority in Determining the Tenure of the Company's Officers | ☐ | ☐ | ☐ |
| 4. | Liberation's Proposal to Protect Stockholder Authority to Remove the Company's Officers | ☐ | ☐ | ☐ |
| 5. | Liberation's Proposal to Remove Paul A Toback as Chief Executive Officer and President of the Company | ☐ | ☐ | ☐ |
| 6 | Pardus' Proposal to Repeal Any Amendments to the Bylaws Made by the Board from May 26, 2005 Through the Annual Meeting | ☐ | ☐ | ☐ |
| 7 | Board of Directors' Proposal to Approve the 2006 Omnibus Equity Compensation Plan | ☐ | ☐ | ☐ |
| 8 | Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 | ☐ | ☐ | ☐ |

9    In their discretion, with respect to any other matters as may properly come before the Annual Meeting.

[REVERSE] THIS PROXY WILL BE VOTED AS INSTRUCTED, BUT IF NO INSTRUCTION IS GIVEN, IT WILL BE VOTED AS FOLLOWS: TO WITHHOLD WITH RESPECT TO ERIC LANGSHUR AND TO NOT CAST ANY VOTE WITH RESPECT TO THE OTHER NOMINEES IN ITEM 1; FOR THE PROPOSALS IN ITEMS 2, 3, 4 AND 5; ABSTAIN WITH RESPECT TO THE PROPOSAL IN ITEM 6; AGAINST THE PROPOSAL IN ITEM 7; ABSTAIN WITH RESPECT TO THE PROPOSAL IN ITEM 8; AND IN THE DISCRETION OF THE PROXIES, UPON ANY OTHER MATTER THAT MAY PROPERLY COME BEFORE THE ANNUAL MEETING OR ANY ADJOURNMENTS OR POSTPONEMENTS THEREOF

LIBERATION RECOMMENDS THAT YOU <u>NOT CAST</u> ANY VOTE FOR ERIC LANGSHUR, ONE OF THE BOARD OF DIRECTORS' NOMINEES, <u>FOR</u> THE PROPOSALS IN ITEMS 2, 3, 4 AND 5, AND <u>AGAINST</u> THE PROPOSAL IN ITEM 7 WE MAKE NO RECOMMENDATIONS WITH RESPECT TO PARDUS' NOMINEES IN ITEM 1, THE PROPOSAL IN ITEM 6 OR THE PROPOSAL IN ITEM 8. TO VOTE IN ACCORDANCE WITH LIBERATION'S RECOMMENDATIONS, JUST SIGN, DATE AND RETURN THIS PROXY; NO BOXES NEED TO BE CHECKED.

The undersigned hereby acknowledges receipt of the Proxy Statement of Liberation dated December ___, 2005

DATED: _____, 200 _

Signature:

_____

Signatures, if held jointly:

_____

_____

Title or Authority:

_____

Joint owners should each sign personally. If signing as attorney, executor, administrator, trustee, broker, bank nominee, guardian, or in any other similar capacity, please include your full title. If a corporation, please sign in corporate name by authorized officer. If a partnership, please sign in partnership name by authorized person. This proxy votes all shares held in all capacities.

**End of Filing**

Powered By EDGAR Online

© 2005 | EDGAR Online, Inc.

# EXHIBIT 27

# BALLY TOTAL FITNESS HOLDING CORP

## FORM DFAN14A
(Additional Proxy Soliciting Materials - Non-Management (definitive))

## Filed 12/14/2005

| | |
|---|---|
| Address | 8700 WEST BRYN MAWR AVENUE SECOND FLOOR |
| | CHICAGO, Illinois 60631 |
| Telephone | 773-380-3000 |
| CIK | 0000770944 |
| Industry | Recreational Activities |
| Sector | Services |
| Fiscal Year | 12/31 |

Powered By  EDGAR'

rttc //www.edgar-online.com
© Copyright 2005. All Rights Reserved
Distribution and use of this document restricted under EDGAR Online's Terms of Use

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# SCHEDULE 14A
### (RULE 14a-101)

