# EXHIBIT 28

# BALLY TOTAL FITNESS HOLDING CORP

### FORM PRRN14A
(Proxy Soliciting Materials (revised))

### Filed 12/14/2005

| | |
|---|---|
| Address | 8700 WEST BRYN MAWR AVENUE SECOND FLOOR |
| | CHICAGO, Illinois 60631 |
| Telephone | 773-380-3000 |
| CIK | 0000770944 |
| Industry | Recreational Activities |
| Sector | Services |
| Fiscal Year | 12/31 |

Powered By  EDGAR
Online

http://www.edgar-online.com
© Copyright 2005, All Rights Reserved
Distribution and use of this document restricted under EDGAR Online's Terms of Use

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# SCHEDULE 14A

### Proxy Statement Pursuant to Section 14(a) of the
### Securities Exchange Act of 1934

Filed by the Registrant ☐          Filed by a Party other than the Registrant ☒

Check the appropriate box:

☒ Preliminary Proxy Statement
☐ **Confidential, for Use of the Commission only (as permitted by rule 14a-6(e)(2))**
☐ Definitive Proxy Statement
☐ Definitive Additional Materials
☐ Soliciting Material Pursuant to ss. 240.14 a-11(c) or ss 240.14a-12

## BALLY TOTAL FITNESS HOLDING CORPORATION
#### (Name of Registrant as Specified In Its Charter)

### Liberation Investments, L.P.

### Liberation Investments Ltd.

### Liberation Investment Group, LLC

### Mr. Emanuel R. Pearlman

### Mr. Gregg E. Frankel
#### (Name of Person(s) Filing Proxy Statement if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒ No fee required
☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

1) Title of each class of securities to which transaction applies:

2) Aggregate number of securities to which transaction applies:

3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

4) Proposed maximum aggregate value of the transaction:

5) Total fee paid:

☐ Fee paid previously with preliminary material

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing

1)    Amount Previously Paid:

2)    Form, Schedule or Registration Statement No :

3)    Filing Party:

4)    Date Filed:

**LIBERATION INVESTMENTS, L.P.**
11766 Wilshire Blvd, Suite #870
Los Angeles, CA 90025

**LIBERATION INVESTMENTS LTD.**
11766 Wilshire Blvd, Suite #870
Los Angeles, CA 90025

December [ ___], 2005

Dear Fellow Stockholder:

On behalf of Liberation Investments, L.P., Liberation Investments Ltd. and their affiliates (collectively, " Liberation "), we are pleased to enclose our Proxy Statement and [GOLD] Proxy Card, which will enable you to support our stockholder proposals to improve the quality of corporate governance at Bally Total Fitness Holding Corporation (the " Company " or " Bally ") We expect that our proposals will be voted on at the 2006 Annual Meeting of Stockholders of the Company currently slated to occur at 8:30 A.M. (CST) on January 26, 2006, at the Renaissance Chicago O'Hare Hotel, 8500 West Bryn Mawr Avenue, Chicago, Illinois, including any adjournments or postponements thereof or any special meeting that may be called in lieu thereof (the " Annual Meeting ") Liberation is the beneficial owner of 4,134,450 shares or approximately [10.90]% of the Common Stock of the Company, making it one of the Company's largest stockholders

As you may be aware, Liberation has long been concerned about the quality of corporate governance at Bally. We believe that stockholder democracy at the Company would be bolstered by providing stockholders with a continuing voice in determining the tenure of Bally's senior management team, including its Chief Executive Officer and President We expect that the existence of such a stockholder right would strengthen corporate governance by serving as a powerful incentive for members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders

The Company is presently at a critical strategic crossroads We are asking you to join us in increasing management accountability to stockholders by supporting our call for improved corporate governance. It is time for us to make these much needed changes

The enclosed Proxy Statement contains important information concerning the Company's Annual Meeting. Please read it carefully.

WE URGE YOU TO SIGN, DATE AND RETURN THE ENCLOSED [GOLD] PROXY CARD TODAY.

Thank you for your support

Sincerely,

**LIBERATION INVESTMENTS, L.P.**
**LIBERATION INVESTMENTS LTD.**

By: /s/ Emanuel R. Pearlman
　　Emanuel R. Pearlman

REVISED PRELIMINARY PROXY STATEMENT DATED DECEMBER 14, 2005; SUBJECT TO COMPLETION

## 2006 ANNUAL MEETING OF STOCKHOLDERS
of
Bally Total Fitness Holding Corporation

## PROXY STATEMENT
of
Liberation Investments, L.P. and
Liberation Investments Ltd

This Proxy Statement and the enclosed [GOLD] Proxy Card are being furnished by Liberation Investments, L.P. and Liberation Investments Ltd. (collectively " Liberation ") and our affiliates, Liberation Investment Group, LLC, Emanuel R. Pearlman, the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group LLC, and Gregg E. Frankel, President of Liberation Investment Group, LLC, to holders of common stock, par value $.01 per share (the " Common Stock "), of Bally Total Fitness Holding Corporation, a Delaware corporation (" Bally " or the " Company "), in connection with the solicitation of proxies for use at the annual meeting of the Company's stockholders and at any and all adjournments or postponements thereof (the " Annual Meeting ") The Annual Meeting is scheduled to be held at 8:30 A.M. (CST) on January 26, 2006, at the Renaissance Chicago O'Hare Hotel, 8500 West Bryn Mawr Avenue, Chicago, Illinois As of December [__], 2005, Liberation was the beneficial owner of 4,134,450 shares of Common Stock in the aggregate, representing approximately [10.90]% of the outstanding shares According to the Company's Proxy Statement filed on December [ __], 2005, there were 38,094,479 shares of Common Stock outstanding

THIS SOLICITATION IS BEING MADE BY LIBERATION AND NOT ON BEHALF OF THE BOARD OF DIRECTORS OF THE COMPANY.

This Proxy Statement and the [GOLD] Proxy Card are first being mailed or furnished to stockholders of the Company on or about December [ __], 2006

YOUR VOTE IS IMPORTANT PLEASE SIGN AND DATE THE ENCLOSED [GOLD] PROXY CARD AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY PROPERLY VOTING THE ENCLOSED [GOLD] PROXY CARD AUTOMATICALLY REVOKES ALL PRIOR PROXY CARDS PREVIOUSLY SIGNED BY YOU

DO NOT MAIL ANY PROXY CARD OTHER THAN THE ENCLOSED [GOLD] CARD IF YOU WISH TO VOTE FOR THE PROPOSALS LIBERATION SUPPORTS.

EVEN IF YOU PREVIOUSLY HAVE VOTED A PROXY CARD FURNISHED TO YOU BY THE COMPANY'S BOARD OF DIRECTORS OR ANY OTHER PARTY, YOU HAVE THE LEGAL RIGHT TO CHANGE YOUR VOTE BY SIGNING, DATING AND

RETURNING THE ENCLOSED [GOLD] PROXY CARD  ONLY YOUR LATEST DATED PROXY WILL COUNT AT THE ANNUAL MEETING

    HOLDERS OF RECORD OF SHARES OF COMMON STOCK AS OF DECEMBER 20, 2005, THE RECORD DATE FOR VOTING AT THE ANNUAL MEETING, ARE URGED TO SUBMIT A [GOLD] PROXY CARD EVEN IF YOUR SHARES ARE SOLD AFTER THE RECORD DATE

    IF YOU PURCHASED SHARES OF COMMON STOCK AFTER THE RECORD DATE AND WISH TO VOTE SUCH SHARES AT THE ANNUAL MEETING, YOU SHOULD OBTAIN A [GOLD] PROXY CARD FROM THE SELLER OF SUCH SHARES

    IF YOUR SHARES ARE REGISTERED IN YOUR OWN NAME, PLEASE SIGN, DATE AND MAIL THE ENCLOSED [GOLD] PROXY CARD TO US IN CARE OF INNISFREE M&A INCORPORATED, THE FIRM ASSISTING US IN THE SOLICITATION OF PROXIES, IN THE POSTAGE-PAID ENVELOPE PROVIDED  IF YOUR SHARES ARE HELD IN THE NAME OF A BROKERAGE FIRM, BANK NOMINEE OR OTHER INSTITUTION, ONLY IT CAN SIGN A [GOLD] PROXY CARD WITH RESPECT TO YOUR SHARES AND ONLY UPON RECEIPT OF SPECIFIC INSTRUCTIONS FROM YOU  ACCORDINGLY, YOU SHOULD CONTACT THE PERSON RESPONSIBLE FOR YOUR ACCOUNT AND GIVE INSTRUCTIONS FOR A [GOLD] PROXY CARD TO BE SIGNED REPRESENTING YOUR SHARES  WE URGE YOU TO CONFIRM IN WRITING YOUR INSTRUCTIONS TO THE PERSON RESPONSIBLE FOR YOUR ACCOUNT AND TO PROVIDE A COPY OF SUCH INSTRUCTIONS TO US IN CARE OF INNISFREE M&A INCORPORATED AT THE ADDRESS INDICATED BELOW SO THAT WE WILL BE AWARE OF ALL INSTRUCTIONS GIVEN AND CAN ATTEMPT TO ENSURE THAT SUCH INSTRUCTIONS ARE FOLLOWED

    If you have any questions about executing your proxy or require assistance, please call:

**Innisfree M&A Incorporated**
**501 Madison Avenue, 20th Floor**
**New York, NY 10022**
*Stockholders Call Toll-Free:*
**888-750-5834**
*Banks and Brokers Call Collect:*
**212-750-5833**

## LIBERATION INVESTMENTS, L.P. AND
## LIBERATION INVESTMENTS LTD.

The proxies solicited hereby are being sought by Liberation and our affiliates, Liberation Investment Group, LLC, Emanuel R. Pearlman ("Mr. Pearlman"), the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group, LLC, and Gregg E. Frankel, President of Liberation Investment Group, LLC. Liberation Investments, L.P. is a Delaware limited partnership, and Liberation Investments Ltd. is a private offshore investment corporation. The principal business of Liberation Investments, L.P. is that of a private investment partnership engaging in the purchase and sale of securities for investment for its own account, and the principal business of Liberation Investments Ltd. is that of a private offshore investment corporation engaging in the purchase and sale of securities for investment for its own account. The shares of Common Stock beneficially owned by Liberation and its affiliates are set forth in Appendix I hereto.

For additional information regarding Liberation and its affiliates and the participants in this proxy solicitation, please see Appendix I annexed to this Proxy Statement.

### REASONS FOR THE SOLICITATION

Liberation has long been concerned about the quality of corporate governance at Bally. We believe that stockholder democracy at the Company would be bolstered by providing stockholders with a continuing voice in determining the tenure of Bally's senior management team, including its Chief Executive Officer and President. We expect that the existence of such a stockholder right would strengthen corporate governance by serving as a powerful incentive for members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders.

The Company is presently at a critical strategic crossroads. It is therefore essential that we act now to establish greater management accountability. Our proposals offer you the opportunity to pave the way for the appointment of a new Chief Executive Officer and President who is committed to building stockholder value and making the strategic decisions that will best serve *all* stockholders. We urge you to support our efforts.

