IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BALLY TOTAL FITNESS HOLDING CORP. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-841-JJF |
| v. | ) | |
| | ) | |
| LIBERATION INVESTMENTS, L.P., | ) | |
| LIBERATION INVESTMENTS, LTD., | ) | |
| LIBERATION INVESTMENT GROUP | ) | |
| LLC and EMANUEL R. PEARLMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**THE DEFENDANTS' REPLY IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE
<u>PRELIMINARY INJUNCTION PROCEEDING AS MOOT</u>**

The defendants in the captioned matter (collectively "Liberation"), reply as follows to plaintiff's opposition (D.I. 41) to defendants' motion to dismiss the preliminary injunction proceeding as moot (the "Motion"). For the reasons set forth below, Liberation respectfully submits that the Motion should be granted.

<u>Preliminary Statement</u>

1.  It is useful to recall why we are here. Two stockholders are running proxy contests for Bally's January 26, 2006 annual meeting. One of them, Pardus Capital Management, is seeking the election of three directors. Bally has now agreed with Pardus about two of those candidates and has nominated them itself. Thus, Bally's current proxy fight with Pardus is over just one of Pardus' three nominees (a nominee suggested by Liberation).

2.  In addition, Liberation is seeking to enact a by-law amendment to remove Paul Toback as Bally's CEO -- an amendment that will need the support of 75% of Bally's outstanding shares. Mr. Toback, however, would prefer that the vote did not occur. On December 6, 2005 he caused Bally to file a Chancery Complaint demanding an immediate

declaration that Liberation's proposal was illegal. At the same time he had Bally bring a disclosure claim here. The essence of that claim was that Liberation's as-yet unfiled proxy statement violated the securities laws because it had failed to disclose that the proposal was "illegal."

3.  Bally asked the Court to enter a TRO to prevent Liberation from soliciting proxies until it disclosed that its proposal violated Delaware law. Liberation, however, could not have solicited proxies at that point anyway -- it had no proxy statement on file, much less one cleared by the SEC. Nor, of course, had the Chancery Court even scheduled an expedited hearing -- much less ruled that Bally's *ipse dixit* view of Delaware law was correct. Thus Bally's request for a TRO was, at a minimum, premature. But it did make clear that what Bally really wanted was as much litigation as possible. It had to withdraw its motion for a TRO when the Chancery Court denied expedition, so Bally converted its request into one for a preliminary injunction and expedited discovery.

4.  This Court granted that request but noted that Liberation had the power to moot the injunction proceeding by disclosing Bally's allegations against it. The Court also made clear that before any other discovery took place, Bally would first be required to tell Liberation exactly what Bally claimed was wrong with its proxy statement. On Saturday, December 10th Liberation received a two-page letter from Bally listing all the alleged non-disclosures for which injunctive relief would be sought in this case (the "Contention Letter"). Many of those contentions are wrong, quite a few are classic demands for self-flagellation, and more than a few of them are simply silly, but Liberation amended its proxy statement to quote them verbatim, make applicable disclosures, and explain its own views. It is a format that has been approved time

after time by the federal courts. Liberation thereupon filed a motion to dismiss the preliminary injunction proceeding as moot.

5.  Bally has now filed a proposed amended complaint as well as a brief in opposition to Liberation's mootness motion. Those papers continue to make one thing very clear. Above all else Bally wants continuing litigation and, particularly, discovery. Lots of expensive, expedited discovery. One might ask how Mr. Toback could possibly justify spending hundreds of thousands of dollars of the stockholders' money on such discovery when: (1) the vote on Liberation's proposal will go forward regardless; and (2) Mr. Toback will only be removed if 75% of the stockholders decide that he is not the right man to run the Company. But that question probably answers itself.

6.  The immediate question -- and the only one this Court need address -- is whether there is any longer a need for the preliminary injunction proceeding and its associated expedited discovery. Liberation respectfully submits that the answer is "no." As this Court previously told the parties, once Liberation shows that its Supplemental Statement addressed all of the allegations in Bally's Contention Letter, "it's over."