### INFORMATION REQUIRED IN PROXY STATEMENT
### SCHEDULE 14A INFORMATION

### PROXY STATEMENT PURSUANT TO SECTION 14(A) OF THE
### SECURITIES EXCHANGE ACT OF 1934
### (AMENDMENT NO. __ )

Filed by the Registrant ☐                    Filed by a Party other than the Registrant ☒

Check the appropriate Box:

☐    Preliminary Proxy Statement

☐    **Confidential, for Use of the Commission only (as permitted by rule 14a-6(e)(2))**

☐    Definitive Proxy Statement

☐    Definitive Additional Materials

☒    Soliciting Material Pursuant to sec  240 14a-12

## BALLY TOTAL FITNESS HOLDING CORPORATION
### (Name of Registrant as Specified in Its Charter)

## LIBERATION INVESTMENTS, L.P.
### LIBERATION INVESTMENTS LTD.
### LIBERATION INVESTMENT GROUP, LLC
### EMANUEL R. PEARLMAN
### GREGG E. FRANKEL
#### (Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒    No fee required

☐    Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11

    (1)    Title of each class of securities to which the transaction applies:

    (2)    Aggregate number of securities to which the transaction applies:

    (3)    Per unit price or other underlying value of the transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

    (4)    Proposed maximum aggregate value of the transaction:

    (5)    Total fee paid:

☐    Fee paid previously with preliminary materials

☐    Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee

was paid previously  Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing

(1)    Amount Previously Paid:

_____

(2)    Form, Schedule or Registration Statement No :

_____

(3)    Filing Party:

_____

(4)    Date Filed:

_____

On December 11, 2005, Liberation Investments, L.P. ("LILP") and Liberation Investments Ltd ("LILTD", together with LILP, "Liberation") filed a complaint (a copy of which is attached hereto as Exhibit 1, the "Complaint") with the Court of Chancery of the State of Delaware in connection with Bally Total Fitness Holding Corporation's (the "Company") adoption and threatened use of a Stockholder Rights Plan dated October 18, 2005 (the "Poison Pill"), and is seeking an order from the Court (i) declaring (A) that the Board of Directors' adoption of the Management Protection Provision (the "Provision") in the Poison Pill was not supported by a compelling justification and was therefore void and a breach of fiduciary duty, and (B) that the use of the Provision to threaten Liberation or any other stockholder was an inequitable manipulation of the Board of Directors' and management's authority, and (ii) enjoining the Company and Paul Toback from attempting to enforce the Provision or the Poison Pill against Liberation or any other stockholder  The Complaint also seeks a judgment against the Company and Mr. Toback for all damages their actions have caused Liberation and an award of reasonable attorneys' fees and costs incurred by Liberation in connection with the action

In accordance with Instruction 3 of Item 4 of Schedule 14A, LILP, LILTD, Liberation Investment Group, LLC ("LIGLLC"), Emanuel R. Pearlman and Gregg E Frankel will be deemed to be participants in the solicitation in connection with the Proposal  The number of shares of the Company's common stock beneficially owned by these persons as of November 21, 2005 is as follows: LILP (2,662,963), LILTD (1,436,487), LIGLLC (4,099,450), Mr Pearlman (4,134,450), Mr Frankel (0)

SECURITY HOLDERS ARE STRONGLY URGED TO READ THE PROXY STATEMENT AND OTHER DOCUMENTS RELATING TO THE SOLICITATION OF PROXIES BY THE REPORTING PERSONS IN CONNECTION WITH THE PROPOSAL AS THEY WILL CONTAIN IMPORTANT INFORMATION  WHEN COMPLETED, A DEFINITIVE PROXY STATEMENT AND A FORM OF PROXY WILL BE MAILED TO STOCKHOLDERS OF THE ISSUER AND WILL BE AVAILABLE AT NO CHARGE ON THE WEBSITE OF THE SECURITIES AND EXCHANGE COMMISSION AT HTTP://WWW.SEC.GOV.