Although Liberation strongly believes that adoption of the proposals contained herein will serve to maximize stockholder value, Liberation gives no assurances that the adoption of any or all of such proposals will produce the anticipated increase in stockholder value.

We urge stockholders to support our call for improved corporate governance by voting in the following manner:

1. To NOT CAST any vote for Eric Langshur, one of the Board of Directors' nominees for election to the Board of Directors; LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION with respect the nominees of Pardus European Special Opportunities Master Fund L.P. and certain of its affiliates (collectively, "Pardus") for election to the Board of Directors;

2  FOR our proposal to amend the Company's Amended and Restated Bylaws (the " Bylaws ") to give stockholders the authority to remove the Chief Executive Officer and President of the Company;

3  FOR our proposal to amend the Company's Bylaws to increase stockholder authority with respect to determining the tenure of officers of the Company;

4  FOR our proposal to amend the Company's Bylaws to protect stockholder authority to remove officers of the Company;

5  FOR our proposal to remove Paul A  Toback as Chief Executive Officer and President of the Company;

6. LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION with respect to Pardus' proposal to amend the Company's Bylaws to repeal any amendments to the Bylaws made by the Board of Directors from May 26, 2005 through the date on which the proposal is approved;

7  AGAINST the approval of the Board of Directors' 2006 Omnibus Equity Compensation Plan; and

8  LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION with respect to the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005

The effectiveness of each of Proposals 2, 3, 4 and 5 above (collectively, the " Liberation Proposals ") is conditioned upon the receipt of approval of all of the Liberation Proposals  Consequently, if any of the Liberation Proposals is not approved, none of the Liberation Proposals will be enacted even though sufficient votes may have been received to approve a particular Liberation Proposal

Although Proposals 3 and 4 above are closely related to each other conceptually, they propose to amend different provisions of the Bylaws and are accordingly presented as independent proposals in accordance with the requirements of Rule 14a-4(a)(3) of the Securities Exchange Act of 1934, as amended

## Proposal 1. Nominees of the Board of Directors and Pardus for Election to the Board of Directors .

At the Annual Meeting, assuming a quorum is present, three Class III Directors are to be re-elected to serve for three-year terms expiring in 2008, or until their successors have been duly elected or qualified  We expect that the Board of Directors will nominate Eric Langshur, Charles Burdick and Barry R  Elson for re-election as directors in the class of directors whose term expires on the date of the Annual Meeting  We expect that Pardus will nominate Charles J  Burdick, Barry R  Elson and Don R  Kornstein to serve as directors in the class of directors whose term expires on the date of the Annual Meeting  We encourage you to

review the Proxy Statements of the Board of Directors and Pardus for additional information concerning their respective nominees

Liberation is soliciting proxies to not cast any vote with respect to Eric Langshur, one of the Company's three nominees to the Board of Directors  By not casting your vote with respect to the election of Eric Langshur, stockholders can send management a strong message that they support our proposals for improved stockholder rights and increased management and Board of Directors accountability, as well as our goal of maximizing stockholder value

According to the Proxy Statements of the Board of Directors and Pardus, the affirmative vote of the holders of a majority of the shares represented in person or by proxy at the meeting and entitled to vote in the election of directors is required to elect each director nominee  Accordingly, votes not cast with respect to the election of one or more directors will have the effect of a negative vote with respect to the election of directors, although such votes will be counted for purposes of determining whether there is a quorum

LIBERATION RECOMMENDS THAT YOU NOT CAST ANY VOTE WITH RESPECT TO ERIC LANGSHUR, ONE OF THE COMPANY'S NOMINEES FOR ELECTION TO THE BOARD OF DIRECTORS  LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION WITH RESPECT TO HOW OR WHETHER YOU SHOULD VOTE FOR PARDUS' NOMINEES FOR ELECTION TO THE BOARD OF DIRECTORS

**Proposal 2. Stockholder Authority to Remove Chief Executive Officer and President of the Company** .

This proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides, in relevant part, that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides the stockholders of a company with the authority to amend its bylaws

We propose that stockholders approve and adopt the following resolution: " **RESOLVED** , that the stockholders of the Company do hereby amend Article IV, Section 1, of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such section in its entirety and replacing it as follows: [1]

"The officers of the Corporation shall be chosen by the Board of Directors , provided that the stockholders shall be empowered to remove the Corporation's Chief Executive Officer and President from office by the affirmative vote of the holders of a majority of the Corporation's issued and outstanding stock then entitled to vote. The Corporation's officers shall be a Chief Executive Officer, who shall also be the Corporation's President, a Secretary and a Treasurer  The Board of Directors, in its discretion, may also choose a Chairman of the Board of Directors

[1]    For ease of reference, text to be added to the existing text of the Bylaws by this resolution is underscored below

(who must be a director) and one or more Vice Presidents, Assistant Secretaries, Assistant Treasurers and other officers  Any number of offices may be held by the same person, unless otherwise prohibited by law, the Certificate of Incorporation or these Bylaws  The officers of the Corporation need not be stockholders of the Corporation nor, except in the case of the Chairman of the Board of Directors, need such officers be directors of the Corporation "

Reasons for the Proposal  Currently, the Company's Bylaws do not provide stockholders with the authority to remove the Chief Executive Officer and President of the Company. If you believe, as we do, that stockholder democracy would be strengthened by providing the stockholders with the authority to determine the tenure of the Chief Executive Officer and President of the Company, then we urge you to support this proposal  We believe that this proposal would increase management accountability to stockholders and, in turn, improve the quality of the Company's corporate governance

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO GIVE STOCKHOLDERS THE AUTHORITY TO REMOVE THE CHIEF EXECUTIVE OFFICER AND PRESIDENT OF THE COMPANY

### Proposal 3. Increase Stockholder Authority with Respect to Determining the Tenure of Officers of the Company .

This proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides, in relevant part, that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides the stockholders of a company with the authority to amend its bylaws

We propose that stockholders approve and adopt the following resolution: " **RESOLVED** , that the stockholders of the Company do hereby amend Article IV, Section 2, of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such section in its entirety and replacing it as follows: [2]

"The Board of Directors at its first meeting held after each annual meeting of stockholders shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors or the stockholders, as the case may be  All officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal by the Board of Directors or the stockholders  Any officer elected by the Board of Directors may be removed at any time by the affirmative vote of a majority of the Board of Directors  The Corporation's Chief Executive Officer and President may also be removed by the stockholders as provided in Section 1 of this Article IV, and no person removed as Chief Executive Officer and President shall thereafter be appointed or reappointed by the Board of Directors to serve as an officer of the Corporation  Any vacancy occurring in any office of the Corporation shall be filled

---

[2]    For ease of reference, text to be added to the existing text of the Bylaws by this resolution is underscored below.

by the Board of Directors. The salaries of all officers who are directors of the Corporation shall be fixed by the Board of Directors."

Reasons for the Proposal. This proposal is meant to ensure the vitality of stockholder democracy at the Company by providing the stockholders with the right to remove a member of senior management if his or her performance falls well short of the mark. While it is expected that this right would only very rarely be exercised by stockholders, we believe that its very existence would serve as a powerful incentive for members of senior management to pay careful attention to their fiduciary duties and focus keenly on maximizing value for all stockholders. In addition, in order to ensure that the Board of Directors cannot frustrate the expressed will of stockholders holding a majority of the Common Stock to remove the Chief Executive Officer and President of the Company, this proposal provides a mechanism to prevent the Board of Directors from reappointing a Chief Executive Officer and President who may be removed by the stockholders following the adoption of Proposal 3 described herein.

Currently, the Company's Bylaws do not provide stockholders with the authority to remove officers of the Company. If you believe, as we do, that stockholder democracy would be strengthened by providing the stockholders with a meaningful voice in determining the tenure of the Company's senior management team, then we urge you to support this proposal. We believe that this proposal would increase management accountability to stockholders and, in turn, improve the quality of the Company's corporate governance.

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO INCREASE STOCKHOLDER AUTHORITY WITH RESPECT TO DETERMINING THE TENURE OF OFFICERS OF THE COMPANY.

## Proposal 4. Protection of Stockholder Authority to Remove Officers of the Company.

This proposal is being brought before the Annual Meeting pursuant to (i) Article Fifth, Section B of the Restated Certificate of Incorporation of the Company, which provides, in relevant part, that the Bylaws may be amended upon the affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote, and (ii) Section 109 of the Delaware General Corporation law, which provides the stockholders of a company with the authority to amend its bylaws.

We propose that stockholders approve and adopt the following resolution: " **RESOLVED** , that the stockholders of the Company do hereby amend Article VIII, Section 5, of the Amended and Restated Bylaws of Bally Total Fitness Holding Corporation by deleting such section in its entirety and replacing it as follows: [3]

---

[3]    For ease of reference, text to be added to the existing text of the Bylaws by this resolution is underscored below.

"Section 2 of Article III, <u>Section 1 of Article IV, Section 2 of Article IV</u> and this Section 5 of Article VIII of these Bylaws may only be altered, amended, changed or repealed by action of the stockholders of the Corporation."

<u>Reasons for the Proposal</u>. Currently, the Company's Bylaws would not prevent the Board of Directors from amending the Bylaws following the Annual Meeting to eviscerate the authority of stockholders to remove officers of the Company contemplated by Proposals 3 and 4 described herein. This proposal would prevent the Board of Directors of the Company from amending the Bylaws against the expressed will of stockholders holding a majority of the Common Stock to eliminate the contemplated authority of stockholders to remove the Chief Executive Officer and President of the Company.

If you believe, as we do, that stockholder democracy would be strengthened by providing the stockholders with a meaningful voice in determining the tenure of the Company's senior management team, then we urge you to support this proposal.

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO PROTECT STOCKHOLDER AUTHORITY TO REMOVE OFFICERS OF THE COMPANY.

<u>**Proposal 5. Removal of Paul A. Toback as Chief Executive Officer and President of the Company**</u>.

We propose that stockholders approve and adopt the following resolution: "**FURTHER RESOLVED,** that Paul A. Toback is hereby removed as the Chief Executive Officer and President of the Company, effective immediately."

<u>Reasons for the Proposal</u>. Currently, the Company's Bylaws do not provide stockholders with the authority to remove officers of the Company. If you believe, as we do, that stockholder democracy would be bolstered by providing the stockholders with a voice in determining the tenure of the Company's senior management team, then we urge you to support this proposal. This proposal offers you the opportunity to pave the way for the appointment of a new Chief Executive Officer and President who is committed to building stockholder value and making the strategic decisions that will best serve *all* stockholders.

LIBERATION RECOMMENDS THAT YOU VOTE "FOR" ITS PROPOSAL TO REMOVE PAUL A. TOBACK AS CHIEF EXECUTIVE OFFICER AND PRESIDENT OF THE COMPANY.

**Proposal 6. Pardus Bylaw Proposal** .

This proposal (the " Pardus Proposal ") is being brought before the Annual Meeting by Pardus pursuant to Section 109 of the Delaware General Corporation law. According to Pardus' Proxy Statement, the Pardus Proposal is intended to deter the current members of the Board of Directors from amending the Company's Bylaws in a manner that would create obstacles to the election of Pardus' nominees. We encourage you to review Pardus' Proxy Statement for additional information concerning the Pardus Proposal.