7.  Bally disagrees but its arguments fail. It first argues -- and then repeats over and over throughout its brief -- that this preliminary injunction proceeding is not over because Liberation fails to meet "the high burden" governing motions to dismiss *complaints*. As Bally, knows, however, *this is not a motion to dismiss the complaint*. It is a motion to dismiss *the preliminary injunction proceedings as moot*. The question here is not whether any set of facts could support Bally's allegations, but whether Liberation's disclosure of Bally's contentions moots the need for preliminary injunctive relief.

8.      Bally also maintains that Liberation's disclosures are insufficient. In part this is because Bally misstates the applicable law, and in part it is because Bally has added new variations to its week-old claims. For example, the Contention Letter insisted that Liberation disclose that it was seeking to remove Mr. Toback to "prevent management from taking action against Hillman [the former CEO]." Bally did not bother to explain why someone would risk $30 million for that purpose, but Liberation nonetheless quoted the assertion in its amended disclosures. Bally now tries to avoid mootness by saying that what it really meant to say in its Contention Letter -- but did not -- is that Liberation must disclose that it is worried about action being taken against Mr. Hillman <u>and</u> Mr. Pearlman. (Proposed amended complaint ¶ 64 (c)).

9.      Presumably, if Liberation discloses this new variation then Bally will think for a few more days and come up with still more people that Liberation should confess to protecting. The game could be endless, with the only constant being Bally's position that whatever has been disclosed is insufficient and that a lot of litigation is needed. But the cases make clear that Congress did not pass the Williams Act to allow management to use it as a litigation weapon. And this Court's Scheduling Order already required Bally to list all its claims in the Contention Letter. Liberation's supplemental disclosures quoted each allegation in the Contention Letter, and that was enough.

10.     Finally, Bally argues that it is entitled to take discovery now because the cases it cites in its brief show that Liberation's supplemental disclosures do not work as a matter of law. Bally misreads it cases, though. They only require proxy contestants to disclose objective facts, not subjective theories dreamed up by management. And while a number of those cases refuse to dismiss complaints, none hold that preliminary injunction proceedings are required when

claimed omissions are disclosed by the party defendant. Indeed, at least one of the cases, *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482 (D.Del. 1984), states otherwise.

11.     Liberation therefore respectfully requests the Court to dismiss the preliminary injunction application as moot.

## ARGUMENT

### I. Liberation Seeks Dismissal of the Preliminary Injunction Motion -- Not the Complaint

12.     Bally first argues that Liberation fails to meet "the high burden governing motions to dismiss." Bally then goes on for several pages, with the better part of twenty citations, to try to prove that Liberation has not met the Rule 12(b)(6) standards for dismissal of a *complaint*. As Bally knows, however -- even the caption of its brief acknowledges the fact (and the Court's Scheduling Order makes the point absolutely clear) -- this is *not* a motion to dismiss a complaint. Rather it is simply a motion to dismiss the preliminary injunction proceeding as moot. Liberation is not contending that the entire case should disappear at this point. Rather, we argue that this proceeding is moot under settled law because once Liberation disclosed Bally's allegations, it did everything the proxy rules require. There is no longer a basis for preliminary injunction proceedings or expensive expedited discovery because the law says that disclosure is enough.

13.     Bally's entire 12(b)(6) argument is thus simply misplaced. The present proceedings are moot as a matter of law. If Bally still cares about this matter after the shareholder vote, the justiciability of its Complaint can be dealt with then. As for now, however, the question is not whether Liberation has met the standards of Rule 12(b)(6) because this is not a Rule 12 motion. Rather, the sole question is whether Liberation's disclosures meet the standards of federal law. As is set forth below, we respectfully submit that they do.

**II.     Bally's Argument Misstates the Operative Disclosure Standard,
         Ignores the Applicable Law, and Disregards the Congressional Intent**

14.     Bally next argues that Liberation's Supplemental Statement -- which includes a word-for-word quoting of Bally's allegations -- fails to cure Liberation's alleged "non-disclosures." According to Bally, therefore, Liberation's argument has "certain level of superficial appeal" but has been properly rejected by this District as an "easy way out." Bally Brief at 7.

15.     In other words, Bally contends that this Court was wrong on the law when it informed the parties that this case would be "over" if Liberation disclosed Bally's claims. *See* 12/7/05 Transcript at p. 27.   And because Liberation has followed what Bally believes to be the Court's erroneous statement of the law in order to get an "easy out" (Bally Brief at 13), Bally claims that it is "entitled to discovery and a hearing on its allegations," despite the fact that Liberation set forth every one of those allegations in its Supplemental Statement.