Exhibit 1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| LIBERATION INVESTMENTS, L.P. and LIBERATION INVESTMENTS, LTD. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No _____ |
| BALLY TOTAL FITNESS HOLDING CORPORATION, a Delaware corporation, and PAUL A TOBACK | ) ) ) ) | |
| Defendants | ) ) | |

**COMPLAINT**

Plaintiffs Liberation Investments, L.P., and Liberation Investments, Ltd. (collectively, "Liberation Investments" or "Liberation"), by and through their attorneys, hereby bring this action against defendants Bally Total Fitness Holding Corporation ("Bally" or the "Company") and Paul A. Toback, and in support thereof allege as follows on knowledge, information and belief:

I. Introduction

1. On October 18, 2005, the day after the official announcement of a proxy fight against certain of its incumbent directors, the Company adopted a "shareholders rights plan" (the "Poison Pill" or "Pill")  As with all such devices, the Poison Pill prevents certain stockholder actions by threatening to dilute the value of their stock if they take those actions  Because of this dilution, a stockholder who violates the provisions of the Pill faces catastrophic loses

2. The purported purpose of the Poison Pill was to protect the Company's shareholders from unfair or coercive takeover proposals. That, however, was not the only purpose of the Poison Pill. In fact, another — albeit undisclosed — purpose was to help protect the incumbent directors, and particularly the Company's Chairman and CEO, Mr. Toback, from a proxy contest. At the time the Poison Pill was adopted, Bally's directors knew that a stockholder that held approximately 14% of the Company's stock, Pardus Capital Management ("Pardus"), had filed materials with the Securities and Exchange Commission the previous day announcing that it would be running the proxy contest. The directors also knew that much of the Company's stock was in the hands of large institutional investors who might not support management, and that Pardus had previously asked the Company to seat Pardus' director nominees voluntarily.

3. Nor was Pardus the only stockholder seeking change at the Company. The directors were aware that Liberation Investments, which held approximately 12% of the Company's stock, had urged the board to split the offices of chairman and chief executive officer so different persons hold them, and to remove Mr. Toback as CEO. The directors also knew that Liberation Investments had not run a proxy contest the previous year in return for the Company's agreement to remove the prior version of its poison pill. And the directors were keenly aware that only a month before the Poison Pill was adopted Liberation Investments had brought an action under 8 *Del. C.* § 211 to force the Company to hold an annual shareholders meeting. That action had been resolved on October 6, 2005 with the filing of a consent judgment in which the Company agreed to hold an annual meeting on

2

January 26, 2006  Thus, when they adopted the Poison Pill, Mr. Toback and the board knew that they faced a serious proxy challenge

4. At the time, Bally's board consisted of six individuals. One of them, Kenneth Looloian, a very independent director who in the past had disagreed with both Mr. Toback and with Liberation Investments, was ailing and had been unable to attend board meetings for some time. He was technically slated to stand for election in January, but it was doubtful that his health would permit it and it is likely that Mr. Toback did not want him to return in any case. Another director, Eric Langshur, was also coming up for election at the January shareholders meeting, when three directors would normally stand for election (Bally has a classified board). In addition, Bally had two other open board seats that could be filed by the shareholders at the January meeting. Mr. Toback thus faced not only the prospect of having three potentially hostile directors on the Company's board but the possibility that the shareholders could elect a majority of the directors

5. The Poison Pill was a response to that threat to Mr. Toback's control of the Company. It contains a provision (the "Management Protection Provision") in its definition of "beneficial owner" that makes it extremely perilous for shareholders engaging in proxy fights. Simply put, the Management Protection Provision prevents stockholders who collectively hold more than 15% of the Company's stock from agreeing to jointly vote their shares

3

6. The Management Protection Provision is designed to — and does — prevent shareholders from coming together to oust management because while it allows shareholders to gather revocable proxies, it does not permit them to form joint voting slates. The Management Protection Provision thus directly interferes with the stockholder franchise, and when such a provision is adopted in the face of a proxy contest it may only be upheld if the directors show a "compelling justification." There is no such justification here.