Pardus proposes that stockholders approve and adopt the following binding resolution:

" **RESOLVED** , that each provision or amendment of the Bylaws of Bally Total Fitness Holding Corporation (the " Company ") adopted by the Board of Directors of the Company without the approval of the Company's stockholders subsequent to May 25, 2005 (purportedly the last date of reported changes) and prior to the approval of this resolution be, and they hereby are, repealed, effective as of the time this resolution is approved by the Company's stockholders "

LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION WITH RESPECT TO HOW OR WHETHER YOU SHOULD VOTE FOR THE PARDUS PROPOSAL .

**Proposal 7. Board of Directors' 2006 Omnibus Equity Compensation Plan** .

According to the Proxy Statement of the Board of Directors, the Board of Directors has approved the Bally Total Fitness Holding Corporation 2006 Omnibus Equity Compensation Plan (the " Plan ") and will be submitting the Plan for stockholder approval at the Annual Meeting. Under the Plan, which is more fully described in the Proxy Statement of the Board of Directors and appended thereto, the Company will be able to grant stock options, stock units, stock awards, dividend equivalents and other stock-based awards to certain employees and non-employee directors of Bally and employees of Bally's subsidiaries.

According to the Proxy Statement of the Board of Directors, the Board of Directors' adoption of the Plan is conditioned on stockholder approval. The affirmative vote of the holders of a majority of the shares represented in person or by proxy at the meeting and entitled to vote will be required to approve the Plan. According to the Proxy Statement of the Board of Directors, the rules of the New York Stock Exchange further require that at least a majority of the votes of shares of common stock entitled to vote must be cast with respect to the approval of the Plan.

Liberation is soliciting proxies to vote against approval of the Plan. Based on Bally public filings, generous equity compensation packages have already been granted twice in 2005 to all members of the Company's senior management. These grants were comprised of approximately $[ _____ ] in restricted stock and options to purchase an additional [ _____ ] shares

We believe that previous equity compensation programs administered by the Board of Directors or its designees have been excessively dilutive and we therefore believe that stockholders are best served by rejecting the Plan. Moreover, we are concerned that the Plan does not, by its proposed terms, link awards with clearly identified individual or Company performance benchmarks, relying instead exclusively on the "full power and express discretionary authority" of a committee appointed by the Board of Directors for the determination of grants. Finally, the Plan would enable a committee appointed by the Board of Directors to accelerate vesting and lapsing of restrictions on any and all outstanding equity compensation grants issued under the Plan upon the occurrence of certain change in control events. Since Bally has recently announced its intention to explore "strategic alternatives," including arrangements that would constitute a change in control under the proposed terms of the Plan, additional needless dilution of stockholders' stakes in the Company may occur if you approve the Plan.

By voting against approval of the Plan, stockholders can send management a strong message that they support our proposals for improved stockholder rights and oppose further dilution of stockholders' stakes in the Company.

LIBERATION RECOMMENDS THAT YOU VOTE "AGAINST" THE APPROVAL OF THE PLAN.

**Proposal 8. Ratification of the Appointment of KPMG LLP as Independent Auditor for the Company for the Fiscal Year Ending December 31, 2005.**

According to the Proxy Statement of the Board of Directors, the Audit Committee has appointed KPMG LLP as the Company's independent auditor for the fiscal year ending December 31, 2005. The Board of Directors reports in its Proxy Statement that although stockholder ratification of the Audit Committee's selection of KPMG is not required by the Company's Bylaws, it believes that it is of sufficient importance to seek ratification.

According to the Proxy Statement of the Board of Directors, representatives of KPMG are expected to be present at the Annual Meeting to "respond to stockholders' questions and to have the opportunity to make any statements they consider appropriate."

LIBERATION EXPRESSES NO OPINION AND MAKES NO RECOMMENDATION WITH RESPECT TO HOW OR WHETHER YOU SHOULD VOTE FOR THE RATIFICATION OF KPMG LLP AS INDEPENDENT AUDITOR FOR THE COMPANY FOR THE FISCAL YEAR ENDING DECEMBER 31, 2005.

YOUR VOTE IS IMPORTANT. SIGN, DATE AND MAIL PROMPTLY THE ENCLOSED [GOLD] PROXY CARD IN THE ENCLOSED ENVELOPE.

## Other Matters to be Considered at the Annual Meeting

The Company will send to you the Board of Directors' Proxy Statement discussing, among other things, its slate of director nominees, Pardus' slate of director nominees, the Pardus Proposal, its proposal to approve the Plan, its proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 and any other matter that may properly come before the Annual Meeting. It is expected that Pardus will also send you its Proxy Statement discussing, among other things, its slate of director nominees, the Board of Directors' slate of director nominees and the Pardus Proposal. With the exception of the Board of Directors' slate of director nominees, Pardus' slate of director nominees, the Pardus Proposal, the Board of Directors' proposal to approve the Plan, the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 and the proposals contained herein, Liberation is not aware at the present time of any other matters which are scheduled to be voted upon by stockholders at the Annual Meeting.

As stated under Proposal 1, above, we are soliciting your proxy to NOT CAST any vote with respect to Eric Langshur, one of the Company's nominees for election to the Board of Directors. We encourage you to review the Board of Directors' Proxy Statement for information concerning its nominees. In addition, we EXPRESS NO OPINION AND MAKE NO RECOMMENDATION with respect to how or whether you should vote for the Pardus Proposal. We encourage you to review Pardus' Proxy Statement for additional information concerning its nominees. We are soliciting your proxy to vote FOR the Liberation Proposals. As stated under Proposal 7, above, we are soliciting your proxy AGAINST the approval of the Board of Directors' 2006 Omnibus Equity Compensation Plan. As stated under Proposal 8, above, we EXPRESS NO OPINION AND MAKE NO RECOMMENDATION with respect to the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005.

You may mark the enclosed [GOLD] Proxy Card for one or more of the director nominees of the Board of Directors or Pardus, or you may WITHHOLD AUTHORITY to vote for such nominees, and we will vote your proxy accordingly. If a nominee declines to serve or becomes unavailable for any reason, or if a vacancy occurs before the election, the proxies will be voted as an abstention vote.

Liberation has omitted from this Proxy Statement certain disclosure that will be included in the Proxy Statements of the Board of Directors or Pardus. This disclosure will include, among other things, biographical information concerning Bally's and Pardus' nominees, current directors and executive officers of the Company, information concerning executive compensation, an analysis of cumulative total returns on an investment in Bally shares during the past five years, information on audit services and fees of the Company's auditors, procedures for nominating directors for election to the Company's Board of Directors and submitting proposals for inclusion in Company's Proxy Statement at the next annual meeting. Accordingly, reference is made to the Board of Directors' and Pardus' Proxy Statements for such information and stockholders should refer to the Board of Directors' and Pardus' Proxy Statements in order to review this disclosure.

An annual report to stockholders covering Bally's fiscal year ended December 31, 2004, including financial statements, is required to be furnished to stockholders by the Company. Such annual report does not form any part of the material for the solicitation of proxies by Liberation.

Liberation does not make any representation as to the accuracy or completeness of the information contained in the annual report, the Board of Directors' Proxy Statement, or Pardus' Proxy Statement.

## VOTING AND PROXY PROCEDURE

### Proxy Information

The enclosed [GOLD] Proxy Card may be executed only by holders of record at the close of business on December [__], 2005 (the " Record Date ")

The shares of Common Stock represented by each [GOLD] Proxy Card that is properly executed and returned to Liberation will be voted at the Annual Meeting in accordance with the instructions marked thereon, but if no instructions are marked thereon, the Proxy Card will be voted to WITHHOLD your vote on the election of Eric Langshur; to NOT CAST any vote with respect to the other Board of Directors' and Pardus' nominees; FOR each of the Liberation Proposals; to ABSTAIN with respect to the Pardus Proposal; AGAINST the approval of the Board of Directors' 2006 Omnibus Equity Compensation Plan; to ABSTAIN with respect to the Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005; and, where Liberation has discretionary authority, as described below, in the discretion of the proxies, on whatever other matters as may properly come before the Annual Meeting or any adjournments or postponements thereof

If any other matter properly comes before the Annual Meeting that we do not become aware of a reasonable time before the Annual Meeting, the persons named as proxies on the enclosed [GOLD] Proxy Card will have discretionary authority to vote all shares covered by such proxies in accordance with their discretion with respect to such matter. However, if Liberation becomes aware a reasonable time in advance of the Annual Meeting that a matter will be presented for a stockholder vote at the Annual Meeting that is not included on the enclosed [GOLD] Proxy Card, Liberation will not have discretionary authority to vote on such matters and intends either to refrain from voting on any such matter or to revise the [GOLD] Proxy Card in order to include any such additional matter thereon and furnish the same to the stockholders. If a stockholder specifies the manner in which his or her shares are to be voted on any such additional matters on a revised [GOLD] Proxy Card, Liberation will vote such stockholder's shares as specified. Bally also will furnish stockholders with additional proxy materials describing any such additional matter. Submission of any properly executed Proxy Card will revoke all prior Proxy Cards

If you hold your shares in one or more brokerage firms, banks or nominees, only they can vote your shares and only upon receipt of your specific instructions. Accordingly, you should contact the person responsible for your account and give instructions to vote the [GOLD] Proxy Card

## Proxy Revocation

Whether or not you plan to attend the Annual Meeting, Liberation urges you to vote in accordance with their recommendations contained herein by signing, dating and returning the [GOLD] Proxy Card in the enclosed envelope. You can do this even if you have already sent a different Proxy Card solicited by the Bally's Board of Directors or Pardus. The Proxy Card that you submit bearing the latest date will be effective to cast your vote, and as such will revoke all Proxy Cards previously executed and submitted by you.

Execution of a [GOLD] Proxy Card does not affect your right to attend the Annual Meeting and to vote in person. Any stockholder that has submitted a Proxy Card (including a Proxy Card given to the Company) may revoke it at any time before it is voted by (a) submitting a new, duly executed Proxy Card bearing a later date, (b) attending and voting at the Annual Meeting in person, or (c) at any time before a previously executed Proxy Card is voted, giving written notice of revocation to either Liberation, c/o Innisfree M&A Incorporated, or the Company. Merely attending the Annual Meeting will not revoke any previous Proxy Card which has been duly executed by you. If you hold your shares in the name of a bank or broker or other nominee, and want to vote your shares in person at the Annual Meeting, you must obtain a legal proxy from the record holder of the shares. The [GOLD] Proxy Card furnished to you by Liberation, if properly executed and delivered, will revoke all prior proxies you may have executed and submitted.

IF YOU PREVIOUSLY EXECUTED AND RETURNED A PROXY CARD TO THE COMPANY, LIBERATION URGES YOU TO REVOKE IT BY SIGNING, DATING AND MAILING THE [GOLD] PROXY CARD IN THE ENCLOSED ENVELOPE. NO POSTAGE IS REQUIRED FOR MAILING WITHIN THE UNITED STATES.

## Dissenters' Right Of Appraisal

Stockholders do not have appraisal or similar rights of dissenters under Delaware law with respect to the matters described in this Proxy Statement.