16.     Bally thus maintains that there is no "easy out" here and that, simply by filing its complaint, it became "entitled" to put both Liberation and this Court through expedited discovery and an expedited injunction proceeding.  Bally, however, gets each of its arguments wrong.  This Court did not err in saying that full disclosure would moot a preliminary injunction proceeding, and neither this District nor the securities laws frown on allowing a proxy contest to moot expensive litigation by disclosing the other party's allegations.  It is a point the courts have made time and time again.

   **A.     Disclosure of Bally's Allegations is All That is Required**

17.     This Court, for example, made the point when denying plaintiff's request for injunctive relief in the *City Capital* decision*:*

6

> "Where there exists a good faith dispute as to facts or an alleged legal violation, *the Williams Act only requires disclosure of the dispute*…As long as the [defendant] discloses to the target shareholders that a good faith dispute exists as to an alleged violation of law, a shareholder has sufficient information to make a rational and informed decision…."

*City Capital Assocs. Ltd. P'Ship v. Interco, Inc.*, 696 F.Supp. 1551, 1556-57 (D.Del. 1988) *(*citing *Warner,* 581 F.Supp at 1502; *Avnet, Inc. v. Scope Indus.*, 449 F.Supp. 1121, 1124-26 (S.D.N.Y. 1980) (emphasis added)).

18.  Does this rule provide an unduly "easy" disclosure requirement for shareholders seeking to replace management? Bally says so here, but the law disagrees. Indeed, this Court has cited the Supreme Court when holding that "***the purpose of the [disclosure] law has been fully served and there is no threat of continuing harm [as] would justify injunctive relief***" once the allegations of the underlying litigation are disclosed. *See Energy Ventures v. The Appalachian Co.*, 587 F.Supp. 734, 743 (D.Del. 1984) (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59-60 (1975)(emphasis added)); *see also* Motion ¶ 18.

19.  Thus, as a matter of both law and logic, there is no basis for these proceedings now that all of the allegations in Bally's Contention Letter have been disclosed -- twice, in fact, when Bally's own proxy disclosure is considered. The authority on this point is simply overwhelming. *See* Motion ¶ 19; s*ee also Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209-10 (D.C.Cir. 1989) (affirming denial of a preliminary injunction on the basis of a supplemental disclosure annexing the plaintiff's complaint which the defendant disputed); *City Capital*, 696 F.Supp. at 1557 (denying a preliminary injunction in light of a supplemental disclosure summarizing and restating the plaintiff's allegations, disputing those allegations, and stating that the defendant believed it had complied with the law); *Revlon, Inc. v. Pantry Pride, Inc.*, 621 F.Supp. 804, 812-13 (D.Del. 1985) (denying a preliminary injunction where the defendant has

disclosed the plaintiff's allegations and denied them); *Condec Corp. v. Farley*, 573 F.Supp. 1382, 1386 (S.D.N.Y. 1996) (denying a preliminary injunction because the defendants had "made a full recitation of the issues raised by the plaintiffs in this litigation" thereby giving "all interested parties . . . access to the facts"); *Avnet*, 499 F.Supp. at 1125 (denying a preliminary injunction because the defendant's supplemental disclosure disclosing the plaintiff's alleged facts and the parties' conflicting positions regarding them was sufficient).

### B. Bally's Argument Cannot be Reconciled with Congress' Express Intent

20.   Bally's arguments are also directly contradicted by the stated purpose of the Williams Act itself -- which seeks to provide an information conduit for shareholders, not a vehicle for retaliatory litigation against proxy contestants who challenge management's tenure or control.  Indeed, the Supreme Court long ago confirmed this point and stressed that Congress was quite clear about how such litigation should be viewed:

> ***Congress intended to do no more than give incumbent management an opportunity to express and explain its position.  The Congress expressly disclaimed an intention to provide a weapon for management….***