7. But that is not the only problem with the Management Protection Provision. In the hands of cynical managers, such a provision can be used not only as a shield to limit the ability of the shareholders to conduct a proxy fight, but as a sword to force them to give up the fight entirely. Upon information and belief, that is precisely what Bally management seeks to do here.

8. The Management Protection Provision accomplishes this purpose through its very broad terms. It not only bans voting agreements but also "arrangements" and "understandings" in relation to voting. In other words, it bans stockholders from having any deals to vote together. This gives entrenchment-minded management enormous leverage. If it fears that it will lose the proxy contest, it can simply tell dissident shareholders that it believes they have an "understanding" and threaten to trigger the Poison Pill unless the stockholders either give up the proxy fight or agree to vote against the dissidents. The shareholders are then faced with the prospect of devastating losses unless they can thereafter convince a court they did not, in fact, have such an understanding. It is an extremely unappetizing prospect because of the huge disparity in risk.

4

9. That precise scenario seems to be playing out here. After the Poison Pill was adopted, Liberation Investments brought a § 220 proceeding to review, among other things, the Company's documents dealing with the independence of the directors and the decision to adopt the Pill and the Management Protection Provision. Counsel finally received a heavily redacted version of those documents late in the day on December 9, 2005. While the contents of those documents may not be disclosed by counsel either here or to Liberation Investments directly because of confidentiality agreements, it can be said that those documents support both Liberation Investment's prior beliefs and the factual recitations of this complaint.

10. Pardus proceeded with its proxy contest, at the same time the § 220 action was playing out, and Liberation Investments started its own contest to amend the by-laws to allow the shareholders to remove Mr. Toback as CEO. The Liberation proposal brought an immediate reaction from the Company. It sued Liberation both in this Court and in the United States District Court for the District of Delaware, seeking to block the proposal.

11. The Company is also using its newly forged sword. Upon information and belief, Bally's management is threatening to trigger the Poison Pill on the ground that Liberation Investments and Pardus (and perhaps Liberation and someone else — the details seem less important to Bally than the threat) have an "understanding" to vote together. They do not, in fact, have any such agreement, arrangement or understanding. One of Pardus' three nominees, Donald Kornstein, was suggested to Pardus by Liberation Investments, but Bally confirmed that suggesting names of possible directors would not trigger the Pill.

5

12  Liberation Investments, of course, hopes that Pardus and the Company's other stockholders will vote for Liberation's proposal and intends to solicit the stockholders to do so  Pardus, however, has made no commitment to Liberation Investments  Nor has Liberation Investments made any commitment to Pardus  It suggested Mr  Kornstein's name for one of the open director slots, as the Management Protection Provision permitted it to do  But the other two directors on the Pardus slate have now been nominated by the Company itself, effectively assuring that they will be elected in any event.

13  Moreover, although there is no agreement between Liberation and Pardus, under Delaware law Liberation would be allowed to reach an agreement with Pardus *or any other stockholder* about voting its stock; Mr  Toback and his board have nothing to say about it  They are interested parties and are not permitted to try to stockholder voting to their liking  The Management Protection Provision's attempted ban on stockholder voting agreements constitutes an inequitable manipulation of the corporate machinery and a breach of fiduciary duty  The Management Protection Provision makes it significantly harder to wage a proxy contest to the injury of not only the plaintiff but the shareholder franchise as well

14  But what management is doing here is even worse  The hinted threat of "drop your proposal or we might trigger the Pill against you" represents the worst sort of management entrenchment and abuse of power  It is unconscionable  It is inequitable  And it is going on here

6

## II  The Parties

15  Liberation Investments consists of two investment funds whose primary purpose is to invest in what appear to be undervalued companies whose value might be unlocked if changes are made with the way the companies are being run  To that end, Liberation Investments is willing to engage in proxy contests, such as the one here  Liberation Investments' principals are Emanuel Pearlman and Gregg Frankel. Mr  Pearlman served for many years as a consultant to various entities run by the late Arthur Goldberg (including the Company) and was a consultant to the Company off-and-on until 2003