## Quorum and Voting

The Board of Directors' Proxy Statement is required to provide information about the number of shares of Bally Total Fitness Holding Corporation stock outstanding and entitled to vote, the number of record holders thereof and the record date for the Annual Meeting, and reference is made thereto for such information. Only stockholders of record at the close of business on the Record Date are entitled to notice of and to vote on matters that come before the Annual Meeting.

The presence in person or by proxy of the holders of a majority of the issued and outstanding shares of Common Stock entitled to vote at the Annual Meeting is necessary to constitute a quorum at the Annual Meeting. Assuming a quorum is present, according to the Proxy Statements of the Board of Directors, Pardus and Liberation, as the case may be, a majority of the shares of Common Stock represented at the meeting and entitled to vote is required to elect the director nominees of the Board of Directors or Pardus, approve the Board of Directors' 2006 Omnibus Equity Compensation Plan, ratify the appointment of KPMG LLP as

independent auditor for the Company for the fiscal year ending December 31, 2005 and to approve our proposal to remove Paul A. Toback as Chief Executive Officer and President of the Company (although the approval of such proposal is contingent on the approval of each of the other Liberation Proposals, each of which requires the support of 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock in order to be approved).

The affirmative vote of not less than 75% of the votes entitled to be cast by the holders of all outstanding shares of the Company's stock then entitled to vote is required to approve our proposal to amend the Company's Bylaws to give stockholders the authority to remove the Chief Executive Officer and President of the Company, our proposal to amend the Company's Bylaws to increase stockholder authority with respect to determining the tenure of officers of the Company, our proposal to amend the Company's Bylaws to protect stockholder authority to remove officers of the Company and the Pardus Proposal

Pursuant to the Bylaws of the Company and Delaware law, each stockholder voting for the proposals is entitled to one vote for each share owned by such stockholder as of the record date. According to the Board of Directors' Proxy Statement, any abstentions or broker non-votes will be included in the calculation of the number of shares considered to be present at the meeting.

## CERTAIN STOCKHOLDERS OF THE COMPANY

The following table sets forth, as of December [ _____ ], 2005, the number and percent of outstanding shares of Common Stock beneficially owned by Liberation:

| Name and Address of Beneficial Owner | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned(1) |
|---|---|---|
| Liberation Investments L P<br>11766 Wilshire Blvd<br>Suite #870<br>Los Angeles, CA 90025 | 2,662,963 | [7 02]% |
| Liberation Investments Ltd.<br>11766 Wilshire Blvd<br>Suite #870<br>Los Angeles, CA 90025 | 1,436,487 | [3 79]% |
| Liberation Investments<br>Group LLC<br>11766 Wilshire Blvd.<br>Suite #870<br>Los Angeles, CA 90025 | 4,099,450 | [10 80]% |
| Emanuel R. Pearlman<br>11766 Wilshire Blvd<br>Suite #870<br>Los Angeles, CA 90025 | 4,134,450 | [10 90]% |
| Above parties collectively | 4,134,450 | [10 90]% |

(1)   Based on 38,094,479 shares of Common Stock outstanding as of December [ _____ ], 2005, as reported in the Board of Directors' Proxy Statement filed on December [ _____ ], 2005 with the Securities and Exchange Commission on December [ _____ ], 2005

Liberation Investments Group LLC, a general partner of and discretionary investment adviser to Liberation Investments L P and Liberation Investments Ltd , may be deemed to indirectly beneficially own 4,099,450 shares [(10 80%)] of the Common Stock of the Company

Mr. Pearlman is the General Manager, Chairman and Chief Executive Officer of Liberation Investments Group LLC and as such may be deemed to indirectly beneficially own 4,099,450 shares of the Common Stock of the Company  In addition, Mr. Pearlman is the direct beneficial owner of 35,000 shares of Common Stock issued pursuant to a Restricted Stock Agreement, dated September 20, 2001, as amended  In total, Mr. Pearlman may be deemed to own 4,134,450 [(10 90%)] of the Common Stock of the Company

The Board of Directors' Proxy Statement is expected to set forth information concerning the number and percentage of outstanding shares beneficially owned by (i) each person known by Bally to own more than 50 shares of the outstanding Common Stock, (ii) each director of Bally, (iii) the Chief Executive Officer and the four most highly compensated executive officers of Bally, and (iv) all executive officers and directors of Bally as a group, and reference is made thereto for such information.

## PROXY SOLICITATION; EXPENSES

Liberation will bear the entire expense of preparing, assembling, printing and mailing this Proxy Statement and the [GOLD] Proxy Card and the cost of soliciting proxies.

The total cost of this proxy solicitation (including fees of attorneys, accountants, public relations or financial advisors, solicitors and advertising and printing expenses, litigation expenses and other incidental costs) is estimated to be approximately $[ _____ ] Through December [ _____ ], 2005, Liberation has incurred approximately $[ _____ ] of expenses in connection with this proxy solicitation. To the extent legally permissible, Liberation will seek reimbursement from the Company for the costs of this solicitation. Liberation does not currently intend to submit approval of such reimbursement to a vote of stockholders of the Company at a subsequent meeting unless it is required to do so by law.

In addition to this initial solicitation by mail, proxy solicitations may be made by (i) Liberation, (ii) Mr. Pearlman, the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group LLC, (iii) Mr. Gregg E. Frankel, President of Liberation Investment Group LLC, and (iv) Ms. Nicole A. Jacoby, Director of Research of Liberation Investment Group LLC, without additional compensation, except for reimbursement of reasonable out-of-pocket expenses. Solicitations may be made by telephone, facsimile, hand delivery, messenger service, courier service, personal solicitors and other similar means. Liberation will pay to banks, brokers and other fiduciaries their reasonable charges and expenses incurred in forwarding proxy materials to their principals and in obtaining authorization for the execution of proxies.

Liberation has retained Innisfree M&A Incorporated to assist in the solicitation of proxies. Liberation will pay Innisfree M&A Incorporated a fee of not more than $[ _____ ]. Liberation has also agreed to reimburse Innisfree M&A Incorporated for its reasonable out-of-pocket expenses, which are currently estimated to be approximately $[ _____ ]. Innisfree M&A Incorporated will solicit proxies from individuals, brokers, banks, nominees and other institutional holders. Approximately 25 persons will be utilized by Innisfree M&A Incorporated in its solicitation efforts, which may be made by telephone, telegram or in person.

## ADDITIONAL INFORMATION

Liberation has filed with the SEC a Statement on Schedule 13D and various amendments thereto, which contain information in addition to that furnished herein. This Schedule 13D and any amendments thereto may be accessed free of charge at the website maintained by the SEC at www.sec.gov and from the Public Reference Section of the Securities and Exchange Commission located at 100 F Street N.E., Washington, D.C. 20549.

LIBERATION INVESTMENTS, L.P.
LIBERATION INVESTMENTS LTD.

December [ _____ ], 2005

IF YOU HAVE ANY QUESTIONS OR REQUIRE ASSISTANCE, PLEASE CALL:
**Innisfree M&A Incorporated**
**501 Madison Avenue, 20th Floor**
**New York, NY 10022**
*Stockholders Call Toll-Free:*
**888-750-5834**
*Banks and Brokers Call Collect:*
**212-750-5833**

APPENDIX I

## CERTAIN INFORMATION REGARDING THE PARTICIPANTS

Identity and Background of the Participants

Liberation Investments, L.P., is a Delaware limited partnership. Liberation Investments Ltd. is a private offshore investment corporation. Liberation Investment Group LLC is a Delaware limited liability company and the general partner of Liberation Investments, L.P. and discretionary investment adviser to Liberation Investments Ltd. Emanuel R. Pearlman is the General Manager, Chairman and Chief Executive Officer of Liberation Investment Group LLC. Mr. Gregg E. Frankel is the President of Liberation Investment Group LLC. The entities and persons identified in this paragraph are participants in the solicitation.

The business address of Liberation Investments, L.P. is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025.

The business address of Liberation Investments Ltd. is P.O. Box 31106 SMB Corporate Centre, West Bay Road, Grand Cayman, Cayman Islands.

The business address of Liberation Investment Group LLC is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025.

The business address of Emanuel R. Pearlman is 11766 Wilshire Blvd, Suite #870, Los Angeles, CA 90025.

The business address of Gregg E. Frankel is 770 Broadway, 2nd Floor, New York, NY 10003.

Liberation Investments, L.P. is the record owner of 100 shares of the Company's Common Stock. Liberation Investments Ltd. is the record owner of 100 shares of the Company's Common Stock. Emanuel Pearlman is the record owner of 35,000 shares of the Company's Common Stock. None of the other participants is the record owner of any shares of the Company's Common Stock.

Shares of Common Stock of Bally bought or sold by Liberation Investments, L.P. in the last two years:

| Date | Amount Bought (Sold) | Price Per Share |
|---|---|---|
| 4/29/04 | 57,950 | 4.1988 |
| 4/30/04 | 44,505 | 4.2249 |
| 4/30/04 | 24,150 | 4.2180 |
| 4/30/04 | 69,000 | 4.1900 |
| 5/03/04 | 34,500 | 4.2500 |
| 5/03/04 | 16,284 | 4.2625 |
| 5/04/04 | 25,600 | 4.1783 |

| | | |
|---|---:|---:|
| 5/05/04 | 26,000 | 4 1700 |
| 5/05/04 | 16,380 | 4 1249 |
| 5/06/04 | 32,500 | 4 0951 |
| 5/06/04 | 2,860 | 4 1200 |
| 5/07/04 | 10,595 | 4 0456 |
| 5/07/04 | 142,220 | 4 0529 |
| 5/10/04 | 22,750 | 3 7403 |
| 5/10/04 | 8,450 | 3 7726 |
| 5/10/04 | 25,480 | 3 7634 |
| 5/13/04 | 20,150 | 3 8734 |
| 5/13/04 | 45,500 | 3 9045 |
| 5/14/04 | 32,500 | 3 9091 |
| 5/17/04 | 61,750 | 3 8628 |
| 5/18/04 | 65,000 | 3 7931 |
| 5/19/04 | 35,100 | 3 8895 |
| 5/19/04 | 32,500 | 3 8790 |
| 5/19/04 | 5,330 | 3 8500 |
| 5/20/04 | 99,450 | 3 7504 |
| 5/21/04 | 84,500 | 3 7227 |
| 6/01/04 | 39,000 | 4 3200 |
| 6/04/04 | 100,750 | 4 3729 |
| 6/07/04 | 91,000 | 4 6128 |
| 7/20/04 | 1,105 | 5 1900 |
| 8/4/04 | 19,520 | 5 0265 |
| 8/11/04 | 3,102 | 4 2900 |
| 8/12/04 | 16,500 | 4 2400 |
| 8/13/04 | 16,500 | 4 2085 |
| 8/20/04 | 9,636 | 4 0737 |
| 8/23/04 | 23,100 | 4 0400 |
| 8/24/04 | 13,200 | 4 0155 |
| 8/26/04 | 73,326 | 3 9284 |
| 8/27/04 | 6,600 | 3,9900 |
| 8/27/04 | 23,760 | 3,9894 |
| 8/30/04 | 10,428 | 3,9600 |
| 8/31/04 | 19,272 | 3 9649 |
| 8/31/04 | 33,000 | 3 9670 |
| 9/1/04 | 33,000 | 3.9700 |
| 9/7/04 | 13,200 | 3 6650 |
| 9/9/04 | 13,200 | 3.5017 |
| 9/9/04 | 39,600 | 3 5347 |
| 9/10/04 | 6,600 | 3 4550 |
| 9/17/04 | 10,560 | 3 3850 |
| 9/20/04 | 33,000 | 3 3368 |
| 10/8/04 | 33,000 | 3 8520 |
| 10/11/04 | 46,200 | 3 8057 |