*See Vestcom Int'l Inc. v. Chopra*, 114 F.Supp.2d 292, 297-98 (D.N.J. 2000) (quoting *Rondeau*, 422 U.S. at 58-59) (emphasis added); *City Capital,* 696 F.Supp. at 1556; *accord Gearhart Indus., Inc. v. Smith Int'l Inc.*, 741 F.2d 707, 713, 715 (5th Cir. 1984); *Treadway Cos., Inc. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir. 1980); *see also Capital Realty Invs. Tax Exempt Fund Ltd. P'Ship v. Dominium Tax Exempt Fund L.L.P.*, 944 F.Supp. 250, 258-59 (S.D.N.Y. 1996) (holding that the federal securities laws "must not be perverted into the tool of [challenged] management"); *HUBCO, Inc. v. Rappaport*, 628 F.Supp. 345, 352 (D.N.J. 1985) (stating that Congress was "loath" to use section 13(d) to tip the scales in favor of management).

21. The federal courts -- including this Court -- have therefore recognized that they perform an essential gatekeeping role in preventing disclosure litigation from being used as a vehicle for "tipping a delicate balance in favor of" management. *City Capital* at 1557; *see also, e.g., Hibernia Savings Bank v. Ballarino,* 891 F.2d 370, 372 (1st Cir. 1989) (citing *Rondeau*, 422 U.S. at 95) (management must not be allowed to use litigation to "undermine [the disclosure law's] purpose and tip the balance" in its favor); *Ranger Oil Ltd. v. Petrobank Energy & Resources Ltd.,* 2000 WL 33115906 at *10 (S.D.N.Y. 2000) (noting that the legislative history comments upon "extreme care" in that regard) (attached as Exhibit A).

**C.    Liberation Has More Than Satisfied Its Disclosure Obligation**

22. Thus, the sole question now before this Court is whether Liberation's Supplemental Statement adequately relayed Bally's contentions regarding the alleged disclosure violations at issue here. We respectfully submit that there is no room for debate on that point. Not only does the Supplemental Statement direct shareholders to the Bally's complaint, it goes a step further by actually ***quoting every allegation*** set forth in Bally's Contention Letter. And since the Court required the Contention Letter to include all of the alleged disclosure violations for which Bally is seeking preliminary relief here, controlling law makes clear that there can be no basis for injunctive proceedings at this point.

23. In arguing to the contrary, Bally ignores the stated purpose of the disclosure law, the overwhelming weight of authority applying that law, and the very essence of what is required before preliminary injunctive relief can be granted. *See* Paragraph 19*, supra.*

**D.    Bally's Reliance Upon *Warner Communications* and *Tracinda* Is Misplaced**

24. Bally asserts, however, that *Warner Communications* and *Tracinda Corp. v. Daimler Chrysler AG,* 197 F. Supp. 2.d 42 (D. Del. 2002) support its argument that Liberation's

9

Supplemental Statement did not render these proceedings moot and that the continuation of preliminary injunction proceedings is required by the securities laws. That reliance is wholly misplaced. In fact, both this Court and other federal courts have cited *Warner* for precisely the opposite proposition.

### (1) Warner Actually Supports Liberation's Motion.

25.     *Warner* was decided on a motion to dismiss the complaint, not a motion to dismiss preliminary injunction proceedings as moot, and the relief sought in *Warner* -- damages and rescission -- would not have led to a preliminary injunction in any event. Yet, if one reads the decision closely, one notices that its discussion edges right up to the edge of the mootness question -- and then lands squarely on Liberation's side of the issue:

> "Disclosing the adverse claims, of course, may satisfy a party's disclosure obligations pending ultimate resolution of the merits of the claims . . . . Permitting this type of cure would eliminate costly and often vexatious litigation under § 13(d) . . . . [I]f the party in good faith disputes the violations, the party need only disclose the possibility of the violations . . . . The securities laws may not be used as an indirect vehicle for litigating any and all of a party's sins."

*Warner*, 581 F.Supp. at 1501-02.

26.     Thus, while the *Warner* court refused to dismiss the complaint, it did note that "disclosing the adverse claims" could satisfy that party's disclosure obligations under the securities laws. Indeed, this Court later quoted *Warner* on that very point in *City Capital*, and several of the other decisions cited in Liberation's Motion did the same when holding that preliminary injunctive proceedings over alleged disclosure violations are indeed rendered moot by a supplemental disclosure of those allegations. *See City Capital* at 696 F.Supp at 1556-59; *Sea Containers*, 890 F.2d at 1210-11; *Vestcom*, 114 F.Supp.2d at 300; *Weeden*, 713 F.Supp. at 400. *Warner* simply provides no support for Bally.