16  Bally is a Delaware corporation with its headquarters in Chicago, Illinois  According to Bally's press releases it "is the largest and only nationwide commercial operator of fitness centers in the U S , with nearly 440 facilities located in 29 states, Mexico, Canada, Korea, China and the Caribbean under the Bally Total Fitness ®, Crunch Fitness (SM), Gorilla Sports (SM), Pinnacle Fitness ®, Bally Sports Clubs ® and Sports Clubs of Canada ® brands  Bally offers a unique platform for distribution of a wide range of products and services targeted to active, fitness-conscious adult consumers "

17  Mr  Toback is Bally's Chairman and CEO, positions he assumed in early 2003 upon the resignation of Lee Hillman. Prior to that time Mr  Toback served as the Company's Chief Operating Officer  Before being asked to join Bally by Mr. Hillman, Mr  Toback had spent most of his career in Chicago and national politics  Many of the people he has surrounded himself with at Bally have similar political connections

7

### III  The Directors

18  As noted above, Bally had only five active directors at the time that the Poison Pill was adopted. They were Mr. Toback, Barry Deutsch, John Rogers, Eric Langshur, and James McAnally  Three directors had also resigned in recent months: Stephen Swid, Dr. Marilyn Seymann and David Wilhelm  As discussed hereafter, the circumstances surrounding the resignations of the prior directors cast a revealing light on the purposes of Mr. Toback in ensuring that the Management Protection Provision was adopted

19  Bally claims that each director except Mr. Toback is "independent " If by the use of that word the Company means that each director is able to and does function independently of Mr. Toback, then it is not correct  Mr. Deutsch is not independent of Mr. Toback. He is a childhood friend of Mr. Toback's who was put on the board by Mr. Toback to continue the process of cementing Toback's control of the board. Because of his extremely close relationship with Mr. Toback that has lasted for the better part of 40 years, Mr. Deutsch cannot be expected to say "no" to Toback on a point that is important to Toback and thus cannot be deemed to be independent under Delaware law.

20  Upon information and belief, Eric Langshur is a social acquaintance of Mr. Toback  Although that fact alone does not raise questions about his independence, Mr. Langshur's term of office comes up at the January stockholder meeting and thus he has a direct interest in its outcome as well.

21  John Rogers also has ties to Mr. Toback that make it difficult for him to act with full independence  Mr. Rogers is a substantial Chicago businessman who runs his own

8

mutual fund company. Mr. Rogers is associated with the same political circles as Mr. Toback and is a major contributor of campaign funds to them. As far as Liberation knows, Mr. Rogers is not beholden to Mr. Toback in the sense that Mr. Toback outright controls him, but he is linked to Toback by political ties that run extremely deep. Indeed, Mr. Rogers was placed on the board by Toback precisely to offset the influence of Stephen Swid, who Mr. Toback viewed as hostile.

22. As mentioned previously, three of Bally's directors resigned in the past year. The first was Mr. Wilhelm, who resigned after only a few days on the board. In fact, he should never have been appointed (if he was validly appointed) because he too was a close political ally of Mr. Toback's. The second was Dr. Marilyn Seymann. She came on the board in May 2005 with Mr. Wilhelm, and Bally lauded her as a corporate governance expert. Bally was right. Dr. Seymann is indeed a highly regarded corporate governance expert.

23. In conversations with Liberation Investments after she was appointed, Dr. Seymann agreed that the Chairman and CEO should be different persons and said that she would raise it with Mr. Toback. Less than three months later, however, Dr. Seymann resigned. The world was told that her academic duties had suddenly become too pressing but Liberation Investments believes that Dr. Seymann actually resigned because of how Bally and its Board operates. Stephen Swid, an independent director who had been nominated by dissident stockholders in the past, abruptly resigned in August as well. Liberation Investments believes that he left because of disagreements with Mr. Toback. In

9

any event, with two exceedingly timely resignations and the illness of Mr. Loolooian, there was no truly independent voice on the board to disagree with Mr. Toback's demands when the time came to consider the Poison Pill and its Management Protection Provision.