| Date | Amount | Price |
|---|---|---|
| 10/19/04 | 23,166 | 3.8504 |
| 10/21/04 | 13,266 | 3.8299 |
| 10/26/04 | 49,500 | 3.9331 |
| 10/28/04 | 13,200 | 4.0400 |
| 12/8/04 | 32,500 | 3.6851 |
| 12/8/04 | 42,250 | 3.7231 |
| 12/9/04 | 16,250 | 3.7110 |
| 12/9/04 | 26,000 | 3.8045 |
| 12/10/04 | 23,270 | 3.8208 |
| 12/13/04 | 10,238 | 3.7391 |
| 12/14/04 | 23,335 | 3.7851 |
| 12/16/04 | 6,500 | 3.6398 |
| 12/20/04 | 13,000 | 3.5421 |
| 12/21/04 | 12,100 | 3.5299 |
| 12/23/04 | 13,000 | 3.6383 |
| 12/28/04 | 16,250 | 3.7900 |
| 12/29/04 | 6,500 | 3.9183 |
| 1/5/05 | 26,000 | 4.0088 |
| 1/7/05 | (27,950) | 4.6469 |
| 2/9/05 | 46,475 | 4.1732 |
| 2/10/05 | 21,450 | 3.8800 |
| 5/4/05 | 487,500 | 3.0400 |

Shares of Common Stock of Bally bought or sold by Liberation Investments Ltd. in the last two years:

| Date | Amount Bought (Sold) | Price Per Share |
|---|---|---|
| 4/29/04 | 37,050 | 4.1988 |
| 4/30/04 | 19,995 | 4.2249 |
| 4/30/04 | 10,850 | 4.2180 |
| 4/30/04 | 31,000 | 4.1900 |
| 5/03/04 | 15,500 | 4.2500 |
| 5/03/04 | 7,316 | 4.2625 |
| 5/04/04 | 14,400 | 4.1783 |
| 5/05/04 | 14,000 | 4.1700 |
| 5/05/04 | 8,820 | 4.1249 |
| 5/06/04 | 17,500 | 4.0951 |
| 5/06/04 | 1,540 | 4.1200 |
| 5/07/04 | 5,705 | 4.0456 |
| 5/07/04 | 76,580 | 4.0529 |
| 5/10/04 | 12,250 | 3.7403 |
| 5/10/04 | 4,550 | 3.7726 |
| 5/10/04 | 13,720 | 3.7634 |

| | | |
|---|---|---|
| 5/13/04 | 10,850 | 3 8734 |
| 5/13/04 | 24,500 | 3 9045 |
| 5/14/04 | 17,500 | 3 9091 |
| 5/17/04 | 33,250 | 3 8628 |
| 5/18/04 | 35,000 | 3 7931 |
| 5/19/04 | 18,900 | 3 8895 |
| 5/19/04 | 17,500 | 3 8790 |
| 5/19/04 | 2,870 | 3 8500 |
| 5/20/04 | 53,550 | 3 7504 |
| 5/21/04 | 45,500 | 3 7227 |
| 6/01/04 | 21,000 | 4 3200 |
| 6/04/04 | 54,250 | 4 3729 |
| 6/07/04 | 49,000 | 4 6128 |
| 7/20/04 | 595 | 5 1900 |
| 7/28/04 | 5,900 | 5 0900 |
| 8/3/04 | 10,000 | 5 0300 |
| 8/4/04 | 20,980 | 5 0265 |
| 8/11/04 | 1,598 | 4 2900 |
| 8/12/04 | 8,500 | 4 2400 |
| 8/13/04 | 8,500 | 4 2085 |
| 8/20/04 | 4,964 | 4 0737 |
| 8/23/04 | 11,900 | 4 0400 |
| 8/24/04 | 6,800 | 4 0155 |
| 8/26/04 | 37,774 | 3.9284 |
| 8/27/04 | 3,400 | 3,9900 |
| 8/27/04 | 12,240 | 3,9894 |
| 8/30/04 | 5,372 | 3,9600 |
| 8/31/04 | 9,928 | 3 9649 |
| 8/31/04 | 17,000 | 3 9670 |
| 9/1/04 | 17,000 | 3 9700 |
| 9/7/04 | 6,800 | 3 6650 |
| 9/9/04 | 6,800 | 3 5017 |
| 9/9/04 | 20,400 | 3 5347 |
| 9/10/04 | 3,400 | 3 4550 |
| 9/17/04 | 5,440 | 3 3850 |
| 9/20/04 | 17,000 | 3 3368 |
| 10/8/04 | 17,000 | 3 8520 |
| 10/11/04 | 23,800 | 3 8057 |
| 10/19/04 | 11,934 | 3 8504 |
| 10/21/04 | 6,834 | 3 8299 |
| 10/26/04 | 25,500 | 3 9331 |
| 10/28/04 | 6,800 | 4.0400 |
| 12/8/04 | 17,500 | 3 6851 |
| 12/8/04 | 22,750 | 3 7231 |
| 12/9/04 | 8,750 | 3 7110 |

| | | |
|---|---|---|
| 12/9/04 | 14,000 | 3 8045 |
| 12/10/04 | 12,530 | 3 8208 |
| 12/13/04 | 5,512 | 3 7391 |
| 12/14/04 | 12,565 | 3 7851 |
| 12/16/04 | 3,500 | 3 6398 |
| 12/20/04 | 7,000 | 3 5421 |
| 12/21/04 | 6,500 | 3 5299 |
| 12/23/04 | 7,000 | 3 6383 |
| 12/28/04 | 8,750 | 3 7900 |
| 12/29/04 | 3,500 | 3 9183 |
| 1/5/05 | 14,000 | 4 0088 |
| 1/7/05 | (15,050) | 4 6469 |
| 2/9/05 | 25,025 | 4 1732 |
| 2/10/05 | 11,550 | 3 8800 |
| 5/4/05 | 262,500 | 3 0400 |

Debt securities of Bally bought or sold by Liberation Investments, L P in the last two years:

| Debt | Date | Amount Bought (Sold) | Price Per Unit |
|---|---|---|---|
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 1,300,000 | 80 750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 650,000 | 81 000 |
| 9 7/8% Senior Subordinated Notes due 2007 | 1/5/05 | (1,950,000) | 87 750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 4/28/05 | 480,000 | 82 250 |
| 9 7/8% Senior Subordinated Notes due 2007 | 9/8/05 | (480,000) | 89 500 |

Debt securities of Bally bought or sold by Liberation Investments Ltd in the last two years:

| Debt | Date | Amount Bought (Sold) | Price Per Unit |
|---|---|---|---|
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 700,000 | 80 750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 11/16/04 | 350,000 | 81 000 |
| 9 7/8% Senior Subordinated Notes due 2007 | 1/5/05 | (1,050,000) | 87 750 |
| 9 7/8% Senior Subordinated Notes due 2007 | 4/28/05 | 259,000 | 82 250 |
| 9 7/8% Senior Subordinated Notes due 2007 | 9/8/05 | (259,000) | 89 500 |

\* \* \*

Except as set forth in this Proxy Statement (including the Schedules and Appendices hereto), none of Liberation Investments, L. P., Liberation Investments Ltd., Liberation Investment Group LLC, Mr. Pearlman, Mr. Frankel nor any of their respective affiliates or associates, directly or indirectly:

- beneficially owns any shares of Common Stock of the Company or any securities of any parent or subsidiary of the Company;

- has had any relationship with the Company in any capacity other than as a stockholder;

- has been a party to any transaction, or series of similar transactions, since January 1, 2003, nor is any currently proposed transaction known to any of them, or series of similar transactions, to which the Company or any of its subsidiaries was or is to be a party, in which the amount involved exceeds $60,000 and in which any of them or their respective affiliates or associates had, or will have, a direct or indirect material interest;

- has entered into any agreement or understanding with any person with respect to any future employment by the Company or its affiliates or any future transactions to which the Company or any of its affiliates will or may be a party;

- has a contract, arrangement or understanding within the past year with any person with respect to the Company's securities;

- has any agreement, arrangement or understanding with any person with respect to any future employment with the Company or any of its affiliates or with respect to any future transactions to which Company or any of its affiliates may be a party; or

- is a party adverse to the Company or any of its subsidiaries or has a material interest adverse to the Company or any of its subsidiaries in any material legal proceeding.

In the past, Mr. Pearlman has acted as an advisor and an "employee consultant" to the Company from time to time with respect to various financing and acquisition activities and has received customary fees and compensation for such services. During 2003, the Company paid Gemini Partners II L. P., a company affiliated with Mr. Pearlman, $206,056.19 in consulting and advisory fees. Mr. Pearlman is not presently providing any consulting or advisory services to the Company.

On June 19, 2003, Mr. Pearlman and the Company entered into an agreement pursuant to which Mr. Pearlman was retained to provide advisory services to the Company with respect to various financing activities. In consideration of such services, Mr. Pearlman was paid $70,000 in cash (which is included in the $206,056.19 amount described above) and was entitled to retain certain restricted stock previously issued to him without the risk of forfeiture due to the termination of his services. Mr. Pearlman and the Company executed an Amendment to Restricted Stock Award Agreement, effective July 30, 2003. The purpose of the amendment was to amend the terms of a restricted stock award pursuant to which Mr. Pearlman was granted

35,000 shares of restricted stock to provide that the restricted stock would not be forfeited upon termination of Mr. Pearlman's employment

Pending Litigation

In *Liberation Investments. L.P., et al., v. Bally Total Fitness Holding Corporation and Paul A. Toback*, Del. Ch. C.A. No. 1833-N, filed on December 11, 2005 in the Delaware Court of Chancery in connection with the Company's adoption and threatened use of a "stockholder rights plan" dated October 18, 2005 (the "Poison Pill"), Liberation is seeking an order declaring that the Board of Director's adoption of the Management Protection Provision (the "Provision") in the Poison Pill was a breach of fiduciary duty, that the use of the Provision to threaten Liberation or any other stockholder was an inequitable manipulation of the Board of Directors' and management's authority, and to preliminarily and permanently enjoin the Company from attempting to enforce the Provision or the Poison Pill against Liberation or any other stockholder. This proceeding is currently pending, and, while Liberation is unable to make a prediction as to its outcome, we believe that, based on the merits of our claim, we will prevail in this case.