10

### (2)  *Tracinda* Does Not Counsel A Different Result

27.  Bally fares no better when citing *Tracinda*, even a cursory reading of which again belies Bally's claim that it somehow controls the pending Motion.  Bally tells this Court that *Tracinda* requires both discovery and a preliminary injunction proceeding on its disclosure claims because they allege "facts" that must supposedly be disclosed.  Not only does that argument continue to reflect Bally's confusion about the legal distinction between its highly subjective allegations regarding Liberation's motive and the objective, material facts covered by the disclosure laws, it also ignores the procedural posture of *Tracinda*.

28.  Like *Warner, Tracinda* was decided on a motion to dismiss the complaint -- *not* a motion to dismiss preliminary injunction proceedings as moot.  Moreover, in *Tracinda* the Court confirmed that allegations about a defendant's undisclosed motive will not ordinarily "form the basis of a securities claim."   And the *Tracinda* complaint was not dismissed because: (i) the case also involved *affirmative misrepresentations* of objective, material fact; and (ii) there had been no supplemental disclosure addressing the plaintiff's allegations prior to the vote in question.  *See Tracinda*, 197 F.Supp. 2d at 62-63.  Nothing about that holding applies to the situation now before this Court.  Liberation is not seeking to dismiss the complaint, there are no allegations of affirmative misrepresentations here, and Liberation had made a detailed supplemental disclosure.  *Tracinda* is simply not on point.

### E.    The Proxy Rules Do Not Require "Motive and Intent" Disclosure

29.  Although acknowledging that there are no proxy rules requiring "bad guy" disclosures from Liberation, Bally continues to argue about its "entitle[ment] to discovery and a hearing on its allegations regarding defendants' intentions and motives."  Bally relies upon *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216 (4th Cir. 1980), *Lichtenberg v. Besicorp Group, Inc.*, 43

11

F.Supp.2d 376 (S.D.N.Y. 1989) and 15 U.S.C. §78m(d)(1) in attempted support of that argument, but a careful analysis of those citations shows that they do not read as Bally now suggests.

30. This case is about alleged disclosure omissions in Liberation's proxy statement. However, both Section 78m(d)(1) and *Dan River* concern the distinct requirement that someone purchasing more than five percent of a company's stock must declare if the purpose of that purchase is to "acquire control of the business." Thus, the "reason for purchase" requirement on which Bally bases its argument simply does not apply to the present situation.[1]

31. Bally cites *Lichtenberg* in an attempt to create an "explicit" disclosure requirement in the proxy context. But *Lichtenberg* actually confirmed that there is <u>no</u> such requirement. Indeed, *Lichtenberg* held only that "if defendants *choose* to disclose their motives for a transaction, they must do so accurately." *See id.* 43 F.Supp.2d at 389 (citing *Virginia Bankshares*, 501 U.S. at 1098 n.7) (emphasis added).

32. There is nothing new about that rule, and it is consistent with the established law that proxy statements do not require "motive, intent or desire" disclosures as long as the material facts -- or factual disputes -- are properly presented. Liberation has made clear that there is a factual dispute as to Bally's allegations in this case, and that it was soliciting proxies in order to remove Mr. Toback as Bally's CEO. That is all the securities laws require.

### III.  Bally Cannot Avoid Its Own Disclosures

33. Just last week -- after being advised that this mootness motion was imminent -- Mr. Toback caused Bally to file its own proxy statement in the contest over Liberation's

---

[1] Moreover, the *Dan River* defendant never filed a supplemental disclosure regarding the parties' factual dispute over the alleged omissions, rendering that decision inapposite on both substantive and procedural grounds.

proposal. *See* Motion at Exhibit D. It is similarly undisputed that Bally's filing included a letter to shareholders in which Mr. Toback reiterated Bally's disclosure allegations against Liberation and continued his personal attack on Mr. Pearlman. *Id.* Bally nevertheless tells the Court that it must ignore both those filings and their contents, arguing that they can have no possible relevance to the mootness question and that only disclosures by Liberation can be considered. The point is not overwhelmingly important, since Liberation has already disclosed all that is required to be disclosed, but Bally is wrong here too.