### IV. The Adoption of the Poison Pill.

24. Because of confidentiality restrictions, counsel for Liberation Investments is not currently permitted to share with Liberation the materials produced in the § 220 action. Nor may they be discussed here. Those documents help demonstrate, though, that the adoption of the Management Protection Provision was not proper. Because of redactions it is not clear whether the board was ever told that the Management Protection Provision would interfere with the stockholder franchise, but for reasons that may not be disclosed here there can be no doubt that management and its advisors were focused on making a proxy contest as difficult as possible.

25. After adoption of the Poison Pill, the Company repeatedly took the position that it was not really draconian at all. In fact, the Company informed Liberation that the Management Protection Provision was never intended to prevent stockholders from working together and running a joint proxy slate. Here, for example, is what Bally said in its discovery responses in the § 220 action:

"[T]he complaint alleges that the rights plan prevents stockholders who would 'collectively hold more than 15% of the Company's stock from banding together and running a joint proxy statement.' As Bally has informed Liberation, that statement is legally inaccurate. Nothing in the rights plan would prevent, for example, a Liberation representative from serving on the slate proposed by another significant stockholder, or vice versa."

10

26  And that is close to what happened  Mr Kornstein is not a Liberation representative, but Liberation suggested him to Pardus and he has been known by Liberation's managers as a successful investment banker and businessman for years  According to Bally, "nothing" in the Poison Pill should have prevented this  Indeed Bally says that "legally" Liberation Investments could even file a joint proxy statement with Pardus  But Bally's protestations of how benign the Management Protection Provision really is soon faded away  Once it no longer needed to tell this Court how unfounded Liberation's worries were, Bally began showing Liberation Investments just how understated its concerns had been  Bally began hinting to Liberation Investments that the Kornstein nomination showed that Pardus and Liberation really were a "group" for voting (or some other purpose) and thus had violated the Pill  Bally hinted that Liberation Investments might also be in a "group" with other, unnamed shareholders

27  The purpose of these threats was presumably to get Liberation to withdraw its proposal to change the bylaws and unseat Mr  Toback  Mr Toback was determined to prevent this proposal from succeeding at all costs and is apparently willing to use the Poison Pill to that end.

28  Poison Pills can be legitimate devices but they may not legitimately be used to interfere with a proxy contest since the right of the stockholders to a free and fair election process is the ideological backbone of Delaware corporate law  Even at its most benign the Management Protection Provision improperly interferes with the present proxy contest and should be enjoined  Moreover, the active use of the Management Protection Provision to

11

threaten Liberation Investments goes beyond interference to actual shareholder oppression. Upon information and belief, it is Mr. Toback who has authorized these actions.

**WHEREFORE,** Liberation Investments respectfully requests this Court to:

(1)    Enter an order declaring that the board's adoption of the Management Protection Provision was not supported by a compelling justification and was therefore void and a breach of fiduciary duty;

(2)    Enter an order declaring that the use of the Management Protection Provision to threaten Liberation Investments or any other stockholder was an inequitable manipulation of the corporate machinery;

(3)    Enter an order preliminarily and permanently enjoining the defendants and all those acting in concert with them from attempting to enforce the Management Protection Provision or the Poison Pill against Liberation or any other stockholder claimed by defendants to be acting in concert with it;

(4)    Enter a judgment against the defendants for all damages their actions have caused plaintiffs; and

(5)    Award plaintiffs their reasonable attorneys' fees and costs incurred in connection with this action, together with such other and further relief as this Court may deem just and proper.

ASHBY & GEDDES

_____ / s /    S TEPHEN E. J ENKINS (I.D. #2152)_____
Stephen E. Jenkins (I.D. #2152)
Steven T. Margolin (I.D. #3110)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Liberation Investments, L.P. and
Liberation Investments, Ltd.*

12

OF COUNSEL:

Michael Diamond
Kenneth J. Baronsky
Kenneth Ostrow
Adam R. Moses
MILBANK, TWEED, HADLEY & MCCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000

Dated: December 11, 2005

13

**End of Filing**

Powered By EDGAR Online

© 2005 | EDGAR Online, Inc.