In *Bally Total Fitness Holding Corp. v. Liberation Investments. L.P., et al.*, Del. Ch. C.A. No. 1820-N, filed December 5, 2005 in the Delaware Court of Chancery, the Company is seeking a declaratory judgment based upon the allegation that Liberation's stockholder proposal is invalid because it seeks to amend the Company's bylaws in a manner that violates the Company's charter and the Delaware General Corporation Law ("DGCL") Liberation maintains that its stockholder proposal is consistent with both the Company's charter and the DGCL, which expressly provide for such amendments and allow shareholders to elect or remove corporate officers. This proceeding is currently pending, and, while Liberation is unable to make a prediction as to its outcome, we believe that the Company's claim is without merit and that we will ultimately prevail in this case.

In *Bally Total Fitness Holding Corp. v. Liberation Investments, L.P., et al.*, C.A. No. 05-841-JJF, filed on December 5, 2005 in the United States District Court for the District of Delaware (the "District Court"), the Company sought, but subsequently withdrew, a temporary restraining order against Liberation and Mr. Pearlman based upon alleged violations of the Securities Exchange Act of 1934 arising out of the proxy solicitation materials provided in connection with Liberation's stockholder proposals. The Company is currently seeking preliminary injunctive relief in the action. Liberation maintains that there is no basis for relief because the proxy solicitation materials complied with all applicable securities laws and regulations. This proceeding is currently pending, and, while Liberation is unable to make a prediction as to its outcome, we believe that the Company's claim is without merit and that we will ultimately prevail in this case.

In submissions made by the Company to the District Court, the Company claims that Liberation's proxy solicitation materials provided in connection with its stockholder proposals should contain further information and representations. Without conceding that any of the requested information is either required or relevant to shareholder consideration of Liberation's stockholder proposals, Liberation makes the following disclosures for the purpose of mooting wasteful and costly litigation commenced by the Company's management. The Company's complaint is available in its latest filings with the Securities and Exchange

Commission, including the Company's Form 8-K filed on December 7, 2005. In addition, a December 10, 2005 letter, in which the Company lists the alleged deficiencies with Liberation's preliminary proxy statement, is available in Liberation's Schedule 13D Amendment filed on December 14, 2005

Disclosures Regarding Mr. Pearlman's Historical Relationship with Bally

| Bally's Allegations | Liberation's Responses |
| --- | --- |
| 1. Bally alleges that Liberation and Mr. Pearlman did not disclose Mr. Pearlman's "close personal and professional association with Bally's former management team, including Lee Hillman": | Mr. Pearlman maintains a personal relationship with Mr. Hillman, the former Chief Executive Officer of the Company. Mr. Pearlman maintains no relationship with any other member of the Company's former management team |
| 2. Bally alleges that Liberation and Mr. Pearlman did not disclose "Hillman's and The Lee S. Hillman Revocable Trust's investment in [the Liberation entities] and [Hillman's] advisory role with respect to the Liberation entities": | The Lee S. Hillman Revocable Trust is currently a small limited partner in Liberation Investments, L.P., whose investment represents no more than 0.38% of the capital of Liberation Investments, L.P. and no more than 0.26% of the aggregate capital in both funds. Mr. Hillman plays no role, advisory or otherwise, in the business activities of the funds or any other entity controlled by Mr. Pearlman. Mr. Pearlman plays no role and has no ownership interest in Mr. Hillman's company, which despite the similarity in name, bears no affiliation with any of Mr. Pearlman's Liberation entities. |
| 3. Bally alleges that Liberation and Mr. Pearlman did not disclose Mr. Pearlman's "status as an employee consultant to Bally and [his being] part of the management team led by Hillman (as opposed to merely being an 'advisor' as the proxy statement currently states)": | When Mr. Pearlman was an advisor to Bally, he was considered by the Company as an "employee consultant". Mr. Pearlman acted as an "employee consultant" from time to time from 1996 to 2000, and from 2001 to 2003. However, Mr. Pearlman played no role in the management of the Company or the preparation of Company financial statements, and had no involvement in the Company's accounting practices. |
| 4. Bally alleges that Liberation and Mr. Pearlman did not disclose "the fact that Bally's Audit Committee concluded that the financial statements issued by Bally during Hillman's tenure were required to be restated and that the errors therein were a direct result of the 'culture that encouraged aggressive accounting' that existed under Hillman's leadership": | Liberation and Mr. Pearlman acknowledge that the quoted language on the left was made by the Company's Audit Committee, but continue to find no relevant connection between those conclusions and the stockholder proposals in Liberation's proxy solicitation materials |

Disclosures Regarding Liberation's and Mr. Pearlman's Motives

The Company claims that Liberation should disclose that it and Mr Pearlman have certain motives in seeking approval for stockholder proposals that would permit shareholders to remove the Chief Executive Officer and to remove Mr. Toback from that office Liberation and Mr. Pearlman deny the following motives claimed by the Company:

| Bally's Allegations | Liberation's Responses |
| --- | --- |
| 1 Bally alleges that Liberation and Mr Pearlman desire "to displace current management": | Liberation and Mr Pearlman deny any current motive to displace any member of current management other than Mr Toback The purpose of the stockholder proposal is to displace Mr Toback only |
| 2. Bally alleges that Liberation and Mr. Pearlman desire "to make it appear that current management is to blame for the accounting errors leading to the Company's restatements" of its Financial Statements: | Liberation and Mr Pearlman have not made and do not intend during this proxy solicitation to make any such claim |
| 3 Bally alleges that Liberation and Mr. Pearlman desire "to deflect attention from the fact that an independent investigation found Hillman and former management responsible for the 'culture    that encouraged aggressive accounting' that led to those errors": | Liberation and Mr Pearlman have no such intention |
| 4 Bally alleges that Liberation and Mr. Pearlman desire "to prevent current management from taking action against Hillman": | Liberation and Mr Pearlman have not prevented and do not intend to prevent current management or the Board of Directors from taking whatever actions are in the Company's interests, including action against Mr. Hillman. Liberation only seeks a shareholder vote on removal of a single officer, Mr. Toback. |
| 5 Bally alleges that Liberation and Mr. Pearlman desire "to retaliate against current management for the Audit Committee's independent investigation": | Liberation and Mr Pearlman have not and do not seek any such retaliation Liberation seeks only the removal of one member of current management |

Other Bally Allegations Regarding Liberation's Intentions

| Bally's Allegations | Liberation's Responses |
|---|---|
| 1 Bally alleges that "at the time [Liberation and Mr. Pearlman] sought redemption of Bally's Stockholder Rights Plan, and disclaimed any present intention to purchase additional stock, [Liberation and Mr Pearlman] in fact intended to purchase additional shares, as evidenced by their subsequent purchases which more than doubled their holdings": | Liberation has purchased significant amounts of Company stock since it successfully sought the redemption of the Company's Stockholder Rights Plan As evident in its filings with the Securities and Exchange Commission at the time in connection with the redemption, Liberation consistently stated that it may purchase additional shares In Liberation's Schedule 13D Amendment filed on July 13, 2004, Liberation clearly stated that "[it] intends to monitor and review the Company's redemption of its stockholder rights plan and the Company's policies with respect thereto it may pursue alternatives to maximize the value of their investment in the Company Such alternatives could include, without limitation, (i) the purchase of additional Common Stock in the open market, in privately negotiated transactions or otherwise " |
| 2. Bally alleges that Liberation and Mr. Pearlman "intended by accumulating shares in excess of [10%] of the total outstanding shares at Bally, to trigger the vesting of shares of restricted stock granted to Mr Pearlman and others under the Company's Long Term Incentive Plan": | Liberation and Mr Pearlman deny any such intention in purchasing over 10% of the outstanding stock, and know of no reason that the purchases should have any relevance to a shareholder vote on the removal of Mr Toback Indeed, Mr Pearlman has been very critical of the propriety of the vesting and has urged all recipients to give back their shares to the Company and offered to do so himself, as evident in Liberation's letter dated December 6, 2005, to the Board of Directors of the Company, filed with Liberation's Schedule DFAN14A dated December 7, 2005 |
| 3 Bally alleges that Liberation and Mr Pearlman are working "in concert [with Hillman and Pardus] in order to elect Pardus' slate of proposed directors, including Kornstein": | While Liberation may vote to support the Pardus slate of proposed directors—two of which are now supported by the Company—Liberation and Mr Pearlman are not working in concert with Pardus to accomplish their election In fact, Liberation specifically expresses no opinion and makes no recommendation with respect to the Pardus nominees throughout its proxy statement |

4 Bally alleges that Mr Pearlman did not disclose "the fact that Kornstein has long been affiliated with [him]":

Don R. Kornstein, one of Pardus' director nominees, was suggested as a possible candidate by Mr Pearlman During the 17 years of their acquaintance, Mr Pearlman has been involved in a few business relationships with Mr Kornstein In 1988, while Mr Kornstein was a senior managing director at Bear Stearns, the firm was retained by Mr Pearlman in connection with an unsolicited bid for Arkansas Best Mr Pearlman, on the other hand, was retained by Jackpot Enterprises, Inc to advise on a single mergers and acquisitions deal during Mr Kornstein's tenure as an officer and director of the company from 1994 to 2000 In 2003, Mr Pearlman nominated Messrs Hillman and Kornstein for election to the Board of Directors of another company, namely, InterTan, Inc, in a proxy contest which ultimately resulted in settlement Currently, Mr Pearlman has no business relationship with Mr Kornstein, other than the small investment that Mr Kornstein and his wife have jointly made in Liberation Investments, L.P , which investment represents no more than 0 38% of the capital of Liberation Investments, L P , and no more than 0 26% of the aggregate capital of both funds

5. Bally alleges that Mr Pearlman did not disclose his "involvement in other proxy contests where he nominated Hillman and Kornstein to his proposed insurgent slate, his involvement in prior corporate takeover attempts, his history of using proxy contests to force a company to either accede to his demands or face replacement of their management and boards, and his being sued in connection with such actions for not stating his true intentions in disclosures required by the SEC":

See Liberation's response above for the specific proxy contest in which Mr Pearlman nominated Mr Hillman and Mr Kornstein to the board The investment objective of the Liberation funds is to maximize total return for each investment by employing activist strategies to promote necessary changes in a target company and thereby increase shareholder value In fact, one of the Company's current directors, J. Kenneth Looloian, was nominated by Mr Pearlman as a director candidate in a proxy contest for Healthco International, Inc Hence, Mr Pearlman and/or Liberation have been involved in other proxy contests, some of which have resulted in litigation Mr Pearlman disputes the Company's pejorative characterization of his and Liberation's "involvement in other proxy contests"

[FORM OF PROXY CARD]

PROXY CARD

THIS PROXY IS SOLICITED BY LIBERATION INVESTMENTS, L.P.
AND LIBERATION INVESTMENTS LTD. (TOGETHER
" LIBERATION ") IN OPPOSITION TO THE BOARD OF DIRECTORS
OF BALLY TOTAL FITNESS HOLDING CORPORATION

The undersigned hereby appoints Emanuel R. Pearlman, Gregg E. Frankel and Nicole A. Jacoby, and each of them, the proxy or proxies of the undersigned, with full power of substitution, and hereby authorizes them to vote, as provided below, all shares of Common Stock, par value S.01 per share, of Bally Total Fitness Holding Corporation (the " Company ") which the undersigned would be entitled to vote if personally present at the Annual Meeting of the Stockholders of the Company to be held on January 26, 2005, and at any and all adjournments or postponements thereof (the " Annual Meeting ") The undersigned hereby revokes any previous proxies with respect to any and all matters to be voted upon at the Annual Meeting