### A. The Toback Letter and Bally Proxy Are Part of the Information Mix

34.   As set forth in our Motion, the disclosure law's purpose is served -- and preliminary injunctive relief for alleged disclosure violations is therefore mooted -- when shareholders are provided with the necessary "information mix." There is no requirement that such information come exclusively from the disclosure-suit defendants. Indeed, such a requirement would be contrary to the fundamental rule that "investors are charged with knowledge of information of which they reasonably should be aware." *See, e.g., Warner,* 581 F.Supp. at 1492.

35.   It is therefore not surprising that Bally has failed to cite any authority in support of its contrary argument. As previously noted, the courts have recognized that there can be no irreparable harm -- *i.e.,* no basis for injunctive proceedings -- where the disclosure-suit plaintiff have the ability to get its allegations into the information mix. *See, e.g., Rondeau*, 422 U.S. at 95 (holding that there can be no irreparable harm to the shareholders unless management is "unable to adequately place its case before them"); *Ranger*, 2000 WL 3115906 at *10 (holding that there is no basis for preliminary injunctive relief where "management has had the opportunity, and has taken full advantage of that opportunity, to express and explain its opposition" to the challenged

disclosure); *Vestcom*, 114 F.Supp.2d at 299 (denying injunctive relief as inappropriate when "the parties themselves [have] convey[ed] the necessary information to the shareholders").[2]

36. This intersection of law and common sense was well summarized by a series of holdings in the *Capital Realty* decision:

- "The practical realities of the situation are that plaintiffs and [defendants], respectively, can and presumably will put the material facts into the hands of the [stockholders] promptly. At that point, any misleading impressions created to date should be overcome, and the fate of the [vote] will be for the [stockholders] to decide."

- "Certainly plaintiffs could tell the [stockholders] of [facts] they think [are] likely to be persuasive. Plaintiffs in these circumstances are not threatened with irreparable injury by virtue of the [defendants'] omission."

- "[T]he injury certainly is not irreparable. Plaintiffs can counter any misleading impression that [the defendants] have created."

- "Plaintiffs are at liberty to make to the [stockholders] the points that they have made to this Court."

944 F.Supp. at 259-60; *see also Vestcom*, 114 F.Supp.2d at 299 ("Bedrock equity jurisprudence counsels against granting injunctive remedies where the harm complained of is cured by other means").

37. Thus, both the Toback letter and Bally's related proxy statement are unquestionably part of the "information mix" that is now before its shareholders. And since our courts have repeatedly held that the disclosure laws were satisfied -- and these proceedings rendered moot -- once Bally's allegations were presented to the shareholders, one might conclude that Bally's vigorous attempt to prolong these proceedings is based in something other

---

[2] The lack of irreparable harm is also reflected in the courts' ability to afford after-the-fact relief should the issue still exist after the election has taken place. *See, e.g., Hibernia Savings*, 891 F.2d at 373; *Mant v. Bregman*, 499 F.Supp. 265, 271 (S.D.N.Y. 1988).

than management's disinterested devotion to the disclosure laws themselves. *See, e.g., Vestcom*, 114 F.Supp.2d at 299.

### B. Neither *Kohn* nor *Bertoglio* Hold Otherwise

38. Bally's argument also fails because once more it is based on citations that have no application to the present situation: *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255 (3d Cir. 1972) and *Bertoglio v. Texas International Co.*, 488 F.Supp. 630 (D.Del. 1980). Both cases deal with the subject of § 13(d) disclosures, but neither deals with the relevance of a plaintiff's own disclosures in mooting preliminary injunction proceedings.

39. Instead, *Kohn* and *Bertoglio* stand for the unremarkable proposition that a defendant cannot satisfy its § 13(d) disclosure obligations by relying upon filings from third-parties that the defendant did not: (i) incorporate or reference in its disclosure; and (ii) note any factual dispute it had with the matters disclosed in those filings. *See Kohn*, 458 F.2d at 265; *Bertoglio*, 488 F.Supp. at 643. Neither of those cases addressed the mootness issue that is currently before this Court, and neither supports the proposition for which Bally has cited them -- *i.e.,* that this Court cannot consider the Toback letter or Bally's proxy statement when making the mootness determination.