1.  Election of Directors Nominated by Pardus and Directors Nominated by the Company. *You should only mark boxes for 3 (three) individual nominees.* If you mark boxes for more than three individual nominees, your vote with respect to Proposal 1 may not be valid.

| FOR | WITHHOLD | Pardus Nominees | FOR | WITHHOLD | Company Nominees |
|-----|----------|-----------------|-----|----------|------------------|
| ☐ | ☐ | Charles J. Burdick | ☐ | ☐ | Eric Langshur |
| ☐ | ☐ | Barry R. Elson | ☐ | ☐ | Barry R. Elson |
| ☐ | ☐ | Don R. Kornstein | ☐ | ☐ | Charles J. Burdick |

|   |   | FOR | AGAINST | ABSTAIN |
|---|---|-----|---------|---------|
| 2. | Liberation's Proposal to Give Stockholders the Authority to Remove the Chief Executive Officer and President of the Company | ☐ | ☐ | ☐ |
| 3. | Liberation's Proposal to Increase Stockholder Authority in Determining the Tenure of the Company's Officers | ☐ | ☐ | ☐ |
| 4. | Liberation's Proposal to Protect Stockholder Authority to Remove the Company's Officers | ☐ | ☐ | ☐ |
| 5. | Liberation's Proposal to Remove Paul A. Toback as Chief Executive Officer and President of the Company | ☐ | ☐ | ☐ |
| 6. | Pardus' Proposal to Repeal Any Amendments to the Bylaws Made by the Board from May 26, 2005 Through the Annual Meeting | ☐ | ☐ | ☐ |
| 7. | Board of Directors' Proposal to Approve the 2006 Omnibus Equity Compensation Plan | ☐ | ☐ | ☐ |
| 8. | Board of Directors' proposal to ratify the appointment of KPMG LLP as independent auditor for the Company for the fiscal year ending December 31, 2005 | ☐ | ☐ | ☐ |

9.  In their discretion, with respect to any other matters as may properly come before the Annual Meeting.

[REVERSE] THIS PROXY WILL BE VOTED AS INSTRUCTED, BUT IF NO INSTRUCTION IS GIVEN, IT WILL BE VOTED AS FOLLOWS: TO WITHHOLD WITH RESPECT TO ERIC LANGSHUR AND TO NOT CAST ANY VOTE WITH RESPECT TO THE OTHER NOMINEES IN ITEM 1; FOR THE PROPOSALS IN ITEMS 2, 3, 4 AND 5; ABSTAIN WITH RESPECT TO THE PROPOSAL IN ITEM 6; AGAINST THE PROPOSAL IN ITEM 7; ABSTAIN WITH RESPECT TO THE PROPOSAL IN ITEM 8; AND IN THE DISCRETION OF THE PROXIES, UPON ANY OTHER MATTER THAT MAY PROPERLY COME BEFORE THE ANNUAL MEETING OR ANY ADJOURNMENTS OR POSTPONEMENTS THEREOF.

LIBERATION RECOMMENDS THAT YOU <u>NOT CAST</u> ANY VOTE FOR ERIC LANGSHUR, ONE OF THE BOARD OF DIRECTORS' NOMINEES, THAT YOU VOTE <u>FOR</u> THE PROPOSALS IN ITEMS 2, 3, 4 AND 5, AND <u>AGAINST</u> THE PROPOSAL IN ITEM 7. WE MAKE NO RECOMMENDATIONS WITH RESPECT TO PARDUS' NOMINEES IN ITEM 1, THE PROPOSAL IN ITEM 6 OR THE PROPOSAL IN ITEM 8. TO VOTE IN ACCORDANCE WITH LIBERATION'S RECOMMENDATIONS, JUST SIGN, DATE AND RETURN THIS PROXY; NO BOXES NEED TO BE CHECKED.

The undersigned hereby acknowledges receipt of the Proxy Statement of Liberation dated December ___, 2005.

DATED: _____

Signature:

_____

Signatures, if held jointly:

_____

_____

Title or Authority:

_____

Joint owners should each sign personally. If signing as attorney, executor, administrator, trustee, broker, bank nominee, guardian, or in any other similar capacity, please include your full title. If a corporation, please sign in corporate name by authorized officer. If a partnership, please sign in partnership name by authorized person. This proxy votes all shares held in all capacities.

**End of Filing**

Powered By EDGAROnline

© 2005 | EDGAR Online, Inc.

# EXHIBIT 29

EDGAR Filing Documents for 0000770944-05-000001                    Page 1 of 1

# SEC EDGAR Filing Information

## Form 8-K -- Current report

Period of Report: **2005-02-08**
Filing Date Changed: **2005-02-09**
Documents: **4**

SEC Accession No.
**0000770944-05-000001**
Filing date: **2005-02-09**
Accepted: **2005-02-09 16:49:30**

**Item 5.02:** Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers
**Item 8.01:** Other Events
**Item 9.01:** Financial Statements and Exhibits

## Table of submitted documents:

| Seq | Type | Document | Size | Description |
|---|---|---|---|---|
| 1 | 8-K | formBk-020905.htm | 11978 | 02/09/2005 FORM 8-K |
| 2 | EX-99.1 | ex99_1-020905.htm | 13925 | EXHIBIT 99.1 - 02/09/2005 FORM 8-K |
| 3 | EX-99.2 | ex99_2-020905.htm | 6271 | EXHIBIT 99.2 - 02/09/2005 FORM 8-K |
| 4 | GRAPHIC | bally-logo_small.jpg | 5065 | BALLY LOGO - 2005 |
| | | 0000770944-05-000001.txt | 39550 | **Complete submission text file** |

## Filer Information

**BALLY TOTAL FITNESS HOLDING CORP** (Filer) (**0000770944**)
IRS No.: **363228107** | State of Incorp : **DE** | Fiscal Year End: **1231**
Type: **8-K** | Act: **34** | File No.: **001-13997** | Film No.: **05589349**
SIC: **7997** Services-Membership Sports & Recreation Clubs

**Business Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631
773-380-3000

**Mailing Address**
8700 WEST BRYN MAWR AVENUE
SECOND FLOOR
CHICAGO IL 60631

FORM 8-K - 02/09/2005

Page 1 of 3

8-K 1 form8k-020905.htm 02/09/2005 FORM 8-K

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 8-K

## CURRENT REPORT
### Pursuant to Section 13 OR 15(d) of
### The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported)    **February 8, 2005**

## BALLY TOTAL FITNESS HOLDING CORPORATION

(Exact name of registrant as specified in its charter)

| Delaware | 0-27478 | 36-3228107 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 8700 West Bryn Mawr Avenue, Chicago, Illinois | 60631 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code    **(773) 380-3000**

N/A

(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

FORM 8-K - 02/09/2005                                                                                    Page 2 of 3

BALLY TOTAL FITNESS HOLDING CORPORATION
FORM 8-K
Current Report

**Item 5.02   Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers**

On February 8, 2005, Ted Noncek was terminated as Vice President and Controller of Bally Total Fitness Holding Corporation (the "Company")

**Item 8.01   Other Events**

On February 8, 2005, the Company announced that the Audit Committee of its Board of Directors had completed its previously announced investigation into various accounting issues  The Company's press release with respect to such matters is attached hereto as Exhibit 99 1

As described in the press release, as a result of the investigation and the Company's efforts to comply with Section 404 of the Sarbanes-Oxley Act of 2002, the Company has identified deficiencies in its internal controls over financial reporting. A number of these deficiencies, either individually or in the aggregate, constitute material weaknesses in its internal controls over financial reporting

These material weaknesses include deficiencies in the Company's finance and accounting internal control environment, specifically a lack of acceptable and clearly communicated policies reflecting management's attitudes towards financial reporting and the financial reporting function, the lack of a permanent Chief Financial Officer, ineffective delegation of authority and responsibility, insufficient instruction to employees responsible for significant estimates emphasizing the need to report using accurate and reasonable assumptions and judgments, and insufficiently experienced and trained staff  In addition, these material weaknesses include deficiencies in the controls surrounding the selection and application of accounting principles, specifically ineffective policies requiring contemporaneous documentation of factual support for key judgments applied within its financial reporting process and the retention of that documentation in accordance with a formal document retention policy

Management, with the oversight of the Audit Committee, has been addressing all of these issues and is committed to effectively remediating known material weaknesses as expeditiously as possible  Due to the nature of and the time necessary to effectively remediate each of the material weaknesses identified to date, the Company expects to conclude that some of these material weaknesses will not have been effectively remediated by December 31, 2004  As a result, the Company believes that its independent auditor, KPMG LLP, will not be able to issue an unqualified opinion on the effectiveness of the Company's internal controls in the Company's 2004 Annual Report on Form 10-K

In a separate press release, the Company announced that David S  Reynolds has replaced Mr  Noncek as its Controller, effective immediately. The press release is attached hereto as Exhibit 99 2

FORM 8-K - 02/09/2005                                                                    Page 3 of 3

Item 9.01    Financial Statements and Exhibits.

    c    Exhibits

        99 1    Press release dated February 8, 2005 announcing the completion of the Audit Committee investigation into various accounting issues

        99.2    Press release dated February 8, 2005 announcing the appointment of David S. Reynolds as Controller.


    Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned hereunto duly authorized.


BALLY TOTAL FITNESS HOLDING CORPORATION
_____
Registrant

Dated: February 9, 2005                                  /s/ Marc D. Bassewitz
_____
Marc D. Bassewitz
Senior Vice President, Secretary and General Counsel

EXHIBIT 99 - 02/09/2005 FORM 8K

Page 1 of 4

EX-99.1 2 ex99_1-020905.htm EXHIBIT 99 1 - 02/09/2005 FORM 8-K

EXHIBIT 99.1



**BALLY TOTAL FITNESS**
8700 West Bryn Mawr Avenue
Chicago, IL 60631
www.BallyFitness.com
Jon Harris - Tel. (773) 864-6850

**MWW GROUP**
Carreen Winters
Tel. (201) 507-9500
cwinters@mww com

---

**FOR IMMEDIATE RELEASE**

## Bally Total Fitness Announces the Conclusion of Previously Disclosed Audit Committee Investigation

### Company Moves Quickly to Address Report Findings

- As previously disclosed, investigation finds multiple accounting errors.
- Report finds two former and two current finance executives engaged in improper conduct.
- Company terminates its Controller and its Treasurer for improper conduct.
- Bally ceases severance payments to Lee Hillman, former CEO and current President of Liberation Investment Advisory Group, LLC, and former CFO John Dwyer. Investigation finds both responsible for multiple accounting errors and for creating a culture of aggressive accounting.
- Company discloses material weaknesses in internal controls over financial reporting.