40. In the end, though, it really doesn't matter that Bally's argument is without merit. The Supplemental Statement filed by Liberation in response to the Contention Letter was more than enough to moot Bally's request for preliminary relief. Bally's own disclosures provide additional grounds for a mootness finding, as noted in our Motion, but such a finding in no way depends upon those disclosures. They are simply one more indication that there is no basis for the ongoing cost or distraction of these preliminary injunction proceedings.

## IV. Bally Is Not Entitled to Expedited Discovery

41. It is axiomatic that there can be no discovery in anticipation of a preliminary injunction request when that request has been mooted. Bally nevertheless asks this Court to ignore the elephant in the room, suggesting that mere incantation of the securities laws somehow entitles it to burden Liberation with expensive, expansive and expedited discovery between now and the shareholder vote on Mr. Toback's tenure. In other words, Bally wishes to engage in a fishing expedition that would be improper even had this case been brought in a different context. *See, e.g.,* Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes (confirming that parties "have no entitlement to discovery to develop new claims or defenses.").

### A. The Securities Laws Prohibit Fishing Expeditions

42. The Congressional record, the Supreme Court and the District Courts have all made clear that disclosure litigation may *not* be used as a fishing expedition against the shareholders who are seeking changes in corporate management, especially after supplemental proxy materials have apprised the shareholders about management's allegations. To hold otherwise would defeat the discrete purpose of the disclosure laws and ignore the fundamental requirement for equitable relief: irreparable harm.

43. As cogently observed by the First Circuit (which faced a similar situation when affirming the trial court's dismissal of preliminary injunction proceedings below):

> Such relief is not available [because] the alleged violator has complied with the notice requirements [and] preclude[d] a showing of irreparable harm [by plaintiff].
>
> We need go no further. *[Plaintiff's] actions seem indeed a piscatorial attempt to entrench management's position, stall any further [proxy efforts] by [defendants], and use discovery rules to find out just what, if anything, [defendants] are up to. Courts have traditionally prevented plaintiffs from misusing the discovery process to discern the motives of potential adversaries.*

16

\*   \*   \*

> The underlying purpose of Section 13(d) is to provide investors and the market in general with accurate information [about plaintiff's allegations], but without using the medium of federal litigation to tip the balance in favor of [challenged] management…***We will not permit [management] to undermine this purpose***."

*Hibernia Savings Bank,* 891 F.2d at 372-73 (emphasis added, internal quotations omitted).

44.     Bally's "piscatorial attempt" to prolong this proceeding must be seen for what it is -- an improper attempt to use the securities laws as a "weapon" against Liberation. We respectfully submit that it cannot be permitted to succeed in that attempt.

### B.     There Is No Longer Any Basis for Preliminary Proceedings

45.     Judge Wolin's decision in the *Vestcom* case is also instructive here. Like Bally, the *Vestcom* plaintiff sought injunctive relief for alleged disclosure violations by an insurgent shareholder. Like Liberation, the *Vestcom* defendant then elected to moot the proceedings by filing a supplemental disclosure in which it set forth the plaintiff's contentions about the alleged securities law violations. And like Bally, the *Vestcom* plaintiff attempted to prolong the proceedings by arguing that it was still "entitled to litigate and win a declaration from this Court that there was a [disclosure] violation" because the plaintiff's supplemental filing had not admitted the alleged wrongdoing -- *i.e.,* had not capitulated to plaintiff's subjective view of the "facts" in dispute. *Vestcom*, 114 F.Supp.2d at 299.

46.     That argument is strikingly similar to the one now pressed by Bally, and it should be rejected for similar reasons. Following the Supreme Court's admonition that "***the securities laws may not be used as an indirect vehicle for litigating any and all of a party's [alleged] sins***," the injunction proceedings in *Vestcom* were terminated as moot because the allegations of plaintiff's underlying complaint were set forth in the defendant's supplemental disclosure filing.