**CHICAGO, IL – February 8, 2005** – Bally Total Fitness (NYSE: BFT) announced that the Audit Committee of its Board of Directors has completed its previously announced investigation into various accounting issues The extensive, five-month investigation was led by former Securities and Exchange Commission attorney Herbert F. Janick III of Bingham McCutchen LLP, with forensic audit work conducted by PricewaterhouseCoopers LLP. In addition to the accounting matters previously disclosed from the November 2004 interim report, this report includes the final conclusions on two other accounting issues, as well as an assessment of responsibility  The Company has reported the investigation results to the SEC and continues to fully cooperate in the ongoing SEC investigation

EXHIBIT 99 - 02/09/2005 FORM 8K                                                          Page 2 of 4

## Accounting Findings

Bally Total Fitness previously announced in November 2004 its decision to restate financial statements from January 1, 2000 through the first quarter of 2004, primarily as a result of errors in its revenue recognition methods as identified in the interim report of the Audit Committee investigation. At that time, Bally also announced that the Company's financial statements and other communications related to the same periods should not be relied upon.

The recently completed investigation also found errors in the Company's rationale for and implementation of its deferral of membership acquisition costs under Bally's prior accounting method. The investigation also concluded that the Company took aggressively optimistic positions on several matters related to the analysis of the adequacy of the allowance for doubtful accounts, which were without a reasonable empirical basis. Given the manner in which the Company intends to restate its consolidated financial statements, correction of these errors will not affect the planned presentation of the restated financial statements

Currently, the Company is focused on completing the restatement of its financial statements for the years ended December 31, 2002 and 2003, completing its 2004 financial statements, and fully supporting its current auditor, KPMG LLP, in the audit of those statements. The Company anticipates filing these financial statements by July 31, 2005. These financial statements may require additional adjustments to the Company's previously issued financial statements

## Responsibility for Accounting Errors

The Audit Committee's review found multiple accounting errors in the Company's financial statements and concluded that the Company's former Chairman and Chief Executive Officer Lee Hillman (held position from 1996 to 2002) and former Chief Financial Officer John Dwyer (held position from 1996 to 2004) were responsible for multiple accounting errors and creating a culture within the accounting and finance groups that encouraged aggressive accounting.

The investigation found, among other things, that certain accounting policies and positions were suggested and implemented without a reasonable empirical basis and concluded that Mr. Dwyer made a false and misleading statement to the SEC. As a result of the findings, the Company has decided to make no further payments to Messrs. Hillman and Dwyer under their severance arrangements and will evaluate its legal options with respect to these former executives

EXHIBIT 99 - 02/09/2005 FORM 8K                                    Page 3 of 4

Both Messrs Hillman and Dwyer are certified public accountants, previously employed by the Company's longtime and now former auditors, Ernst & Young LLP, and were partners on the engagement teams that audited Bally's former parent company for several years prior to joining the Company. Mr Hillman presently serves as President of Liberation Investment Advisory Group, LLC, as well as a member of the Board of Directors for RCN Corporation, Lawson Products Inc , Wyndham Hotels and Resorts, and HealthSouth Corporation where he serves as chairman of the Company's audit committee

The investigation also found improper conduct on the part of the Company's Vice President and Controller Ted Noncek (from 2001 to 2005) and Vice President and Treasurer Geoff Scheitlin (former Controller from 1997 to 2001). As a result, both have been terminated  Mr Noncek has been offered the opportunity to consult with the Company on a short-term basis in order to facilitate timely completion of the ongoing audits

**Former Auditors**

Although the scope of the investigation did not specifically examine former auditors Ernst & Young, Bally believes that the firm made several errors in the course of their work  The Company is currently evaluating its legal options with respect to Ernst & Young

**Internal Control Over Financial Reporting**

Separately, as a result of the investigation and Bally's efforts to comply with Section 404 of the Sarbanes-Oxley Act of 2002, the Company has identified deficiencies in its internal controls over financial reporting  A number of these deficiencies, either individually or in the aggregate, constitute material weaknesses in its internal controls over financial reporting

These material weaknesses include deficiencies in the Company's finance and accounting internal control environment, specifically a lack of acceptable and clearly communicated policies reflecting management's attitudes towards financial reporting and the financial reporting function, the lack of a permanent Chief Financial Officer, ineffective delegation of authority and responsibility, insufficient instruction to employees responsible for significant estimates emphasizing the need to report using accurate and reasonable assumptions and judgments, and insufficiently experienced and trained staff  In addition, these material weaknesses include deficiencies in the controls surrounding the selection and application of accounting principles, specifically ineffective policies requiring contemporaneous documentation of factual support for key judgments applied within its financial reporting process and the retention of that documentation in accordance with a formal document retention policy

EXHIBIT 99 - 02/09/2005 FORM 8K                                      Page 4 of 4

Management, with the oversight of the Audit Committee, has been addressing all of these issues and is committed to effectively remediating known material weaknesses as expeditiously as possible. Due to the nature of and the time necessary to effectively remediate each of the material weaknesses identified to date, the Company expects to conclude that some of these material weaknesses will not have been effectively remediated by December 31, 2004. As a result, the Company believes that KPMG will not be able to issue an unqualified opinion on the effectiveness of the Company's internal controls in the Company's 2004 Annual Report on Form 10-K.

The Bally Board of Directors commended the members of the Audit Committee and their legal and forensic accounting experts, thanking them for tirelessly dedicating their time and efforts to a fair and honest review of these matters.

Bally Chairman and CEO Paul Toback commented, "The completion of the Audit Committee investigation is another important step toward putting our past accounting and financial issues behind us. We are sending a clear message that the culture that allowed this type of aggressive accounting will not be tolerated. While we recognize that we still have much work ahead in order to restore investor confidence, our team is committed to earning that trust through the timely and accurate reporting of our financial results, improvements in financial and operational performance and a commitment to strong corporate governance."

### About Bally Total Fitness

Bally Total Fitness is the largest and only nationwide commercial operator of fitness centers, with approximately four million members and 440 facilities located in 29 states, Mexico, Canada, Korea, China and the Caribbean under the Bally Total Fitness(R), Crunch Fitness(SM), Gorilla Sports(SM), Pinnacle Fitness(R), Bally Sports Clubs(R) and Sports Clubs of Canada (R) brands. With an estimated 150 million annual visits to its clubs, Bally is dedicated to improving the lives of active, fitness-conscious consumers and being the leader in providing health and fitness services and products.

*Forward-looking statements in this release including, without limitation, statements relating to the Company's plans, strategies, objectives, expectations, intentions, and adequacy of resources, are made pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. These forward-looking statements involve known and unknown risks, uncertainties, and other factors that may cause the actual results, performance or achievements of the Company to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements. These factors include, among others, the following the outcome of the SEC investigation and any further or future internal investigation, conducted by the Company; actions taken in response to the Audit Committee report; the review and restatement of its previously announced or filed financial results; the audit of the restated financial statements, the identification of one or more additional issues that require restatement of one or more prior period financial statements, the impact of the existence of material weaknesses in internal controls over financial reporting, the general economic and business conditions, competition; success of operating initiatives, advertising and promotional efforts, existence of adverse publicity or the impact of existing or future litigation or governmental proceedings; acceptance of new product and service offerings, changes in business strategy or plans, quality of management, availability, terms, and development of capital, business abilities and judgment of personnel, changes in, or the failure to comply with, government regulations; regional weather conditions and other factors described in prior filings of the Company with the Securities and Exchange Commission.*

EXHIBIT 99.2 - 02/09/2005 FORM 8K

Page 1 of 2

EX-99.2 3 ex99_2-020905.htm EXHIBIT 99.2 - 02/09/2005 FORM 8-K

EXHIBIT 99.2



BALLY TOTAL FITNESS
8700 West Bryn Mawr Avenue
Chicago, IL 60631
www.BallyFitness.com
Jon Harris - Tel (773) 864-6850

MWW GROUP
Carreen Winters
Tel. (201) 507-9500
cwinters@mww.com

FOR IMMEDIATE RELEASE

## BALLY TOTAL FITNESS APPOINTS FINANCE VETERAN
## DAVID S. REYNOLDS AS CONTROLLER

CHICAGO, February 8, 2005 – Bally Total Fitness (NYSE: BFT) announced today that it has named David Reynolds its new Controller   Over a career that has spanned two decades, Mr. Reynolds has served in a variety of senior positions in the areas of accounting and finance systems, as well as treasury and investor relations. Most recently, he was the Senior Vice President and Controller of Comdisco, Inc

At Bally, Mr. Reynolds will oversee the processing and reporting of all financial transactions for the Company  He will also be responsible for maintaining effective internal controls over financial reporting and the efficient and effective operation of Bally's accounts payable, payroll and revenue accounting, as well as implementation of Sarbanes-Oxley Section 404.

"A key component to Bally's turnaround plan is attracting top talent with targeted areas of expertise at all levels of the organization. Bringing on David Reynolds is an important step in this initiative," said Paul Toback, Chairman and CEO, Bally Total Fitness. "His proven track record in financial controls, continual process improvements and broad-based accounting expertise will be an important asset as we work to complete our financial statements while ensuring consistent application of new quality controls and policies."

EXHIBIT 99.2 – 02/09/2005 FORM 8K

"I'm excited to be joining the senior team at such a significant time, and look forward to further strengthening the financial foundation for the future of the Company," said Reynolds.

Reynolds holds a M.B.A. from Lehigh University in Accounting and Finance and holds accreditations as a Certified Public Accountant and Certified Cash Manager

Mr. Reynolds is the most recent executive to join Bally Total Fitness as part of the Company's "Best In Class" initiative, a program launched in 2003 designed to recruit and retain top talent to the organization Mr. Reynolds joins recent executive additions Senior Vice President and General Counsel Marc Bassewitz, Vice President of Diet and Nutrition Barbara Barry and Vice President of Franchising Ben Amante.

**About Bally Total Fitness**

Bally Total Fitness is the largest and only nationwide commercial operator of fitness centers, with approximately four million members and nearly 440 facilities located in 29 states, Mexico, Canada, Korea, China and the Caribbean under the Bally Total Fitness(R), Crunch Fitness(SM), Gorilla Sports(SM), Pinnacle Fitness(R), Bally Sports Clubs(R) and Sports Clubs of Canada(R) brands  With an estimated 150 million annual visits to its clubs, Bally is dedicated to improving the lives of active, fitness-conscious consumers and being the leader in providing health and fitness services and products

*Forward-looking statements in this release including, without limitation, statements relating to the Company's plans, strategies, objectives, expectations, intentions, and adequacy of resources, are made pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 These forward-looking statements involve known and unknown risks, uncertainties, and other factors that may cause the actual results, performance or achievements of the Company to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements These factors include, among others, the following  the outcome of the SEC investigation and any further or future internal investigation, conducted by the Company, actions taken in response to the Audit Committee report, the review and restatement of its previously announced or filed financial results, the audit of the restated financial statements, the identification of one or more additional issues that require restatement of one or more prior period financial statements, the impact of the existence of material weaknesses in internal controls over financial reporting, the general economic and business conditions, competition, success of operating initiatives, advertising and promotional efforts, existence of adverse publicity or the impact of existing or future litigation or governmental proceedings; acceptance of new product and service offerings, changes in business strategy or plans, quality of management, availability, terms, and development of capital, business abilities and judgment of personnel; changes in, or the failure to comply with, government regulations, regional weather conditions and other factors described in prior filings of the Company with the Securities and Exchange Commission*