17

*Id*. at 300 (emphasis added); *accord City Capital,* 696 F.Supp. at 1557-59 (denying preliminary injunctive relief after the defendant filed a supplemental disclosure that: (i) "summarize[d] and restate[d] in detail the [plaintiff's] disclosure allegations"; (ii) disputed those allegations; and (iii) stated defendant's position that it had complied with the securities laws in making the challenged disclosures).

47. The Court further noted that preliminary equitable relief was inappropriate because disclosure of the plaintiff's allegations had removed any basis for preliminary relief under the securities laws. *See Vestcom,* 114 F.Supp.2d at 299. And, as noted above, that is clearly the law. *Accord Avnet*, 449 F.Supp. at 1124 (refusing to make a "component determination" on plaintiffs' claims after their disputed nature was presented in the defendant's supplemental disclosure statement); *City Capital*, 696 F.Supp. at 1557 (holding that the defendant is not required to admit the plaintiff's allegations or to violate the securities laws by failing to disclose the alleged and disputed violation).

48. Thus, there is no legal basis for Bally's argument that it is "entitled" to a preliminary injunction hearing on the merits of its allegations and/or Liberation's related disclosures. The law, in fact, holds exactly to the contrary. Such matters may *not* be "bootstrapped into a live controversy" at the preliminary injunction phase. *Vestcom*, 114 F.Supp.2d at 300; *see also Condec*, 573 F.Supp. at 1386 (holding that "the [merits] question…is *not* one appropriately to be determined by this Court in [an injunctive] proceeding") (emphasis added); *Avnet*, 499 F.Supp. at 1126 n.6 (noting that the securities law does "*not* require the [Court] to actually resolve [the parties'] opposing arguments . . .") (emphasis added); Motion ¶ 21.

## V.  **Bally's Proposed Amendments Are Too Late.**

49.  Bally has also filed a proposed amended complaint and argues that since Liberation has not disclosed the new assertions found there, the preliminary injunction proceeding has not been mooted. Bally does not list these new assertions in any one location -- some can be found in various places in its proposed amended complaint, others in its brief (see pp. 11-12) but none of them is new. All of them are simply expanded variations of the allegations already contained in the Contention Letter. Bally could have put each of these allegations in that letter, but either chose not to or simply had not dreamed them up yet.

50.  Either way, Bally waited too long. In an expedited proceeding it has no right to keep changing what it says should be disclosed. Moreover, this Court's December 14, 2005 Scheduling Order specifically set the rules for this proceeding:

> "IT IS ORDERED that:
>
> 1.  On or before December 10, 2005, at 12:00 p.m. EST, Bally will provide a letter to Defendants setting forth the disclosures it contends Defendants have failed to make (in violation of Sections 13(d) and 14(a) of the Securities Exchange Act of 1934) and which Bally will pursue in the preliminary injunction hearing in this matter."

51.  Bally agreed to that language, which nowhere (either in that paragraph or elsewhere in the Scheduling Order) gives Bally the right to insert new contentions into the case. Bally is bound by that order and by common sense. It may not keep a preliminary injunction proceeding alive simply by inventing new claimed disclosure violations every few days and assert that they also must be disclosed.

52. The parties can deal with Bally's proposed amended complaint in the manner and under the time provision set by the Rules. But as this Court's Scheduling Order makes clear, Bally's attempt to inject it into the preliminary injunction proceeding comes too late and raises real questions about management's purposes here.

## VI. Conclusion.

53. Liberation respectfully requests the Court to dismiss the preliminary injunction proceeding as moot for the reasons set forth above and in our Motion. Liberation has complied with its disclosure obligations, and there should be no need for it to disclose each iteration of Bally's continually evolving claims. If the Court believes that Liberation should disclose additional information, however, we respectfully request the Court to allow it to do so rather than recommencing the litigation.

ASHBY & GEDDES

*/s/ Steven T. Margolin (ID #3110)*

Stephen E. Jenkins (ID #2152)
Steven T. Margolin (ID #3110)
Lauren E. Maguire (ID #4261)
Andrew D. Cordo (ID #4534)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Counsel for the Defendants*

OF COUNSEL:
Michael H. Diamond
Kenneth J. Baronsky
Adam R. Moses
MILBANK, TWEED, HADLEY & MCCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017

Dated: December 19, 2005